**REESE RICHMAN LLP**
Michael R. Reese
michael@reeserichman.com
Kim E. Richman
kim@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 579-4625
Facsimile:   (212) 253-4272

- and -

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile:  (214) 827-2787

*Attorneys for Plaintiffs and the proposed class*
(additional plaintiffs' counsel listed on signature page)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BATSHEVA ACKERMAN, RUSLAN ANTONOV, JAMES KOH and JERRAD PELKEY, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU),<br><br>Defendants. | CASE NO. 09-cv-0395 (CPS)(RML)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

1

Plaintiffs Batsheva Ackerman, Ruslan Antonov, James Koh and Jerrad Pelkey ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against The Coca-Cola Company and Energy Brands, Inc. d/b/a Glaceau (collectively "Defendants"), demanding a trial by jury, and allege as follows:

## NATURE OF THE CASE

1.      This is a proposed class action on behalf of California and New York residents seeking redress for Defendants' deceptive practices in misrepresenting the nutritional content and health benefits of Defendants' purported "health beverage" – Glaceau VitaminWater ("VitaminWater") – in violation of California and New York's consumer protection laws from January 15, 2005 to the present (the "Class Period"). VitaminWater was deceptively promoted by Defendants as, among other things, "vitamins + water = all you need." The truth is, however, that VitaminWater does not consist solely of "vitamins + water"; rather, it contains 33 grams of sugar, which is almost as much sugar as contained in a can of Coke.

2.      Consumers are increasingly health-conscious. Many consumers are trying to avoid soft drinks and are looking for a healthier beverage alternative.

3.      These health concerns fueled the consumption of VitaminWater, from which Defendants profited enormously. Defendants command a premium price for VitaminWater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a health beverage. On average, Defendants charge almost twice as much for VitaminWater as for one of their other soft drinks (e.g., Coca-Cola Classic, Sprite, etc.). Sales of VitaminWater are estimated at more than half a billion dollars annually, with VitaminWater significantly increasing sales each year during the Class Period.

4.      Defendants' advertising and marketing campaigns, as well as their labeling of VitaminWater, deceptively promote VitaminWater as a healthy alternative to soft drinks. Contrary to Defendants' deceptive representations as alleged herein, VitaminWater is not a healthy beverage. Rather, it is sugar water with a few added vitamins.

5.     Defendants' misrepresentations about VitaminWater – from its healthful-sounding name and good-for-you health promises – bombard consumers with a message of purported health, and draw consumer attention away from the significant amount of sugar in the product. Reasonable consumers should not be forced to look beyond the misleading representations on VitaminWater labels and in other marketing, advertising, and promotional materials to discover the truth from the ingredients listed in small print on the back of the bottle. Instead, reasonable consumers should be able to trust that representations on the packaging and in-store advertising of VitaminWater are ultimately consistent with the ingredient list, and not the opposite, as is the case with VitaminWater.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and Defendants.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2). Substantial acts in furtherance of the alleged improper conduct occurred within this District. Plaintiff Ackerman resides within this District and bought Defendants' Products within this District.  Defendant Energy Brands is headquartered within this District.

## THE PARTIES

### Plaintiffs

8.     Plaintiff Batsheva Ackerman is a resident of Nassau County, New York.  Plaintiff Ackerman purchased VitaminWater during the Class Period.  Specifically, Plaintiff Ackerman purchased VitaminWater Revive (Fruit Punch) and VitaminWater Multi-V (Lemonade) at their premium price approximately one to two times per week between October 2007 and October 2008. Plaintiff Ackerman purchased this VitaminWater from various drug stores, such as Duane Reade, located in New York.  Plaintiff Ackerman relied on the written misrepresentations contained on VitaminWater bottles that VitaminWater is a healthy beverage and therefore

believed she was ingesting a healthy beverage. Plaintiff Ackerman relied on the written misrepresentations that VitaminWater was a healthy beverage in reaching her decision to purchase VitaminWater and chose to purchase VitaminWater over cheaper beverages, such as soda or Snapple.  Had Plaintiff Ackerman known the truth that the statements she relied on were false, she would not have purchased VitaminWater.

9.      Plaintiff Ruslan Antonov is a resident of San Francisco County, California. Plaintiff Antonov purchased VitaminWater during the Class Period.  Specifically, Plaintiff Antonov purchased VitaminWater at the premium price set by Defendants approximately four to eight times per month during the Class Period from various convenience stores located throughout San Francisco.  Plaintiff Antonov relied upon the written representations that VitaminWater was a healthy beverage in reaching his decision to purchase VitaminWater.  Had Plaintiff Antonov known the truth that the statements he relied upon were false, he would not have purchased VitaminWater.

