James R. Eiszner, # JE-7468
jeiszner@shb.com
John F. Murphy (admitted *pro hac vice*)
jmurphy@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108-2613
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547

John Lewis Jr.
johnlewis@na.ko.com (admitted *pro hac vice*)
Shani C. Thome, # SD-3608
sthome@na.ko.com
THE COCA-COLA COMPANY
One Coca-Cola Plaza
Atlanta, Georgia  30313
Telephone:    (404) 676-2121
Facsimile:    (404) 676-7636

Attorneys for Defendants
THE COCA-COLA COMPANY
and ENERGY BRANDS INC. (d/b/a GLACEAU)

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **BATSHEVA ACKERMAN, RUSLAN ANTONOV, JAMES KOH and JERRAD PELKEY,** | : |
| **individually and on behalf of those similarly situated,** | : |
| | : |
| **Plaintiff,** | :  **Case No. 09-0395-CPS-RML** |
| **vs.** | : |
| | : |
| **THE COCA-COLA COMPANY and ENERGY BRANDS INC.** | : |
| | : |
| **Defendants.** | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO
## RULE 12(B)(6) AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ......................................................................................... 2

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.    Plaintiffs' Action is Barred by Federal Preemption...................................................... 6

        A.    The Food, Drug and Cosmetic Act expressly preempts Plaintiffs' case........... 7

        B.    Plaintiffs' case is subject to implied conflict preemption............................... 12

    II.    Plaintiffs Do Not Adequately Plead Any of Their Causes of Action. ........................ 15

        A.    Plaintiffs have not adequately alleged their fraud-based claims, namely causes of action I-VII and XI........................................................................... 16

            1.    Plaintiffs do not adequately plead the alleged misrepresentations................................................................................. 17

            2.    Plaintiffs do not adequately allege reliance or causation of injury.................................................................................................. 20

        B.    Plaintiffs do not adequately plead their warranty claims (VIII-X). ............... 23

            1.    The statements in Plaintiffs' complaint are not express warranties upon which Plaintiffs reasonably relied. .......................... 23

            2.    Plaintiffs' implied warranty claims also fail...................................... 25

        C.    Plaintiffs' unjust enrichment cause of action (XII) also fails. ........................ 27

CONCLUSION................................................................................................................... 27

## <u>INTRODUCTION</u>

Plaintiff Batsheva Ackerman, a New Yorker, was recently joined in this case by three other named plaintiffs, all Californians who previously filed lawsuits in their home jurisdiction. James Koh dismissed his case after a motion to dismiss had already been filed; Ruslan Antonov dismissed his case one day before a motion was to be filed; and Jerrad Pelkey dismissed his case shortly thereafter.  If and when Plaintiffs stay in one place long enough to actually respond to a motion to dismiss, the motion should be granted.  Plaintiffs allege that Defendants deceptively market their product, "vitaminwater," as a "healthy" alternative to soft drinks.  They say this is deceptive because vitaminwater contains sugar, too much sugar in one's diet can lead to obesity, and obesity can be unhealthy.  But none of them allege they were deceived by anything in particular, nor do they allege health problems, obesity-related or otherwise.  This case, which is not aimed at addressing any actual injury or threat of injury but rather at a policy goal of reducing the number of obese Americans, should be dismissed.

<u>First</u>, Plaintiffs' case is barred by express preemption under the Federal Food, Drug and Cosmetic Act and by implied conflict preemption.  The FDA has specifically considered the issue of what claims can and cannot be made with regard to products that contain sugar, and has rejected arguments similar to Plaintiffs'.  This lawsuit is simply an attempt to establish by means of state tort law something that the FDA has already rejected.

<u>Second</u>, Plaintiffs' complaint fails to state a claim.  All twelve causes of action are based on the same allegedly deceptive practice: selling a "health drink" that contains sugar.  But the sugar content appears on the label.  Plaintiffs' allegations about deception caused by something else are unacceptably vague.  They point to no representations or promises on which they actually relied, let alone explain how they might have been deceived or injured.  Especially under recent Supreme Court authority, far more is required.  The case should be dismissed.

## PLAINTIFFS' ALLEGATIONS

The Coca-Cola Company acquired Energy Brands in 2007. Compl. ¶ 13. Energy Brands, also known as Glaceau, produces enhanced water beverages including vitaminwater. *Id*. According to Plaintiffs, vitaminwater marketing, advertising and labels (including the flavor names and the name "vitaminwater" itself) make "claims touting the purported health benefits" of drinking vitaminwater. *Id*. ¶¶ 18-22.

Plaintiffs' complaint quotes alleged claims made on labels for seven of the vitaminwater flavors. But of these identified flavors, "rescue" was the only one that any of the plaintiffs (James Koh) actually bought. *Id*. ¶ 10. Koh alleges he bought the "rescue (green tea)" and "revive (fruit punch)" flavors "approximately five times a month" between October 2007 and July 2008. *Id*. Ackerman alleges that she purchased the "revive (fruit punch)" and "multi-v (lemonade)" flavors "approximately one to two times per week" between October 2007 and October 2008. *Id*. ¶ 8. Antonov alleges (without specifying any flavors) that he bought approximately four to eight bottles a month "during the Class Period." *Id*. ¶ 9. Pelkey alleges that he regularly purchased "multi-v (lemonade)," "formula 50 (grape)," and other unspecified flavors between 2006 and 2008. *Id*. ¶ 11.

None of the Plaintiffs, however, specifically allege reliance on quoted statements relating to the flavors they purchased, the flavor names, or anything else in particular. The Plaintiffs' collective reliance allegations, in full, are as follows:

> [Plaintiffs] relied upon the written misrepresentations contained on vitaminwater bottles that vitaminwater is a healthy beverage and therefore believed [they were] ingesting a healthy beverage. [Plaintiffs] relied upon the written misrepresentations that vitaminwater was a healthy beverage in reaching [their] decision to purchase vitaminwater. Had [Plaintiffs] known the truth that the statements [they] relied upon were false, [they] would not have purchased vitaminwater.

*Id*. ¶¶ 8-11. Plaintiffs do not actually allege that any vitaminwater label contains the phrase,

2

"vitaminwater is a healthy beverage." They identify just two labels that even use the word "healthy," *see id.* ¶¶ 21-22 (quoting "defense" and "balance" labels as containing the word "healthy"), but none of the plaintiffs bought either flavor. Plaintiffs allege that "[t]he central message of these claims is that drinking vitaminwater is good for one's health," and explain, vaguely, why they believe that "central message" is "deceptive and misleading." *Id.* ¶ 23.

