**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark-Weintraub
Patrick J. Sheehan
1540 Broadway – 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

- and -

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Attorneys for Plaintiffs and the proposed class*
(additional plaintiffs' counsel listed on signature page)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

BATSHEVA ACKERMAN, RUSLAN ANTONOV, JAMES KOH, JERRAD PELKEY, JACK PETTY, and PHYLLIS VALENTINE individually and on behalf of those similarly situated,

                    Plaintiffs,

    vs.

THE COCA COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU),

                    Defendants.

———————————————————————x

:   Case No. 09-cv-0395

:   **SECOND AMENDED**
:   **CLASS ACTION COMPLAINT**

:   **Demand for Jury Trial**

Plaintiffs Batsheva Ackerman, Ruslan Antonov, James Koh, Jerrad Pelkey, Jack Petty, and Phyllis Valentine ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against The Coca-Cola Company and Energy Brands, Inc. d/b/a Glaceau (collectively "Defendants"), demanding a trial by jury, and allege as follows:

## NATURE OF THE CASE

1.     This is a proposed class action on behalf of California, New York, and New Jersey residents seeking redress for Defendants' deceptive practices in misrepresenting the dietary benefits of Defendants' Glaceau VitaminWater ("VitaminWater") in order to market it as a dietary supplement drink, in violation of California, New York, and New Jersey consumer protection law from January 15, 2005 to the present (the "Class Period").

2.     VitaminWater is deceptively promoted by Defendants as a "Nutrient Enhanced Water Beverage" and its labels proclaim that "vitamins + water = all you need."  The truth is, however, that VitaminWater does not consist solely of "vitamins + water;" rather, it contains 33 grams of sugar, which is almost as much sugar as contained in a can of Coke.

3.     In addition, Defendants further deceive consumers by marketing, advertising and labeling VitaminWater's many flavors with names including: "defense," "rescue," "energy," "power-c," "balance," "focus," "revive," "endurance," "essential," "b-relaxed," "formula 50," "vital-t," "charge + -," and "multi-v," each accompanied by a slogan touting the purported benefits of drinking that particular flavor of VitaminWater.  For example, Defendants claim that "rescue" "is specially formulated to support optimal metabolic function with antioxidants that may reduce the risk of chronic diseases, and vitamins necessary for the generation and utilization of energy from food."

4.     The central message of these claims is that VitaminWater is not a sugary soft drink and that drinking it provides a significant source of dietary supplements.  However, as set

forth below, this message is false, misleading, deceptive, and unfair.  VitaminWater is not a beneficial fortified drink — it is just another flavored, sugary snack food like Coca-Cola, except that Defendants chose not to carbonate it.

5.     Defendants have profited enormously from their deceptive marketing of VitaminWater.  Consumers are increasingly health-conscious and, as a result, many consumers are avoiding soft drinks and looking for better beverage alternatives.  These concerns and Defendants' deceptive marketing have fueled the consumption of VitaminWater.  Defendants command a premium price for VitaminWater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form.  On average, Defendants charge almost twice as much for VitaminWater as for one of their other soft drinks (e.g., Coca-Cola Classic, Sprite, etc.).  Sales of VitaminWater are estimated at more than half a billion dollars annually, with VitaminWater significantly increasing sales each year during the Class Period.

6.     Defendants' misrepresentations about VitaminWater – including its dietary-supplement name and good-for-you promises – bombard consumers with a message of purported benefits, and draw consumer attention away from the significant amount of sugar in the product.  Reasonable consumers should not be forced to look beyond the misleading representations on VitaminWater labels and in other marketing, advertising, and promotional materials to discover the truth from the ingredients listed in small print on the back of the bottle.  Instead, reasonable consumers should be able to trust that representations on the packaging and in-store advertising of VitaminWater are consistent with the ingredient list, and not the opposite as is the case with VitaminWater.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and Defendants.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2). Substantial acts in furtherance of the alleged improper conduct occurred within this District. Plaintiff Ackerman resides within this District and bought Defendants' Products within this District. Defendant Energy Brands is headquartered within this District.

## THE PARTIES

### Plaintiffs

9.     Plaintiff Batsheva Ackerman is a resident of Nassau County, New York. Plaintiff Ackerman purchased VitaminWater during the Class Period. Specifically, Plaintiff Ackerman purchased VitaminWater Revive (Fruit Punch) and VitaminWater Multi-V (Lemonade) at their premium price approximately one to two times per week between October 2007 and October 2008. Plaintiff Ackerman purchased this VitaminWater from various drug stores such as Duane Reade located in New York.

10.     Plaintiff Rulan Antonov is a resident of San Francisco County, California. Plaintiff Antonov purchased VitaminWater during the Class Period. Specifically, Plaintiff Antonov purchased VitaminWater at the premium price set by Defendants approximately four to eight times per month during the Class Period from various convenience stores located throughout San Francisco.

