James R. Eiszner, # JE-7468
jeiszner@shb.com
John F. Murphy (admitted *pro hac vice*)
jmurphy@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108-2613
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547

John Lewis Jr. (admitted *pro hac vice*)
johnlewis@na.ko.com
Shani C. Thome, # SD-3608
sthome@na.ko.com
THE COCA-COLA COMPANY
One Coca-Cola Plaza
Atlanta, Georgia  30313
Telephone:    (404) 676-2121
Facsimile:    (404) 676-7636

Attorneys for Defendants
THE COCA-COLA COMPANY
and ENERGY BRANDS INC. (d/b/a GLACEAU)

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| **BATSHEVA ACKERMAN, RUSLAN ANTONOV, JAMES KOH, JERRAD PELKEY, JACK PETTY and PHYLLIS VALENTINE, individually and on behalf of those similarly situated,** | : : : : : | |
| | : | |
| **Plaintiff,** | : | **Case No. 09-0395-CPS-RML** |
| **vs.** | | |
| | : | |
| **THE COCA-COLA COMPANY and ENERGY BRANDS INC.** | : : | |
| | : | |
| **Defendants.** | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO
RULE 12(B)(6) AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ...................................................................................... 2

ARGUMENT ................................................................................................................... 5

    I.      Plaintiffs' Action is Barred by Federal Preemption.......................................... 5

           A.      The FDA extensively regulates claims that may be made for food
items.  No state may impose a requirement not identical to the FDA's. .......... 5

           B.      Plaintiffs' action is expressly preempted because the requirements they
would impose are not identical to the federal position. ................................... 8

           C.      Plaintiffs' action is barred by implied conflict preemption. ......................... 10

           D.      Alternatively, this Court should defer to the FDA's primary
jurisdiction. ..................................................................................................... 13

    II.     Plaintiffs Do Not Adequately Plead Any of Their Causes of Action. ....................... 15

           A.      The applicable legal standards under Rules 8 and 9(b). ................................ 15

           B.      Plaintiffs do not plead fraud (causes of action one through six, nine,
and twelve) with particularity. ....................................................................... 18

                  1.      Plaintiffs do not adequately plead the circumstances of the
alleged misrepresentations or omissions............................................. 19

                  2.      Plaintiffs do not adequately plead reliance, causation, or injury. ....... 23

           C.      Plaintiffs do not adequately plead GBL and warranty claims under
Rule 8. ............................................................................................................ 26

                  1.      Plaintiffs' GBL claims (causes of action seven and eight) are
conclusory and fail to allege actual injury. ........................................ 26

                    2.      Plaintiffs have not adequately alleged an express warranty
(tenth cause of action) or their reliance on any such warranty. .......... 27

                    3.      Plaintiffs' implied warranty claim (eleventh cause of action)
also fails. ............................................................................................. 29

           D.      The unjust enrichment claim (thirteenth cause of action) also fails. .............. 30

CONCLUSION ............................................................................................................... 31

## INTRODUCTION

The six named plaintiffs are veterans of five prior actions, each of which alleged that Defendants impliedly represent vitaminwater as a "healthy beverage" and that doing so would be deceptive because the product contains sugar.  Motions to dismiss were filed in three of those actions, and in each motion Defendants argued that (1) federal preemption barred the actions, and (2) the allegations failed to adequately state a claim for relief.  By now, Plaintiffs are certainly familiar with these arguments.  It is therefore a telling point that in their Second Amended Complaint they have tried to disguise their position.  Rather than allege, as before, that Defendants claim vitaminwater is a "healthy beverage," now they say Defendants claim it is a "beneficial dietary supplement beverage," and/or a "dietary supplement drink," and/or a "beneficial fortified drink," and/or a "fortified beverage [that is] a dietary supplement in liquid form," and/or a "beneficial dietary supplement alternative to other soft drinks."  As with "healthy beverage," none of these are terms that Defendants actually use.  But even if they did, the result would be the same: Plaintiffs use the new terms only to hide the fact that they are still alleging vitaminwater is unhealthy because it contains sugar and that Defendants' claims about the product are misleading for that reason.  These allegations fail for two reasons.

First, the argument that vitaminwater marketing is necessarily deceptive because the product contains sugar, an argument that underlies Plaintiffs' entire complaint, runs afoul of federal policy in this area.  The FDA has specifically considered the issue of what claims can and cannot be made with regard to products that contain sugar, and has rejected the arguments Plaintiffs make here.  Plaintiffs are free to present their arguments to the FDA, as their co-counsel has done before without success, but they cannot override the FDA's decision by means of a state-law tort action.  The entire action is barred by express and implied federal preemption, or alternatively should be dismissed in deference to the FDA's primary jurisdiction.

1

Second, Plaintiffs' complaint also fails to state a claim. Even after months of pleading and repleading and dismissing and refiling and amending, still not one of the six named plaintiffs has pleaded any specific facts as to how or why any of them might have been deceived or harmed by the way Defendants market their product. All their causes of action fail to comply with Rules 8 and/or 9(b), and their complaint should be dismissed without leave to amend.

## PLAINTIFFS' ALLEGATIONS

The Coca-Cola Company acquired Energy Brands Inc. in 2007. 2d Am. Compl. ¶ 17. Energy Brands, also known as Glaceau, produces a variety of beverages including vitaminwater. *Id.* Plaintiffs claim that vitaminwater marketing, advertising and labels (including the flavor names and the name "vitaminwater" itself) are deceptive because they seek to attract "health-conscious" consumers with "good-for-you" promises. *Id.* ¶¶ 5-6. Plaintiffs allege that such marketing is misleading because vitaminwater contains sugar. *Id.* ¶¶ 2, 25, 26, 29, 30-33.

Plaintiffs' complaint quotes alleged claims made on labels for six of the vitaminwater flavors. *Id.* ¶ 28. But of these identified flavors, "rescue" was the only one that any of the plaintiffs allegedly bought; in fact, three of them say nothing about *any* particular label:

- James Koh alleges he bought "rescue (green tea)" and "revive (fruit punch)" in California "approximately five times a month" between October 2007 and July 2008. *Id.* ¶ 11.

- Batsheva Ackerman alleges that she purchased the "revive (fruit punch)" and "multi-v (lemonade)" flavors "approximately one to two times per week" between October 2007 and October 2008. *Id.* ¶ 9.

- Ruslan Antonov alleges that he bought approximately four to eight bottles a month (he does not say which flavors) "during the Class Period." *Id.* ¶ 10.

- Jerrad Pelkey alleges that he purchased "multi-v (lemonade)," "formula 50 (grape)," and other unspecified flavors "regularly" between 2006 and 2008. *Id.* ¶ 12.

- Jack Petty alleges only that he "purchased vitaminwater" at least once during the class period. No other details at all are provided. *Id.* ¶ 13.

- Phyllis Valentine's allegations similarly lack any detail. *Id.* ¶ 14.

2

Note that no plaintiff specifically alleges he or she actually *relied* on any of the label statements associated with the flavors they bought. Instead, the complaint alleges in conclusory fashion that:

> Each Plaintiff relied on Defendants' false, misleading, and deceptive written misrepresentations that vitaminwater is a beneficial dietary supplement beverage including, but not limited to, "vitamins + water = all you need" and the name of the product itself – "vitaminwater" – in deciding to purchase vitaminwater. Had Plaintiffs known the truth that the statements they relied upon were false, misleading, deceptive, and unfair, they would neither have purchased vitaminwater nor paid the premium price Defendants charged for it.

*Id*. ¶ 15.

