# REESE RICHMAN LLP

December 3, 2012

<u>VIA ECF</u>
Hon. Robert M. Levy
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>**In Re: Glaceau Vitaminwater Litig., Case No. 1:11-md-02215-DLI-RML**</u>

Dear Judge Levy:

      Plaintiffs in the above-captioned matter respectfully submit, in further support of their Motion for Class Certification (Dkt. No. 71), a copy of the following recently issued decision that directly addresses several issues before the Court with respect to Plaintiffs' Motion for Class Certification:

> An order by the Honorable Richard Seeborg for the United States District Court for the Northern District of California granting the plaintiffs' motion for class certification under Rule 23(b)(2) in *Ries v. AriZona Beverages USA LLC*, No. 10-01139 RS (N.D. Cal. Nov. 27, 2012).

A copy of the order is attached hereto as Exhibit A.

      Like the instant case, the *Ries* case is a putative class action where the plaintiffs allegedly paid for a beverage without knowing that the defendant misrepresented certain qualities of the product. Ex. A at 1. The plaintiffs alleged violations of California's FAL, UCL, and CLRA. *Id.* The defendants moved for summary judgment on all of the plaintiffs' claims. *Id.* The plaintiffs opposed the motion and moved for class certification. *Id.* The court granted in part and denied in part the defendants' motion for summary judgment and granted, as modified by the court, the plaintiffs' motion for class certification. *Id.* at 2. In doing so, the court rejected many of the same arguments, as detailed below, that Defendants in the instant case have made in opposition to Plaintiffs' Motion for Class Certification.

**<u>Lack of Receipts Does Not Preclude Certification</u>**

      Regarding class certification, the defendants argued that the proposed class (all persons in California who purchased an Arizona brand beverage from March 17, 2006, until the present time that contained High Fructose Corn Syrup or citric acid and that was marketed, advertised, or labeled as being "All Natural" or "100% Natural") could not be certified because it was overbroad and not ascertainable. *Id.* at 14. In particular, the defendants took issue with the likelihood that individual class members would not have retained purchase receipts. *Id.* at 15. Similarly, here, Defendants have suggested that Plaintiffs have not satisfied Rule 23's ascertainability requirement because consumers may not have retained receipts, thus "necessitating class-defeating mini-trials." (Dkt. No. 92, Defendants' Memorandum of Law in

*In re: Glaceau Vitaminwater Litigation* – Notice of Recent Authority
December 3, 2012
Page 2 of 5

Opposition to Plaintiffs' Master Motion for Class Certification, at 15.)  The *Ries* court rejected this argument:

> Defendants' real concern with the proposed class definition appears to be that members of the class do not have actual proof that they are in the class. Defendants suggest that simply because most members of the proposed class will not have retained all of their receipts for AriZona Iced Tea over the past few years, the administration of this class will require "fact-intensive mini trials" to establish whether each purported class member had in fact made a purchase entitling them to class membership.  ***This is simply not the case.  If it were, there would be no such thing as a consumer class action.***  There is no requirement that "the identity of the class members . . . be known at the time of certification." [*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).]  The challenges entailed in the administration of this class are not so burdensome as to defeat certification.

Ex. A at 15 (emphasis added).

## Knowledge of Defendants' Fraudulent Marketing Does Not Preclude Standing for Injunctive Relief

The defendants in *Ries* argued that the plaintiffs lacked Article III standing for injunctive relief in that the "plaintiffs are not threatened by future harm because they are now aware of the contents of [the] beverages, and can no longer be deceived." Ex. A at 11.  Similarly, here, Defendants have argued that Plaintiffs are not entitled to prospective injunctive relief because each Plaintiff now has knowledge of Defendant's alleged misconduct. (*See* Dkt. No. 122, Defendants' Letter to the Court, dated October 24, 2012, at 1-2.)  The *Ries* court dispatched with this absurd argument "with relative ease":

> Plaintiffs request to be relieved from false advertising by defendants in the future, and the fact that they discovered the supposed deception some years ago does not render the advertising any more truthful.  Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence.  This is the harm California's consumer protection statutes are designed to redress.

> As plaintiffs further note, ***were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result.*** See, e.g., *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who

> had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

Ex. A at 12-13 (emphasis added).

Additionally, the defendants argued that the proposed class was overbroad because it would include absent class members who lack Article III standing. *Id.* at 15. In particular, the defendants argued that such individuals included those who believed the offending ingredient at issue (high fructose corn syrup) was natural at the time of their purchase and "those who continued to buy the product for years, who only purchased the product in the past, who stopped purchasing and have no intention to ever purchase again, as well as those who purchased the products for reasons unrelated to the labeling or for various reasons." *Id.* at 16. Similarly, in the instant case, Defendants have argued that the proposed class is overbroad because it would include absent class members who lack Article III standing. (Dkt. No. 122 at 3.) This contention should be rejected here for the same reason the *Ries* court rejected it:

> "[The Article III] requirement of concrete injury is satisfied when the [p]laintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." *In re Google AdWords Litig.*, 2012 WL 28068, at *10. **The focus of the UCL and FAL is on the actions of the defendants, not on the subjective state of mind of the class members. All of the proposed class members would have purchased the product bearing the alleged misrepresentations. Such "a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing." *Id.*** Thus, . . . "any inquiry into whether the unnamed class members satisfy Article III standing depends upon an objective test, not a fact-intensive inquiry as Defendants contend." *Id.*

Ex. A at 17.