10.      Plaintiff James Koh is a resident of San Francisco County, California. Plaintiff Koh purchased VitaminWater during the Class Period. Specifically, Plaintiff Koh purchased VitaminWater Rescue (Green Tea) and VitaminWater Revive (Fruit Punch) at their premium price approximately five times per month between October 2007 and July 2008.  Plaintiff Koh purchased this VitaminWater from several 7-Eleven convenience stores located in San Francisco and from a delicatessen convenience store located in Daly City, California.  Plaintiff Koh relied on the written misrepresentations that VitaminWater is a healthy beverage and therefore believed he was ingesting a healthy beverage. Plaintiff Koh relied on the written misrepresentations that VitaminWater was a healthy beverage in reaching his decision to purchase VitaminWater.  Had Plaintiff Koh known the truth that the statements he relied on were false, he would not have purchased VitaminWater.

11.      Plaintiff Jerrad Pelkey is a resident of San Bernardino County, California. Plaintiff Pelkey purchased Vitamin Water during the Class Period.  Specifically, between 2006 and 2008, Plaintiff Pelkey regularly purchased VitaminWater Multi-V (Lemonade),

VitaminWater Formula 50 (Grape) and other flavors of VitaminWater at their premium price from various grocery stores and convenience stores located in California.  Plaintiff Pelkey relied on the written misrepresentations that VitaminWater is a healthy beverage and therefore believed he was ingesting a healthy beverage.  Had Plaintiff Pelkey known the truth that the statements he relied on were false, he would not have purchased VitaminWater.

12.     Plaintiffs Ackerman, Antonov, Koh, and Pelkey are collectively referred to herein as "Plaintiffs."

**Defendants**

13.     The Coca-Cola Company ("Coca-Cola") is a Georgia corporation headquartered in Atlanta, Georgia.  Coca-Cola describes itself as the largest manufacturer, distributor and marketer of nonalcoholic beverage concentrates and syrups in the world.  During 2007, Coca-Cola expanded its still beverage offerings by acquiring Energy Brands Inc., also known as Glaceau, the maker of enhanced water brands including VitaminWater.

14.     Defendant Energy Brands, Inc. (d/b/a as Glaceau) is a wholly owned subsidiary of Coca-Cola.  Defendant Energy Brands, Inc. is headquartered in Whitestone, New York.

## GENERAL ALLEGATIONS

**Defendants Know That Consumers Desire Healthier Alternatives to Soft Drinks**

15.     Riding on the success of bottled water, the beverage industry contrived a new way to boost sales: "water beverages" enhanced with vitamins, fruit, herbs, antioxidants and more. As sales in this category rose 30% in 2007, Defendants profited handsomely by their sale of VitaminWater to consumers.

16.     Defendants recognize the importance of marketing and labeling VitaminWater as a healthy alternative to sugary soft drinks.  In its Form 10-K Annual Report filed with the United States Securities and Exchange Commission for the year 2007, Coca-Cola acknowledged that "obesity and other health concerns may reduce demand for some of [its] products" and are risk factors to its profits.  Coca-Cola further stated that "some researchers, health advocates and dietary guidelines are encouraging consumers to reduce consumption of certain types of

beverages, especially sugar-sweetened beverages.  Increasing public awareness about these issues … could affect our profitability."

17.     Not surprisingly, VitaminWater does not name Coca-Cola anywhere on its packaging or labeling; rather these purportedly healthy drinks are sold without any reference to the soft drink manufacturer that produces them.

### Defendants' Marketing, Advertising and Labeling Claims That VitaminWater Provides Health Benefits To Consumers

18.     Defendants sold VitaminWater as a healthy alternative to soda and other typical soft drinks.  Defendants aggressively marketed and advertised VitaminWater as a health drink and sought to attract health-conscious consumers.

19.     Defendants deceive consumers into believing that VitaminWater provides remarkable health benefits by marketing, advertising and labeling the VitaminWater flavors with names including: "defense," "rescue," "energy," "power-c," "balance," "focus,"  "revive," "endurance," "essential," "b-relaxed," "formula 50," "vital-t," "charge + -," and "multi-v."