According to Plaintiffs, the "central message" of health is false and misleading because – and only because – vitaminwater is "loaded with sugar." *Id.* ¶ 25. They allege that each 20-ounce bottle of vitaminwater contains about 33 grams of sugar, compared to 39 grams in a can of Coca-Cola Classic. *Id.* ¶¶ 20, 25. According to Plaintiffs' own figures (and because one can of Coca-Cola Classic holds 12 ounces compared to one vitaminwater bottle, which holds 20 ounces, facts that Plaintiffs omit), vitaminwater actually has only about half as much sugar per ounce as Coca-Cola Classic (1.65 and 3.25 grams per ounce respectively). *Id.*

Plaintiffs concede that the true sugar content of the product is listed on the vitaminwater label. *See id.* ¶ 5 (alleging that misrepresentations "draw consumer attention away" from "the truth" about sugar content, a truth they thus admit can be found on the label). But Plaintiffs lament the fact that diets high in added sugars, from foods "such as" or "like" vitaminwater, allegedly "squeeze healthier foods out of the diet" and "contribute to obesity," and that the latter "in turn increases the risk of diabetes, heart disease, high blood pressure," and osteoporosis. *Id.* ¶¶ 26-28. In other words, Plaintiffs do *not* claim that vitaminwater itself, or any substance in it, has some unknown property that causes or contributes to these illnesses, or that might cause or contribute to any such illnesses in the short term. Rather, their case is based on the allegation that any claims made about vitaminwater are not or may not be fulfilled because high levels of sugar consumption in an overall diet are allegedly associated with health problems. *Id.* ¶¶ 24-28.

Plaintiffs' complaint includes six California causes of action on behalf of a California putative class only: three brought under California's Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code § 17200), two under the virtually identical False Advertising Law (FAL)[1] (Cal. Bus. & Prof. Code § 17500), and one under the Consumers Legal Remedies Act (CLRA) (Cal. Civ. Code § 1750). *Id.* ¶¶ 41-90. The complaint includes one New York state-law cause of action on behalf of a New York putative class only, brought under New York's General Business Law (N.Y. Gen. Bus. Law § 349). *Id.* ¶ 91-96. Additionally, the complaint includes common law causes of action on behalf of both putative classes: breach of express warranty, breach of implied warranties of merchantability and fitness for a particular use, deceit and/or misrepresentation, and unjust enrichment. *Id.* ¶¶ 97-123.

All of these causes of action, however, are based on the central allegation that any health-related claims about vitaminwater must be false and deceptive because the beverage contains sugar. *See id.* ¶¶ 41-49 (alleging practice is "unlawful" because it violates laws forbidding deception, including California's Sherman Food, Drug and Cosmetics Law (Cal. Health & Safety Code § 109875, *et seq.* (Sherman Law)), FAL and CLRA); ¶¶ 51-58 (alleging practice is "unfair" because it is deceptive); ¶¶ 59-64 (alleging fraudulent business practice); ¶¶ 65-71 (same under FAL); ¶¶ 72-78 (same); ¶¶ 79-90 (alleging practice violates CLRA because it is deceptive); ¶¶ 91-96 (alleging practice violates New York GBL § 349 because it is deceptive); ¶¶ 97-108 (alleging practice violates breach of express and implied warranties because it is deceptive); ¶¶ 109-119 (alleging common law deceit and/or misrepresentation); ¶¶ 95 (asserting derivative claim alleging unjust enrichment as a result of deceptive labeling).

---

[1] California's UCL and FAL are virtually identical except that the FAL requires an additional element, scienter. The grounds raised here apply to claims under either statute, so the two laws are generally referred to here collectively as "UCL."

## LEGAL STANDARD

The Supreme Court has recently made clear that conclusory allegations do not satisfy federal pleading requirements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A pleading that offers "labels and conclusions," "a formulaic recitation of the elements," or "assertions devoid of further factual enhancement" cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

In *Iqbal*, the Court described *Twombly* as having been based on two working principles. First, a court is not bound to accept as true any legal conclusion even if couched as a factual allegation. *Iqbal*, 129 S. Ct. at 1949. (Or, put another way, a court need not accept as true a purported factual allegation that simply masks a conclusory legal statement.) A court considering a motion to dismiss can therefore begin by identifying allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950.

Second, any remaining factual allegations that are well-pleaded must together be sufficient, taken as true, to "state a claim for relief that is plausible on its face." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim has "facial plausibility" if the plaintiff has provided sufficient factual content that a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Plausibility" requires more than "a sheer possibility that a defendant has acted unlawfully" or facts merely "consistent with" that conclusion. *Id*.; *see also C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 359-60 (E.D.N.Y. 2008) (requiring "facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion").

Thus, *Iqbal* and *Twombly* demonstrate that the normal Rule 8 pleading standard requires a plaintiff in federal court to present well-pleaded facts actually "showing that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 does not

require hyper-technical pleading, "but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. at 1950.

Even more is required of a plaintiff who alleges fraud, because Rule 9(b) requires that the "circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The Rule 9(b) requirement that the circumstanc*es* of the fraud must be stated with particularity is a federally imposed rule, and applies to any state-law claim that sounds in fraud. *See, e.g.*, *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, No. CV-07-0880, 2007 WL 2743500, at *6 n.10 (E.D.N.Y. Sept. 18, 2007).  Rule 9(b) applies to most of Plaintiffs' causes of action here, as discussed in Part II below, but Plaintiffs' conclusory allegations fail to meet even the basic Rule 8 standard, as was the case in *Iqbal*.  There, the plaintiff argued that his conclusory allegation as to discriminatory intent was sufficient because Rule 9(b) permits intent to be alleged "generally." *Iqbal*, 129 S. Ct. at 1954.  The Court emphasized that conclusory allegations fail under Rule 8 to begin with, so a finding that Rule 9 did not apply would not save the plaintiff's claim:

> Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8 . . . And Rule 8 does not empower [plaintiff] to plead the bare elements of his cause of action, affix the label "general allegation," and expect his claim to survive a motion to dismiss.

*Id.* (citations omitted).  Here, similarly, even if Rule 9(b) does not apply to one or more of Plaintiffs' causes of action, that would not prevent dismissal if they are not pleaded in accordance with Rule 8.  As demonstrated below, they do not meet either standard.