11.     Plaintiff James Koh is a resident of San Francisco County, California. Plaintiff Koh purchased VitaminWater during the Class Period. Specifically, Plaintiff Koh purchased

VitaminWater Rescue (Green Tea) and VitaminWater Revive (Fruit Punch) at their premium price approximately five times per month between October 2007 and July 2008. Plaintiff Koh purchased this VitaminWater from several 7-Eleven convenience stores located in San Francisco and from a delicatessen convenience store located in Daly City, California.

12.     Plaintiff Jerrad Pelkey is a resident of San Bernardino County, California. Plaintiff Pelkey purchased Vitamin Water during the Class Period. Specifically, between 2006 and 2008, Plaintiff Pelkey regularly purchased VitaminWater Multi-V (Lemonade), VitaminWater Formula 50 (Grape) and other flavors of VitaminWater at their premium price from various grocery stores and convenience stores located in California.

13.     Plaintiff Jack Petty is a resident of Cumberland County, New Jersey.  Plaintiff Petty purchased VitaminWater during the Class Period.

14.     Plaintiff Phyllis Valentine is a resident of Camden County, New Jersey.  Plaintiff Petty purchased VitaminWater during the Class Period.

15.     Each Plaintiff relied on Defendants' false, misleading, and deceptive written misrepresentations that VitaminWater is a beneficial dietary supplement beverage including, but not limited to, "vitamins + water = all you need" and the name of the product itself – "VitaminWater" – in deciding to purchase VitaminWater.  Had Plaintiffs known the truth that the statements they relied on were false, misleading, deceptive, and unfair, they would have neither have purchased VitaminWater nor paid the premium price Defendants charged for it

16.     Plaintiffs Ackerman, Antonov, Koh, Pelkey, Petty and Valentine are collectively referred to herein as "Plaintiffs."

**Defendants**

17.     The Coca-Cola Company ("Coca-Cola") is a Georgia corporation headquartered in Atlanta, Georgia. Coca-Cola describes itself as the largest manufacturer, distributor and

marketer of nonalcoholic beverage concentrates and syrups in the world. During 2007, Coca-Cola expanded its still beverage offerings by acquiring Energy Brands Inc., also known as Glaceau, the maker of fortified beverages including VitaminWater.

18.     Defendant Energy Brands, Inc. (d/b/a as Glaceau) is a wholly owned subsidiary of Coca-Cola. Defendant Energy Brands, Inc. is headquartered in Whitestone, New York.

## GENERAL ALLEGATIONS

### Defendants Know That Consumers Desire Healthier Alternatives to Soft Drinks

19.     Seeking to cash in on the success of bottled water, the beverage industry contrived a new way to boost sales: so-called "water beverages" fortified with vitamins, fruit, herbs, antioxidants and more (and also packed full of sugar).  As sales in this category rose 30% in 2007, Defendants profited handsomely from their sale of VitaminWater to consumers.

20.     Defendants recognize the importance of marketing and labeling VitaminWater as a beneficial alternative to sugary soft drinks.  In its Form 10-K Annual Report filed with the United States Securities and Exchange Commission for the year 2007, Coca-Cola acknowledged that "obesity and other health concerns may reduce demand for some of [its] products" and are risk factors to its profits.  Coca-Cola further stated that "some researchers, health advocates and dietary guidelines are encouraging consumers to reduce consumption of certain types of beverages, especially sugar-sweetened beverages.  Increasing public awareness about these issues … could affect our profitability."

21.     In fact, however, VitaminWater itself is a "sugar-sweetened beverage" – a snack food little different from Coca-Cola and other soft drinks.  It is not a dietary supplement, although it pretends to be one.

22.     Not surprisingly, VitaminWater does not name Coca-Cola anywhere on its packaging or labeling; rather these purportedly beneficial drinks are sold without any reference to the soft drink manufacturer that produces them.

**Defendants' Marketing, Advertising and Labeling
Claims That VitaminWater Provides Benefits To Consumers**

23.     Defendants sold VitaminWater as a beneficial alternative to soda and other varieties of soft drinks.  Defendants aggressively marketed and advertised VitaminWater as a fortified drink in an effort to attract health-conscious consumers.

24.     Defendants deceive consumers into believing that VitaminWater provides remarkable benefits by marketing, advertising and labeling the VitaminWater flavors with names including: "defense," "rescue," "energy," "power-c," "balance," "focus," "revive," "endurance," "essential," "b-relaxed," "formula 50," "vital-t," "charge + -," and "multi-v."

25.     In VitaminWater in-store advertising, Defendants claim that these products are "vitamins + water = what's in your hand."  This statement is false, misleading and deceptive, because VitaminWater is not solely composed of "vitamins + water", but rather contains almost as much sugar as a can of Coke.

26.     Defendants' VitaminWater labels proclaim that VitaminWater is a "Nutrient-Enhanced Water Beverage" and that "vitamins + water = all you need."  This description is intended to lead consumers to believe that the beverage contains simply water and nutrients.  This is misleading, however, because VitaminWater contains 33 grams of sugar – almost as much as a can of Coke.

27.     VitaminWater labels make additional claims touting the purported benefits of drinking VitaminWater.  For example, the labels of VitaminWater's "defense" flavor claims as follows: "[I]f you've had to use sick days because you've actually been sick then you're

seriously missing out, my friends.  [S]ee, the trick is to stay healthy and use sick to days to just um, not go in.  [A]nd this combination of zinc and fortifying vitamins can help out with that and keep you healthy as a horse.  [S]o drink up."