Plaintiffs do not actually allege that Defendants ever describe the product as a "beneficial dietary supplement beverage" or any of Plaintiffs' other variations on that term. *See, e.g.*, *id.* ¶¶ 1, 4, 5, 15, 30 (in heading). As discussed below, there is no question that vitaminwater is *not* a "dietary supplement." As used in Plaintiffs' new complaint, these terms are simply stand-ins for the term "healthy" that Plaintiffs previously used. For example, Plaintiffs previously alleged they relied on unidentified "written misrepresentations . . . that vitaminwater is a *healthy beverage*" (1st Am. Compl. ¶ 8), but now allege they relied on unidentified "written misrepresentations that vitaminwater is a *beneficial dietary supplement beverage* . . . ." 2d Am. Compl. ¶ 23 (emphasis added). They previously alleged that the "central message" of Defendants' marketing was that "drinking vitaminwater is *good for one's health*" and that this was misleading because of the sugar content (1st Am. Compl. ¶¶ 23, 25), but now allege the "central message" is that "drinking vitaminwater *provides a significant source of dietary supplements without the ill effects* of other sugary soft drinks," again allegedly misleading because of the sugar content.[1] 2d Am. Compl. ¶¶ 29-31 (emphasis added).

---

[1] Plaintiffs' comparison between the sugar content of a bottle of vitaminwater and a can of Coca-Cola Classic is misleading. 2d Am. Compl. ¶ 31. Vitaminwater bottles are not, as Plaintiffs claim, "single-serve" – and serving sizes are set by the FDA – but an entire bottle still contains less sugar than the soft-drink can, and the product has less than half the sugar per ounce. *See id*.

Plaintiffs concede that Defendants accurately disclose the product's sugar content. Though they allege that misrepresentations "draw consumer attention away" from the sugar, they admit consumers could "discover the truth" from the label on the bottle. *Id.* ¶ 6. But they charge, as before, that diets high in added sugars, from foods "such as" or "like" vitaminwater, allegedly "squeeze healthier foods out of the diet" and "contribute to obesity," and that the latter "in turn increases the risk of diabetes, heart disease, high blood pressure," and osteoporosis. *Id.* ¶¶ 32-33. In other words, Plaintiffs do not argue that vitaminwater itself, or any substance in it, has some unknown property that causes or contributes to these illnesses, or that might cause or contribute to any such illnesses in the short term. Rather, they allege that claims made about vitaminwater are not or may not be fulfilled because high levels of sugar consumption in an <u>overall diet</u> have elsewhere been associated with long-term health problems. *Id.* ¶¶ 30-33.

Plaintiffs' complaint includes six California causes of action on behalf of a California putative class: three brought under California's Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code § 17200), two under the virtually identical[2] False Advertising Law (FAL) (Cal. Bus. & Prof. Code § 17500), and one under the Consumers Legal Remedies Act (CLRA) (Cal. Civ. Code § 1750). *Id.* ¶¶ 53-104. It includes two New York state-law causes of action on behalf of a New York putative class, brought under New York's General Business Law (N.Y. Gen. Bus. Law §§ 349, 350). *Id.* ¶¶ 105-117. It now also includes one New Jersey state-law cause of action under that state's Consumer Fraud Act. *Id.* ¶¶ 118-26. Additionally, the complaint includes four common-law causes of action on behalf of all putative classes for breach of express warranty, breach of the implied warranty of merchantability, deceit and/or misrepresentation, and unjust enrichment. *Id.* ¶¶ 127-49.

---

[2] The differences are not relevant here, and so the two laws are referred to collectively as "UCL."

## ARGUMENT

Plaintiffs' complaint should be dismissed for two primary reasons. First, it runs afoul of federal policy and regulation. Their arguments are expressly preempted by provisions of the Federal Food, Drug and Cosmetic Act ("FDCA") and are subject to implied conflict preemption; alternatively, the complaint should be dismissed in deference to the FDA's primary jurisdiction. If Plaintiffs would like a change in the FDA regulatory scheme for the labeling of products containing sugar, they should be required to try to convince the FDA to change it. Second, the complaint is also inadequately pleaded. Regardless of whether what Plaintiffs are demanding is good policy, they have alleged no viable basis for pursuing it in court.

## I. Plaintiffs' Action is Barred by Federal Preemption.

The Supremacy Clause establishes federal law as the "supreme Law of the Land," and any state law in conflict with federal law is "without effect." U.S. Const. art. VI, cl. 2; *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). There are three types of federal preemption: 1) express preemption, 2) implied field preemption, and 3) implied conflict preemption. *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). Here, Plaintiffs' case is barred by express provisions of the FDCA (as amended by the Nutrition Labeling and Education Act, or "NLEA") and (as discussed below) by implied conflict preemption.

### A. The FDA extensively regulates claims that may be made for food items. No state may impose a requirement not identical to the FDA's.

The FDCA imposes extensive regulatory requirements on food sellers, and food not labeled in compliance with these requirements may be considered "misbranded." 21 U.S.C. § 343. But the law also includes an express preemption provision that prevents any state from directly or indirectly regulating food-labeling claims in a way that is not "identical" to the federal requirements. 21 U.S.C. § 343-1. That provision bars Plaintiffs' action here.

It should be noted at the outset that although Plaintiffs repeatedly use the term "dietary supplement," it is clear that vitaminwater is not a dietary supplement and that Defendants do not represent it as one.  A product cannot be a "dietary supplement" unless it is explicitly labeled as such.  21 U.S.C. § 321(ff)(2)(C); *see also* 62 Fed. Reg. 49862 (Sept. 23, 1997) ("[W]hether a product is a dietary supplement or a conventional food will depend on how it is labeled.  To be a dietary supplement, a product must bear the term 'dietary supplement' as part of its common or usual name.").  It must also be "intended for ingestion in tablet, capsule, powder, softgel, gelcap, or liquid form"; further, "in liquid form" means "in drops or similar small units of measure."  21 U.S.C. § 350(c)(1) (referenced in 21 U.S.C. § 321(ff)(2)(A)).  Plaintiffs' own allegations show that vitaminwater is not a "supplement," since they do not allege Defendants have ever used that term and *do* allege that vitaminwater is sold in "single-serve" 20-oz bottles.  *See* 2d Am. Compl. ¶ 31.  Plaintiffs' use of the term "dietary supplement" is simply a red herring.

Vitaminwater in fact is regulated as a "conventional food" to which Sections 343 and 343-1 apply.  Section 343 governs when a food may be deemed to be "misbranded." Two of its subsections, (q) and (r), are especially relevant here.  Both were added by the NLEA, which was enacted in 1990 to strengthen the FDA's authority to establish uniform nutrition labeling and  to define the circumstances under which manufacturers could make claims about nutrients in foods. *See* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.S.C.A.N. 3336, 3337.  Subsection (q), among other things, established the familiar "Nutrition Facts" panel that now appears on labels for many products (including vitaminwater).  *See* 21 U.S.C. § 343(q)(1)(A)-(D). Subsection (r) established requirements for claims about nutrition levels or the relationship between nutrients and a disease or health-related condition.  *See id.* § 343(r)(1) & (2).

Section 343-1 is a broad express-preemption provision, also enacted as part of the NLEA

in order to further the goal of national uniformity in labeling. *See Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting breadth of NLEA preemption clause), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007). Under that provision, "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce," any requirement "that is not identical to" the federal requirements in five specified areas. 21 U.S.C. § 343-1(a)(1)-(5).