### **Defendants' Citation to *In re Cheerios* for Its Typicality Argument Is Misplaced**

With their recent letter to the Court (Dkt. No. 127, Defendants' Letter to the Court, dated Nov. 26, 2012), Defendants submitted a copy of a District of New Jersey decision in *In re Cheerios Marketing and Sales Practices Litigation*, No. 09-cv-2413, 2012 WL 3952069 (D.N.J. Sept. 10, 2012). As Defendants indicated, the court, "recognizing that consumers buy Cheerios for different reasons, dismissed [upon the defendants' motion for summary judgment] all class action claims in that case because the named plaintiffs' claims were not typical." (Dkt. No. 127 at 1.) The *Ries* court, however, specifically considered the same issue and concluded that, under California law, the fact that consumers buy a product for various reasons does not preclude class certification:

> [The defendants] maintain that "[m]embers of the proposed class are likely different from each other with regard to the factors driving their decisions to purchase Defendants' beverages." Even if it were true that putative class

> members relied to greater or lesser extents on defendants' representation that AriZona products are "All Natural" or "100% Natural," as noted above, ***the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular state of mind.***

Ex. A at 22 (emphasis added).

## *Ries* Supports Plaintiffs' Request for Non-Monetary Relief Under Rule 23(b)(2)

In *Ries*, the court certified a California class under Rule 23(b)(2) for injunctive and declaratory relief only. Ex. A at 28.[1] In line with the decision in *Ries*, Plaintiffs have requested in the alternative that the Court certify a class under Rule 23(b)(2) for injunctive and declaratory relief only. Defendants, in their recent letter to the Court, argue that this request "exemplifies the 'perverse incentives' the Supreme Court identified in *Dukes* that class representatives have 'to place at risk potentially valid claims for monetary relief' to gain (b)(2) certification." (Dkt. No. 127 at 2 (quoting *Dukes*, 131 S.Ct. at 2559).) Defendants misconstrue the context and language of *Dukes*, though. In the portion of the *Dukes* opinion quoted by Defendants, the Supreme Court made clear that it was concerned about representative plaintiffs' deciding to seek (b)(2) certification for some monetary claims while not seeking certification for other monetary claims:

> In this case, for example, the named plaintiffs declined to include employees' claims for compensatory damages in their complaint. That strategy . . . created the possibility (if the predominance test were correct) that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from. If it were determined, for example, that a particular class member is not entitled to backpay because her denial of increased pay or a promotion was *not* the product of discrimination, that employee might be collaterally estopped from independently seeking compensatory damages based on that same denial.

*Dukes*, 131 S.Ct. at 2559. The Supreme Court's concern is simple to understand. When a class action adjudicates individual monetary claims under Rule 23(b)(2), absent class members may not receive notice of the action and, thus, may not have an opportunity to participate in it. Nevertheless, following judgment in a monetary 23(b)(2) class action, they may be precluded from seeking monetary relief for the conduct at issue. *Dukes*, 131 S.Ct. at 2559. For a (b)(2) class certified for injunctive or declaratory relief only, though, this concern is eliminated. Absent class members' claims for monetary relief are not barred by a 23(b)(2) class injunctive relief action. *See Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 433 (5th Cir. 1979) (holding that a (b)(2) injunctive relief class does not bar absent class member's claims for monetary relief).

---

[1] In doing so, the court acknowledged that incidental monetary relief, such as statutory or punitive damages that do not turn on the individual circumstances of class members, could be certified under (b)(2). *Id.* at 25 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2011)). *Accord Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, No. C 11-0299 PJH, 2012 WL 5199458, at *5 (N.D. Cal. Oct. 22, 2012) (citing *Dukes*, 131 S.Ct. at 2557). Nevertheless, the court denied the plaintiffs' request to certify a class under Rule 23(b)(2) for purposes of restitution because the court found that the restitution sought would not be incidental to the non-monetary relief requested.

*In re: Glaceau Vitaminwater Litigation* – Notice of Recent Authority
December 3, 2012
Page 5 of 5

## **CONCLUSION**

The reasoning articulated in *Ries* applies equally well here with respect to Plaintiffs' claims. Accordingly, Plaintiffs' motion for class certification with respect to a (b)(2) class under California law should be granted for the same reasons the *Ries* court certified a (b)(2) class in that case.

                                      Respectfully submitted,

                                      Michael R. Reese
                                      REESE RICHMAN LLP
                                      875 Ave. of the Americas, 18th Flr.
                                      New York, New York 10001
                                      (212) 643-0500
                                      (212) 253-4272 (fax)
                                      mreese@reeserichman.com

                                      *Interim Co-Lead Counsel for*
                                      *Plaintiffs*

Enclosure