20.     Defendants' VitaminWater labels proclaim that VitaminWater is a "Nutrient-Enhanced Water Beverage" and that "vitamins + water = all you need."  This description is intended to lead consumers to believe that the beverage contains simply water and nutrients. This is misleading, however, because VitaminWater not only contains additives that cause the beverage to be far from healthy, but has 33 grams of sugar – almost as much as a can of Coke.

21.      In addition, the VitaminWater labels make additional claims touting the purported health benefits of drinking VitaminWater.  For example, the labels of VitaminWater's "defense" flavor claims as follows: "[I]f you've had to use sick days because you've actually been sick then you're seriously missing out, my friends.  [S]ee, the trick is to stay healthy and use sick to days to just um, not go in.  [A]nd this combination of zinc and fortifying vitamins can help out with that and keep you healthy as a horse.  [S]o drink up."

22.     In addition, the VitaminWater labels make the following claims about the purported health benefits of drinking other flavors of VitaminWater:

- <u>Rescue</u> "is specially formulated to support optimal metabolic function with antioxidants that may reduce the risk of chronic diseases, and vitamins necessary for the generation and utilization of energy from food."

- <u>Focus</u> "is specially formulated to provide vitamin [A] (a nutrient known to be required for visual function), antioxidants and other nutrients [that] scientific evidence suggests may reduce the risk of age-related eye disease."

- <u>Balance</u> "is specially formulated with bioactive components that contribute to an active lifestyle by promoting healthy, pain-free functioning of joints, structural integrity of joints and bones, and optimal generation and utilization of energy from food."

- <u>Defense</u> "is specially formulated with nutrients required for optimal functioning of the immune system, and the generation and utilization of energy from food to support immune and other metabolic activities."

- <u>B-Relaxed</u> "is specially formulated with [B] vitamins and theanine. The [B] vitamins are there to replace those lost during times of stress (physical or mental). Theanine is an amino acid found naturally in tea leaves and has been shown to promote feelings of relaxation. This combination can help bring about a healthy state of physical and mental being."

- <u>Power-C</u> "is specially formulated with nutrients that enable the body to exert physical power by contributing to structural integrity of the musculoskeletal system, and by supporting optimal generation and utilization of energy from food."

23.     The central message of these claims is that drinking VitaminWater is good for one's health. However, as set forth below, this message is deceptive and misleading.

**VitaminWater is Not a Healthier Alternative to Soft Drinks**

24.    VitaminWater, the supposed "Nutrient Enhanced Water Beverage," does not deliver its promised benefits of health.  In fact, VitaminWater may actually harm consumers' health.

25.    VitaminWater is loaded with sugar.  In fact, each 20-ounce bottle contains approximately 33 grams of sugar.  By comparison, a can of Coca-Cola Classic contains 39 grams of sugar.

26.    Diets high in added sugars – from such foods as sugar-sweetened beverages like VitaminWater – squeeze healthier foods out of the diet, thereby displacing foods that provide nutrients that reduce the risk of osteoporosis, cancer, heart disease, stroke, and other health problems.[1]

27.    Diets rich in added sugars contribute to obesity, the prevalence of which has risen dramatically in the last three decades in both youths and adults.[2]  Obesity, in turn, increases the risk of diabetes, heart disease, high blood pressure, and other health problems.[3]  In people who are insulin resistant, high intakes of added sugars increase levels of blood triglycerides, which

---

[1] *See* S. Bowman, *Diets of Individuals Based on Energy Intakes from Added Sugars,* 12 FAMILY ECON. NUTRITION REV. 31-8 (1999); G. Mrdjenovi & D.A. Levitsky, *Nutritional and Energetic Consequences of Sweetened Drink Consumption in 6- to 13-year-old Children,* 142 J. PEDIATRICS 604-10 (2003).

[2] *See* D.S. Ludwig, K.E. Peterson & S.L. Gortmaker, *Relationship between Consumption of Sugar-sweetened Drinks and Childhood Obesity,* 357 LANCET 505-8 (2001); C.S. Berkey, H.R. Rockett, A.E. Field, et al., *Sugar-added Beverages and Adolescent Weight Change,* 12 OBESITY RES. 778-88 (2004); C.M Apovian, *Sugar-sweetened Soft Drinks, Obesity, and Type 2 Diabetes,* 292 J. AM. MED. ASS'N 927-34 (2004); Ctr. for Disease Control and Prevention, Nat'l Ctr. for Health Statistics, *Prevalence of Overweight among Children and Adolescents: United States, 1999-2002, available at* www.cdc.gov/nchs/products/pubs/pubd/hestats/overwght99.htm; Ctr. for Disease Control and Prevention, Nat'l Ctr. for Health Statistics, *Prevalence of Overweight and Obesity among Adults: United States, 1999-2002, available at* www.cdc.gov/nchs/products/pubs/pubd/hestats/obese/obse99.htm.