## ARGUMENT

### I.   Plaintiffs' Action is Barred by Federal Preemption.

The Supremacy Clause establishes federal law as the "supreme Law of the Land," and any state law in conflict with federal law is "without effect."  U.S. Const. art. VI, cl. 2; *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  There are three types of federal preemption:

1) express preemption, 2) implied field preemption, and 3) implied conflict preemption. *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). Here, Plaintiffs' case is barred by express provisions of the Federal Food, Drug and Cosmetic Act ("FDCA") (as amended by the Nutrition Labeling and Education Act) and is also subject to implied conflict preemption.

### A.    The Food, Drug and Cosmetic Act expressly preempts Plaintiffs' case.

The FDCA imposes an extensive regulatory scheme of requirements on sellers of food and drink, and products not in compliance with these requirements may be considered "misbranded." 21 U.S.C. § 343. Most relevant here are sections (q) and (r) of the statute. Both these provisions were added by the Nutrition Labeling and Education Act of 1990 ("NLEA"), which Congress enacted in order to clarify and strengthen the FDA's authority to require uniform nutrition labeling and to establish the circumstances under which claims could be made by manufacturers about nutrients in foods. *See* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.S.C.A.N. 3336, 3337. Section (q), among other things, established the familiar, standardized Nutrition Facts information that now appears on labels for many products (including vitaminwater). *See* 21 U.S.C. § 343(q)(1)(A)-(D). Section (r) established requirements for claims that may be made about nutrition levels or the relationship between nutrients and a disease or health-related condition. *See id.* § 343(r)(1) & (2).

Congress sought to further its goal of uniformity by also enacting a broad express-preemption provision (now 21 U.S.C. § 343-1) as part of the NLEA. *See Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting breadth of NLEA preemption clause), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007). Under that provision, "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce," any requirement "that is not identical to" the federal requirements in five specified areas. 21 U.S.C. § 343-1(a)(1)-(5).

The fifth of these areas is at issue here.  This part of the statute preempts any state requirement "respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) . . . ."  *Id.* § 343-1(a)(5).[2]  That is, a state may not impose any requirement on claims about nutrient levels or the relationship between nutrients and a disease or health-related condition, unless the state requirement is identical to the federal requirement.  This allows the federal requirements to be enforced through state-law causes of action or FDA action (there is no private right of action under the FDCA), but only so long as the *identical* requirements are sought to be imposed; state-law causes of action that seek to impose additional or different requirements are preempted.  *See In re PepsiCo, Inc., Bottled Water Mktg and Sales Practices Litig.*, 588 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2008) (holding that "identical" is interpreted to give a wide scope to preemption (citing 21 C.F.R. § 100.1(c)(4)(i)-(ii))).  Here, Plaintiffs' claims are expressly preempted by the FDCA and its implementing regulations.[3]

FDA regulations clarify and distinguish between three different kinds of claims that come within those described in Section 343(r)(1): express nutrient-content claims, implied nutrient-content claims, and "health claims."  *See* 21 C.F.R. §§ 101.13 (defining "nutrient-content claims"), 101.14 (defining "health claims").  Express preemption applies to all of them, but the classification scheme should be explained.  It is important to understand that, under the FDA scheme, claims suggesting that a food's nutrient content may help maintain "healthy" dietary

---

[2] The exemption referred to in the final clause of this subsection permits certain non-identical state requirements for restaurants, and so is not at issue here.  *See* 21 U.S.C. § 343(r)(5)(B).

[3] "[A]gency regulations with the force of law can pre-empt conflicting state requirements."  *Wyeth v. Levine*, 129 S. Ct. 1187, 1200 (2009). FDA regulations are promulgated pursuant to federal statutory authority, and so may preempt state law.  *See* 15 U.S.C. § 1454; H.R. Rep. No. 101-538, at 7 (1990); *Wachovia Bank, N.A.*, 414 F.3d at 314 (regulations pursuant to federal statutory authority "have no less pre-emptive effect than federal statutes").

practices, or that it is "healthful," "healthier," or the like, are considered implied nutrient-content claims, *not* "health claims."[4]  *Id.* §§ 101.13(b)(2)(ii), 101.65(d).  Therefore, if Defendants did represent vitaminwater as a "healthy beverage" as Plaintiffs allege, those representations would constitute implied nutrient-content claims under the FDA regulations.  All nutrient-content claims and "health claims" are governed by Section 343(r), however, and so come under the preemption umbrella regardless of the technical classification.  *Id.* § 343-1(a)(5).  Therefore, Plaintiffs' attempt to establish their allegations by means of state law is preempted unless the requirements they seek to impose are identical to those under federal law.

The requirements are not identical.  Plaintiffs contend that Defendants' representations are deceptive and misleading because vitaminwater contains sugar, and they demand (among other things) that additional disclosures and/or disclaimers about sugar be required on the product and related marketing materials.  Compl. ¶ 6.  But the FDA has already considered similar arguments and has rejected them.

In 1993, the FDA determined that only four kinds of nutrients – not including sugar – would be considered "disqualifying nutrients" that, if included in a product in certain quantities, would preclude health claims about that product.  *See* 21 C.F.R. §§ 101.14 (a)(4) (defining "disqualifying nutrient levels" as "the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim").  After an extensive notice-and-comment procedure, the FDA expressly declined to make sugar a disqualifying nutrient for health-claim purposes.  *See* 58 Fed. Reg. 2478, 2491 (Jan. 6, 1993) (setting forth

---

[4]  A nutrient-content claim that a product is "healthy" "suggests that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim of statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')."  21 C.F.R. § 101.13(b)(2)(ii).  A "health claim" specifically "characterizes the relationship of any substance to a disease or health-related condition."  *Id.* § 101.14(a).

final rule).  The FDA determined that it "would not be appropriate to limit health claims on foods on the basis of added sugars," because there was "no sound basis" for doing so:

> FDA does not believe that a disqualifying level for sugars can presently be established . . . Moreover, the public health community has not identified a dietary level above which consumption of sugars has been demonstrated to increase the risk of a disease. Thus, the agency finds that there is no sound basis on which to establish the requested [Daily Recommended Value] for sugars. Accordingly, the agency is declining to set a disqualifying level for added sugars at this time.

*Id*.  The next year, the FDA reached essentially the same conclusion about nutrient-content claims (those using terms like "healthy"), again after a notice-and-comment procedure in which the issues of sugar and calories were expressly raised:

> The agency has not been persuaded by the comments that it is necessary to include a "low calorie" or "low sugar" criterion in the definition of "healthy" for the claim to be useful and not misleading to consumers.  The information provided in the comments did not show that consumers expect "healthy" to be a claim about the caloric content of the food.  Furthermore, the purpose of defining the term would be defeated if the term were defined so narrowly that it is appropriate only for people on weight-loss diets.  Thus, the agency is not requiring that a food be "low calorie" or "low" in sugar to bear the term "healthy."