28.     In addition, the Vitamin Water labels make claims about the purported disease-preventative benefits of drinking other flavors of VitaminWater, including:

- Rescue "is specially formulated to support optimal metabolic function with antioxidants that may reduce the risk of chronic diseases, and vitamins necessary for the generation and utilization of energy from food."

- Focus "is specially formulated to provide vitamin [A] (a nutrient known to be required for visual function), antioxidants and other nutrients [that] scientific evidence suggests may reduce the risk of age-related eye disease."

- Balance "is specially formulated with bioactive components that contribute to an active lifestyle by promoting healthy, pain-free functioning of joints, structural integrity of joints and bones, and optimal generation and utilization of energy from food."

- Defense "is specially formulated with nutrients required for optimal functioning of the immune system, and the generation and utilization of energy from food to support immune and other metabolic activities."

- B-Relaxed "is specially formulated with [B] vitamins and theanine. The [B] vitamins are there to replace those lost during times of stress (physical or mental). Theanine is an amino acid found naturally in tea leaves and has

been shown to promote feelings of relaxation. This combination can help bring about a healthy state of physical and mental being."

- Power-C "is specially formulated with nutrients that enable the body to exert physical power by contributing to structural integrity of the musculoskeletal system, and by supporting optimal generation and utilization of energy from food."

29.     The central message of these claims is that drinking VitaminWater provides a significant source of dietary supplements without the ill effects of other sugary soft drinks. However, as set forth below, this message is false, misleading, deceptive, and unfair.

**VitaminWater is Not a Beneficial Dietary Supplement Alternative to Other Soft Drinks**

30.     VitaminWater, the supposed "Nutrient Enhanced Water Beverage," does not deliver its promised benefits.  In fact, the high levels of sugar in VitaminWater can actually harm consumers' health.

31.     VitaminWater is loaded with sugar.  In fact, each single-serve 20-ounce bottle contains approximately 33 grams of sugar.  By comparison, a single-serve 12-ounce can of Coca-Cola Classic contains 39 grams of sugar.

32.     Diets high in added sugars – from such foods as sugar-sweetened beverages like VitaminWater – squeeze healthier foods out of the diet, thereby displacing foods that provide nutrients that reduce the risk of osteoporosis, cancer, heart disease, stroke, and other diseases.[1]

33.     In addition, diets rich in added sugars contribute to weight gain and obesity, the prevalence of which has risen dramatically in the last three decades in both children and adults.[2]

---

[1] See S. Bowman, *Diets of Individuals Based on Energy Intakes from Added Sugars,* 12 FAMILY ECON. NUTRITION REV. 31-8 (1999); G. Mrdjenovi & D.A. Levitsky, *Nutritional and Energetic Consequences of Sweetened Drink Consumption in 6- to 13-year-old Children,* 142 J. PEDIATRICS 604-10 (2003).

Obesity, in turn, increases the risk of diabetes, heart disease, high blood pressure, and other diseases.[3] In people who are insulin resistant, a high intake of added sugars increases levels of triglycerides in the blood, which are associated with a higher risk of heart disease and diabetes.[4] In addition, frequent consumption of foods rich in added sugars increases the risk of osteoporosis.[5]

34.    Defendants' labeling, marketing and advertising of Vitamin Water violates California, New York and New Jersey state law.

35.    California, New York and New Jersey law broadly prohibit the misbranding of food in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").

36.    California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Health & Saf. Code § 109875 *et seq.* provides that food is misbranded "if its labeling is false or misleading in any particular." *Id.* at § 110660.

---

[2] *See* D.S. Ludwig, K.E. Peterson & S.L. Gortmaker, *Relationship between Consumption of Sugar-sweetened Drinks and Childhood Obesity,* 357 LANCET 505-8 (2001); C.S. Berkey, H.R. Rockett, A.E. Field, et al., *Sugar-added Beverages and Adolescent Weight Change,* 12 OBESITY RES. 778-88 (2004); C.M Apovian, *Sugar-sweetened Soft Drinks, Obesity, and Type 2 Diabetes,* 292 J. AM. MED. ASS'N 927-34 (2004); Ctr. for Disease Control and Prevention, Nat'l Ctr. for Health Statistics, *Prevalence of Overweight among Children and Adolescents: United States, 1999-2002, available at* www.cdc.gov/nchs/products/pubd/hestats/overwght99.htm; Ctr. for Disease Control and Prevention, Nat'l Ctr. for Health Statistics, *Prevalence of Overweight and Obesity among Adults: United States, 1999-2002, available at* www.cdc.gov/nchs/products/pubs/pubd/hestats/obese/obse99.htm.

[3] U.S. Surgeon General, U.S. Dep't of Health and Human Serv., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* (2001) *available at* www.surgeongeneral.gov/topics/obesity/calltoaction/CalltoAction.pdf.