The fifth of these areas is the only one at issue here. A state may not, directly or indirectly, establish a requirement "respecting any claim of the type described in section 343(r)(1) of this title [nutrition levels and health-related claims], made in the label or labeling of food that is not *identical* to the requirement of section 343(r) . . . ." *Id.* § 343-1(a)(5) (emphasis added). That is, federal requirements respecting such claims can be enforced via a state-law cause of action (even though there is no private right of action under the FDCA itself), but only if the action seeks to impose *identical* requirements; if it seeks to impose additional or different requirements, it is preempted. *See In re PepsiCo, Inc., Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2008) (holding that "identical" is interpreted to give wide scope to preemption (citing 21 C.F.R. § 100.1(c)(4)(i)-(ii))). Here, Plaintiffs' case is expressly preempted by the FDCA and its implementing regulations.[3]

FDA regulations distinguish between three different kinds of claims of the type described in Section 343(r)(1): express nutrient-content claims, implied nutrient-content claims, and "health claims." *See* 21 C.F.R. §§ 101.13 (defining "nutrient-content claims"), 101.14 (defining

---

[3] "[A]gency regulations with the force of law can pre-empt conflicting state requirements." *Wyeth v. Levine*, 129 S. Ct. 1187, 1200 (2009). FDA regulations are promulgated pursuant to federal statutory authority, and so may preempt state law. *See* 15 U.S.C. § 1454; H.R. Rep. No. 101-538, at 7 (1990); *Wachovia Bank, N.A.*, 414 F.3d at 314 (regulations pursuant to federal statutory authority "have no less pre-emptive effect than federal statutes").

"health claims").  Express preemption applies to all three, but the classification scheme should be clarified to avoid confusion.

- An <u>express nutrient-content claim</u> is a direct statement about the level or range of a nutrient in a food, such as "low sodium" or "100 calories."  *Id*. § 101.13(b)(1).

- An <u>implied nutrient-content claim</u> is "any claim that . . . suggests that [a] food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient . . . ."  *Id.* §§ 101.13(b)(2)(ii), 101.65(d).  This includes – but is not limited to – claims that include words like "healthy," "healthful," or the like.  *Id.* § 101.65(d).[4]

- A <u>health claim</u>, by contrast, specifically "characterizes the relationship of any substance to a disease or health-related condition."  *Id.* § 101.14(a).

If Defendants did represent vitaminwater in the manner Plaintiffs allege (whether as a "healthy beverage" as they previously alleged, or based on the implied healthiness of a "beneficial dietary supplement beverage" as they now allege), those representations would be <u>implied nutrient-content claims</u>.  In any event, all three of the above types of claims are governed by Section 343(r), and so express preemption applies to all of them.  *Id.* § 343-1(a)(5).  Therefore, Plaintiffs' attempt to hold Defendants liable under state law is preempted unless the state-law requirements they seek to impose are identical to those under federal law.

> **B.     Plaintiffs' action is expressly preempted because the requirements they would impose are not identical to the federal position.**

Plaintiffs contend that Defendants' representations are deceptive and misleading because vitaminwater contains sugar, and they demand (among other things) that additional disclosures and/or disclaimers about sugar be required on the product and related marketing materials. Compl. ¶ 6.  The FDA has already considered similar arguments and has rejected them.

---

[4] The FDA's example of an implied nutrient-content claim is "healthy, contains 3 grams (g) of fat."  21 C.F.R. § 101.13(b)(2)(ii).  This shows that use of a word like "healthy" does not mean a "health claim" is being made, but it also shows (since it is only an example) that use of such a word is not a requirement to find that a "implied nutrient-content" claim is being made.

In 1993, the FDA determined that only four kinds of nutrients – *not* including sugar – would be considered "disqualifying nutrients" that, if included in a product in certain quantities, would preclude health claims about that product. *See* 21 C.F.R. §§ 101.14 (a)(4) (defining "disqualifying nutrient levels" as "the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim"). After an extensive notice-and-comment procedure, the FDA expressly declined to make sugar a disqualifying nutrient for health-claim purposes. *See* 58 Fed. Reg. 2478, 2491 (Jan. 6, 1993) (setting forth final rule). The FDA determined that it "would not be appropriate to limit health claims on foods on the basis of added sugars," because there was "no sound basis" for doing so:

> FDA does not believe that a disqualifying level for sugars can presently be established . . . [T]he public health community has not identified a dietary level above which consumption of sugars has been demonstrated to increase the risk of a disease. Thus, the agency finds that there is no sound basis on which to establish the requested [Daily Recommended Value] for sugars. Accordingly, the agency is declining to set a disqualifying level for added sugars at this time.

*Id*. In 1994, the FDA reached essentially the same conclusion about nutrient-content claims. After a notice-and-comment procedure in which sugar and calories were expressly debated, it found no support for the concern that consumers would expect a product presented as healthy or beneficial to be necessarily low in calories or sugar:

> The agency has not been persuaded . . . that it is necessary to include a "low calorie" or "low sugar" criterion in the definition of "healthy" for the claim to be useful and not misleading to consumers. *The information provided in the comments did not show that consumers expect "healthy" to be a claim about the caloric content of the food.* Furthermore, the purpose of defining the term would be defeated if the term were defined so narrowly that it is appropriate only for people on weight-loss diets. Thus, the agency is not requiring that a food be "low calorie" or "low" in sugar to bear the term "healthy."

59 Fed. Reg. 24232, 24244 (May 10, 1994) (emphasis added); *see also* 21 C.F.R. §§ 101.13(h) (setting disclosure levels for nutrient-content claims; same nutrients as above); 101.65(d)(2)(i) & (ii) (setting levels precluding implied nutrient-content claims involving the term "healthy"). The

FDA has maintained this position despite subsequent attempts to have sugar added as a disqualifying nutrient, including at least one attempt by the Center for Science in the Public Interest ("CSPI"), in which CSPI raised the very concern it now raises as co-counsel here.[5]

As a matter of federal law, therefore, the presence of sugar in a food is not a disqualifying nutrient and does not prohibit nutrient-content claims with regard to other substances in the food (like vitamins) or as to the food generally. Defendants' actions are consistent with FDA requirements for nutrient-content claims relating to foods containing sugar. Plaintiffs may not use state tort law to impose a contrary result, as that would create a requirement not identical to that imposed by federal regulations. *See PepsiCo,* 588 F. Supp. 2d at 532-39 (finding express preemption of state-law consumer-protection action involving source of bottled water); *New York State Rest. Ass'n v. New York City Bd. of Health*, 509 F. Supp. 2d 351, 362-63 (S.D.N.Y. 2007) (finding express preemption of city regulation involving calorie-content statements on menus as nutrient-content claims); *Mills*, 441 F. Supp. 2d at 106-09 (finding express preemption of state-law tort claims alleging failure to warn milk-drinkers about risk of lactose intolerance).

In short, the FDA has expressly refused to make the sorts of changes that Plaintiffs demand, and as other courts have recognized in similar situations, state tort law may not be used to second-guess the FDA's regulatory decisions. Plaintiffs' action is expressly preempted.