[3] U.S. Surgeon General, U.S. Dep't of Health and Human Serv., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* (2001). *available at* www.surgeongeneral.gov/topics/obesity/calltoaction/CalltoAction.pdf.

are associated with a higher risk of heart disease and diabetes.[4]  In addition, frequent consumption of foods rich in added sugars increases the risk of osteoporosis.[5]

28.     A scientific review of 30 publications (15 cross-sectional, 10 prospective, and five experimental) found that consumption of sugar-sweetened beverages (which includes VitaminWater) may be a key contributor to the epidemic of overweight and obesity, by virtue of these beverages' high added sugar content, low satiety, and incomplete compensation for total energy.  The weight of epidemiologic and experimental evidence indicates that a greater consumption of sugar-sweetened beverages, which includes VitaminWater, is associated with weight gain and obesity.[6]

29.     As a result of their unlawful, unfair, and fraudulent advertising and marketing practices, Defendants have made millions at the expense of the public health and trust, and continue to make millions through these unfair, unlawful and fraudulent advertising and marketing practices.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class that Plaintiffs Antonov, Koh and Pelkey seek to represent are composed of and defined as follows:

**All California residents who purchased VitaminWater at any time from January 15, 2005 to present.  Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors**

---

[4] M.J. Stampfer, R.M Krauss, J. Ma, et al., *A Prospective Study of Triglyceride Level, Low-density Lipoprotein Particle Diameter, and Risk of Myocardial Infarction,* 276 J. AM. MED. ASS'N 882-8 (1996).

[5] S.J. Whiting, A. Healey & S. Psiuk, *Relationship between Carbonated and Other Low Nutrient Dense Beverages and Bone Mineral Content of Adolescents,* 32 NUTRITION RES. 1107-15 (2001).

[6] Vasanti S. Malik, Matthias B. Schulze & Frank B. Hu, *Intake of Sugar-sweetened Beverages and Weight Gain,* Vol. 84, No. 2 AM. J. OF CLINICAL NUTRITION, 274-288 (Aug. 2006).

**or assigns and any entity in which they have or have had a controlling**

**interest ("California Class").**

31.     The class that Plaintiff Ackerman seeks to represent are composed of and defined as follows:

**All New York residents who purchased VitaminWater at any time from**

**January 26, 2006 to present.  Excluded from the Class are officers and**

**directors of Defendants, members of the immediate families of the officers**

**and directors of Defendants, and their legal representatives, heirs, successors**

**or assigns and any entity in which they have or have had a controlling**

**interest ("New York Class").**

32.     For purposes of this Complaint, the phrase "Class Members" refers collectively to all members of both the California Class and New York Class, including the named Plaintiffs for each of those Classes.

33.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

34.     Numerosity: Plaintiff does not know the exact size of the New York and California Classes, but, based on Defendants' sales of VitaminWater, it is estimated that each Class is composed of more than 10,000 persons.  Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of members. The persons in each of the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

35.     Common Questions Predominate: This action involves common questions of law and fact to the potential Classes because each Class Member's claim derives from the same allegedly fraudulent, false, misleading, deceptive and/or unfair action.  The common questions of

law and fact involved predominate over questions that affect only Plaintiffs or individual Class Members.  Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover.  Among the questions of law and fact common to the Classes are:

- Whether Defendants marketed, advertised, labeled and/or sold VitaminWater to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive statements or representations;

- Whether Defendants omitted and/or misrepresented material facts in connection with the marketing, advertising, labeling and/or sale of VitaminWater;

- Whether Defendants participated in and pursued the common course of conduct complained of herein;

- Whether Defendants' marketing, advertising, labeling and/or selling of VitaminWater constitutes an unfair, unlawful or fraudulent practice;

- Whether Defendants breached express warranties in their sale of VitaminWater, thereby causing harm to Plaintiffs and other class members;

- Whether Defendants breached implied warranties in their sale of Vitamin Water, thereby causing harm to Plaintiffs and other Class members

- Whether Defendants' acts and practices in connection with the marketing, advertising, labeling and sale of VitaminWater unjustly enriched Defendants at the expense of, and to the detriment of, Plaintiffs and other Class members;

- Whether Defendants' conduct as set forth above injured consumers and, if so, the extent of the injury; and

- Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future.