59 Fed. Reg. 24232, 24244 (May 10, 1994); *see also* 21 C.F.R. §§ 101.13(h) (setting disclosure levels for nutrient-content claims; same nutrients as above); 101.65(d)(2)(i) & (ii) (setting levels that preclude implied nutrient-content claims involving the term "healthy").

The FDA has maintained this position despite subsequent attempts to have sugar added as a disqualifying nutrient, including at least one attempt by the Center for Science in the Public Interest ("CSPI"), Plaintiffs' co-counsel in this case.[5]  As a matter of federal law, the presence of sugar in a food is not a disqualifying nutrient and does not prohibit nutrient-content claims with

---

[5] *See CSPI's Petition for Proposed Rulemaking* (Aug. 3, 1999) available at CSPI's website, *http://www.cspinet.org/reports/sugar/sugarpet1.pdf* (seeking to establish a daily reference value and require labeling for "added sugars," and to make corresponding changes to nutrient-content and health-claim regulation).

regard to other substances in the food (like vitamins) or as to the food generally.  Defendants'
actions are consistent with FDA requirements for nutrient-content claims relating to foods
containing sugar.

Plaintiffs may not use state tort law to impose a contrary result, as that would impose a
requirement not identical to that imposed by federal law, triggering express FDCA preemption.
*See PepsiCo,* 588 F. Supp. 2d at 532-39 (finding express preemption of state-law consumer-
protection action involving source of bottled water); *New York State Rest. Ass'n v. New York
City Bd. of Health*, 509 F. Supp. 2d 351, 362-63 (S.D.N.Y. 2007) (finding express preemption of
city regulation involving calorie-content statements on menus as nutrient content claims); *Mills*,
441 F. Supp. 2d at 106-09 (finding express preemption of state-law tort claims alleging failure to
warn milk-drinkers about risk of lactose intolerance).

The *New York State Restaurant Association* case is helpful in understanding how express
preemption is applied under Section 343-1.  In 2007, the district court examined whether New
York City's requirements for disclosure of calorie information by certain restaurants was
preempted under Section 343-1(a)(5).  The court determined that, because the regulation only
applied to restaurants that voluntarily provided this information, the regulation involved nutrient-
content claims, and thus any requirements related to those nutrient-content claims are expressly
preempted under Section 343-1(a)(5).  *New York State Rest. Ass'n*, 509 F. Supp. 2d at 361-63.
This remains the law today despite subsequent developments in that case. *New York State Rest.
Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009).

Therefore, because Plaintiffs' lawsuit, if successful, would effectively impose additional
state requirements in this area that are not identical to those required by federal law, their claims
– all of which are based on vitaminwater's sugar content -- are expressly preempted.

11

**B.**      **Plaintiffs' case is subject to implied conflict preemption.**

Plaintiffs' case also poses an obstacle to the purposes and objectives of the FDA's regulatory scheme with regard to claims about food containing sugar, and therefore implied conflict preemption applies in this case.  In *Geier v. American Honda Motor Co.*, the leading Supreme Court case on implied conflict preemption, the Court held that federal agency policy regarding vehicle-restraint systems preempted a state-law action that posed an obstacle to that policy.  529 U.S. 861, 886 (2000).  The same principle applies here.[6]

In *Geier*, the plaintiff alleged that the manufacturer had been negligent in failing to equip his car with a driver's-side airbag even though federal regulations did not require the manufacturer to do so.   *Id*. at 865.   The Department of Transportation had required manufacturers to use passive-restraint devices, but did not specifically require airbags, choosing instead to allow manufacturers to phase in a variety of such devices.  *Id.*  The issue before the Supreme Court was whether petitioner's state-law action – which, if successful, would have required manufacturers to use driver's-side airbags in order to avoid liability – was preempted by the DOT's regulation.   *Id.*  The Court held that the plaintiff's case was preempted because it posed an obstacle to the accomplishment of the agency's objectives.  *Id*. at 881.

In reaching its decision, the Court conducted a detailed analysis of the federal standard at issue and reviewed the DOT's comments accompanying the regulation.   *Id.*  The comments showed that (as with the FDA's decision rejecting sugar as a disqualifying nutrient) the DOT had received and expressly rejected proposals similar to the plaintiff's basic position.  *Id*. at 875, 878

---

[6] Also relevant here is *Geier*'s holding that the existence of an express preemption provision or a saving clause in a statute "does not bar the ordinary working of conflict pre-emption principles."  *Geier*, 529 U.S. at 869.  Obviously, Defendants contend that express preemption applies, but also contend that implied conflict preemption would apply here, though the Court need not reach the issue if it finds express preemption.

(internal citations omitted).  Upon reviewing the plaintiff's claims, the Court reasoned that a state-law claim that required manufacturers to install airbags, even though the federal regulation did not, would interfere with the DOT's policy choice to permit a variety and mix of passive restraint devices to be phased in.  *Id*. at 881.  Thus, the rule of law promoted by the petitioner's state-law claims would have frustrated the objective of the federal regulations and been "an obstacle to the accomplishment and execution of" the federal objectives.  *Id*.

The rule articulated in *Geier* remains the law.  The Supreme Court recently recognized that federal agencies "have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth v. Levine*, 129 S. Ct. 1187, 1201 (2009) (citing *Geier*, 529 U.S. at 883 (internal citations omitted)).  The *Wyeth* Court chose not to defer to the FDA on the facts of that case largely because the agency position was not based on "a specific agency regulation bearing the force of law," but rather on a statement made in a preamble to a regulation, and without giving notice or opportunity for comment.  *See id*. at 1201-03 (distinguishing *Geier* on that basis); *see also Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 249-51 (3d Cir. 2008) (refusing to find conflict preemption based on FDA position expressed only in an informal letter).  Nor was there evidence in *Wyeth* (as there is here) that the FDA had considered and rejected the very course of action being asserted by the plaintiff.  *Wyeth*, 129 S. Ct. at 1211, n.14.  In short, *Geier* controls because here the FDA did engage in the kind of careful balancing and analysis that is entitled to deference, and because Plaintiffs' claims stand as an obstacle to FDA's regulatory plan.

Plaintiffs' state-law claims, if successful, would usurp the FDA's authority by effectively making sugar a "disqualifier" for health and/or nutrient-content claims as discussed above.  If

13

Plaintiffs prevailed, the FDA's rejection of requests to establish sugar as a disqualifying nutrient would be overridden, and no manufacturer would be able to make such claims as to any product with added sugar.  That would frustrate Congress's objective of ensuring appropriate and uniform labeling by strengthening the FDA's authority over labeling and the circumstances under which health-related claims can be made.  As a result, Plaintiffs' action is preempted.