[4] M.J. Stampfer, R.M Krauss, J. Ma, et al., *A Prospective Study of Triglyceride Level, Low-density Lipoprotein Particle Diameter, and Risk of Myocardial Infarction,* 276 J. AM. MED. ASS'N 882-8 (1996).

[5] S.J. Whiting, A. Healey & S. Psiuk, *Relationship between Carbonated and Other Low Nutrient Dense Beverages and Bone Mineral Content of Adolescents,* 32 NUTRITION RES. 1107-15 (2001).

37.    Similarly, Section 201 of New York's Agriculture and Marketing Law provides in pertinent part that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular."

38.    Likewise, N.J.S.A. 24:5-17 provides in pertinent part that "a food shall . . . be deemed misbranded . . . [i]f its labeling is false or misleading in any particular."

39.    As a result of their false, misleading, deceptive, and untrue advertising and marketing practices, VitaminWater is misbranded within the meaning of California, New York, and New Jersey law.

40.    Defendants have made millions at the expense of the public health and trust, and continue to make millions through the unfair, unlawful and fraudulent advertising and marketing practices described herein.

## CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs Antonov, Koh and Pelkey seek to represent a class consisting of:

> **All California residents who purchased VitaminWater at any time from January 15, 2005 to present. Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest ("California Class").**

42.    Plaintiff Ackerman seeks to represent a class consisting of:

**All New York residents who purchased VitaminWater at any time from January 30, 2003 to present. Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest ("New York Class").**

43.     Plaintiffs Petty and Valentine seek to represent a class consisting of:

**All New Jersey residents who purchased VitaminWater at any time from January 22, 2003 to present. Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest (the "New Jersey Class").**

44.     For purposes of this Complaint, the phrase "Class Members" refers collectively to all members of the California Class, the New Jersey Class and the New York Class, including the named Plaintiffs for each of those Classes.

45.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

46.     Numerosity: Plaintiff does not know the exact size of the California Class, the New Jersey Class, or the New York Class, but, based on Defendants' sales of VitaminWater, it is estimated that each Class is composed of more than 10,000 persons.  Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of members.  The persons in each of the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

47.     Common Questions Predominate: This action involves common questions of law and fact to the potential Classes because each Class Member's claim derives from the same allegedly fraudulent, false, misleading, deceptive and/or unfair action.  The common questions of law and fact involved predominate over questions that affect only Plaintiffs or individual Class Members.  Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover. Among the questions of law and fact common to the Classes are:

- Whether Defendants marketed, advertised, labeled and/or sold VitaminWater to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive statements or representations;

- Whether Defendants omitted and/or misrepresented material facts in connection with the marketing, advertising, labeling and/or sale of VitaminWater;

- Whether Defendants participated in and pursued the common course of conduct complained of herein;

- Whether Defendants' marketing, advertising, labeling and/or selling of VitaminWater constitutes an unfair, unlawful or fraudulent practice;

- Whether Defendants' marketing, advertising, labeling and/or selling of VitaminWater constitutes false advertising;

- Whether Defendants breached express warranties in their sale of VitaminWater, thereby causing harm to Plaintiffs and other class members;

- Whether Defendants breached implied warranties in their sale of Vitamin Water, thereby causing harm to Plaintiffs and other Class members;

- Whether Defendants' acts and practices in connection with the marketing, advertising, labeling and sale of VitaminWater unjustly enriched Defendants at the expense of, and to the detriment of, Plaintiffs and other Class members;

- Whether Defendants' conduct as set forth above injured consumers and, if so, the extent of the injury; and

- Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future.

48.     Typicality: Plaintiffs' claims are typical of the Classes because they bought VitaminWater during the Class Period. Defendants' allegedly unlawful, unfair and/or fraudulent actions, concern the same business practices described herein irrespective of where they occurred or were received. Thus, Plaintiffs Antonov, Koh and Pelkey and members of the California Class sustained the same injuries and damages arising out of Defendants' conduct in violation of California law, Plaintiff Ackerman and members of the New York Class sustained the same injuries and damages arising out of Defendants' conduct in violation of New York law, and Plaintiffs Petty and Valentine and members of the New Jersey Class sustained the same injuries

and damages arising out of Defendants' conduct in violation of New Jersey law. The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged herein.

49.     Adequacy: Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interest to prosecute the claims alleged herein to obtain full compensation due to him for the illegal conduct of which they complain.  Plaintiffs also have no interests that conflict with or are antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class.  No conflict of interest exists between Plaintiffs and Class Members because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on their own claim, Plaintiffs necessarily will establish Defendants' liability to all Class Members.  Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

50.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions

would engender.  Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

51.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

52.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17200, *et seq.* – Unlawful Business Acts and Practices)

53.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

54.     Such acts of Defendants, as described above, and each of them, constitute unlawful business acts and practices.

55.     California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Health & Saf. Code § 109875 *et seq.*, broadly prohibits the misbranding of food. *Id.* at § 110660. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id.*

56.     Additionally, California has adopted as its own and the Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted

- 16 -

pursuant to the [FDCA]" as "the food labeling regulations of this state." Cal. Health & Saf. Code, § 110100, subd. (a).   The FDCA prohibits the misbranding of food using language identical to that of the Sherman law.