### C. Plaintiffs' action is barred by implied conflict preemption.

For similar reasons, Plaintiffs' action is impliedly preempted because it poses an obstacle to the federal regulatory scheme with regard to claims about food containing sugar. In *Geier v. American Honda Motor Co.*, the leading case on implied conflict preemption, the Court held that

---

[5] *See CSPI's Petition for Proposed Rulemaking* (Aug. 3, 1999) available at CSPI's website, *http://www.cspinet.org/reports/sugar/sugarpet1.pdf* (seeking daily reference value and additional labeling for "added sugars" in soft drinks and other products, and to make corresponding changes to nutrient-content and health-claim regulations).

federal agency policy regarding vehicle-restraint systems preempted a state-law action that posed an obstacle to that policy.  529 U.S. 861, 886 (2000).  The same principle applies here.[6]

In *Geier*, the plaintiff alleged that the manufacturer had been negligent in failing to equip a car with a driver's-side airbag even though federal regulations did not require this.  *Id*. at 865. The Department of Transportation had required passive-restraint devices, but did not specifically require airbags, choosing instead to allow manufacturers to phase in a variety of such devices. *Id.*  The issue was whether petitioner's state-law action – which, if successful, would have forced manufacturers to use driver's-side airbags in order to avoid liability – was preempted by the DOT's regulation.  *Id*.  The Court held that the plaintiff's action was preempted because it posed an obstacle to the accomplishment of the agency's objectives.  *Id*. at 881.

In reaching its decision, the Court conducted a detailed analysis of the federal standard at issue and reviewed the DOT's comments accompanying the regulation.  *Id*.  The comments showed that (as with the FDA's decision rejecting sugar as a disqualifying nutrient) the DOT had received and expressly rejected proposals similar to the plaintiff's basic position.  *Id*. at 875, 878 (internal citations omitted).  Upon reviewing the plaintiff's claims, the Court reasoned that a state-law claim that required manufacturers to install airbags would interfere with the DOT's policy choice to permit a variety of passive restraint devices to be phased in.  *Id*. at 881.  Thus, the rule of law promoted by the petitioner's state-law claims would have posed an obstacle to the accomplishment and execution of the federal objectives.  *Id*.

The rule articulated in *Geier* remains the law.  The Supreme Court recently recognized that federal agencies "have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an

---

[6] *Geier* also held that the existence of an express-preemption provision or saving clause in a statute "does not bar the ordinary working of conflict pre-emption principles."  529 U.S. at 869.

'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth v. Levine*, 129 S. Ct. at 1201 (citing *Geier*, 529 U.S. at 883 (internal citations omitted)). The *Wyeth* Court chose not to defer to the FDA on the facts of that case largely because the agency position was not based on "a specific agency regulation bearing the force of law" but rather on a statement made in a preamble to a regulation, and because it had taken this position without providing notice or opportunity for comment. *See id.* at 1201-03 (distinguishing *Geier* on that basis). The Third Circuit has similarly refused in two recent cases to apply conflict preemption where the circumstances showed a lack of "fairness and deliberation" in formulating the policy at issue. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 341-42 (3d Cir. 2009); *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 249-51 (3d Cir. 2008). But here, *Geier* controls, because in formulating its policy as to claims about products containing sugar, the FDA did engage in the kind of careful balancing and analysis that is entitled to deference. *See, e.g.*, 58 Fed. Reg. 2478, 2491; 59 Fed. Reg. 24232, 24244. *Wyeth* is also distinguishable because in that case "the FDA did not consider and reject" the course of action being asserted by the plaintiff. *Wyeth*, 129 S. Ct. at 1211 n.14 (distinguishing *Geier* on this basis). Here, it did.

Plaintiffs' demand presents an obstacle to federal policy. Their state-law claims, if successful, would usurp the FDA's authority by effectively making sugar a "disqualifier" for health and/or nutrient-content claims. If Plaintiffs prevailed, the FDA's rejection of requests to establish sugar as a disqualifying nutrient would be overridden, and no manufacturer would be able to make such claims as to any product with added sugar. This would frustrate Congress's objective of ensuring appropriate and uniform labeling by strengthening the FDA's authority over labeling and the circumstances under which health-related claims can be made. The FDA specifically considered whether sugar content should preclude the sort of claims that Plaintiffs

allege Defendants are making, and ultimately decided it should not.  As a result, Plaintiffs' action

is preempted.  *See Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *4 (S.D. Cal.

Apr. 30, 2007) (holding that state-law claims alleging that KFC made health claims about food

containing trans fat were impliedly preempted even though express preemption did not apply).

### D.    Alternatively, this Court should defer to the FDA's primary jurisdiction.

Even if neither preemption argument applied, the Court should still dismiss under the

doctrine of primary jurisdiction.  This doctrine applies where Congress has entrusted certain

subject matter to an agency and the action requires the resolution of issues within that agency's

"special competence."  *Mathirampuzha v. Potter*, 548 F.3d 70, 83 (2d Cir. 2008) (quoting *United

States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)); *Gen. Elec. Co. v. MV Nedlloyd*, 817 F.2d

1022, 1026 (2d Cir. 1987).  Deferring to that agency takes advantage of its expertise and also

promotes uniformity.  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006).

The Second Circuit has identified four factors relevant to the application of the doctrine:

(1) whether the question at issue is within the conventional experience of judges
or whether it involves technical or policy considerations within the agency's
particular field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*Ellis*, 442 F.3d at 82-83, 90; *see also Town of Riverhead v. CSC Acquisition-NY, Inc.

(Cablevision)*, 618 F. Supp. 2d 256, 270 (E.D.N.Y. 2009) (applying the four factors).  Here, all

four factors support application of the doctrine.

First, the primary question at issue is not whether some particular representation is false,

something within the conventional experience of judges.  Rather, despite Plaintiffs' current

attempt to downplay it, the primary question they present is whether the presence of sugar

necessarily means a product cannot be even implicitly marketed as healthy or beneficial.  The vagueness of Plaintiffs' allegations and their ever-changing descriptions of the alleged claims (*i.e.*, that the product is presented as a "healthy beverage" or a "beneficial dietary supplement beverage") tend to show that their case is not about a particular claim but rather is intended to send a message of concern about the effects of sugar in an overall diet.  This is just the sort of policy consideration that is squarely within the special competence and expertise of the FDA.  The FDA has extensive authority over food labeling in general, and given CSPI's prior FDA petition, Plaintiffs can hardly deny that disclosures regarding sugar content are within the FDA's jurisdiction and expertise.  Whether the public interest requires a change in the rules governing such disclosures should be left up to the FDA.  *See Ellis*, 443 F.3d at 84 ("the public interest is not a simple fact, easily determined by courts" (quoting *Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 824 (1973))); *see also*, *e.g.*, *Henley v. Food and Drug Admin.*, 77 F.3d 616, 621 (2d Cir. 1996) (stating in drug-warning case that the FDA has the "requisite know-how" to sift through studies and decide whether a warning is necessary); *Bernhardt v. Pfizer, Inc.,* Nos. 00 Civ. 4042, 00 Civ. 4379, 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22, 2000) (deferring plaintiffs' request for warning notice until the FDA was able to act).

Second, and for similar reasons, the relief Plaintiffs seek is within the FDA's discretion to grant, should it ever agree with them.  *See Ellis*, 443 F.3d at 86 (deferring to FCC's broad discretion and authority in licensing matters).  That also supports deference to its jurisdiction.

Third, there is a substantial risk of inconsistent rulings.  *Ellis*, 443 F.3d at 87-89.  Of course, Plaintiffs are here because they seek a result that is not consistent with the FDA's prior decision to leave sugar off the list of disqualifying nutrients.  Even if the agency were to reverse itself in general, there are many different ways it could proceed if it chose to require further

disclosures or forbid certain statements. It might well disagree with whatever remedy this Court would choose to impose, posing a risk of inconsistent rulings and obligations.