36.     Typicality:  Plaintiffs' claims are typical of the Classes because they bought VitaminWater during the Class Period.  Defendants' allegedly unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were received.  Thus, Plaintiffs Antonov, Koh and Pelkey and members of the California Class sustained the same injuries and damages arising out of Defendants' conduct in violation of California law and Plaintiff Ackerman and members of the New York Class sustained the same injuries and damages arising out of Defendants' conduct in violation of New York law.  The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged herein.

37.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interest to prosecute the claims alleged herein to obtain full compensation due to them for the illegal conduct of which they complain.  Plaintiffs also have no interests that conflict with or are antagonistic to the interests of Class Members.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class.  No conflict of interest exists between Plaintiffs and Class Members because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on their own claim, Plaintiffs necessarily will establish Defendants' liability to all Class Members.  Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

38.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

39.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

40.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17200, *et seq*. – Unlawful Business Acts and Practices)

41.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

42.     Such acts of Defendants, as described above, and each of them, constitute unlawful business acts and practices.

43.     In this regard, Defendants' manufacturing, marketing, advertising, packaging, labeling, distributing and selling of VitaminWater violates California's Sherman Food, Drug and Cosmetics Law, Cal. Health & Saf. Code, § 109875, et seq. (the "Sherman Law").

44.     In relevant part, the Sherman Act declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food.  Cal. Health & Saf. Code, §§ 110660, 110765.

45.     The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing."  Cal. Health & Saf. Code, §§ 109995.  Each Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Act.

46.     The business practices alleged above are unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), which forbids deceptive advertising.

47.     The business practices alleged above are unlawful under § 17200, *et seq.* by virtue of violating §17500, *et seq.*, which forbids untrue advertising and misleading advertising.

48.     As a result of the business practices described above, Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

49.     The above-described unlawful business acts and practices of Defendants, and each of them, present a threat and reasonable likelihood of deception to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class in that Defendants have systematically perpetrated and continue to perpetrate such acts or practices upon members of the California Class by means of their misleading manufacturing, marketing, advertising, packaging, labeling, distributing and selling of VitaminWater.

50.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Business and Professions Code § 17200, *et seq*. –**
**Unfair Business Acts and Practices)**

51.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

52.     Such acts of Defendants, as described above, and each of them, constitute unfair business acts and practices.

53.     Plaintiffs Antonov, Koh and Pelkey, and the other members of the California Class who purchased Defendants' VitaminWater, suffered a substantial injury by virtue of buying VitaminWater they would not have purchased absent Defendants' unfair marketing, advertising, packaging and labeling or by paying an excessive premium price for the unfairly marketed, advertised, packaged and labeled VitaminWater.

54.     There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling water beverages.  Indeed, the harm to consumers and competition is substantial.

55.     Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class who purchased Defendants' VitaminWater had no way of reasonably knowing that VitaminWater they bought was not as marketed, advertised, packaged and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

56.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and is immoral, unethical, unscrupulous, offends established public policy or is substantially injurious to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class.

57.     As a result of the business acts and practices described above, Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of

Defendants, and such other orders and judgments which may be necessary to disgorge

Defendants' ill-gotten gains and to restore to any person in interest any money paid for

VitaminWater as a result of the wrongful conduct of Defendants.

58.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth

below.

**THIRD CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Business and Professions Code § 17200, *et seq*. –**
**Fraudulent Business Acts and Practices)**

59.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in

the paragraphs above and incorporate such allegations by reference herein.

60.     Such acts of Defendants as described above, and each of them, constitute

fraudulent business practices under California Business and Professions Code sections § 17200,

*et seq.*

61.     As more fully described above, Defendants' misleading marketing, advertising,

packaging and labeling of VitaminWater is likely to deceive reasonable California consumers.

Indeed, Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class were

unquestionably deceived regarding the characteristics of Defendants' VitaminWater, as

Defendants' marketing, advertising, packaging and labeling of VitaminWater misrepresent

and/or omit the true contents of VitaminWater. Said acts are fraudulent business acts and

practices.

62.     This fraud and deception caused Plaintiffs Antonov, Koh and Pelkey and the other

members of the California Class to purchase more of VitaminWater than they would have or pay

more than they would have for VitaminWater had they known the true ingredients.