Courts faced with implied preemption arguments in this area frequently do not reach the issue because they find express preemption applies, as in the cases cited above.  But as noted, even where express preemption exists, but does not apply, implied conflict preemption may still apply.  *See Holk v. Snapple Beverage Corp.*, 574 F. Supp. 2d 447, 452-56 (D.N.J. 2008) (applying *Geier*; finding action barred by implied preemption); *Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) (holding that state-law claims alleging that KFC made health claims about food containing trans fat were impliedly preempted).

Here, as in *Geier*, the FDA previously considered in the regulatory context the very requirements that Plaintiffs are now asking the judicial branch to impose.  The FDA specifically considered whether sugar content should preclude the claims that Plaintiffs allege Defendants are making, and ultimately decided it should not.  *See* 58 Fed. Reg. 2478, 2491; 59 Fed. Reg. 24232, 24244.  Plaintiffs' goal in this case would thus conflict with federal policy, and is preempted.[7]

---

[7] Plaintiffs' claims also implicate the Dormant Commerce Clause, especially given that Plaintiffs seek to require labeling changes that would apply only in New York and/or California.  Compl. ¶ 6. Even a nondiscriminatory law with only "incidental" effects on interstate commerce may be unconstitutional if the burden is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Here, the burden on Defendants to comply would be enormous, and Plaintiffs would impose this burden, apparently, in order to inform consumers that if their overall sugar consumption increases, their weight may as well. Not only has that been well-known for some time, the product's sugar content is already displayed on its label, as the FDA requires.  Under the *Pike* test, then, the burden of additional labeling requirements is clearly excessive in relation to the putative local benefits, if any, of informing the public about something it already knows.

**II.      Plaintiffs Do Not Adequately Plead Any of Their Causes of Action.**

Even if preemption did not apply, Plaintiffs' case would fail because they have not adequately stated claims in accordance with Rules 8 and/or 9(b).  Again, under Rule 8 a court is not bound to accept conclusory allegations as true; once those are set aside, any remaining well-pleaded factual allegations, accepted as true, must be sufficient to "state a claim for relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949.  A claim has "facial plausibility" when a plaintiff pleads facts that go beyond being "merely consistent with" liability, such that a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* The standard is even higher for claims sounding in fraud, the circumstances of which must be pleaded with "particularity."  Fed. R. Civ. P. 9(b).

The question of what pleading standard applies is a federal question, not one of state substantive law, so the question becomes whether the cause of action is one for "fraud or mistake" under Rule 9(b).  The heightened standard clearly applies to Plaintiffs' cause of action for deceit and/or misrepresentation (the eleventh).  *See WAWA Tours*, 2007 WL 2743500, at *6 & n.10 (holding Rule 9(b) applies to intentional misrepresentation claims; citing *Chen v. U.S.*, 854 F.2d 622, 628 (2d Cir. 1988)); *Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.*, No. CV 07-0608, 2009 WL 1033177, at *7 n.9 (E.D.N.Y. Apr. 16, 2009) (holding rule 9(b) applies to negligent misrepresentation at least where based on same set of facts as intentional misrepresentation); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (Rule 9(b) requires a plaintiff to "state precisely" the circumstances of alleged common-law fraud).

Half of Plaintiffs' causes of action (their first through sixth) allege violation of California consumer protection statutes.  As California federal courts have repeatedly held, Rule 9(b) applies to causes of action brought under California's UCL (including Section 17500) and CLRA where those causes of action are based on fraud, even if (as here) they may be labeled as

something else.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997-98 (N.D. Cal. 2007).  For example, California's UCL allows claims for "unlawful" and "unfair" business practices in addition to "fraudulent" ones, and plaintiffs typically allege all three types.  But if the "unlawful" or "unfair" practice is deception, as Plaintiffs allege, Rule 9(b) still applies to the California claims.  *Id.*

The Second Circuit has held that claims under Section 349 of the New York General Business Law ("GBL") are not subject to the particularity requirements of Rule 9(b).  *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008) (citing *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511-12 (2d Cir. 2005)).  Nonetheless, all of Plaintiffs' claims fail the Rule 8 test, including the GBL claim (seventh cause of action) and the warranty claims (eighth through tenth causes of action).  *Iqbal*, 129 S. Ct. at 1949.  The remaining claim, for unjust enrichment, fails because it is merely derivative of the others.

### A.   Plaintiffs have not adequately alleged their fraud-based claims, namely causes of action I-VII and XI.

Plaintiffs have alleged eight causes of action ultimately based on fraud, all of which require a plaintiff to plead and prove, among other things, that the defendant made a material misrepresentation or omission of fact, and that the plaintiff's injury was caused by the representation.[8]  Here, Plaintiffs have not adequately pleaded either of these elements.

---

[8]   *See Luxury Transp. Mgmt. Inc.*, 2009 WL 1033177, at *7 (elements of negligent misrepresentation under New York law); *WAWA Tours, Inc.*, 2007 WL 2743500, at *6 (elements of intentional misrepresentation under New York law) (citing *Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116 (1991); *Sugawara v. PepsiCo, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *4 (E.D. Cal. May 21, 2009) (elements of intentional misrepresentation under California law); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *12 (N.D. Cal. June 5, 2009) (elements of negligent misrepresentation under California law); *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (elements of GBL § 349 claim); *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (discussing elements of California UCL and CLRA claims; dismissing where plaintiff failed to adequately identify allegedly misleading representations).

### 1.   Plaintiffs do not adequately plead the alleged misrepresentations.

Plaintiffs' complaint is full of vague and conclusory allegations about representations supposedly made by Defendants, but Plaintiffs never quite clarify which representations they claim are false or misleading, let alone plead the circumstances with particularity.

In the section describing Defendants' claims that vitaminwater provides "health benefits," the complaint lists the names of the vitaminwater flavors, Compl. ¶ 19, and then sets forth a number of "descriptions" Plaintiffs claim were taken from vitaminwater labels.  *See id.* ¶¶ 18-19 (quoting "descriptions" of vitaminwater flavors).  But the complaint does not allege that any of the named plaintiffs actually read or relied on any of these statements.