57.   FDCA regulations also prohibit the making of claims "suggest[ing] that a food because of its nutrient content may help consumers maintain healthy dietary practices" when, as in the case of VitaminWater, it is a snack food that has been fortified to provide the claimed nutritional benefits.  21 C.F.R. §§ 101.65(d)(1)(i) and 104.20.

58.   In fact, Defendant Coca-Cola was recently advised by the FDA that its fortification of another soft drink (Coke Plus) violated federal law against misbranded products, both because the name mischaracterized the ingredients and because it was inappropriate to fortify snack foods.

59.   Further, FDCA regulations also prohibit Defendants' use of the name "VitaminWater" to describe a sugary soft drink that has only minimal amounts of vitamins, because it is illegal misbranding to use a name for a food containing two or more ingredients which includes or suggests the name of one or more but not all such ingredients, even if the names of all such ingredients are stated elsewhere in the labeling.  21 C.F.R. §§ 101.18(b).  Thus, using "vitamin" as the characterizing ingredient of a soft drink that contains far more sugar than vitamins is illegal under federal law.

60.   The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Saf. Code, § 109995.  Each Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

61.     The business practices alleged above are unlawful under Cal. Bus. & Prof. Code §
17200, *et seq.* by virtue of violating the Sherman law, which forbids (i) misbranding of food; (ii)
"suggest[ing] that a food because of its nutrient content may help consumers maintain healthy
dietary practices" when, as in the case of VitaminWater, it is a snack food that has been fortified
to provide the claimed nutritional benefits; and (iii) using a name for a food containing two or
more ingredients which includes or suggests the name of one or more but not all such
ingredients, even if the names of all such ingredients are stated elsewhere in the labeling.

62.     The business practices alleged above are also unlawful under Cal. Bus. & Prof.
Code §17500, *et seq.*, which forbids untrue and misleading advertising, and the Consumers Legal
Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), which prohibits "methods of
competition and unfair or deceptive acts or practices undertaken by any person in a transaction
intended to result or which results in the sale or lease of goods or services to any consumer."

63.     As a result of the business practices described above, Plaintiffs Antonov, Koh and
Pelkey and the other members of the California Class, pursuant to Cal. Bus. & Prof. Code §
17203, are entitled to an order enjoining such future conduct on the part of Defendants and such
other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and
to restore to any person in interest any money paid for VitaminWater as a result of the wrongful
conduct of Defendants.

64.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth
below.

## SECOND CAUSE OF ACTION
## (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17200, *et seq.* –
### Unfair Business Acts and Practices)

65.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

66.     Such acts of Defendants, as described above, and each of them, constitute unfair business acts and practices.

67.     Plaintiffs Antonov, Koh and Pelkey, and the other members of the California Class who purchased Defendants' VitaminWater, suffered a substantial injury by virtue of buying VitaminWater they would not have purchased absent Defendants' unfair marketing, advertising, packaging and labeling or by paying an excessive premium price for the unfairly marketed, advertised, packaged and labeled VitaminWater.

68.     There is no benefit to consumers or competition by deceptively marketing, advertising, packaging and labeling water beverages.   Indeed, the harm to consumers and competition is substantial.

69.     Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class who purchased Defendants' VitaminWater had no way of reasonably knowing that VitaminWater they bought was not as marketed, advertised, packaged and labeled.   Thus, they could not have reasonably avoided the injury each of them suffered.

70.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and is immoral, unethical, unscrupulous, offends established public policy or is substantially injurious to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class.

71.     As a result of the business acts and practices described above, Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Cal. Bus. & Prof. Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

72.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17200, *et seq.* –
### Fraudulent Business Acts and Practices)

73.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

74.     Such acts of Defendants as described above, and each of them, constitute fraudulent business practices under Cal. Bus. & Prof. Code § 17200, *et seq.*

75.     As more fully described above, Defendants' misleading marketing, advertising, packaging and labeling of VitaminWater is likely to deceive reasonable California consumers. Indeed, Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class were unquestionably deceived regarding the nutritional benefits of Defendants' VitaminWater, as Defendants' marketing, advertising, packaging and labeling of VitaminWater misrepresent and/or omit the true contents and benefits of VitaminWater.  Said acts are fraudulent business acts and practices.

76.     This fraud and deception caused Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class to purchase VitaminWater or pay more than they would have for VitaminWater had they known the true ingredients and benefits of the product.

77.     As a result of the business acts and practices described above, Plaintiffs Antonov, Koh and Pelkey the other members of the California Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

78.     THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17500, *et seq.* – Misleading and Deceptive Advertising)

79.     Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

80.     Plaintiffs Antonov, Koh and Pelkey assert this cause of action for violations of Cal. Bus. & Prof. Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

81.     At all material times, Defendants engaged in a scheme of offering VitaminWater for sale to Plaintiffs Antonov, Koh and Pelkey and other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and benefits of VitaminWater.  Said advertisements and inducements were

made within the State of California and come within the definition of advertising as contained in Cal. Bus. & Prof. Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase VitaminWater and are statements disseminated by Defendants to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class and were intended to reach members of the California Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

82.     In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the ingredients contained in VitaminWater. Consumers, including Plaintiffs Antonov, Koh and Pelkey, necessarily and reasonably relied on these materials concerning VitaminWater. Consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, were among the intended targets of such representations.