Finally, as noted there has been at least one prior application asking the FDA to make sugar a disqualifying nutrient. "If prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate." *Ellis*, 443 F.3d at 89. In a similar context, a New York court applied the doctrine where the FDA had previously considered the use of an artificial sweetener (Aspartame) in soft drinks but declined to require the disclosures that the plaintiffs demanded. *Heller v. Coca-Cola Co.*, 646 N.Y.S.2d 524, 525-26 (App. Div. 1996). For this reason as well, the complaint should be dismissed.[7]

## II.  Plaintiffs Do Not Adequately Plead Any of Their Causes of Action.

Plaintiffs' complaint also does not comply with Rules 8 and 9(b). They offer no details as to how they might have been misled or otherwise harmed by the practices they allege. (To the contrary, they concede that the products contain the stated vitamins, and that the label accurately shows the sugar content.) For these reasons as well, the complaint should be dismissed.

### A.  The applicable legal standards under Rules 8 and 9(b).

The Supreme Court has recently made clear that conclusory allegations do not satisfy basic federal pleading requirements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A pleading that offers "labels and conclusions," "a formulaic

---

[7] Plaintiffs' claims also implicate a federal interest embodied in the Dormant Commerce Clause. Even a nondiscriminatory law with only "incidental" effects on interstate commerce may be unconstitutional if the burden is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Here, the burden on Defendants would be enormous, and Plaintiffs would impose it, apparently, in order to inform consumers that if their overall sugar consumption increases, their weight may as well. Not only has that been well-known for some time, the product's sugar content is already shown on its label, as the FDA requires. The burden of additional labeling requirements would be clearly excessive in relation to the putative local benefits, if any, of telling the public something it already knows.

recitation of the elements," or "assertions devoid of further factual enhancement" cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

In *Iqbal*, the Court described *Twombly* as having been based on two working principles. First, a court is not bound to accept as true any legal conclusion even if couched as a factual allegation. *Iqbal*, 129 S. Ct. at 1949. (Or, put another way, a court need not accept as true a purported factual allegation that simply masks a conclusory legal statement.) A court considering a motion to dismiss can therefore begin by identifying allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950.

Second, any remaining factual allegations that are well-pleaded must together be sufficient, taken as true, to "state a claim for relief that is plausible on its face." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim has "facial plausibility" if the plaintiff has provided sufficient factual content that a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Plausibility" requires more than "a sheer possibility that a defendant has acted unlawfully" or facts merely "consistent with" that conclusion. *Id*.; *see also C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 359-60 (E.D.N.Y. 2008) (requiring "facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, slip op. at 9 (S.D.N.Y. Sept. 30, 2009) (also applying two-pronged approach of *Iqbal*).

Thus, the normal Rule 8 standard requires a plaintiff to present well-pleaded facts actually "showing that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 does not require hyper-technical pleading, but neither does it "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950.

16

More is required of a plaintiff who alleges fraud, because Rule 9(b) requires that the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Here, the heightened standard applies to Plaintiffs' first through sixth, ninth, and twelfth causes of action. There is no question that Rule 9(b) applies to the twelfth cause of action for deceit and/or misrepresentation. *See, e.g.*, *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, No. CV-07-0880, 2007 WL 2743500, at *6 n.10 (E.D.N.Y. Sept. 18, 2007) (intentional misrepresentation claims; citing *Chen v. U.S.*, 854 F.2d 622, 628 (2d Cir. 1988)); *Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.*, No. 07-0608, 2009 WL 1033177, at *7 n.9 (E.D.N.Y. Apr. 16, 2009) (negligent misrepresentation claims); *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (negligent and intentional misrepresentation claims). It also applies to the first through sixth causes of action, which allege violation of California consumer protection laws. As California federal courts have repeatedly held, Rule 9(b) applies to any causes of action under those statutes where they allege fraud, even if (as here) they may be labeled as something else. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997-98 (N.D. Cal. 2007). For example, California's UCL allows claims for "unlawful" and "unfair" business practices, but if the "unlawful" or "unfair" practice is deception, as Plaintiffs allege here, Rule 9(b) still applies. *Id*. Finally, the heightened standard also applies to the ninth cause of action, brought under the New Jersey Consumer Fraud Act. *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (date, place, and time of fraud must be pleaded as well as who said what to whom and the general content).

The heightened standard does not apply to Plaintiff's seventh, eighth, tenth and eleventh causes of action. The Second Circuit has held that causes of action brought under the New York

General Business Law ("GBL") are not subject to Rule 9(b).[8]  *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008) (citing *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511-12 (2d Cir. 2005)) (GBL 349); *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, No. 00 CIV 3367, 2001 WL 1607039, at *12 (S.D.N.Y. Dec. 17, 2001) (GBL 350).  The tenth and eleventh causes of action are warranty claims, which are also not subject to Rule 9(b)'s particularity requirement, although the relevant state laws require some detail.[9]

Whether or not Rule 9(b) applies to any particular cause of action, however, the complaint still must comply with the basic Rule 8 standard.  In *Iqbal*, the plaintiff argued that a conclusory allegation of discriminatory intent was enough because Rule 9(b) permits intent to be alleged "generally."  *Iqbal*, 129 S. Ct. at 1954.  But the Court emphasized that conclusory allegations fail under Rule 8 to begin with:

> Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8 . . . And Rule 8 does not empower [plaintiff] to plead the bare elements of his cause of action, affix the label "general allegation," and expect his claim to survive a motion to dismiss.

*Id.* (citations omitted).  Here, similarly, even if Rule 9(b) does not apply to one or more of Plaintiffs' causes of action, that would not prevent dismissal if they are not pleaded in accordance with Rule 8.  As demonstrated below, they do not meet either standard.

### B.   Plaintiffs do not plead fraud (causes of action one through six, nine, and twelve) with particularity.

Plaintiffs have alleged eight causes of action based on fraud, all of which require them to plead and prove, among other things, that the defendant made a material misrepresentation or

---

[8] GBL plaintiffs still must, however, adequately plead actual injuries or damages as a result of defendants' conduct.  *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9 (N.Y. App. Div. 2002).

[9] The thirteenth cause of action, for unjust enrichment, is derivative and so the applicable standard would vary accordingly (*i.e.*, an allegation of unjust enrichment resulting from fraud should be subject to Rule 9(b)).

omission of fact to the plaintiff, and that the plaintiff's injury was caused by the representation.[10]

Here, Plaintiffs have not adequately pleaded either of these elements.

### 1. Plaintiffs do not adequately plead the circumstances of the alleged misrepresentations or omissions.

While Plaintiffs' complaint (1) alleges in conclusory fashion that the named plaintiffs were deceived by something, and (2) also alleges that various things are deceptive, the two strands never intersect to provide details of how any named plaintiff was actually deceived. Especially since Rule 9(b) requires particularity as to these claims, this is not sufficient. Representations not plainly tied to any of the plaintiffs are not adequately pleaded. *See Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097, 2007 WL 2743490 at *4, 8 (E.D.N.Y. Sept. 17, 2007) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006)); *Lum*, 361 F.3d at 224 (plaintiffs "must allege who made a misrepresentation to whom . . . ."); *Kirtley v. Wadekar*, No. 05-5383, 2006 WL 2482939, at *3 (D.N.J. Aug. 25, 2006) (requiring allegations of "exactly who bought exactly what product when, relying on what false representations made when by whom").