63.     As a result of the business acts and practices described above, Plaintiffs Antonov,

Koh and Pelkey the other members of the California Class, pursuant to Business and Professions

Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants,

and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

gains and to restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

64.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Business and Professions Code § 17500, *et seq.* –**
**Misleading and Deceptive Advertising)**

65.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

66.     Plaintiffs Antonov, Koh and Pelkey assert this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

67.     At all material times, Defendants engaged in a scheme of offering their VitaminWater for sale to Plaintiffs Antonov, Koh and Pelkey and other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents of VitaminWater.  Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase VitaminWater and are statements disseminated by Defendants to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class and were intended to reach members of the California Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

68.     In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California via commercial marketing and advertising, the World Wide Web

(Internet), product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the ingredients contained in VitaminWater. Consumers, including Plaintiffs Antonov, Koh and Pelkey, necessarily and reasonably relied on these materials concerning VitaminWater. Consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, were among the intended targets of such representations.

69.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, were and are likely to deceive reasonable consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, by obfuscating the true ingredients of VitaminWater, all in violation of the "misleading prong" of California Business and Professions Code § 17500.

70.     As a result of the above violations of the "misleading prong" of Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class. Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

71.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17500, *et seq*. - Untrue Advertising)

72.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

73.     Plaintiffs Antonov, Koh and Pelkey assert this cause of action for violations of California Business and Professions Code § 17500, et seq., for untrue advertising against Defendants.

74.     At all material times, Defendants have engaged in a scheme of offering VitaminWater for sale to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents of VitaminWater. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase VitaminWater and are statements disseminated by Defendants to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class and were intended to reach members of the California Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

75.     In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials, statements that falsely advertise the ingredients contained in VitaminWater. Consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, are among the intended targets of such representations and would reasonably be deceived by such promotional materials.

76.     The above acts of Defendants in disseminating said untrue advertising throughout the State of California deceived Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class by obfuscating the nature and quality of VitaminWater, all in violation of the "untrue prong" of California Business and Professions Code § 17500.

77.     As a result of the above violations of the "untrue prong" of Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class. Plaintiffs

Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Business

and Professions Code § 17535, are entitled to an order of this Court enjoining such future

conduct on the part of Defendants, and such other orders and judgments which may be necessary

to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for

VitaminWater as a result of the wrongful conduct of Defendants.

78.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth

below.

**SIXTH CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Consumers Legal Remedies Act - Cal. Civ. Code § 1750, *et seq.*)**

79.     Plaintiffs Antonov, Koh and Pelkey reallege and incorporate by reference the

paragraphs stated above in this Class Action Complaint as set forth herein.

80.     This cause of action is brought pursuant to the California Consumers Legal

Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

81.     Defendants' actions, representations and conduct have violated, and continue to

violate the CLRA, because they extend to transactions that are intended to result, or which have

resulted, in the sale of lease of goods or services to consumers.

82.     Plaintiffs Antonov, Koh and Pelkey and the other California Class Members are

"consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

83.     The VitaminWater that Plaintiffs Antonov, Koh and Pelkey and other members of

the California Class purchased from Defendants were "goods" within the meaning of Cal. Civ.

Code § 1761(a).

84.     By engaging in the actions, misrepresentations and misconduct set forth in this

Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(7) of the

CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices

constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

85.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(16), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

86.     Plaintiffs Antonov, Koh and Pelkey request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs Antonov, Koh and Pelkey and other members of the Class will continue to suffer harm.

87.     Pursuant to Cal.Civ.Code § 1782, on  January 28, 2009, a CLRA demand letter was sent to Defendants that provided notice of Defendants' violation of the CLRA and demanded that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, the complaint would be amended to seek damages in accordance with the CLRA.  Defendants have failed to comply with the letter.

88.     Pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the Class, seeks compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

89.     Plaintiffs also request on their and the rest of the Class's behalf that this Court award them and reasonable attorneys' fees pursuant to Cal. Civ. Cod § 1780(d).

90.     THEREFORE, Plaintiffs pray for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**(ON BEHALF OF THE NEW YORK CLASS)**
**(Violation of New York General Business Law § 349)**

91.     Plaintiff Ackerman realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

92.     Defendants engaged in false and misleading marketing concerning the nutritional and health qualities of VitaminWater.