As noted above, of all the vitaminwater descriptions Plaintiffs listed in their complaint, only James Koh bought one of the specific flavors ("rescue") to which the complaint refers, and the complaint does not specifically allege he relied on the corresponding description.  Therefore, of all the representations set forth in the complaint, only the names of four flavors ("revive," "multi-v," "rescue," and "formula-50"), and the single identified statement as to "rescue" even pertain to products that any plaintiff actually bought.  The complaint alleges that each plaintiff relied on *something*, and lists some statements that it alleges may have deceived *someone*, but never connects these elements with particularity or otherwise.  Representations not tied to any of the plaintiffs cannot be considered adequately pleaded.  *See Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097 (DRH) (WDW), 2007 WL 2743490 at *4, 8 (E.D.N.Y. Sept. 17, 2007) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006)).

Further, many of Plaintiffs' allegations describe mere "puffery," which is not actionable under the laws of either New York or California.  *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405-06 (E.D.N.Y. Mar. 22, 2004) ("[f]alse representations of fact are distinguished from puffery," which is not actionable under GBL § 349) (citing *Lacoff v.*

17

*Buena Vista Publishing, Inc.*, 705 N.Y.S.2d 183, 191 (N.Y. Sup. Ct. 2000)); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (same); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (holding that under California law "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely"); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) (holding that to be actionable, advertisements must be verifiable factual representations that could be demonstrated to be true or false). If, for example, Defendants had stated that vitaminwater contained "no sugar" or "less than X grams of sugar," such statements could be confirmed or denied by an objective process. But statements like the name "vitaminwater," the one-word flavor names ("rescue" or "revive"), slogans like "vitamins + water = all you need," or phrases like "the trick is to stay healthy" or "healthy as a horse" (*see* Compl. ¶¶ 17-19), are puffery.

Even if the above problems were set aside, it is still far from clear exactly what Plaintiffs are alleging is false, misleading, or likely to deceive a reasonable consumer. They do not allege that either "revive," "multi-v," "rescue," or "formula-50" do not actually contain the nutrients Defendants say they contain – indeed, Plaintiffs concede that Defendants do add vitamins and nutrients to vitaminwater. *Id.* ¶ 4. They do not allege that the product is harmful – at one point, Plaintiffs allege that some undefined "additives" may be harmful, but the complaint is otherwise silent about that claim and nowhere do Plaintiffs allege any harm actually occurred. *Id.* ¶ 20. As for sugar, Plaintiffs concede that the label on every vitaminwater bottle bears the true facts about the amount of sugar per serving (as the FDA requires), and Plaintiffs' own allegations show that vitaminwater in fact has just half as much sugar per ounce as the soft drinks to which they compare it. *See id.* ¶ 25. There is nothing here that could deceive a reasonable consumer.

Plaintiffs have not adequately alleged any representation or omission and have not met their pleading burden under Rule 8, let alone Rule 9(b). *See, e.g.*, *Sugawara*, 2009 WL 1439115, at *4 (dismissing claims in part because plaintiff did not adequately identify allegedly false statements); *Lyons v. Coxcom, Inc.*, No. 08-CV-02047, 2009 WL 347285, *11 (S.D. Cal. Feb. 6, 2009) (dismissing CLRA claim where plaintiff did not allege reliance on particular advertisement); *Stickrath*, 527 F. Supp. 2d at 997-1000 (dismissing UCL and CLRA claims under Rule 9(b)); *Hoey*, 515 F. Supp. 2d at 1104 (dismissing claim where plaintiff failed to identify partial representation that was allegedly misleading); *see also Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (dismissing GBL 349 claims because plaintiffs failed to show that defendants committed a deceptive act).

The facts above distinguish this case from the Ninth Circuit's recent opinion in *Williams v. Gerber*, where the court held that a number of packaging features on that defendant's product might, in combination, be likely to deceive a reasonable consumer. *Williams v. Gerber Products Co.*, 552 F.3d 934, 936 (9th Cir. 2008). There, the product was called "fruit juice snacks" and bore pictures of actual fruit on the label, though the product contained no fruit juice from any of the pictured fruits. *Id.* The implication of the pictures was therefore directly contrary to the truth as shown on the ingredient list. *Id.* at 939. The label also described the product as being made with fruit juice and "other all natural ingredients," a claim that the court also stated "appears to be false." *Id.* at 936. The court also pointed to a claim that the product was one of a line of "nutritious" products "specifically designed to help toddlers grow up strong and healthy." *Id.* As to these claims, the court conceded that these would "arguably" constitute "puffery," since a concept like "nutritiousness can be difficult to measure concretely." *Id.* at 936 n.3. But in the panel's view, all of the facts in context added up to deception, even though the box also

19

contained the FDA ingredient label.[9]  *Id.* at 939.  The court decided that reasonable consumers would not expect an ingredient list to contradict representations on the  packaging.  *Id*. at 939-40.

Here, by contrast, Plaintiffs has identified no false imagery or representation, and the context is entirely different.  They repeatedly allege that Defendants claim their product is a "healthy beverage," but provide no examples of this phrase being used.  Nor have they identified any "apparently false" statements such as "sugar-free" or "low in sugar," and in fact concede that the truth about sugar content appears on the label.  Unlike the fruits shown on the Gerber product, here the items described on the label are actually in the product.  Plaintiffs do not contend otherwise.  In *Williams*, the Ninth Circuit's main disagreement with the lower court appeared to be over the effect of the ingredient list, which the Ninth Circuit did not believe should be a "shield" for directly contradictory information on the packaging.  *Id*. at 940.  But that is not Plaintiffs' allegation here.  They allege that the ingredient list is inconsistent with the claim that they read into every vitaminwater label, not that there is any direct contradiction that would mislead consumers.  Therefore, *Williams* is distinguishable and does not support the position that a reasonable consumer would be deceived by the practices Plaintiffs allege.

### 2.    Plaintiffs do not adequately allege reliance or causation of injury.

Plaintiffs' complaint offers much more detail about how eating too much sugar might contribute to obesity than it does about how they themselves were allegedly defrauded about the healthiness of vitaminwater.   Almost no details are provided.

Ackerman alleges that she bought as many as 100 bottles of vitaminwater from October 2007 to July 2008.  Compl. ¶ 8.  She bought these at various drug stores in New York, including

---

[9] The *Williams* court did not consider FDCA preemption, because it found Gerber had waived that argument.  552 F.3d at 937.  The court conceded that compliance with FDA regulations "may be relevant" to a preemption argument, but did not reach the question.  *Id*. at 940 n.4.