83.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, were and are likely to deceive reasonable consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, by obfuscating the true ingredients of VitaminWater, all in violation of the "misleading" prong of Cal. Bus. & Prof. Code § 17500.

84.     As a result of the above violations of the "misleading prong" of Cal. Bus. & Prof. Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class. Plaintiffs Antonov,

Koh and Pelkey and the other members of the California Class, pursuant to Cal. Bus. & Prof. code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

85. THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS)
### (Business and Professions Code § 17500, *et seq.* - Untrue Advertising)

86. Plaintiffs Antonov, Koh and Pelkey repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

87. Plaintiffs Antonov, Koh and Pelkey assert this cause of action for violations of Cal. Bus. & Prof. Code § 17500, *et seq.*, for untrue advertising against Defendants.

88. At all material times, Defendants have engaged in a scheme of offering VitaminWater for sale to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and benefits of VitaminWater. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Cal. Bus. & Prof. Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase VitaminWater and are statements disseminated by Defendants to Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class and were intended to reach members of the California Class.

- 23 -

Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

89.      In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California via commercial marketing and advertising, the Internet, product packaging and labeling, and other promotional materials, statements that falsely advertise the ingredients contained in and benefits of VitaminWater.   Consumers, including Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, are among the intended targets of such representations and would reasonably be deceived by such promotional materials.

90.      The above acts of Defendants in disseminating said untrue advertising throughout the State of California deceived Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class by obfuscating the nature and quality of VitaminWater, all in violation of the "untrue" prong of Cal. Bus. & Prof. Code § 17500.

91.      As a result of the above violations of the "untrue" prong of Cal. Bus. & Prof. Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class.  Plaintiffs Antonov, Koh and Pelkey and the other members of the California Class, pursuant to Cal. Bus. & Prof. Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for VitaminWater as a result of the wrongful conduct of Defendants.

92.      THEREFORE, Plaintiffs Antonov, Koh and Pelkey pray for relief as set forth below.

## SIXTH CAUSE OF ACTION
## (ON BEHALF OF THE CALIFORNIA CLASS)
### (Consumers Legal Remedies Act – Cal. Civ. Code § 1750, *et seq.*)

93.     Plaintiffs Antonov, Koh and Pelkey reallege and incorporate by reference the paragraphs stated above in this Class Action Complaint as set forth herein.

94.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

95.     Defendants' actions, representations and conduct has violated, and continues to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of lease of goods or services to consumers.

96.     Plaintiffs Antonov, Koh and Pelkey and the other California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

97.     The VitaminWater that Plaintiffs Antonov, Koh and Pelkey and other members of the California Class purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

98.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

99.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(16), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they

represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

100.    Plaintiffs Antonov, Koh and Pelkey request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs Antonov, Koh and Pelkey and other members of the Class will continue to suffer harm.

101.    Pursuant to Cal. Civ. Code § 1782, on January 28, 2009, a CLRA demand letter was sent to Defendants that provided notice of Defendants' violation of the CLRA and demanded that within 30 days from that date, Defendants correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendants refused to do so, the complaint would be amended to seek damages in accordance with the CLRA.  Defendants have failed to comply with the letter.

102.    Pursuant to Cal. Civ. Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the Class, seeks compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

103.    Plaintiffs also request on their and the rest of the Class's behalf that this Court award them and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1780(d).

104.    THEREFORE, Plaintiffs pray for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### (ON BEHALF OF THE NEW YORK CLASS)
### (Violation of New York General Business Law § 349)

105.    Plaintiff Ackerman repeats and realleges all preceding paragraphs, as if fully set forth herein..

106.    Defendants engaged in false and misleading marketing concerning the nutritional and beneficial qualities of VitaminWater.

107.    As fully alleged above, by advertising, marketing, distribution and/or selling the VitaminWater to Plaintiff Ackerman and other members of the New York Class, Defendants engaged in, and continue to engage in, deceptive acts and practices.

108.    Plaintiff Ackerman and other members of the New York Class further seek to enjoin such unlawful deceptive acts and practices as described above.   Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise the beneficial nature of VitaminWater.   Towards that end, Plaintiff Ackerman and the New York Class request an order granting them injunctive relief ordering appropriate disclosures and/or disclaimers on the labeling and in advertising, marketing and promotion of VitaminWater.

109.    Absent injunctive relief, Defendants will continue to manufacture and sell VitaminWater with the stated used as a beneficial drink, or water with added nutrients, to the detriment of consumers.