The two strands of the complaint are generally set forth in Paragraphs 9-16, which discuss the named plaintiffs, and Paragraphs 19-29, which contain the allegations about what

---

[10]   *See Luxury Transp. Mgmt. Inc.*, 2009 WL 1033177, at *7 (elements of negligent misrepresentation under New York law); *WAWA Tours, Inc.*, 2007 WL 2743500, at *6 (elements of intentional misrepresentation under New York law); *Sugawara v. PepsiCo, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *4 (E.D. Cal. May 21, 2009) (intentional misrepresentation under California law); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *12 (N.D. Cal. June 5, 2009) (negligent misrepresentation under California law); *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (California UCL and CLRA claims); *Alexander v. Cigna Corp.*, 991 F. Supp. 427, 440 (D.N.J. 1998) (negligent misrepresentation under New Jersey law); *Whittingham v. Amended Mortg. Elec. Registration Services, Inc.*, No. 06-3016, 2007 WL 1456196, at *14 (D.N.J. May 15, 2007) (intentional misrepresentation under New Jersey law); *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (N.J. Super. Ct. App. Div. 2003) (Consumer Fraud Act).

19

was allegedly deceptive.  In the first strand, three of the named plaintiffs (Antonov, Petty, and Valentine) specifically allege only that they "purchased VitaminWater [sic] during the Class Period."  2d Am. Compl. ¶¶ 10, 13, 14.  They say nothing about what flavors they bought, when during the four-year period they made their purchases, where they made them, from whom, or why.  The other plaintiffs do state the flavor(s) of vitaminwater that they bought, but provide virtually no other details and, for example, can do no better than to say the purchases were sometime during a one- or two-year period.  *Id.* ¶¶ 9, 11, 12.

The named plaintiffs are never mentioned in the second strand, which merely sets forth generally how Defendants are alleged to have deceived "consumers."  *See, e.g., id.* ¶¶ 19, 23, 24, 26.  No facts are pleaded showing any connection to a named plaintiff.  For example, Plaintiffs allege that the "defense" flavor is represented as "healthy" because of its nutrient content, based on statements made on that particular label.  *Id.* ¶¶ 27, 28.  But none of them allege they bought that flavor, let alone that they did so because of those statements.  Plaintiffs also quote claims on the labels of six flavors (¶ 28), but only James Koh alleges he bought one of those ("rescue"), and he does not allege he saw the label or provide any details.  *Id.* ¶¶ 11, 15, 28.  Ackerman and Pelkey recall buying two particular flavors each, but there is no allegation at all that they did so because of anything particular to those flavor labels.  *Id.* ¶¶ 9, 12, 27, 28.  Again, there is no connection alleged between any specific misrepresentation and any of the named plaintiffs.

The closest the complaint comes is in Paragraph 15, alleging that "[e]ach Plaintiff relied" on representations "including, but not limited to, 'vitamins + water = all you need'[11] and the name of the product itself – 'vitaminwater' – in deciding to purchase vitaminwater."  That is still

---

[11] Plaintiffs do not appear to be aware that this phrase does not appear on the labels for all vitaminwater flavors (for example, it is not on the "rescue" label), and so it is impossible for each of them to have relied on a set of representations that included it.

far from sufficient to satisfy Rule 9(b).  *See, e.g.*, *Lum*, 361 F.3d at 224 (requiring date, place, time, and who said what to whom).  But even if it were, here Plaintiffs are alleging nothing more than "puffery," which is not actionable.  *See, e.g.*, *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405-06 (E.D.N.Y. 2004) (puffery not actionable under GBL § 349; citing *Lacoff v. Buena Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 191 (N.Y. Sup. Ct. 2000)); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely"); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) (actionable statements must be verifiable factual representations); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 503-504 (D.N.J. 2006) (mere "puffing" does not have capacity to mislead and cannot support CFA claim).  Plaintiffs are not alleging that Defendants claim, for example, that vitaminwater contains "no sugar," is "low in sugar" or contains "less than X grams of sugar."  Their allegations about brand names like "vitaminwater," the one-word flavor names ("rescue"), slogans like "vitamins + water = all you need," and sayings like "healthy as a horse" describe only puffery.

Plaintiffs do not allege that the flavors lack the nutrients Defendants say they contain – indeed, Plaintiffs concede that Defendants do add vitamins and nutrients to vitaminwater.  *Id.* ¶ 19.  They do not allege that anything in the product is harmful.  As for sugar, Plaintiffs concede that the label on every bottle bears the true facts about the amount of sugar per serving (as the FDA requires), and Plaintiffs' own allegations show that vitaminwater in fact has just half as much sugar per ounce as the soft drinks to which they compare it.  And no reasonable consumer could possibly believe that vitamins and water are literally "all they need" to survive, or all that is "in your hand" when holding a bottle that discloses the presence of sugar.  *Id.* ¶¶ 25, 26.

In short, Plaintiffs allege nothing that could deceive a reasonable consumer, let alone allege with the necessary particularity that any such statement is connected to one of them.  This is not enough to meet Plaintiffs' burden under Rule 8, let alone Rule 9(b).  *See, e.g.*, *Sugawara*, 2009 WL 1439115, at *4 (dismissing partly because plaintiff did not adequately identify allegedly false statements); *Lyons v. Coxcom, Inc.*, No. 08-CV-02047, 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009) (dismissing CLRA claim where plaintiff did not allege reliance on particular advertisement); *Stickrath*, 527 F. Supp. 2d at 997-1000 (dismissing UCL and CLRA claims under Rule 9(b)); *Hoey*, 515 F. Supp. 2d at 1104 (dismissing where plaintiff failed to identify partial representation that was allegedly misleading); *see also Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (dismissing GBL 349 claims because plaintiffs failed to show defendants committed a deceptive act); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-cv-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008) (dismissing class action where named plaintiff failed to state alleged misrepresentation with specificity).

Based on some of their allegations, in particular Paragraph Six, Plaintiffs are likely to rely on a Ninth Circuit case holding that certain packaging features in combination might be likely to deceive a reasonable consumer.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936 (9th Cir. 2008).  That case is distinguishable.  There, the product was called "fruit juice snacks" and bore pictures of actual fruit on the label, though the product contained no fruit juice from any of the pictured fruits.  *Id.*  The implication of the pictures was therefore directly contrary to the truth as shown on the ingredient list.  *Id*. at 939.  The court also pointed to an apparently false claim that the product was made with "other all natural ingredients."  *Id*. at 936.  The court held that the alleged direct contradictions were enough to state a claim even though the box also contained

the FDA ingredient label.[12]  *Id.* at 939-40.

Here, by contrast, Plaintiffs have identified no false imagery or representation, and the context is entirely different.  They have identified no "apparently false" statements such as "sugar-free" or "low in sugar," and they concede that the items on the label are actually in the product, as is the truth about sugar content.  In *Williams*, the court's concern appeared to be that the ingredient list not be allowed to serve as a "shield" for *directly* contradictory information on the packaging.  *Id*. at 940.  But that is not Plaintiffs' allegation here.  They allege that the ingredient list is inconsistent only with their purported implied claims (the "general message") that they read into every vitaminwater label, not that there is any direct contradiction that would mislead consumers.  *Williams* is distinguishable and does not support Plaintiffs' position.

> **2.      Plaintiffs do not adequately plead reliance, causation, or injury.**

Plaintiffs' complaint offers much more detail about how eating too much sugar in an overall diet might contribute to obesity than it does about how they themselves were allegedly harmed by any claims made about the benefits or healthiness of vitaminwater.  Even if Plaintiffs had adequately pleaded the circumstances of the alleged fraud <u>and</u> actually connected any of the alleged claims or statements to a named plaintiff, they do not adequately plead that they were actually deceived or injured.  The complaint should be dismissed for that reason as well.