93.     As fully alleged above, by advertising, marketing, distribution and/or selling the VitaminWater to Plaintiff Ackerman and other members of the New York Class, Defendants engaged in, and continue to engage in, deceptive acts and practices.

94.     Plaintiff Ackerman and other members of the New York Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise the healthy nature of VitaminWater.  Towards that end, Plaintiff Ackerman and the New York Class request an order granting them injunctive relief as follows:  order disclosures and/or disclaimers on the labeling or advertising of VitaminWater.

95.     Absent injunctive relief, Defendants will continue to manufacture and sell VitaminWater with the stated use as a health drink, or water with added nutrients, to the detriment of consumers.

96.     In this regard, Defendants have violated, and continue to violate, § 349 of the GBL, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendants' violation of  § 349 as described above, Plaintiff Ackerman and other members of the New York Class have suffered damages, in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(ON BEHALF OF BOTH THE CALIFORNIA AND NEW YORK CLASSES)**
(Breach of Express Warranty)

97.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

98.     Defendants provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that their VitaminWater beverages were healthy and had particular healthy characteristics as set forth above.

99.     Defendants breached these warranties which resulted in damages to Plaintiffs and other members of the Class, who overpaid for VitaminWater beverages, which were not healthy in that they contained a high amount of sugar and did not otherwise conform to Defendants' warranties.

100.     As a proximate result of the breach of warranties by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

### NINTH CAUSE OF ACTION
### (ON BEHALF OF BOTH THE CALIFORNIA AND NEW YORK CLASSES)
(Breach of Implied Warranty of Merchantability)

101.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

102.     Plaintiffs and other Class members purchased Defendants' VitaminWater beverages, which were promoted, marketed, advertised, packaged and labeled as healthy and as having particular healthy characteristics as set forth above.  Pursuant to these sales, Defendants impliedly warranted that their VitaminWater beverages would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the products' promotions, marketing, advertising, packaging and labels.  In doing so, Plaintiffs and other Class members relied on Defendants' representations that the VitaminWater beverages were healthy and had particular healthy characteristics as set forth

above and at or about that time, Defendants sold VitaminWater beverages to Plaintiffs and other Class members.  By their representations regarding the reputable nature of their companies and related entities, and by their promotion, marketing, advertising, packaging and labeling of their VitaminWater beverages, Defendants warranted that their VitaminWater beverages were healthy and had particular healthy characteristics as set forth above.  Plaintiffs and Class members bought VitaminWater, relying on Defendants' representations that their VitaminWater beverages were healthy and had particular healthy characteristics when, in fact, they were not healthy in that they contained a high amount of sugar and did not otherwise conform to Defendants' warranties.

103.   Defendants breached the warranty implied at the time of sale in that Plaintiffs and Class members did not receive goods that were healthy or that had the healthy characteristics represented and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold.

104.   As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

### TENTH CAUSE OF ACTION
### (ON BEHALF OF BOTH THE CALIFORNIA AND NEW YORK CLASSES)
(For Breach of Implied Warranty of Fitness for Particular Purpose)

105.   Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

106.   Plaintiffs and other Class members purchased Defendants' VitaminWater beverages, which were promoted, marketed, advertised, packaged and labeled as healthy and as having particular healthy characteristics as set forth above.  Pursuant to these sales and by their

promotion, marketing, advertising, packaging and labeling, Defendants impliedly warranted that their VitaminWater beverages were healthy and had particular healthy characteristics as set forth above.  Plaintiffs and Class members bought VitaminWater beverages from Defendants, relying on their skill and judgment in furnishing suitable goods as well as their representations that their VitaminWater beverages were healthy and had particular healthy characteristics as set forth above.  However, Defendants' VitaminWater beverages were not healthy in that they contained a high amount of sugar and did not otherwise conform to Defendants' warranties.

107.    Defendants breached the warranty implied at the time of sale in that Plaintiffs and Class members did not receive VitaminWater beverages that were healthy or that had the particular healthy characteristics represented, and thus the goods were not fit for the purpose as promoted, marketed, advertised, packaged, labeled or sold.

108.    As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products they would not have purchased and used had they known the true facts about them.

**ELEVENTH CAUSE OF ACTION**
**(ON BEHALF OF BOTH THE CALIFORNIA AND NEW YORK CLASSES)**
**(Deceit and/or Misrepresentation)**

109.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Class Action Complaint as if set forth herein.