Duane Reade.  *Id*.  Koh alleges he bought a total of about 60 bottles of vitaminwater from October 2007 to July 2008.  *Id.* ¶ 10.  He bought them at 7-Eleven stores in California except on one occasion when he patronized an unidentified deli.  *Id*.  Antonov alleges he bought several dozen bottles of vitaminwater per year during the "Class Period."  *Id.* ¶ 9.  He bought them from unidentified convenience stores in California.  *Id*.  Likewise, Pelkey alleges he "regularly" bought (amount unspecified) vitaminwater from 2006 to 2008.  *Id.* ¶ 11.  He bought them from unidentified grocery and convenience stores in California.  *Id*.  All Plaintiffs assert the same conclusory allegations that they relied on "the written misrepresentations contained on vitaminwater bottles that vitaminwater is a healthy beverage," though had they known the truth that "the statements [they] relied upon" were false, they would not have bought the product.  *Id*. ¶¶ 8-11.  That is all we are told about Plaintiffs' transactions.

Even if Plaintiffs had adequately stated that the alleged implied claims or identified statements were false or likely to deceive a reasonable consumer, or that the statements were misleading because of an omission, they do not allege *they* were actually deceived or that *they* were injured by such a deception.  Without adequate allegations of reliance and causation of injury, Plaintiffs' claims fail.  *WAWA Tours*, 2007 WL 2743500, at *6; *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (N.Y. 1999) (proof that "material deceptive act" caused "actual" harm is required to impose compensatory damages).  Without allegations of reliance and causation of injury, Plaintiffs similarly fail to adequately plead violations of California's UCL and CLRA.  *See, e.g.*, *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946-49 (S.D. Cal. 2007) (dismissing UCL and CLRA claims for failure to adequately allege reliance and injury); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639-46 (2009) (holding plaintiffs who had not been harmed by unconscionable contract term could not maintain CLRA suit).

Similarly, under Section 349 of New York's GBL, actual injury must be alleged.  *See Bildstein v. Mastercard Int'l Inc.*, No. 03 Civ. 98261(WHP), 2005 WL 1324972, at *2 (S.D.N.Y. June 6, 2005) (under GBL §349, Plaintiff must show that defendant's conduct caused "actual injury").  Merely alleging a deceptive act is not sufficient – the claimed deception cannot be the only injury.  *See, e.g.*, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004); *see also Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (N.Y. 2007).  For example, the New York Court of Appeals has rejected the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL § 349]."  *Small*, 94 N.Y.2d at 56.  The court considered such a theory "legally flawed," and was not persuaded that the plaintiffs had been prevented from making "free and informed choices as consumers" as a result of the alleged deceptive acts.  *Id*. That legally flawed theory is the same one that Plaintiffs assert here.

Again, the complaint states that Plaintiffs relied upon unidentified "written misrepresentations contained on vitaminwater bottles that vitaminwater is a healthy beverage . . . ."  Compl. ¶¶ 8-11.  While the complaint later quotes a number of statements that Plaintiffs claim appear on vitaminwater labels, Plaintiffs do not allege that they bought these specific flavors or that they actually relied on any of those statements.   They could not have relied on misrepresentations about a product they did not buy.  *See Oestreicher*, 544 F. Supp. 2d at 973 n.7 ("Statements not relating to the machine bought by plaintiff could not possibly have caused him to rely on [their] contents.").   In *Laster v. T-Mobile USA, Inc.*, the plaintiffs "meticulously described" allegedly misleading advertisements but the court dismissed the claims under California's UCL and CLRA because the plaintiffs never actually alleged that they themselves had seen or relied on those advertisements.  407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).  Here

too, Plaintiffs do not quote any label that says, "vitaminwater is a healthy beverage." They do allege they bought the product in question, but as cases like *Laster* make clear, purchase allegations plus a detailed list of representations that Plaintiffs or class members *might* have relied on are not sufficient to allege reliance. Plaintiffs make only the sort of conclusory recitations that, as *Iqbal* and *Twombly* make clear, are not sufficient.

Not only that, Plaintiffs' own allegations undercut their claims. They allege that they would not have bought the product had they known that it was not a "healthy beverage" because it was "loaded with sugar." Compl. ¶¶ 8-11, 25. But that directly conflicts with their allegations that, having once bought – and presumably tasted – the beverage they now characterize as "loaded with sugar," they kept buying it. Indeed, by their own estimates, each of them bought dozens or hundreds more bottles. *Id.* Thus, Plaintiffs' own allegations demonstrate that sugar content was not a motivating factor in their purchases. It is noteworthy that they do not plead any facts showing why they *stopped* buying the product when they did, though presumably that would have been at the point when each of them finally learned "the truth" about it. Their failure to allege what they learned, or when and how they learned it, is further evidence that neither misrepresentation nor concealment caused them to buy vitaminwater in the first place.

Therefore, all Plaintiffs' fraud-based claims fail and should be dismissed.

### B.        Plaintiffs do not adequately plead their warranty claims (VIII-X).

Plaintiffs' warranty claims fail for many of the same reasons that the fraud claims fail – neither the alleged promises nor Plaintiffs' reliance on them are adequately pleaded.

### 1.        The statements in Plaintiffs' complaint are not express warranties upon which Plaintiffs reasonably relied.

To state a claim for breach of an express warranty under New York law, a plaintiff must allege the existence of an express promise or representation, and reliance on that promise or

representation.  *Horowitz v. Stryker Corp.*, No. CV-07-1572, 2009 WL 436406, at *11 (E.D.N.Y. Feb. 20, 2009) (citing *CBS, Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 502-503 (N.Y. 1990)); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 230 (S.D.N.Y. 2003) (breach of warranty claims failed because plaintiff did not allege facts showing that the actionable representation was the reason for the purchase).  California express warranty claims require the same elements.  *See, e.g., Stearns*, 2009 WL 1635931, at *4.

Warranties are distinguished from statements of opinion, conjecture, or puffery, which do not result in the imposition of liability.  8 Williston on Contracts § 954, at 357.  Numerous courts applying New York law have dismissed express warranty claims based on statements of mere puffery.  *Bologna v. Allstate Ins.*, 138 F. Supp. 2d 310, 323-24 (E.D.N.Y. 2001) (dismissing express warranty claim because "You're in Good Hands With Allstate" did not create an express warranty); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (dismissing express warranty claim because advertising proclamations are generalized and exaggerated claims of puffery and cannot support a claim for breach of express warranty).  Plaintiffs allege that "Defendants provided Plaintiffs and other members of the Class with written express warranties . . . that their vitaminwater beverages were healthy and had particular healthy characteristics."  Compl. ¶ 98.  As noted above, however, Plaintiffs fail to specify which of Defendants' representations were allegedly false, and how.  Statements like the name "vitaminwater," the one-word flavor names ("revive," "multi-v," "rescue," or "formula-50"), and slogans like "vitamins + water = all you need," (*see* Compl. ¶¶ 18-22),[10] are not warranty promises, but rather mere puffery.