110.    In this regard, Defendants have violated, and continue to violate, G.B.L. § 349, which makes deceptive acts and practices unlawful.   As a direct and proximate result of Defendants' violation of G.B.L. § 349 as described above, Plaintiff Ackerman and other members of the New York Class have suffered damages, in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(ON BEHALF OF THE NEW YORK CLASS)**
**(Violation of New York General Business Law § 350)**

111.    Plaintiff Ackerman repeats and realleges all preceding paragraphs, as if fully set forth herein.

112.    Defendants engaged in false advertising concerning the nutritional and beneficial qualities of VitaminWater.

113.    New York General Business Law § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

114.    As fully alleged above, by advertising, marketing, distribution, labeling and selling the VitaminWater to Plaintiff Ackerman and other members of the New York Class, Defendants engaged in, and continue to engage in, false advertising.

115.    Plaintiff Ackerman and other members of the New York Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely advertise the beneficial nature of VitaminWater. Towards that end, Plaintiff Ackerman and the New York Class request an order granting them injunctive relief as follows: order disclosures and/or disclaimers on the labeling or advertising of VitaminWater.

116.    Absent injunctive relief, Defendants will continue to falsely advertise VitaminWater with the stated used as a beneficial drink, or water with added nutrients, to the detriment of consumers.

117.    In this regard, Defendants have violated, and continue to violate, G.B.L. § 350, which makes false advertising unlawful. As a direct and proximate result of Defendants' violation of G.G.L. § 350 as described above, Plaintiff Ackerman and other members of the New York Class have suffered damages, in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## (ON BEHALF OF THE NEW JERSEY CLASS)
### (New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*)

118.    Plaintiffs Petty and Valentine repeat and reallege all preceding paragraphs, as if fully set forth herein.

119.    At all relevant times, Defendants were and are "persons," as defined by N.J.S.A. 56:8-1(d).

120.    At all relevant times, VitaminWater constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

121.    At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of VitaminWater at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

122.    At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of VitaminWater met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

123.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, ….is declared to be an unlawful practice…"

124.    As described in detail above, Defendants uniformly misrepresented to Plaintiffs and each member of the New Jersey Class, by means of their advertising, marketing and other promotional materials, and on the VitaminWater's labeling and packaging, VitaminWater's nutritional content and dietary benefits.

125.    Defendants have therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with

the intent that others rely upon such concealment, suppression or omission in their manufacturing, advertising, marketing, selling and distribution of VitaminWater.  Defendants have therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

126.   As a direct and proximate result of Defendants' improper conduct, Plaintiffs and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for VitaminWater than they would have, and/or by purchasing VitaminWater which they would not have purchased, if the benefits of taking such products had not been misrepresented, in amounts to be determined at trial.

**TENTH CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS,**
**THE NEW JERSEY CLASS AND THE NEW YORK CLASS)**
**(Breach of Express Warranty)**

127.   Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

128.   Defendants provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that their VitaminWater beverages were beneficial and had particular beneficial characteristics as set forth above.

129.   Defendants breached these warranties which resulted in damages to Plaintiffs and other members of the Class, who purchased and overpaid for VitaminWater, which was not beneficial in that it contained a high amount of sugar and did not otherwise conform to Defendants' warranties.

130.   As a proximate result of the breach of warranties by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value, had less

value than warranted or that they would not have purchased and used had they known the true facts about them.

**ELEVENTH CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS,**
**THE NEW JERSEY CLASS AND THE NEW YORK CLASS)**
**(Breach of Implied Warranty of Merchantability)**

131.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

132.     Plaintiffs and other Class members purchased Defendants' VitaminWater beverages, which were promoted, marketed, advertised, packaged and labeled as beneficial and as having particular beneficial characteristics as set forth above.   Pursuant to these sales, Defendants impliedly warranted that their VitaminWater beverages would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the products' promotions, marketing, advertising, packaging and labels.   In doing so, Plaintiffs and other Class members relied on Defendants' representations that the VitaminWater beverages were beneficial and had particular beneficial characteristics as set forth above and at or about that time, Defendants sold VitaminWater beverages to Plaintiffs and other Class members.   By their representations regarding the reputable nature of their companies and related entities, and by their promotion, marketing, advertising, packaging and labeling of their VitaminWater beverages, Defendants warranted that their VitaminWater beverages were beneficial and had particular beneficial characteristics as set forth above. Plaintiffs and Class members bought VitaminWater, relying on Defendants' representations that their VitaminWater beverages were beneficial and had particular beneficial characteristics when, in fact, they were not beneficial in that they contained a high amount of sugar and did not otherwise conform to Defendants' warranties.

133.    Defendants breached the warranties implied at the time of sale in that Plaintiffs and Class members did not receive goods that were beneficial or that had the beneficial characteristics represented and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold.

134.    As a proximate result of these breaches of warranty by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and used had they known the true facts about them.

**TWELFTH CAUSE OF ACTION**
**(ON BEHALF OF THE CALIFORNIA CLASS,**
**THE NEW JERSEY CLASS THE AND NEW YORK CLASS)**
**(Deceit and/or Misrepresentation)**

135.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Class Action Complaint as if set forth herein.

136.    Defendants, through their labeling, advertising and marketing of VitaminWater, make uniform representations and offers regarding the quality of VitaminWater as described above.  Defendants engaged in, and continue to engage in, such fraudulent, misrepresentative, false and/or deceptive acts with full knowledge that such acts were, and are, in fact, misrepresentative, false or deceptive.