Ackerman, for example, alleges that she bought as many as 100 bottles of vitaminwater from October 2007 to July 2008.  2d Am. Compl. ¶ 9.  She bought these at various drug stores in New York, including Duane Reade.  *Id*.  Koh alleges he bought a total of about 60 bottles of vitaminwater from October 2007 to July 2008.  *Id.* ¶ 11.  He bought them "from several 7-Eleven stores" in San Francisco and from an unidentified deli.  *Id*.  Antonov alleges he bought several

---

[12]  The court stated that compliance with FDA regulations "may be relevant" to an FDCA preemption argument, but held that Gerber had waived the argument.  552 F.3d at 937, 940 n.4.

dozen bottles of vitaminwater per year "during the Class Period." *Id.* ¶ 10.  He bought them

from "various convenience stores" in San Francisco. *Id.*  Likewise, Pelkey alleges he "regularly"

bought vitaminwater from 2006 to 2008.  *Id.* ¶ 12.  He bought them from unidentified grocery

and convenience stores in California.  *Id.*  Petty and Valentine can apparently recall only that

they "purchased vitaminwater" at least once during the four-year class period.  *Id*. ¶ 12, 14.   All

Plaintiffs assert the same conclusory allegations that had they only known that "the statements

they relied upon" were false, they would not have bought the product.  *Id*. ¶ 15.

As many courts have held, this type of conclusory allegation of injury is insufficient.

*WAWA Tours*, 2007 WL 2743500, at *6; *see also S. Ill. Laborers' Fund,* slip op. at 9 (holding

plaintiffs failed to adequately allege causation as to consumer-protection claims); *Small v.

Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (N.Y. 1999) (proof that "material deceptive act" caused

"actual" harm is required); *Wright v. General Mills, Inc.*, No. 3-08-cv-01532, 2009 WL 3247148,

*4-6 (S.D. Cal. Sept. 30, 2009) (dismissing UCL and CLRA claims for failure to adequately

allege reliance and injury); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946-49 (S.D.

Cal. 2007) (same); *Torres-Hernandez*, 2008 WL 5381227, at *7 (holding conclusory language

not sufficient to plead causal relationship under New Jersey law).

Again, the complaint quotes a number of statements that Plaintiffs claim appear on

vitaminwater labels, but Plaintiffs do not allege they bought these specific flavors or that they

actually relied on any of those statements.  They could not have relied on or been harmed by

misrepresentations on labels for a product they did not buy.  *See Oestreicher*, 544 F. Supp. 2d at

973 n.7 ("Statements not relating to the machine bought by plaintiff could not possibly have

caused him to rely on [their] contents.").  In another California case, the court dismissed UCL

and CLRA claims even though (unlike here) the plaintiffs had "meticulously described" the

allegedly misleading advertisements, because they never actually alleged that they themselves had seen or relied on those advertisements. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005). Likewise, in *Pacholec v. Home Depot USA, Inc.*, the court dismissed the plaintiffs' CFA claims because the named plaintiff failed to adequately allege the specifics of his transaction, including what was or was not said to him. No. 06 CV 827 PGS, 2006 WL 2792788, at *2 (D.N.J. Sept. 26, 2006) (holding complaint must set forth plaintiff's "exact grounds for relief and the specific conduct" at issue). As cases like *Laster* and *Pacholec* make clear, purchase allegations plus a detailed list of representations that Plaintiffs or class members *might* have relied on are not sufficient to allege reliance. Indeed, such a "sparse allegation of injury-in-fact" is not even sufficient to meet the Rule 8 standard, let alone the requirements of Rule 9(b). *Wright*, 2009 WL 3247148, at *5.

Further, Plaintiffs' own allegations undercut their claims. They allege that they would not have bought the product had they known it was "packed full of sugar." 2d Am. Compl. ¶ 19. But that directly conflicts with their allegations that, having once bought – and presumably tasted – the beverage they now characterize as "loaded with sugar," they kept buying it. Indeed, by their own estimates, most of them bought dozens or hundreds more bottles. *Id.* Thus, Plaintiffs' own allegations demonstrate that sugar content was not a motivating factor in their purchases. It is noteworthy that they do not plead any facts showing why they *stopped* buying the product when they did, though presumably that would have been at the point when each of them finally learned "the truth" about it. Their failure to allege (at all, let alone with particularity) what they learned, or when and how they learned it, is further evidence that neither misrepresentation nor concealment caused them to buy vitaminwater in the first place.

Therefore, all Plaintiffs' fraud-based claims fail and should be dismissed.

25

### C.    Plaintiffs do not adequately plead GBL and warranty claims under Rule 8.

The remaining claims fail for much the same reason that the fraud-based claims fail – they are not adequately pleaded, even under the normal pleading standards of Rule 8.

#### 1.    Plaintiffs' GBL claims (causes of action seven and eight) are conclusory and fail to allege actual injury.

As argued above, Plaintiffs' deceptive-practice allegations do not adequately state a claim even under normal Rule 8 pleading standards.  A court is not bound to accept conclusory or speculative allegations as true, and remaining well-pleaded allegations must be sufficient to "state a claim for relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949, 1950.  A claim has "facial plausibility" only if it has sufficient factual content to allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also C.A. Inc.*, 579 F. Supp. 2d at 359-60 (requiring facts "not merely consistent with the conclusion [of liability], but which actively and plausibly suggest that conclusion").

The closest Plaintiffs come to identifying any allegedly deceptive claim or statement they actually encountered (other than puffery) is their bare allegation that "[e]ach Plaintiff relied on Defendants' false, misleading, and deceptive written misrepresentations that vitaminwater is a beneficial dietary supplement beverage."  2d Am. Compl. ¶ 15.  Their allegations about what other "consumers" may have encountered are even more generic.  Such allegations need not be taken as true. *See Wright*, 2009 WL 3247148, at *5 (holding allegations "that members of the public were likely to have been deceived and likely made their purchases on the basis that '100% Natural' would not include" high-fructose corn syrup did not meet *Twombly* requirements).  Nor do they describe plausible claims.  The premise of the entire action is that reasonable consumers would expect a product presented as "healthy" or "beneficial" to not contain sugar, because of sugar's possible contribution to obesity.  But the FDA itself found no reason to believe "that

consumers expect 'healthy' to be a claim about the caloric content of food." 59 Fed. Reg. 24232, 24244.  Even if that conclusion did not have preemptive effect, it shows the implausibility of Plaintiffs' claims that consumers are being misled about Defendants' product, especially as to a fact that is disclosed on the label.  *See Taylor v. BMG Direct Marketing, Inc.*, 749 N.Y.S.2d 31, 32 (App. Div. 2002) (dismissing Section 349 claim where allegedly excessive charges were disclosed prior to sale); *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363-64 (App. Div. 1994) (same).

Further, Plaintiffs have failed to allege an "actual injury" as required by the GBL. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) ("actual injury" required); *Bildstein v. Mastercard Int'l Inc.*, No. 03 Civ. 98261, 2005 WL 1324972, at *2 (S.D.N.Y. June 6, 2005) (same).  Merely alleging a deceptive act is not sufficient; the claimed deception cannot be the only injury.  *See, e.g.*, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007).  The New York Court of Appeals has rejected the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL § 349]."  *Small*, 94 N.Y.2d at 56.  The court considered such a theory "legally flawed," and was not persuaded that the plaintiffs had been prevented from making "free and informed choices as consumers" as a result of the alleged deceptive acts.  *Id*.  That flawed theory is the same one Plaintiffs assert here.  *See, e.g.*, 2d Am. Compl. ¶ 15.  For that reason as well, the GBL claims fail.

        **2.**    **Plaintiffs have not adequately alleged an express warranty (tenth cause of action) or their reliance on any such warranty.**

To state a claim for breach of an express warranty, a plaintiff must allege the existence of an express promise or representation, and actual reliance on it.  *Horowitz v. Stryker Corp.*, No.