110.    Defendants, through their labeling, advertising and marketing of VitaminWater, make uniform representations and offers regarding the quality of VitaminWater as described above.  Defendants engaged in, and continue to engage in, such fraudulent, misrepresentative,

false and/or deceptive acts with full knowledge that such acts were, and are, in fact, misrepresentative, false or deceptive.

111.    The aforementioned misrepresentations, deceptive, and/or false acts and omissions concern material facts that are essential to the analysis undertaken by Plaintiffs, and those similarly situated, in deciding whether to purchase Defendants' beverage VitaminWater.

112.    Plaintiffs, and those similarly situated, would have acted differently had they not been misled – i.e. they would not have paid money for the Product in the first place.

113.    Defendants have a duty to correct the misinformation they disseminate through their advertising of VitaminWater.  By not informing Plaintiffs, and those similarly situated, Defendants breached this duty.  Defendants also gained financially from, and as a result of this breach.

114.    By and through such deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs, and those similarly situated, to alter their position to their detriment.

115.    Plaintiffs and those similarly situated, justifiably and reasonably relied on Defendants' misrepresentations, and, as such, were damaged by Defendants.

116.    As a direct and proximate result of Defendants' deceit and/or misrepresentations, Plaintiffs, and those similarly situated, have suffered damages in an amount equal to the amount they paid for Defendants' VitaminWater.  The exact amount of this difference will be proven at trial.

117.    Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of, Plaintiffs, and those similarly situated.

118.    Plaintiffs, and those similarly situated, are entitled to punitive damages.

119.    THEREFORE, Plaintiffs pray for relief as set forth below.

## TWELFTH CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA AND NEW YORK CLASSES)
### (Unjust Enrichment)

120.     Plaintiffs reallege and incorporate by reference the above paragraphs of this Class Action Complaint as if set forth herein.

121.     As a result of Defendants' deceptive, fraudulent and misleading labeling, advertising, marketing and sales of VitaminWater, Defendants were enriched, at the expense of Plaintiffs, and all others similarly situated, through the payment of the purchase price for Defendants' beverage VitaminWater.

122.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact that the VitaminWater purchased by Plaintiffs, and all others similarly situated, was not what Defendants purported it to be.  Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for the monies paid to Defendants for such VitaminWater.

123.     THEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for relief as follows:

1.     An order certifying the California Class, appointing Plaintiffs Antonov, Koh and Pelkey representatives of the California Class, and designating their counsel as counsel for the California Class;

2.     An order certifying the New York Class, appointing Plaintiff Ackerman representative of the New York Class, and designating her counsel as counsel for the New York Class;

3.     A declaration that Defendants have committed the violations of law alleged herein;

4.     An order granting restitution and disgorgement pursuant to, without limitation, the

California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq*. on behalf of the California Class;

5.   An order granting injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq*.on behalf of the California Class;

6.   An order granting declaratory and injunctive relief pursuant to California Civil Code § 1780 on behalf of the California Class;

7.   Judgment for monetary relief pursuant to California Civil Code § 1780 on behalf of the California Class;

8.   An order granting declaratory and injunctive relief pursuant to GBL § 349 on behalf of the New York Class;

9.   Judgment for monetary relief pursuant to GBL § 349 on behalf of the New York Class;

10.   Judgment for compensatory damages, the amount of which is to be determined at trial;

11.   Judgment for punitive damages;

12.   Judgment for interest at the legal rate on the foregoing sums;

13.   Judgment for costs of suit incurred; and

14.   Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  May 26, 2009                    **REESE RICHMAN LLP**


  */s/ Kim E. Richman*_____
Kim E. Richman
Michael R. Reese
Belinda L. Williams

875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

- and -

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark-Weintraub
Patrick J. Sheehan
1540 Broadway – 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

**STEIN FARKAS & SCHWARTZ LLP**
Joshua Farkas
1639 East 13th Street
Brooklyn, New York 11229
Telephone: (718) 645-5600
Facsimile: (619) 573-1701

**DOYLE LOWTHER LLP**
William J. Doyle
9466 Black Mountain Road, Suite 210
San Diego, California 92126
Telephone: (619) 573-1700
Facsimile: (619) 573-1701

**LAW OFFICES OF NICHOLAS KOLUNCICH III, LLC**
Nicholas Koluncich
6501 Americas Parkway, NE
1 Park Square, Suite 620
Albuquerque, New Mexico 87110
Telephone: (505) 881-2228
Facsimile: (505) 881-4288

*Attorneys for Plaintiffs*