---

[10]  Plaintiffs allege that Defendants represent that vitaminwater is a "health drink."  Compl. ¶ 18. This is Plaintiffs' phrase, not one used by the Defendants.  Plaintiffs point to no statement of that kind and plead no other facts supporting this conclusory statement.

Even if such statements could create a warranty, Plaintiffs' express warranty claims fail because they have not alleged adequate facts demonstrating that they actually relied on any warranty promise. *See, e.g.*, *Horowitz*, 2009 WL 436406, at *11 (dismissing breach of warranty claim when plaintiff did not allege she relied on defendants' alleged representations); *Williams*, 255 F. Supp. 2d at 230 (dismissing express warranty claim because complaint failed to allege any plaintiffs heard, saw or relied upon the representations before they used the product). As discussed earlier, nothing in the complaint states what, if anything, Plaintiffs believed when they purchased vitaminwater, much less that they actually "heard, saw or relied upon any representation by Defendants" before purchasing a vitaminwater. Nor do Plaintiffs allege that they actually saw or relied on any of the representations (and the phrase "health drink" is not among them). For the same reasons, the claim also fails under California law. *See Blennis*, 2008 WL 818526, at *2 (dismissing express warranty claim because the plaintiffs did not identify any specific warranty upon which they relied). The express warranty claim should be dismissed.

### 2.    Plaintiffs' implied warranty claims also fail.

Plaintiffs allege that Defendants breached the implied warranty of fitness for a particular purpose because Plaintiffs did not receive beverages "that were healthy or that had the particular healthy characteristics represented." Compl. ¶¶ 105-08. An implied warranty of fitness for a particular use arises "(w)here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Potler v. MCP Facilities Corp.*, 471 F. Supp. 1344, 1349 (E.D.N.Y. 1979); *see also Stearns*, 2009 WL 1635931 at *7. Plaintiffs allege that their "particular purpose" for purchasing vitaminwater was to drink a "healthy" beverage – which according to Plaintiffs' allegations was a sugar-free beverage. Compl. ¶ 25. However, Plaintiffs do not allege any facts to support the allegation that Defendants had reason to know

Plaintiffs or anyone else required any arguable "health drink" to be entirely free of sugar. Nothing on vitaminwater labels suggests that the products are sugar-free or low in sugar. Plaintiffs have not alleged – and cannot allege – that Defendants knew Plaintiffs' alleged "particular purpose" for buying vitaminwater.

Plaintiffs' implied warranty of merchantability claim similarly fails.  Under both New York and California law, Plaintiffs must demonstrate that the product was not fit for the ordinary purposes for which such goods are used.  *Horowitz*, 2009 WL 436406, at *10; *Tietsworth v. Sears, Roebuck and Co.*, No. C09-00288, 2009 WL 1363548, at *3 (N.D. Cal. 2009).  But this "does not mean that the product will fulfill a 'buyer's every expectation.'"  *Viscusi v. Proctor & Gamble*, No. 05-CV-01528, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007).  It "does not impose a general requirement that goods precisely fulfill the expectation of the buyer." *Sugawara*, 2009 WL 1439115, at *5 (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)).  Instead, it simply requires a "minimum level of quality."  *Id.* Plaintiffs certainly have pleaded no facts showing that the product did not meet that standard.  *Id.* at *5.  Plaintiffs' implied warranty claims also fail because Plaintiffs do not adequately allege damage, injury and causation, for reasons similar to those set forth above.  *See, e.g., Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (claim for breach of implied warranty requires the plaintiff to establish causation); *Larsen v. A.C. Carpenter, Inc.*, 620 F. Supp. 1084, 1132 (E.D.N.Y. 1985) (injured party bears burden of proving causation when seeking damages for breach of implied warranty); *see Stearns*, 2009 WL 1635931, *8 (dismissing merchantability claims because Plaintiff failed to plead cognizable harm).

In short, because Plaintiffs have not pleaded their fraud or warranty claims with the necessary particularity, or even well enough to satisfy Rule 8, their claims would fail even if they

were not barred by preemption.  For that reason as well, their complaint should be dismissed.

      **C.**    **Plaintiffs' unjust enrichment cause of action (XII) also fails.**

Unjust enrichment "is an equitable remedy" that "prevents one party from retaining, at the expense of another, a benefit to which he is not entitled."  *U.S. v. Bedford Assocs.*, 713 F.2d 895, 902, 903 (2d Cir. 1983).  Here, Plaintiffs' unjust enrichment claim must be dismissed because the underlying claims fail as discussed above.  *See Hoey*, 515 F. Supp. 2d at 1106.  That is, since Defendants have done nothing unjust, they have not been unjustly enriched.

## CONCLUSION

Plaintiffs' lawsuit is aimed at furthering a policy goal, not addressing an existing case or controversy involving Plaintiffs themselves.  And the goal they are pursuing is one that the federal agency with authority in this area has already considered and rejected.  To the extent Plaintiffs' claims are based on the presence of sugar, their claims are barred by federal preemption.  The remainder of Plaintiffs' claims are conclusory allegations that fail to state a claim under Rule 8 as construed by the Supreme Court in *Iqbal*, let alone Rule 9(b)'s command of pleading with particularity.  For these reasons, the Court should dismiss Plaintiffs' complaint.

Dated:  June 22, 2009                By:  /s/ James R. Eiszner
                                    James R. Eiszner, # JE-7468
                                    John F. Murphy
                                    SHOOK, HARDY & BACON L.L.P.
                                    2555 Grand Blvd.
                                    Kansas City, MO  64108-2613
                                    Telephone:  816.474.6550
                                    Facsimile:  816.421.5547

                                    *Counsel for Defendants*
                                    *The Coca-Cola Company*
                                    *and Energy Brands Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2009, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

      Michael R. Reese
      Kim E. Richman
      Reese Richman LLP
      875 Sixth Avenue, 18th Floor
      New York, New York 10001

      Deborah Clark-Weintraub
      Whatley Drake & Kallas, LLC
      1540 Broadway, 37th Floor
      New York, New York 10036

      Mark S. Reich
      Joseph Russello
      Coughlin Stoia Geller Rudman & Robbins LLP
      58 South Service Road, Suite 200
      Melville, NY 11747

COUNSEL FOR PLAINTIFFS

                        /s/ James R. Eiszner
                        ATTORNEY FOR DEFENDANTS