- 32 -

137.    The aforementioned misrepresentations, deceptive, and/or false acts and omissions concern material facts that are essential to the analysis undertaken by Plaintiffs, and those similarly situated, in deciding whether to purchase Defendants' beverage VitaminWater.

138.    Plaintiff, and those similarly situated, would have acted differently had they not been misled – i.e., they would not have paid money for the Product in the first place.

139.    Defendants have a duty to correct the misinformation they disseminate through their advertising of VitaminWater.  By not informing Plaintiffs, and those similarly situated, Defendants breached this duty. Defendants also gained financially from, and as a result of this breach.

140.    By and through such deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs, and those similarly situated, to alter their position to their detriment.

141.    Plaintiffs and those similarly situated, justifiably and reasonably relied on Defendants' misrepresentations, and, as such, were damaged by Defendants.

142.    As a direct and proximate result of Defendants' deceit and/or misrepresentations, Plaintiffs, and those similarly situated, have suffered damages in an amount equal to the amount they paid for Defendants' VitaminWater. The exact amount of this difference will be proven at trial.

143.    Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of, Plaintiffs, and those similarly situated.

144.    Plaintiffs, and those similarly situated, are entitled to punitive damages.

145.    THEREFORE, Plaintiffs pray for relief as set forth below.

### THIRTEENTH CAUSE OF ACTION
### (ON BEHALF OF THE CALIFORNIA CLASS,
### THE NEW JERSEY CLASS AND THE NEW YORK CLASS)
### (Unjust Enrichment)

146.    Plaintiffs reallege and incorporate by reference the above paragraphs of this Class Action Complaint as if set forth herein.

147.    As a result of Defendants' deceptive, fraudulent and misleading labeling, advertising, marketing and sales of VitaminWater, Defendants were enriched, at the expense of Plaintiffs, and all others similarly situated, through the payment of the purchase price for VitaminWater.

148.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact that the VitaminWater purchased by Plaintiffs, and all others similarly situated, was not what Defendants represented it to be.  Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for the monies paid to Defendants for such VitaminWater.

149.    THEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for relief as follows:

1.    An order certifying the California Class, appointing Plaintiffs Antonov, Koh and Pelkey representatives of the California Class, and designating their counsel as counsel for the California Class;

2.    An order certifying the New York Class, appointing Plaintiff Ackerman representative of the New York Class, and designating her counsel as counsel for the New York Class;

3.      An order certifying the New Jersey Class, appointing Plaintiffs Petty and Valentine representatives of the New Jersey Class, and designating their counsel as counsel for the New Jersey Class;

4.      A declaration that Defendants have committed the violations of law alleged herein;

5.      An order granting restitution and disgorgement pursuant to, without limitation, Cal. Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.* on behalf of the California Class;

6.      An order granting injunctive relief pursuant to, without limitation, Cal. Bus. & Prof.  Code §§ 17200, *et seq.* and 17500, *et seq.* on behalf of the California Class;

7.      An order granting declaratory and injunctive pursuant to Cal. Civ. Code § 1780 on behalf of the California Class;

8.      Judgment for monetary relief pursuant to Cal. Civ. Code § 1780 on behalf of the California Class;

9.      An order granting declaratory and injunctive relief pursuant to G.B.L. § 349 and G.B.L. § 350 on behalf of the New York Class;

10.     Judgment for monetary relief pursuant to G.B.L. § 349 and G.B.L. § 350 on behalf of the New York Class;

11.     Judgment for monetary relied pursuant to N.J.S.A. 56:8-1, *et seq.* on behalf of the New Jersey Class;

12.     Judgment for compensatory damages, the amount of which is to be determined at trial;

13.     Judgment for punitive damages;

14.     Judgment for interest at the legal rate on the foregoing sums;

15.     Judgment for costs of suit incurred; and

16.     Such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 15, 2009

**REESE RICHMAN LLP**

   /s/ Michael R. Reese
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

- and -

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark-Weintraub
Patrick J. Sheehan
1540 Broadway – 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

**CENTER FOR SCIENCE IN THE PUBLIC
INTEREST**
Stephen Gardner
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

**STEIN FARKAS & SCHWARTZ LLP**
Joshua Farkas
1639 East 13th Street
Brooklyn, New York 11229
Telephone : (718) 645-5600
Facsimile: (619) 573-1701

**DOYLE LOWTHER LLP**
William J. Doyle
9466 Black Mountain Road, Suite 210
San Diego, California 92126
Telephone: (619) 573-1700
Facsimile: (619) 573-1701

**LAW OFFICES OF NICHOLAS KOLUNCICH III, LLC**
Nicholas Koluncich
6501 Americas Parkway, NE
1 Park Square, Suite 620
Albuquerque, New Mexico 87110
Telephone: (505) 881-2228
Facsimile: (505) 881-4288

**HENINGER GARRISON DAVIS, LLC**
W. Lewis Garrison, Jr.
Gayle Douglas
2224 1st Avenue North
Birmingham, AL 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332

*Attorneys for Plaintiffs*