CV-07-1572, 2009 WL 436406, at *11 (E.D.N.Y. Feb. 20, 2009) (citing *CBS*, *Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 502-503 (1990)); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 230 (S.D.N.Y. 2003) (holding warranty claims failed because plaintiff did not allege facts showing that the actionable representation was the reason for the purchase); *Stearns*, 2009 WL 1635931, at *4 (same elements under California law); *Blennis v. Hewlett-Packard Co.*, No. C 07-00333, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008) (dismissing express warranty claim because plaintiffs did not identify specific warranty on which they relied); *Simmons v. Stryker Corp.*, No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) (similar holding under New Jersey law).

Warranties, which must be specifically alleged, are distinguished from statements of opinion, conjecture, or puffery, which are not actionable.  8 Williston on Contracts § 954, at 357. Accordingly, claims based on puffery are routinely dismissed.  *See, e.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *15 (D.N.J. Sept. 11, 2009) (dismissing claim because puffery was not enough to create an express warranty); *Bologna v. Allstate Ins.*, 138 F. Supp. 2d 310, 323-24 (E.D.N.Y. 2001) (holding "You're in Good Hands With Allstate" did not create express warranty); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (dismissing warranty claim because generalized and exaggerated claims are puffery).

Here, Plaintiffs allege only that "Defendants provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that their vitaminwater beverages were beneficial and had particular beneficial characteristics as set forth above."  2d Am. Compl. ¶ 128.  Again, Plaintiffs fail to allege facts showing that any representation contained the word "beneficial," or was otherwise specific enough to constitute a

warranty promise, and so have failed to comply with Rule 8.  They allege that vitaminwater is not "beneficial" because it contains sugar, *id*. ¶ 129, but since they concede this fact is disclosed on the product's label, it is clear that no express warranty in that regard was either made or breached.  *See In re Samsung Electronics Am., Inc. Blu-Ray Class Action Litig.*, No. 08-0663, 2008 WL 5451024, at *2-5 (D.N.J. Dec. 31, 2008) (holding that express warranty claim failed where package contained disclaimer negating alleged promise).

Even if such statements could create a warranty, Plaintiffs have not alleged sufficient facts to render it plausible that they actually relied on any warranty promise.  *See, e.g.*, *Horowitz*, 2009 WL 436406, at *11 (dismissing breach of warranty claim when plaintiff did not allege she relied on defendants' alleged representations); *Williams*, 255 F. Supp. 2d at 230 (dismissing express warranty claim because complaint failed to allege any plaintiffs heard, saw or relied on representations before using product).  They never allege what promise, if any, motivated them personally to buy vitaminwater.  Therefore, the express warranty claim should be dismissed.

### 3.      Plaintiffs' implied warranty claim (eleventh cause of action) also fails.

Previously, Plaintiffs argued that Defendants had breached the implied warranty of fitness for a particular purpose, but alleged no facts to support this claim and now have dropped it altogether.  Their current implied warranty of merchantability claim fails as well.

Under the law of all three jurisdictions, Plaintiffs must demonstrate that the product was not fit for the ordinary purposes for which such goods are used.  *Horowitz*, 2009 WL 436406, at *10; *Tietsworth v. Sears, Roebuck and Co.*, No. C09-00288, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009); *In re Toshiba*, 2009 WL 2940081, at *16.  But this does not mean a product must "fulfill a 'buyer's every expectation.'"  *Viscusi v. Proctor & Gamble*, No. 05-CV-01528, 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007).  It "does not impose a general requirement that goods precisely fulfill the expectation of the buyer."  *Sugawara*, 2009 WL 1439115, at *5

(quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)).

Instead, it simply requires a "minimum level of quality." *Id.* Plaintiffs certainly have pleaded no

facts showing that vitaminwater did not meet that standard. Indeed, their merchantability claim

is entirely generic and at best a conclusory statement that vitaminwater is not "fit" because it

contains sugar. 2d Am. Compl. ¶ 132. The practical effect of Plaintiffs' claims would be that

any food having more than some minimal (and arbitrary) calorie content would automatically be

unfit for the ordinary purposes for which such foods are intended, an absurd result.

Plaintiffs also do not adequately allege damage, injury and causation, for the reasons set

forth above. *See, e.g., Stearns*, 2009 WL 1635931, at *8 (dismissing merchantability claims

because Plaintiff failed to plead cognizable harm); *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d

579, 584 (S.D.N.Y. 2008) (claim for breach of implied warranty requires plaintiff to establish

causation); *In re Samsung Blu-Ray Litig.*, 2008 WL 5451024, at *6 (dismissing implied warranty

claim that simply recast express warranty claim and was similarly barred by disclaimer); *Larsen

v. A.C. Carpenter, Inc*., 620 F. Supp. 1084, 1132 (E.D.N.Y. 1985) (injured party bears burden of

proving causation when seeking damages for breach of implied warranty).

### D.     The unjust enrichment claim (thirteenth cause of action) also fails.

Unjust enrichment "is an equitable remedy" that "prevents one party from retaining, at

the expense of another, a benefit to which he is not entitled." *U.S. v. Bedford Assocs.*, 713 F.2d

895, 902, 903 (2d Cir. 1983). It is derivative of the other claims being asserted. *See Hoey*, 515

F. Supp. 2d at 1106; *Nat'l Amusements, Inc. v. New Jersey Turnpike Auth.*, 261 N.J. Super. 468,

478 (N.J. Sup. App. Div. 1992) (unjust enrichment is an equitable remedy, "not an independent

theory of liability"). Here, Plaintiffs' unjust enrichment claim must be dismissed because the

underlying claims fail as discussed above. That is, since Defendants have done nothing unjust,

they have not been unjustly enriched.

## CONCLUSION

Plaintiffs' lawsuit is aimed at furthering a policy goal, not addressing an existing case or controversy involving Plaintiffs themselves.  The goal they are pursuing is one that the federal agency with authority in this area has already considered and rejected, and the federal policy in this area should be respected either by applying federal preemption or by deferring to the FDA's primary jurisdiction.  Plaintiffs' claims are also conclusory allegations that fail to state a claim under Rule 8 as construed by the Supreme Court in *Iqbal*, let alone Rule 9(b)'s command of pleading with particularity.  For these reasons, the Court should dismiss Plaintiffs' complaint. Under the circumstances, in which Plaintiffs have already had multiple opportunities to attempt to state claims and have already altered their claims after viewing three of Defendants' motions to dismiss, the dismissal should be without leave to amend.


Dated:  October 26, 2009                    By:  /s/ James R. Eiszner
                                                 James R. Eiszner, # JE-7468
                                                 John F. Murphy
                                                 SHOOK, HARDY & BACON L.L.P.
                                                 2555 Grand Blvd.
                                                 Kansas City, MO  64108-2613
                                                 Telephone:  816.474.6550
                                                 Facsimile:  816.421.5547

                                                 *Counsel for Defendants*
                                                 *The Coca-Cola Company*
                                                 *and Energy Brands Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2009, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

>Michael R. Reese
>Kim E. Richman
>Reese Richman LLP
>875 Sixth Avenue, 18th Floor
>New York, New York 10001
>
>Deborah Clark-Weintraub
>Whatley Drake & Kallas, LLC
>1540 Broadway, 37th Floor
>New York, New York 10036
>
>Mark S. Reich
>Joseph Russello
>Coughlin Stoia Geller Rudman & Robbins LLP
>58 South Service Road, Suite 200
>Melville, NY 11747

COUNSEL FOR PLAINTIFFS

/s/ James R. Eiszner
ATTORNEY FOR DEFENDANTS