UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BATSHEVA ACKERMAN, RUSLAN
ANTONOV, JAMES KOH, and JULIANA
FORD, individually and on behalf of all others
similarly situated,

               Plaintiffs,                    REPORT AND
                                        RECOMMENDATION

     -against-

                                        09 CV 395 (DLI)(RML)

COCA-COLA COMPANY and ENERGY
BRANDS, INC.,

               Defendants.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

          Plaintiffs Batsheva Ackerman, Ruslan Antonov, James Koh, and Juliana Ford

("plaintiffs") allege that defendants The Coca Cola Company and Energy Brands Inc. d/b/a

Glaceau (collectively, "defendants") have engaged in the deceptive labeling and marketing of

"vitaminwater," which defendants promote as a "nutrient-enhanced water beverage."  (See

Second Amended Class Action Complaint, dated Sept. 15, 2009 ("Second Am. Compl."), ¶¶

1–6.)  Plaintiffs now move for an order certifying the following two classes[1]:

          1) The New York Class:  all New York residents who purchased vitaminwater at

any time from January 20, 2003 to the present.  (Plaintiff Ackerman seeks to be appointed

representative of this class); and

          2) The California Class:  all California residents who purchased vitaminwater at

any time from January 15, 2005 to the present.  (Plaintiffs Antonov, Koh, and Ford seek to be

---

[1] Excluded from these classes are officers and directors of defendants, members of the immediate families of the officers and directors of defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

appointed  representatives of this class).

By order dated September 11, 2012, the Honorable Dora L. Irizarry, United States District Judge, referred the class certification motions to me for a report and recommendation. After full briefing, I heard oral argument on October 11, 2012.  (See Transcript of Oral Argument, dated Oct. 11, 2012 ("Tr."), ECF No. 126.)  Thereafter, the parties submitted supplemental materials.  For the reasons stated below, I respectfully recommend that the classes be certified as injunction classes under FED. R. CIV. P. 23(b)(2), subject to the modifications described below.

## BACKGROUND AND FACTS

A.  Plaintiffs' Claims

Plaintiffs identify the "central issue" in this case as "whether Defendants' uniform labeling of vitaminwater products – including the name 'vitaminwater' – is deceptive to a reasonable consumer."  (Master Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, dated June 29, 2012 ("Pls.' Master Mem."), at 1–2.)  It is undisputed that all vitaminwater bottles have a three-part label.  The left panel lists each product's sugar and vitamin content, among other information, and the right panel lists the ingredients, including the amount of sugar and the vitamins included for each flavor.  (See Declaration of Isaac Nesser, Esq., dated Aug. 24, 2012 ("Nesser Decl."), Ex. B.)  Plaintiffs do not contend that any of the ingredient or nutritional information on the vitaminwater labels is or has ever been inaccurate or incomplete. Nor is there any dispute that vitaminwater contains both vitamins and water.  Rather, plaintiffs contend that:

Defendants deceptively promote vitaminwater as an alternative

-2-

beverage to water and soft drinks that will assist consumers in maintaining healthy dietary practices. The product name (vitaminwater), description (Nutrient Enhanced Water Beverage), and slogans such as "vitamins+water=all you need" and "vitamins+water=what's in your hand" that appear on all vitaminwater labels,[2] together with flavor names that are associated with specific purported health benefits, mislead consumers to believe that vitaminwater is simply water fortified with nutrients that will provide certain stated health benefits rather than just another sugary soft drink.

(Pls.' Master Mem. at 2–3.)  Plaintiffs' class certification motions must be considered in the context of their claims, all of which are based on state law.

B.  New York Law[3]

The New York plaintiffs bring claims under Sections 349 and 350 of New York's General Business Law ("GBL"), N.Y. GEN. BUS. LAW. §§ 349, 350 (McKinney 2004), and under New York common law for deceit/misrepresentation and unjust enrichment.[4]  (Second

---

[2]  The name vitaminwater appeared on the label of every vitaminwater product sold to consumers during the relevant class periods, as did the description of vitaminwater as a "Nutrient Enhanced Water Beverage." (See Stipulation of Certain Marketing Statements, dated Feb. 17, 2012, annexed as Ex. B to the Declaration of Deborah Clark-Weintraub, Esq. in Support of Motion for Class Certification, dated June 29, 2012 ("Clark-Weintraub Decl.").)  The phrase "vitamins+water = what's in your hand" appeared on vitaminwater product labels until 2004. Id. Apparently, the phrase "vitamins + water = all you need" only appeared on certain flavors.

[3]  Under New York law, "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 (N.Y. 2002).  See also Kaufman v. Sirius XM Radio, Inc., 751 F. Supp. 2d 681, 686–88 (S.D.N.Y. 2010) (holding that plaintiffs could not maintain a viable suit under N.Y. GEN. BUS. LAW § 349 because plaintiffs failed to plead that defendant's deceptive acts transpired within the boundaries of the State of New York), aff'd, 474 F. App'x 5, 7 (2d Cir. 2012).  Thus, the New York class should be limited to consumers who made their purchases within New York State.

[4]  This court dismissed the New York plaintiffs' other state law claims.  See Ackerman v. Coca-Cola Co., No. 09-CV-0395, 2010 WL 2925955, at *24-25 (E.D.N.Y. July 21, 2010).

Am. Compl. ¶¶ 135–149, 146–149.)  GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. GEN. BUS. LAW. § 349(a) (McKinney 2004).  The Second Circuit has held that "[t]o state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  GBL § 349 does not require proof that any consumer relied on a misrepresentation.  See Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) ("a private action brought under § 349 does not require proof of actual reliance").  Rather, "[d]eceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  Spagnola, 574 F.3d at 74 (internal citations, quotation marks, and alterations omitted).  See also Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (explaining that § 349 defines a deceptive act or practice using an "objective definition," whereby deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal citation omitted); Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim.").  "A deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349."  Douyon v. N.Y. Med. Health Care, P.C., No. 10 CV 3983, 2012 WL 4486100, at *15 (E.D.N.Y. Sept. 28, 2012) (quoting Stutman, 731 N.E.2d at 608).

GBL § 350 states: "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  To succeed on a claim under this statute, a plaintiff must establish that "(1) the act, practice or

advertisement was consumer-oriented; (2) the act, practice or advertisement was misleading in a

material respect, and (3) the plaintiff was injured as a result of the deceptive practice, act or

advertisement." Medisim Ltd. v. BestMed LLC, 10 CV 2463, 2012 WL 5954757, at *6

(S.D.N.Y. Nov. 28, 2012). GBL § 350-a expressly defines "advertisement" to include

"labeling." An act, practice or advertisement is actionable under this statute only if it is likely to

mislead a reasonable consumer. Szymczak v. Nissan N. Am., Inc., 10 CV 7493, 2011 WL

7095432, at *14 (S.D.N.Y. Dec. 16, 2011) (quoting Marcus v. AT & T Corp., 138 F.3d 46, 64

(2d Cir. 1998)). However, to prevail on a claim under GBL § 350, a plaintiff must also

demonstrate reliance on defendants' false advertising.[5] Horowitz v. Stryker Corp., 613 F. Supp.

2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under NYGBL Section 350, a plaintiff

must plead reliance on a false advertisement at the time the product was purchased."); Small v.

Lorillard Tobacco Co., 679 N.Y.S.2d 593, 599 (1st Dep't 1998) ("individualized proof of

reliance is essential to the cause[ ] of action for false advertising under General Business Law §

350"), aff'd, 720 N.E.2d 892 (N.Y. 1999); McGill v. Gen. Motors Corp., 647 N.Y.S.2d 209, 210

(1st Dep't 1996) (same); Gershon v. Hertz Corp., 626 N.Y.S.2d 80, 81 (1st Dep't 1995) (same).

Under New York law, "[r]eliance on defendants' misrepresentations will not be presumed where

plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by

using ordinary intelligence or where a variety of factors could have influenced a class member's

decision to purchase." Leider, 387 F. Supp. 2d at 297 (citing Small, 679 N.Y.S.2d at 600). See

---

[5] Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations. See Jernow v. Wendy's Int'l, Inc., No. 07 CV 3971, 2007 WL 4116241, at *3 (S.D.N.Y. Nov. 15, 2007) (citing Goshen v. Mut. Life Ins. Co. of New York, 774 N.E.2d 1190).

also Pelman III, 2003 WL 22052778, at *7 (same).[6]

For their unjust enrichment claim, the New York plaintiffs must demonstrate "(1) that the defendant[s] benefitted; (2) at the plaintiff[s'] expense; and (3) that equity and good conscience require restitution."  Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009) (citation omitted).  Thus, plaintiffs must show that the benefits that they received "were less than what they bargained for."  Vigiletti v. Sears, Roebuck & Co., 838 N.Y.S.2d 785, 785 (2d Dep't 2007).

C.  California Law

The California plaintiffs bring claims under the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200–17210, the California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500–17509, the California Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1770(a), and under California common law for deceit/misrepresentation.[7]  The UCL provides a cause of action for harms caused by "any

---

[6]  Moreover, advertising "persiflage" that is "devoid of content" and "makes no specific promise to consumers" does not violate GBL § 350.  Marcus v. AT & T Corp., 938 F. Supp. 1158, 1174 (S.D.N.Y. 1996), aff'd, 138 F.3d 46 (2d Cir. 1998).

[7]  The California plaintiffs' claim for unjust enrichment may not be cognizable, as "[c]ourts consistently have held that unjust enrichment is not a proper cause of action under California law."  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010).  See also In re ConAgra Foods Inc., 11 CV 05379, 2012 WL 5995454, at *16 (C.D. Cal. Nov. 15, 2012) ("[U]nder California law, a cause of action for unjust enrichment is not cognizable.  Rather, unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims."); In re Toyota Motor Corp., 754 F. Supp. 2d at 1194 ("Simply put, 'there is no cause of action in California for unjust enrichment.'") (citing Melchior v. New Line Prods., Inc., 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003)); Melchior, 131 Cal. Rptr. 2d at 357 ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself.") (internal quotation marks and citation omitted).  But see Ghirardo v. Antonioli,

(continued...)

unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.

"[T]he primary purpose of the [UCL] . . . is to protect the public from unscrupulous business

practices."[8]  Consumers Union of U.S., Inc. v. Alta–Dena Certified Dairy, 6 Cal. Rptr. 2d 193,

200 (Cal. Ct. App. 1992).  A business practice need only meet one of the three criteria

("unlawful," "unfair," or "fraudulent") to violate the UCL.  McKell v. Wash. Mut., Inc., 49 Cal.

Rptr. 3d 227, 239 (Cal. Ct. App. 2006).

       Pursuant to In re Tobacco II Cases, 207 P.3d 20, 35 (Cal. 2009) ("Tobacco II"),

"relief under [California's] UCL is available without individualized proof of deception, reliance

and injury."  See also Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020-21 (9th Cir. 2011),

cert. denied, 132 S. Ct. 1970 (2012).[9]  Therefore, although reliance is generally an element of a

_____

   [7](...continued)
924 P.2d 996, 1003 (Cal. 1996) (allowing plaintiff to recover under traditional principles of
unjust enrichment).

   [8]  Actions under the UCL and FAL are equitable in nature.  Therefore, the California
plaintiffs are limited to injunctive relief and restitution for these claims.  CAL. BUS. & PROF.
CODE § 17203.  See also Asis Internet Servs. v. Subscriberbase Inc., No. 09 CV 3503, 2010 WL
1267763, at *8 (N.D. Cal. Apr. 1, 2010); In re Tobacco II Cases, 207 P.3d 20, 29 (Cal. 2009).

   [9]  In addition, with respect to the injury-in-fact requirement for class claims under the
UCL, it is enough to show only that the class *representatives* suffered injury in fact due to
defendants' actions.  Stearns, 655 F.3d at 1020-21.  California "law keys on the representative
party, not all of the class members, and has done so for many years."  Id. at 1021.  "At least one
named plaintiff must satisfy the actual injury component of standing in order to seek relief on
behalf of himself or the class. The inquiry is whether any named plaintiff has demonstrated that
he has sustained or is imminently in danger of sustaining a direct injury as the result of the
challenged conduct."  Id.  The court in Stearns further explained:

        No doubt a plaintiff's injury must be "concrete and particularized."
        The injury here meets both of those requirements.  Each alleged
        class member was relieved of money in the transactions.
        Moreover, it can hardly be said that the loss is not fairly traceable

(continued...)

UCL claim, "class reliance can be presumed" under the UCL.  Johns v. Bayer Corp., 280 F.R.D.

551, 557 (S.D. Cal. 2012).  See also Williams v. Gerber Prods. Co., 552 F.3d 934, 940 (9th Cir.

2008) (explaining that an individual inquiry into reliance is unnecessary for class certification

under the UCL); Gonzalez v. Proctor & Gamble Co., 247 F.R.D. 616, 624 (S.D. Cal. 2007)

(explaining that "an inference of common reliance" is permitted under the UCL "when the

allegations demonstrate that a single, material misrepresentation was directly made to each class

member"); Mass. Mut. Life Ins. Co. v. Superior Court, 119 Cal. Rptr. 2d 190, 198 (Cal. Ct. App.

2002) (holding that causation could be satisfied if the record permits an "inference of common

reliance" to the class where the information "would have been material to any reasonable person"

purchasing the insurance policy).[10]

---

    [9](...continued)
> to the action of the Appellees within the meaning of California
> substantive law.  That law, as already noted, keys on the
> wrongdoing of Appellees and is designed to protect the public
> (including the proposed class members).

Id. (citing Tobacco II, 207 P.3d at 30.)

    [10]   However, courts will not infer reliance under the UCL where there is evidence that many class members were not exposed to the alleged misrepresentation.  See, e.g., Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012) (holding that a classwide presumption of reliance was inappropriate where many class members never saw the allegedly misleading advertisements prior to purchase); Campion v. Old Republic Home Prot. Co., 272 F.R.D. 517, 536 (S.D. Cal. 2011) (denying certification and declining to infer classwide reliance because the proposed class of consumers "may have seen all, some, or none of the advertisements that form the basis of Plaintiff's suit."); Gonzalez v. Proctor & Gamble Co., 247 F.R.D. 616, 624–25 (S.D. Cal. 2007) (same); Sevidal v. Target Corp., 117 Cal. Rptr. 3d 66, 83 (Cal. Ct. App. 2010) (denying certification of UCL claim where majority of class members did not see allegedly false representation).  As the court in Stearns explained, "it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant." Stearns, 655 F. 3d at 1020.  In such situations, the court may not infer reliance.

The FAL prohibits "unfair, deceptive, untrue or misleading advertising." Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008) (quoting CAL. BUS. & PROF. CODE § 17500, et seq.)  Advertising is defined broadly to include virtually any statement made in connection with the sale of goods or services, including statements and pictures on labels.  See id.  Advertising that is likely to deceive the reasonable consumer violates California's false advertising law, id. at 938, and violations of the FAL constitute "unlawful" conduct for the purposes of the UCL.  See Comm. on Children's Television, Inc. v. Gen. Foods Corp., 673 P.2d 660 (Cal. 1983) ("[a]ny violation of the false advertising law . . . necessarily violates the unfair competition law"), superseded by statute on another ground, as stated in  Californians for Disability Rights v. Mervyn's, LLC, 138 P.3d 207 (Cal. 2006).  See also Kasky v. Nike, Inc., 45 P.3d 243, 249 (Cal. 2002) (noting that CAL. BUS. & PROF. CODE § 17200 defines unfair competition to include any act prohibited by California's False Advertising Law).  An FAL-based claim may concern "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Ackerman v. Coca-Cola, No. 09 CV 0395, 2010 WL 2925955, at *18 (E.D.N.Y. July 21, 2010) (quoting Kasky, 45 P.3d at 250) (internal quotation marks omitted).

A claim under the FAL is governed by the "reasonable consumer" test, meaning the plaintiffs must show that "members of the public are likely to be deceived."  Parino v. BidRack, Inc., 838 F. Supp. 2d 900, 905 (N.D. Cal. 2011) (citation and internal quotation marks omitted).  See also Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995) (noting applicability of "reasonable consumer" test when addressing false advertising claim under Section 17500); Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("[B]y explicitly imposing a

'reasonable care' standard on advertisers, § 17500 impliedly adopts such a standard for consumers as well: unless particularly gullible consumers are targeted, a reasonable person may expect others to behave reasonably as well.").

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770(a). Practices expressly prohibited by the CLRA include, inter alia, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," id. § 1770(a)(5), "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," id. § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised," id. § 1770(a)(9). Section 1760 makes clear that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Id. § 1760.

Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. Colgan v. Leatherman Tool Grp., Inc., 38 Cal. Rptr. 3d 36, 47 (Cal. Ct. App. 2006) (quoting Nagel v. Twin Labs., Inc., 134 Cal. Rptr. 2d 420, 431 (Cal. Ct. App. 2003)). A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . ." Id. (citing 1A Callmann on Unfair Competition, Trademarks and Monopolies § 5:17 (4th ed. 2004)).

The CLRA allows suits by any "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the

-10-

CLRA]."  CAL. CIV. CODE § 1780. The statute requires that "'plaintiffs in a CLRA action show

not only that a defendant's conduct was deceptive but that the deception caused them harm.'"  In

re Vioxx Class Cases, 103 Cal. Rptr. 3d 83, 94 (Cal. Ct. App. 2009).  See also Steroid Hormone

Prod. Cases, 104 Cal. Rptr. 3d 329, 337 (Cal. Ct. App. 2010) (explaining that the CLRA requires

each class member to have an actual injury caused by the unlawful practice).  However,

"[c]ausation, on a class-wide basis, may be established by materiality.  If the trial court finds that

material misrepresentations have been made to the entire class, an inference of reliance arises as

to the class."  In re Vioxx Class Cases, 103 Cal. Rptr. 3d at 95.  See also Mass. Mut., 119 Cal.

Rptr. 2d at 197 ("Causation as to each class member is commonly proved more likely than not by

materiality.  That showing will undoubtedly be conclusive as to most of the class.") (citation

omitted).  Materiality is determined from the perspective of the reasonable consumer.  See Falk

v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).  Thus, "[t]he standard for

materiality [under the CLRA] is identical to the UCL's and FAL's objective test."  Ries v.

AriZona Beverages USA LLC, 287 F.R.D. 523, 538 (N.D. Cal. 2012).

     D.  The Motion to Dismiss

     The present motions must also be considered in the context of this court's July

2010 decision on defendants' motion to dismiss.  In his decision granting in part and denying in

part defendants' motion, the Honorable John Gleeson, United States District Judge, held that

"any claim under state law *solely* premised on the notion that vitaminwater's high sugar content

made its health or implied nutrient content claims misleading is preempted by the FDA's express

decision to not recognize sugar as a disqualifying nutrient."  Ackerman, 2010 WL 2925955, at *8

(emphasis added).  However, the court also held that it could not "conclude as a matter of law

that a reasonable consumer could not be misled into believing that vitaminwater is a product that may help maintain healthy dietary practices and fail to appreciate that the product is not solely composed of vitamins and water." Id. at *15.  The court explained that:

> The FDA has recognized that product names such as "vitaminwater" can be deceptive in that such names may mislead consumers into believing the listed ingredients are the sole components of a beverage.  See 21 C.F.R. § 101.18(b).  The potential for confusion by consumers is heightened by the presence of (1) claims in vitaminwater's labeling, such as "vitamins + water = all you need" or "vitamins + water = what's in your hand; (2) the description of the product as a "nutrient enhanced water beverage"; (3) the fact that several varieties of the product explicitly use the word "healthy" in connection with claims about vitaminwater's nutritional benefits; and (4) the inclusion of at least one health claim suggesting that a nutrient in vitaminwater may reduce the risk of a specific class of diseases.  The plaintiffs have sufficiently alleged that the collective effect of the challenged statements was to mislead a reasonable consumer into believing that vitaminwater is either composed solely of vitamins and water, or that it is a beneficial source of nutrients rather than a "food of little or no nutritional value [which has been fortified] for the sole purpose of" claiming or implying that it is "healthy."

Id. (citing 58 Fed. Reg. 2478, 2522).  The court also stated that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled." Id. at *16.  The court explained that "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing" and that "even reasonable consumers may not read the nutritional label prior to every purchase of a new product." Id.[11]  With that decision in mind, I will address the

_____

[11]  At the time, the Ackerman case was brought on behalf of purported classes of consumers in California, New York, and New Jersey.  The New Jersey plaintiffs are no longer

(continued...)

certification motions.

**DISCUSSION**

    A.  <u>Rule 23</u>

    To maintain a suit as a class action under Rule 23, plaintiffs must allege facts establishing each of the following threshold requirements of subsection (a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a)(1)-(4).  In addition, plaintiffs seeking certification of claims for injunctive relief pursuant to FED. R. CIV. P. 23(b)(2) must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs seeking monetary relief, on the other hand, must satisfy the prerequisites of both subsection (a) and (b)(3) of Rule 23 by demonstrating that questions of law or fact common to the members of the proposed class "predominate over any questions affecting only individual members," and that a class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).[12]

---

[11](...continued)
involved in this case.  In addition, by stipulation dated March 15, 2010, California plaintiff Jerrad Pelkey voluntarily dismissed his claims with prejudice.

    [12] A plaintiff class can be certified seeking both injunctive relief and money damages. See <u>Stinson v. City of N.Y.</u>, 282 F.R.D. 360, 379 (S.D.N.Y. 2012); <u>Jermyn v. Best Buy Stores, L.P.</u>, 276 F.R.D. 167, 173-74 (S.D.N.Y. 2011).

-13-

Whether seeking certification under Rule 23(b)(2) or 23(b)(3),[13] the plaintiffs bear the initial burden of proving that their putative class action meets Rule 23's requirements. FED. R. CIV. P. 23.  Under Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011), a plaintiff must provide "significant" and "convincing" evidence that satisfies the Rule 23 requirements. Once the plaintiffs have made a showing that the requirements of Rule 23 have been met, the burden of proof is on the defendants to demonstrate otherwise.  See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F. 3d 196, 202-03 (2d Cir. 2008).

As the Supreme Court has explained, the pleadings are not proof.  Dukes, 131 S. Ct. at 2551.[14]  Rather, the court must conduct a "rigorous analysis" to determine whether each Rule 23 requirement has been satisfied, id., and must receive "enough evidence, by affidavits, documents, or testimony" to confirm that certification is appropriate.  In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("IPO").  See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008) (explaining that the "preponderance of the evidence standard applies to evidence proffered to establish Rule

---

[13]  Where a class is certified pursuant to Rule 23(b)(2), no notification is required for absent class members; however, such notice is required if certification occurs under subsection (b)(3).  FED. R. CIV. P. 23(c)(2).  In addition, certification of a class pursuant to Rule 23(b)(3) permits class members to opt out of the litigation.

[14]  In Dukes, the Court decertified a Rule 23(b)(2) class consisting of 1.5 million current and former employees of Wal–Mart, on two grounds.  First, the Court held that a Rule 23(a) prerequisite—the requirement that a common question of law or fact unite the class—was not satisfied.  Second, it held that an injunctive class under Rule 23(b)(2) was not appropriate when accompanied by class claims for individualized money damages that were more than merely "incidental" to the injunctive relief.

-14-

23's requirements").[15]

Rule 23 class actions are designed to promote efficiency and economy of litigation, and to preserve small claims through aggregation without sacrificing procedural fairness. Amchem Prods. Inc., 521 U.S. at 614; Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974). See also Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968) ("[C]lass suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."). Therefore, despite this court's obligation to analyze each prong of Rule 23 carefully before granting class certification, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction'" and has shown a "'general preference' for granting rather than denying class certification." Massey v. On-Site Manager, Inc., 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (quoting Marisol A. ex rel. Forbes v. Giuliani, 126 F.3d 372, 377 (2d

---

[15] Courts must "make such determinations" regardless of whether there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." IPO, 471 F.3d at 41. See also Dukes, 131 S. Ct. at 2551-52 (explaining that the court's Rule 23 analysis will frequently "overlap with the merits of the plaintiff's underlying claim" because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160–61 (1982)). At the same time, courts must resist delving into the merits of a plaintiff's claim at the class certification stage where it is unnecessary to do so. See Amgen Inc. v. Conn. Retirement Plans & Trust Funds, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citation omitted); Johns v. Bayer Corp., 280 F.R.D. 551, 555 (S.D. Cal. 2012) (explaining that it is improper for a district court to "conduct a mini-trial to determine if the class 'could actually prevail on the merits of their claims.'") (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

Cir. 1997); <u>Gortat v. Capala Bros.</u>, 257 F.R.D. 353, 361 (E.D.N.Y. 2009); <u>Cortigiano v. Oceanview Manor Home for Adults</u>, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).[16]

    1.  <u>Numerosity</u>

    Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable." FED. R. CIV. P. 23(a). <u>See also</u> <u>Brown v. Kelly</u>, 609 F.3d 467, 475 (2d Cir. 2010); <u>In re Vitamin C Antitrust Litig.</u>, 279 F.R.D. 90 (E.D.N.Y. 2012); <u>United States v. City of N.Y.</u>, 276 F.R.D. 22, 28 (E.D.N.Y. 2011). "Impracticability means difficulty or inconvenience of joinder [not] . . . impossibility of joinder." <u>Dupler v. Costco Wholesale Corp.</u>, 249 F.R.D. 29, 36 (E.D.N.Y. 2008) (citing <u>In re Blech Sec. Litig.</u>, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)). <u>See also</u> <u>Robidoux v. Celani</u>, 987 F.2d 931 (2d Cir. 1993) (finding impracticability of joinder where "it clearly would be difficult or inconvenient to join all members of the proposed class."); <u>Goldstein v. N. Jersey Trust Co.</u>, 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (explaining that "impracticable" does not mean "incapable of being performed" or "infeasible.").

    Courts conduct a "case-by-case analysis of the facts" and determine practicability based upon all circumstances surrounding the case. <u>In re Vitamin C Antitrust Litig.</u>, 279 F.R.D. at 99 (citing <u>Gen. Tel. Co. of the Nw. v. E.E.O.C.</u>, 446 U.S. 318, 330 (1980)). Relevant factors include "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits." <u>Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.</u>, 277 F.R.D. 97,

---

    [16] This is true in the Ninth Circuit, as well. <u>See</u> <u>Johns v. Bayer Corp.</u>, 280 F.R.D. 551, 555 (S.D. Cal. 2012) ("[c]lass action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged.'") (quoting <u>Ballard v. Equifax Check Serv., Inc.</u>, 186 F.R.D. 589, 600 (E.D. Ca. 1999)).

104 (S.D.N.Y. 2011) (citing Robidoux, 987 F.2d at 936).  Plaintiffs need not show evidence of

exact class size or identity of class members in order to satisfy Rule 23's numerosity

requirement.  Robidoux, 987 F.2d at 936.  See also Herbert B. Newberg, Newberg on Class

Actions: A Manual for Group Litigation at Federal and State Levels §3.12, at n.8 (5th ed. 2012).

According to plaintiffs, "[n]umerosity is indisputable here," as "[t]he proposed

Classes consist of thousands of individuals who were subjected to Defendants' deceptive labeling

and marketing of vitaminwater." (Pls.' Master Mem. at 11.)  Indeed, there is no dispute that

hundreds of thousands of people purchased vitaminwater in New York and California during the

class periods, and that courts generally presume sufficient numerosity where there are at least

forty class members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.

1995) (presuming numerosity element is satisfied where a class contains forty or more members);

Ansari v. N.Y. Univ., 179 F.R.D. 112, 114 (S.D.N.Y 1998) ("Generally speaking, courts will find

that the 'numerosity' requirement has been satisfied when the class comprises 40 or more

members[.]").

Federal courts in both New York and California have found allegations similar to

plaintiffs' sufficient to satisfy the numerosity requirement.  For example, in Johns v. Bayer

Corp., 280 F.R.D. 551, 556 (S.D. Cal. 2012), the court explained that:

> Between 2005 and 2009, Bayer's national net sales of Men's
> Health totaled in excess of $189 million, and between 2007 and
> 2009, its national net sales of Men's 50+ totaled in excess of $39
> million.  Given these numbers, it is reasonable to assume a
> sufficient number of individuals purchased the Men's Vitamins in
> California to satisfy this requirement.

See also Engel v. Scully & Scully, Inc., 279 F.R.D. 117, 128 (S.D.N.Y. 2011) (numerosity

requirement was "comfortably satisfied" where plaintiff estimated, and defendant did not dispute, that defendant processed approximately three to five thousand debit or credit card transactions per year); Charlebois v. Angels Baseball, LP, No. 10 CV 0853, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."); DeMarco v. Nat'l Collector's Mint, Inc., 229 F.R.D. 73, 80 (S.D.N.Y. 2005) (numerosity requirement was met where it was "undisputed that thousands of [Freedom Tower Silver Dollars] were sold."). I find that both the New York and California plaintiffs have demonstrated that joinder would be impracticable and have therefore satisfied the numerosity requirement.

2. Commonality

Rule 23(a)'s commonality requirement provides that class certification is proper where "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This effectively requires "the plaintiff to demonstrate that the class members have suffered the same injury." Dukes, 131 S. Ct. at 2551 (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. at 148) (internal quotations and alterations omitted). This element does not prevent class certification where plaintiffs allege varied claims, so long as class members share a single question of law or fact in common. See id. at 2562 ("Even a single question of law or fact common to the members of the class will satisfy the commonality requirement.") (internal quotations and citation omitted). See also Ries v. AriZona Beverages USA LLC, 287 F.R.D. at 537 ("[V]ariation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality.") (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th

-18-

Cir. 1998)). Thus, a court may certify a class even though there will, at some point, be issues that must be determined individually.  See Pagan v. Abbott Labs., Inc., 287 F.R.D. 139, 145 (E.D.N.Y. 2012) ("'[T]he individual circumstances of the class members can differ without precluding class certification,' so long as 'the common questions are at the core of the cause of action alleged.'")(quoting Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 72 (E.D.N.Y. 2004))); Madanat v. First Data Corp., 282 F.R.D. 304, 311 n.6 (E.D.N.Y. 2012) ("[A] commonality assessment only requires the Court to find that one common question of fact or law exists and, therefore, the Court need not evaluate every potential question raised by plaintiff.") (citing Dukes, 131 S. Ct. at 2562)); In re Playmobil Antitrust Litig., 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) (a common issue of law may exist even though there is "some factual variation among class members' specific grievances.").  In other words, the class members' claims need not be identical, but plaintiffs must identify some unifying thread among the members' claims that warrants class treatment.

Plaintiffs present the following as "common questions":

• Whether Defendants marketed, advertised, labeled and sold vitaminwater using false, misleading, and/or deceptive statements;

• Whether Defendants omitted and/or misrepresented material facts in connection with the marketing, advertising, labeling, and sale of vitaminwater;

• Whether Defendants' marketing, advertising, labeling, and selling of vitaminwater constitutes an unfair, unlawful, or fraudulent business practice;

• Whether Defendants' marketing, advertising, labeling, and selling of vitaminwater constitutes a deceptive business practice; and

• Whether Defendants' marketing, advertising, and labeling of vitaminwater

-19-

constitutes false advertising.

(Pls.' Master Mem. at 12.)

Defendants argue that the record demonstrates "wide variation in consumer expectations and understandings" about vitaminwater, and they claim that a consumer survey shows that "vitaminwater buyers vary in whether they saw the challenged statements, found them material, or knew about its sugar content" and that "[c]onsumers buy vitaminwater for differing reasons unrelated to any portion of the label they might have considered." (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motions for Class Certification, dated Aug. 24, 2012 ("Defs.' Mem."), at 2.) Specifically, defendants identify two main issues that they claim cannot be resolved on a common basis: (1) causation or reliance, and (2) whether each plaintiff saw and considered a challenged statement in buying vitaminwater. On the first issue, defendants contend that the alleged misrepresentations were not uniform, but rather varied across product lines, by medium, and over time. (Defs.' Mem. at 17.) Defendants state that the medium varied from television (two unique ads), to the Internet (six unique statements), to an in-store advertisement, to statements on the bottles themselves. (See Nesser Decl., Ex. R; Clark-Weintraub Decl., Ex. B.) Even as to statements on vitaminwater labels, defendants argue that little was "uniform" as: "(1) the purportedly deceptive 'flavor names' varied across vitaminwater's line of more than a dozen flavors; (2) the statement 'vitamins + water = all you need' appeared on only some flavors for only some years; and (3) the statement 'vitamins + water = what's in your hand' appeared on still other flavors, and only for certain years." (Defs.' Mem. at 18 (citing Clark-Weintraub Decl., Ex. B).)

On the second issue, defendants contend that the plaintiffs "differed dramatically

in the extent to which they saw, considered or relied on the challenged marketing statements and whether those statements were material to their purchasing decisions." (Defs.' Mem. at 18.) For example, at least two named plaintiffs testified that, prior to buying the product, they did not read any portion of the label other than the front portion containing the name "vitaminwater." (See Deposition of James S. Koh, dated Oct. 4, 2011, annexed as Ex. H to the Nesser Decl. ("Koh Dep."), at 62:17-24; Deposition of Batsheva Ackerman, dated Nov. 22, 2011, annexed as Ex. A to the Nesser Decl. ("Ackerman Dep."), at 79:3-12.) Ms. Ackerman also testified that she could not recall seeing any vitaminwater advertisements. (Ackerman Dep. at 107:10-17.) As to the sugar content, some of the named plaintiffs testified that they knew or suspected that vitaminwater contained sugar, and they conceded that consumers who read the disclosures on either side panel of the label would not have been deceived about the product's contents. (See, e.g., Koh Dep. at 130:8-12, 133:23-134:12 ("By seeing 'VitaminWater,' by seeing 'Nutrient Enhanced Water Beverage,' I presumed there was not a lot of sugar in the product. Maybe just like a minimal amount, if any."); Ackerman Dep. at 106:4-10 ("Q. Even after you read the label on a few occasions you did continue to buy the products. Yes? A. Correct.").[17] According to

---

[17] Ms. Ackerman testified that she knew vitaminwater contained sugar, and continued to buy it even after reading the label to confirm the sugar level. (Deposition of Batsheva Ackerman, dated Nov. 22, 2011, annexed as Ex. C to the Clark-Weintraub Decl., at 102:9-103:3.) However, she also testified that she initially bought vitaminwater because she believed it was the healthier choice. (Id. at 10:2-7 ("I thought it was a healthier drink to drink.")) In addition, she said that she believed she was "tricked" into buying vitaminwater. (Id. at 15:8-9.)

Mr. Koh stated that he was not concerned about the number of calories in vitaminwater (Deposition of James S. Koh, annexed as Ex. F to the Clark-Weintraub Decl., at 138:12-19), but that he was surprised to learn how much sugar the product contained (id. at 27:11-12). Likewise, Mr. Antonov testified that he would not have bought vitaminwater had he known how much sugar it contained. (Deposition of Ruslan Antonov, annexed as Ex. D to the

(continued...)

defendants, these variations undermine plaintiffs' claims of uniformity.[18]

Typically, however, where the consumer protection statute at issue supplies an objective test, such claims are considered "ideal for class certification" because they allow the court to adopt classwide presumptions of reliance and do not require an investigation into "'class members' individual interaction with the product.'" Tait v. BSH Home Appliances Corp., No. 10 CV 0711, 2012 WL 6699247, at *12 (C.D. Cal. Dec. 20, 2012) (quoting Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 535 (C.D. Cal. 2011)).  See also Johns v. Bayer Corp., 280 F.R.D. at 558 n.5 (certifying class of California consumers who purchased multivitamins with respect to an alleged misrepresentation about prostate health that "all class members necessarily saw."); Harvey v. CVS Pharm., Inc., No. 08 CV 5058 (C.D. Cal. Apr. 27, 2010), slip op. (attached to Pls.' Reply as Appendix 2) (certifying class of consumers who purchased over-the-counter vitamin supplement AirShield, on the ground that "each and every unit of Product at

---

[17](...continued)
Clark Weintraub Decl. ("Antonov Dep"), at 19:12-13.)  He also said that he bought vitaminwater believing it to be "a simple product as that [sic] water with vitamins . . . as a healthy, nutrient-enhanced beverage, which is in fact – might as well be a can of Coke without carbonation, for how much sugar it has in there."  (Id. at 19:20-24.)  And Ms. Ford's main complaint was that she thought vitaminwater should more clearly disclose that vitamins are not invariably present in the full recommended daily amount.  (Deposition of Juliana Ford, dated Dec. 14, 2011, annexed as Ex. E to the Clark-Weintraub Decl. ("Ford Tr."), at 100:13-22.)   However, she also testified that she thought the label would lead one to believe "it's vitamins and water, and it's nutritional" and that she "was surprised by how much sugar there was in it."  (Id. at 41:7-11.)

[18]  Defendants also point to Dr. Scott's survey, which shows that consumers had more than fifty different reasons for buying vitaminwater, with very few buying vitaminwater on the belief it had no calories, no sugar, or to lose weight; wide variances in awareness of vitaminwater's sugar and calorie content; and varying but low levels of importance attached to several challenged statements.  (See Scott Exp. Rep. Exs. 10-2, 10-3, and 10-23, and at 2, 13, 15-17, 21.)  For the reasons explained infra, I find that these survey results go to the merits and need not be considered for purposes of class certification.

issue here contained the same deceptive and misleading name – AirShield."); Chavez v. Blue

Sky Natural Beverage Co., 268 F.R.D. 365, 375–80 (N.D. Cal. 2010)(certifying class under

California's CLRA and UCL); Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 589 (C.D. Cal.

2008) (same).  See also Bruno v. Eckhart Corp., 280 F.R.D. 540, 547 (C.D. Cal. 2012) (denying

reconsideration of nationwide class certified under UCL and CLRA).

        In the instant case, as plaintiffs repeatedly stress, "all the products at issue bore the

same [allegedly] misleading claim – i.e., the name itself, vitaminwater."  (Pls.' Master Reply at 6.

See also id. at 10 ("Here, the name 'vitaminwater' is both material and uniform to all of the

products at issue [and] the name "vitaminwater" is prominently displayed on each and every

bottle."); id. at 11 ("the name of the product, which is alleged to be misleading, appeared on

every single product at issue."); Tr. at 20 ("And the case is going to be about this one

misrepresentation that was made to everybody [who purchased the product].  That's the name

itself, Vitaminwater.").  In other words, any putative class member in this case would have the

same, central claim: that the name "vitaminwater" was misleading and deceptive.  For purposes

of class certification, plaintiffs are not required to demonstrate that all of the putative class

members had identical motivations for purchasing vitaminwater.  Seekamp v. It's Huge, Inc., 09

CV 0018, 2012 WL 860364, at *3 (N.D.N.Y. Mar. 13, 2012).  Rather, commonality may be

found where the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single

system."  Marisol A., 126 F.3d at 377.  To hold otherwise "would turn the commonality

requirement on its head by making it impossible to certify a class if *any* individualized issue

existed."  Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 429–30 (S.D.N.Y. 2009) ("Jermyn

I") (emphasis in original); see also Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 172

(S.D.N.Y. 2011) ("Jermyn II") ("In the deceptive business practice context [in Rule 23 cases] . . . plaintiffs' [New York General Business Law] claims do not necessarily depend on any specific motivation.").  It is not necessary for all of the plaintiffs to have had a "uniform" experience with respect to the product.  Therefore, whether or not the product name was misleading or deceptive to a reasonable consumer is a single question of fact that satisfies the commonality element.

   3.  Typicality

   Typicality requires plaintiffs to establish that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  FED. R. CIV. P. 23(a)(3); see also Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010).  "The typicality requirement 'is not demanding.'"  Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (quoting Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993)).  This requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes essentially the same legal and factual arguments to prove the defendant's liability." Haynes v. Planet Automall, Inc., 276 F.R.D. 65, 74 (E.D.N.Y. 2011) (citing Marisol A., 126 F.3d at 376).  See also Robidoux, 987 F.2d at 936.  This provision "'is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation.'"[19]  Pagan, 287 F.R.D. at 146 (quoting Steinberg, 224 F.R.D. at 72).  However,

_____

[19]  "'[T]he rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit'; it has generally been applied only where a full defense is available against an individual plaintiff's action."  Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 77 (S.D.N.Y. 2006) (quoting Koppel v. 4987 Corp., 191 F.R.D. 360, 365 (S.D.N.Y. 2000)). The unique defense rule is "intended to protect [the] plaintiff class–not to shield defendants from a potentially meritorious suit." Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200-01 (S.D.N.Y. (continued...)

-24-

"[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Id. See also Green v. Wolf Corp., 406 F.2d 291, 300 (2d Cir. 1968) (to deny class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23"); Cassese v. Wash. Mut., Inc., 255 F.R.D. 89, 97 (E.D.N.Y. 2008) (variations among the mortgage agreements at issue did not destroy typicality as to the class); Steinberg, 224 F.R.D. at 72-73 (explaining that "[t]he mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification.") (citations and internal quotation marks omitted).

The issue at the core of this action – whether a reasonable consumer would find vitaminwater's name and labeling misleading – is typical among both the group of named plaintiffs and the proposed classes.  Therefore, plaintiffs have satisfied this element.

4.  Adequacy of Representation

Finally, Rule 23(a)(4) requires that the representative plaintiffs "will fairly and adequately protect the interests of the class."  In order for a class representative to meet this requirement, "the class members must not have interests that are antagonistic to one another." Brown, 609 F.3d at 479 (internal quotation omitted).  The court must also determine that "'plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" Engel, 279 F.R.D. at 129-30 (quoting In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d

<hr />

[19](...continued)
1992).  Accord, e.g., In re NTL, Inc. Sec. Litig., 2006 WL 330113, at *7; Koppel, 191 F.R.D. at 365.

Cir. 2009) (internal quotation omitted).  See also Marisol A., 126 F.3d at 378 ("[Adequacy]

requires that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able

to conduct the litigation . . . [and] that there is no conflict of interest between the named plaintiffs

and other members of the plaintiff class.") (internal citations and quotation marks omitted).

       Here, there is no question that class counsel are qualified to conduct the litigation.

The combined experience of class counsel in class action litigation and consumer advocacy is

more than sufficient for them to act on behalf of the classes in this litigation.  Moreover,

defendants do not contend that the class representatives present a "fundamental" conflict with, In

re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001), superseded by

statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,

238 F.R.D. 82, 100 (S.D.N.Y. 2006), or interest "antagonistic" to, Baffa v. Donaldson, Lufkin &

Jenrette Secs. Corp., 222 F.3d 52, 60 (2d Cir. 2000), the claims of the proposed classes.

       Defendants' assertion that various class representatives have demonstrated an

insufficient understanding of the case—regardless of its truth—does not preclude a finding of

adequacy.  See Baffa, 222 F.3d at 61 (disapproving of "attacks on the adequacy of a class

representative based on the representative's ignorance").  Moreover, the alleged deficiencies

defendants cite do not indicate that the class representatives "'have so little knowledge of and

involvement in the class action that they would be unable or unwilling to protect the interests of

the class against the possibly competing interests of the attorneys.'"  Id. (quoting Maywalt v.

Parker & Parsley Petroleum Co., 67 F. 3d 1072, 1077–78 (2d Cir. 1995)).  Further, defendants'

arguments with respect to factual variations in and defenses to the class representatives'

underlying claims are not relevant to the inquiry of adequacy of representation.  See Baffa, 222

F.3d at 60.

The Second Circuit requires a class representative to understand the subject of the class action, but allows that class representative to rely on class counsel's expertise for litigating the case.  See id. at 62.  See also In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig., 209 F.R.D. 353, 356 (S.D.N.Y. 2002) (noting that a proposed class representative meets qualifications when he or she understands "the basic nature of the lawsuit, and, while he does not grasp the nuances of a class action, his interests are clearly aligned with the class members whom he represents"); In re Playmobil Antitrust Litig., 35 F. Supp. 2d at 242 ("Courts do not require the representative plaintiff to be the best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual basis on which a class action can be maintained.").  Accord Uniondale Beer Co. v. Anheuser-Busch, Inc., 117 F.R.D. 340, 343-44 (E.D.N.Y. 1987); Michaels v. Ambassador Grp., Inc., 110 F.R.D. 84, 90 (E.D.N.Y. 1986).  After a careful review of the named plaintiffs' deposition testimony, I find that defendants have not established that the named plaintiffs have "so little knowledge and involvement" as to justify a finding that they are inadequate representatives.  See Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 41-42 (E.D.N.Y. 2008).

Defendants also contend that the class representatives lack standing to pursue claims on behalf of the purported classes, as there are questions as to whether they suffered cognizable injuries.  (See Defs.' Mem. at 12.)  Constitutional standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Standing is "assessed as of the time the lawsuit is brought."  Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994). In Lujan v. Defenders of Wildlife, 504 U.S. 555

-27-

(1992), the Supreme Court defined the three constitutional requirements that plaintiffs must satisfy in order to establish standing.  First, the plaintiffs must have suffered an injury-in-fact—an injury that is "concrete and particularized" and is "actual or imminent, not conjectural or hypothetical."  Id. at 560 (quotation marks and citations omitted).  Second, the injury must be fairly traceable to the challenged action.  See id.  Third, it must be likely, not just possible, that the injury will be redressed by a favorable ruling of the court.  Id. at 561.  These three requirements all share a common goal—to ensure that the judiciary, and not another branch of government, is the appropriate forum in which to address a plaintiff's complaint.  See Allen v. Wright, 468 U.S. 737, 751–52 (1984).  Therefore, the question the court must answer is whether the plaintiffs have alleged a sufficient injury-in-fact to support Article III standing.

Generally, economic injury suffices as a form of injury-in-fact for standing purposes.  See Watt v. Energy Action Educ. Found., 454 U.S. 151, 161 (1981) (recognizing economic injury as an injury-in-fact).  See also Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005) ("While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."); San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."); In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010) ("Standing merely requires a redressable injury that is fairly traceable to Defendants' conduct.  Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question.  Here, Plaintiffs allege economic loss injuries, which may or may not be recoverable. . . . These alleged economic injuries are sufficient.").

-28-

With respect to the California plaintiffs, it is true that "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements."[20]  Tobacco II, 207 P.3d at 26.  However, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements."[21]  See Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc).  See also Chavez, 268 F.R.D. at 376 ("unnamed class members in an action under the Unfair Competition Law ('UCL') . . . are not required to establish standing").

Moreover, under the UCL and FAL, a plaintiff suffers an injury-in-fact when he or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."  Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).  To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs

---

[20]  In 2004, California voters approved Proposition 64, which amended the UCL to permit suits by the Attorney General and certain government attorneys, or by individuals who have "suffered injury in fact and ha[ve] lost money or property as a result of unfair competition." CAL. BUS. & PROF. CODE § 17204. The California Supreme Court has interpreted Proposition 64 as imposing an "actual reliance requirement on plaintiffs prosecuting a private enforcement action" under the UCL.  Tobacco II, 207 P.3d at 39. To satisfy the reliance requirement "[i]t is not . . . necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct. . . . It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision."  Id. (citations, quotation marks, and alteration marks omitted).

[21]  Plaintiffs clearly satisfy this requirement.  The named California plaintiffs all testified in their depositions that they relied on the name "vitaminwater" in deciding to purchase the product, in the belief that the name implied that vitaminwater was better for them than other beverages.  (See Antonov Dep. at 26:13-21; Koh Dep. at 6:15-18, 27:13-19, 29:23-25; Ford Dep. at 67:5-19, 87:1-22.)  Ms. Ackerman, the named New York plaintiff, also said that, although she knew vitaminwater contained some sugar, she felt "like [she] was tricked" and believed, based on the product name, that it had a better "vitamin to sugar ratio" than it actually did.  (Ackerman Dep. at 15:9, 29:14-15, 84:18-19.)

demonstrate the purchase of products as a result of deceptive advertising." Id.  See also Ries,

287 F.R.D. at 536 ("The focus of the UCL and FAL is on the actions of the defendants, not on

the subjective state of mind of the class members.  All of the proposed class members would

have purchased the product bearing the alleged misrepresentations.  Such a showing of concrete

injury under the UCL and FAL is sufficient to establish Article III standing.") (citation and

internal quotation marks omitted); In re Google AdWords Litig., No. 08 CV 3369, 2012 WL

28068, at *10 (N.D. Cal. Jan. 5, 2012) ("The requirement of concrete injury is satisfied when the

Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the

defendant, namely the purchase of defendant's product containing misrepresentations."); Kwikset

Corp. v. Superior Court, 246 P.3d 877, 890 (Cal. 2011) (in a UCL action, one of the

"innumerable ways" in which economic injury can be shown is purchasing more products or

services than the plaintiff otherwise would have purchased).

   Economic harm based on the "benefit of the bargain" theory, where a plaintiff

would not otherwise have purchased a product but for a misrepresentation, has also been

recognized as a viable basis for standing under the California consumer protection laws.[22]  See,

e.g., Chavez v. Blue Sky Natural Beverage Co., 340 F. App'x 359, 360–61 (9th Cir. 2009)

---

[22]  This is not true for the New York class's claims under New York law, as the New York Court of Appeals has rejected as "legally flawed" the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349."  Small v. Lorillard Tobacco Co., 720 N.E. 2d 892, 898 (N.Y. 1999) (dismissing GBL § 349 claims where plaintiffs sought "reimbursement of the purchase cost of cigarettes that they claim they would not have bought, but for defendants' fraudulent and deceptive practices," because this theory of harm "contain[ed] no manifestation of either pecuniary or 'actual' harm").  See also Baron v. Pfizer, Inc., 840 N.Y.S.2d 445, 448 (3d Dep't 2007) (citing Small and dismissing § 349 claim where plaintiff sought "a refund of the purchase price of [a prescription drug] on the ground that she would not have purchased the drug absent defendant's deceptive practices.").

(finding a sufficient pleading of injury-in-fact where a plaintiff alleged that he would not have

paid for allegedly mislabeled products had he known the truth about the products' geographic

origins); Khasin v. Hershey Co., No. 12 CV 01862, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9,

2012) (finding sufficient standing where a plaintiff alleged that he had "lost money or property

when he purchased the [food] products in question because he did not receive the full value of

those products as advertised and labeled due to the alleged misrepresentation").  See also Ross v.

Sioux Honey Ass'n, Co-op., No. 12 CV 1645, 2013 WL 146367, at *6 (N.D. Cal. Jan. 14, 2013)

(where plaintiff filed class action alleging that product label misled consumers into purchasing a

product they might otherwise not have purchased, court concluded that economic harm was

established for standing purposes); Colucci v. ZonePerfect Nutrition Co., No. 12 CV 2907, 2012

WL 6737800, *3–5 (N.D. Cal. Dec. 28, 2012); Jones v. ConAgra Foods, Inc., No. 12 CV 01633,

2012 WL 6569393, at *9–10 (N.D. Cal. Dec.17, 2012); Carrea v. Dreyer's Grand Ice Cream,

Inc., No. 10 CV 01044, 2011 WL 1593810, at *2–3 (N.D. Cal. Jan. 10, 2011); Chacanaca, 752 F.

Supp. 2d at 1125.  Because the California plaintiffs make similar  allegations, they have met

standing requirements on their claims.

        With respect to the New York plaintiffs, New York's consumer protection statute

confers standing on "any person who has been injured by reason of any violation of this section."

N.Y. GEN. BUS. LAW § 349(h).  Thus, in Hughes v. Ester C Co., No. 12 CV 0041, 2013 WL

1080533 (E.D.N.Y. Mar. 15, 2013), the plaintiffs alleged that they purchased the defendant's

product "Ester–C" based on its representations as to immune support, and that "[h]ad [they]

known the truth that the statements [they] relied on were false, misleading, deceptive, and unfair,

[they] would not have . . . paid the premium price (of approximately 300%) for the Ester–C

[they] bought." Id. at *6.  The court concluded that this was a "sufficient economic injury" for purposes of "clearing standing's injury bar," and that the plaintiffs satisfied the causation and redressability elements of standing by stating that their economic injuries were fairly traceable to the alleged misrepresentations on the product's packaging, and that they sought "to put an end to [d]efendants' deceptive marketing of Ester–C and to provide consumers with monetary relief for [d]efendants' deceptive conduct." Id. at *6–7.

In this case, the plaintiffs allege that they purchased vitaminwater because the product labels and defendants' marketing led them to believe this beverage was healthier for them than it actually was, or than other beverages would have been.  Under the applicable case law, this is sufficient to confer standing.[23]

---

[23]  Defendants also contend that plaintiffs lack standing to pursue injunctive relief, since "the named plaintiffs are now aware of vitaminwater's sugar content and have stopped drinking it."  (Defs.' Mem. at 34).  It is true that a plaintiff seeking prospective relief must show that he or she is "likely to suffer future injury" from the defendant's conduct. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974).  See also Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact'. . . ."); Lyons, 461 U.S. at 105 ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury. . . .").

However, courts have consistently held that plaintiffs have standing to seek injunctive relief  based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer.  To hold otherwise would "effectively bar any consumer who avoids the offending product from seeking injunctive relief." Koehler v. Litehouse, Inc., No. 12 CV 04055,  2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) (concluding that the plaintiff had standing to sue for injunctive relief even though he admitted he did not intend to make another purchase of the product in question ("Bleu Cheese Yogurt Dressing with Probiotics") because the product did not "boost immunity" as advertised); see also Ries, 287 F.R.D. at 533 ("were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); Larsen v. Trader Joe's Co., No. 11 CV 05188, 2012 WL 5458396, at

(continued...)

5.  <u>Ascertainability</u>

Finally, courts have added an "implied requirement" that the class be

ascertainable.  <u>See</u> <u>IPO</u>, 471 F.3d at 30; <u>In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret.</u>

<u>Income Sec. Act Litig.</u>, 281 F.R.D. 134, 140 (S.D.N.Y. 2012); <u>Casale</u>, 257 F.R.D. at 406.  Under

this requirement, the class must be "identifiable" such that "its members can be ascertained by

reference to objective criteria."  <u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.</u>,

209 F.R.D. 323, 337 (S.D.N.Y. 2002) (citation and internal quotation marks omitted).  <u>See also</u>

<u>McBean v. City of N.Y.</u>, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009) (To be ascertainable, the class

---

[23](...continued)
*4 (N.D. Cal. June 14, 2012) (holding that plaintiffs had standing to seek injunctive relief even
though they would not purchase the food items in question again because of their synthetic
ingredients); <u>Henderson v. Gruma Corp.</u>, No. 10 CV 4173, 2011 WL 1362188, at *7 (C.D. Cal.
Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as
narrowly as the Defendant advocates, federal courts would be precluded from enjoining false
advertising under California consumer protection laws because a plaintiff who had been injured
would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and
would never have Article III standing."); <u>Fortyune v. Am. Multi–Cinema, Inc.</u>, No. 10 CV 5551,
2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) ("If this Court rules otherwise [and does not
find standing], like defendants would always be able to avoid enforcement of the ADA.  This
court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade
the court's jurisdiction so long as he does not injure the same person twice.") (quotation
omitted); <u>Gelb v. Am. Tel. & Tel. Co.</u>, 150 F.R.D. 76, 77 n.3 (S.D.N.Y. 1993) ("The fact that
Plaintiff is now an 'inactive' cardholder does not strip him of standing to sue nor does he fail to
fulfill the 'typicality' or 'adequacy' requirements of Rule 23(a) for this reason.  Clearly, Plaintiff
alleges he was defrauded by defendants and that the fraudulent practices were ongoing at the time
the Complaint was filed.") (citing <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, defendants' allegedly deceptive conduct is ongoing.  Plaintiffs seek to be
relieved from defendants' misleading and deceptive practices in the future, and the fact that they
discovered the alleged deception years ago does not render defendants' advertising or labeling
any more accurate or truthful.  This is the harm New York's and California's consumer
protection statutes are designed to redress.  Whether or not the advertising and labeling are
indeed misleading or deceptive is, of course, a merits question that must be addressed at a later
stage.

must be "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling. . . . [A] class is ascertainable when defined by objective criteria that are administratively feasible."). The standard for ascertainability "is not demanding." Gortat v. Capala Bros., Inc., No. 07 CV 3629, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). "It is designed only to prevent the certification of a class whose membership is truly indeterminable." Id. Moreover, although the membership of the class must be ascertainable "at some point in the case," it need not be determined prior to class certification. Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 341–42 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). See also IPO, 471 F.3d at 45; Galvan, 2011 WL 5116585 at *5; Mazur v. Ebay, Inc., 257 F.R.D. 563, 567-68 (N.D. Cal. 2009) (class of persons who "would have won" a live auction "but for the shill bidder" was unascertainable, as plaintiffs did not present evidence identifying auctions in which a shill bid was the highest bid or suggest a method for identifying such persons or such auctions.).

Here, the class members can be identified by reference to "objective criteria." Both purported classes consist of individuals who purchased vitaminwater during specified time periods. While it may be difficult to locate those individuals, since most will not have kept receipts or other documentation of their purchases, the criteria used to define the class are objective.[24]  There are no subjective issues such that determining class membership would

---

[24] As the court explained in Ries, 287 F.R.D. at 535:

> Defendants' real concern with the proposed class definition appears to be that members of the class do not have actual proof that they are in the class. Defendants suggest that simply because most members of the proposed class will not have retained all of their receipts for AriZona Iced Tea over the past few years, the administration of this class will require "fact-intensive mini trials"

(continued...)

"require a mini-hearing on the merits of each case."[25]  Charron v. Pinnacle Grp. N.Y. LLC, 269

F.R.D. 221, 229 (S.D.N.Y. 2010).  See also Jermyn I, 256 F.R.D. at 433.[26]  I therefore conclude

that the classes are sufficiently ascertainable for purposes of Rule 23(a).

 B.  Rule 23(b)(2)

 Rule 23(b)(2) permits certification of a class when the class is seeking injunctive

or declaratory relief.  FED. R. CIV. P. 23(b)(2).  Plaintiffs must demonstrate that defendants

"acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

---

[24](...continued)
 to establish whether each purported class member had in fact made
 a purchase entitling them to class membership.  This is simply not
 the case.  If it were, there would be no such thing as a consumer
 class action. There is no requirement that "the identity of the class
 members . . . be known at the time of certification." (citations
 omitted.)

[25]  This case is therefore distinguishable from those in which the class definition
contained subjective criteria, or was linked to the ultimate merits of the case.  See, e.g., Ries, 287
F.R.D. at 528-29 ("An identifiable class exists if its members can be ascertained by reference to
objective criteria, but not if membership is contingent on a prospective member's state of mind.")
(citation omitted); Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (proposed
class could not be ascertained where it included persons or entities who purchased Dell computer
products that "Dell falsely advertised" because, in order to determine who should be a class
member, "it would be necessary for the court to reach a legal determination that Dell had falsely
advertised."); Zapka v. Coca-Cola Co., No. 99 CV 8238, 2000 WL 1644539, at *3 (N.D. Ill. Oct.
27, 2000) (declining to certify class where definition referred to state of mind: "all individuals
who consumed diet Coke deceived by marketing practices . . . into believing that fountain diet
Coke does not contain saccharin").

[26]  Moreover, "the ascertainability requirement is less important in a Rule 23(b)(2) class,
since a chief objective of this rule is to provide broad injunctive relief to 'large and amorphous'
classes not capable of certification under Rule 23(b)(3)."  In re Vitamin C Antitrust Litig., 279
F.R.D. at 116 (quoting Marisol A., 126 F.3d at 378).  Since I am recommending that the classes
be certified as injunctive classes under Rule 23(b)(2) only, ascertainability is of minor concern.

. . . is appropriate respecting the class as a whole."  Plaintiffs argue that "class certification under Fed. R. Civ. P. 23(b)(2) is particularly appropriate here since individual damages are small and are not the motivating factor behind this litigation."  (Pls.' Master Mem. at 16.)  Rather, the named plaintiffs state that their "primary motive" is "to change the labels on vitaminwater."  (Id., citing Ackerman Dep. (Clark-Weintraub Decl., Ex. C), at 15:2-17.  See also Tr. at 7 (plaintiffs' counsel stating that injunctive relief is more important to the plaintiffs than monetary damages.))  Defendants challenge this assertion, contending that "monetary damages are the plaintiffs' primary goal."  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Master Motion for Class Certification, dated Aug. 24, 2012, at 34.)

        In Dukes, the Supreme Court held that certification under Rule 23(b)(2) is not appropriate "when—despite the suitability of generalized injunctive or declaratory relief–each class member would [also] be entitled to an individualized award of monetary damages." Nationwide Life Ins. Co. v. Haddock, 460 F. App'x 26, 29 (2d Cir. 2012).  Thus, "a class complaint alleging numerous individual claims for monetary relief may not be certified under Rule 23(b)(2), at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief."  Dukes, 131 S. Ct. at 2558.[27]  The Court in Dukes further explained that monetary relief is considered incidental when it "flow[s] directly from liability to the class as a

---

        [27]  It is generally understood that Dukes abrogated the approach to Rule 23(b)(2) class certification previously used in the Second Circuit; i.e. that certification of a combination Rule 23(b)(2) class is permitted so long as the individualized monetary relief does not predominate over the requested injunctive relief.  Stinson v. City of N.Y., 282 F.R.D. 360, 380 (S.D.N.Y. 2012); Jermyn II, 276 F.R.D. at 173; United States v. City of N.Y., 276 F.R.D. 22, 31–33 (E.D.N.Y. 2011).  See Robinson v. Metro–North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001).  Therefore, this court is without substantial guidance from courts in this Circuit concerning the meaning of the term "incidental damages" or how it would apply in the context of a claim under the New York Deceptive Practices Act.

whole on the claims forming the basis of the injunctive or declaratory relief" and does not "entail complex individualized determinations." Dukes, 131 S. Ct. at 2560 (citing with approval Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)).  See also Seekamp, 2012 WL 860364, at *8 (explaining that a court deciding whether to certify a class under Rule 23(b)(2) must consider "whether the monetary relief sought will entail complex individualized determinations with respect to the proposed class members.").

            In this case, plaintiffs' prayer for relief seeks both monetary and injunctive relief. (See Second Am. Compl. at 35.)  However, as explained, plaintiffs' injury is economic. Although the monetary amount sought may be small per class member, in the aggregate such damages cannot be considered "incidental" to the injunctive relief plaintiffs seek.  While plaintiffs describe their pursuit of monetary relief as secondary to their desire for injunctive relief, it is clear that monetary relief is central to their claims, or at least of equal importance, since the crux of their complaint is that they paid a premium for vitaminwater, or purchased vitaminwater instead of another beverage, in the belief that the name implies health benefits.  See In re Flash Memory Antitrust Litig., No. 07 CV 0086, 2011 WL 1301527, at *7 (N.D. Cal. Mar. 31, 2011). Moreover, as explained in more detail below, the damages calculations will involve individual determinations, since putative class members paid different amounts for the product, and some class members may not have suffered a net economic harm.  See, e.g., DeMarco v. Nat'l Collector's Mint, Inc., 229 F.R.D. 73, 81 (S.D.N.Y. 2005) (holding that the damages sought were incidental to the injunctive and declaratory relief, since they could be "easily computed," as every consumer who bought the product from defendants paid the exact same amount, and the customers' identities and the number sold were readily ascertainable).

-37-

As plaintiffs point out, however, courts have certified Rule 23(b)(2) injunctive classes for claims involving product labeling and marketing.  See, e.g., Ries, 287 F.R.D. at 541-42 (certifying Rule 23(b)(2) injunction class of consumers who claimed they paid artificially-inflated prices for AriZona Iced Tea because it was labeled as all natural, but denying certification with respect to claims for monetary damages, including restitution, refund, reimbursement and disgorgement).[28]  See also Jermyn I, 256 F.R.D. at 434 (certifying class under

---

[28]  Plaintiffs' request for restitution under the UCL is problematic in the context of certification under Rule 23(b)(2), which "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  Dukes, 131 S. Ct. at 2557.  Although plaintiffs characterize restitution as a form of equitable relief, rather than for monetary damages, "whether the monetary relief is understood as legal damages or an equitable remedy is irrelevant to this analysis."  Ries, 287 F.R.D. at 541.  Monetary recovery is not entirely prohibited in the (b)(2) class context. For example, class claims for statutory or punitive damages that do not turn on the individual circumstances of class members may be sufficiently "incidental" to warrant certification under (b)(2).  In this case, however, plaintiffs seek individualized awards of monetary restitution, which would require individualized assessments of damages based on how many bottles of vitaminwater each class member purchased and at what price.  See In re Flash Memory Antitrust Litig., 2011 WL 1301527, at *7 ("Because the restitution amount is dependent on the particular purchases made . . . monetary relief will dictate the key procedures utilized in this case and require individualized inquiries and hearings.").  Since the purpose of restitution is "to return class members to status quo," the amount of restitution due must account for the benefits each class member received in each transaction.  In re Google AdWords Litig., 2012 WL 28068, at *15. Thus, I am not persuaded that, in this case, restitution can be reliably measured using common methods.

Although plaintiffs' claim for disgorgement of profits could be subject to common proof because the amount of damages could be calculated based on overall beverage sales, rather than sales to individual consumers, "it would still be unmanageable under Rule 23(b)(2), which lacks Rule 23(b)(3)'s notice and opt-out requirements designed to facilitate the award of monetary damages to individual class members."  Reis, 287 F.R.D. at 541 (citing Dukes, 131 S. Ct. at 2559).  See also Jones v. Ford Motor Credit Co., 00 CV 8330, 2005 WL 743213, at *24 (S.D.N.Y. Mar. 31, 2005) ("'disgorgement, even if measured in the aggregate and based upon the wrongdoer's gain, is a request for money that will require individual determinations in order for any such award to be distributed to class members. . . . These required individualized determinations would diminish the efficiencies that would be created by adjudicating the disgorgement claims on a classwide basis.'") (quoting Cason v. Nissan Motor Acceptance Corp.,
(continued...)

-38-

Rule 23(b)(2) and noting that New York law "place[s] a high value on this type of injunctive relief.").

Here, defendants clearly "acted . . . on grounds generally applicable to the class," and injunctive relief constitutes a significant aspect of the relief sought.  If, as plaintiffs allege, the name "vitaminwater" is misleading to a reasonable consumer, then equitable relief in the form of an injunction would be an appropriate remedy.  I therefore respectfully recommend that the New York and California classes be certified as Rule 23(b)(2) injunctive classes, to litigate all aspects of plaintiffs' claims for declaratory and injunctive relief, but that certification be denied to the extent plaintiffs seek monetary damages, including restitution and disgorgement.[29]  See Aho v. AmeriCredit Fin. Servs., Inc., 277 F.R.D. 609, 619 (S.D. Cal. 2011) (certifying Rule 23(b)(2) class with respect to claims for injunctive and declaratory relief  "[w]ith the carve out of [non-incidental] statutory and restitutionary damages").

C.  Rule 23(b)(3)

Plaintiffs also seek class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

---

[28](...continued)
212 F.R.D. 518, 520 (M.D. Tenn. 2002)).

[29]  Under Rule 23(c)(4)(A), the court is empowered to limit the Rule 23(b)(2) certification to certain issues only.  The Second Circuit has expressly encouraged district courts to "take full advantage of this provision to certify separate issues in order . . . to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." Robinson, 267 F.3d at 167–68 (internal quotations and citation omitted).  Moreover, participation in a Rule 23(b)(2) class seeking injunctive relief does not preclude absent class members from bringing their non-litigated damages claims in subsequent lawsuits.  In re Vitamin C Antitrust Litig., 279 F.R.D. at 114.

and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." United States v. City of N.Y., 276 F.R.D. at 30. See also In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006). It "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Myers, 624 F.3d at 547 (citations and internal quotation marks and alterations omitted). "The predominance inquiry is, therefore, related to the commonality and typicality prongs of Rule 23(a), but it 'is a more demanding criterion than the commonality inquiry under Rule 23(a).'" Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 43 (E.D.N.Y. 2008) (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (9th Cir. 2006)). At the same time, "'Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.'" Id. at 45 (quoting Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39-40 (1st Cir. 2003)).

Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, No. 11 CV 1085, 2013 WL 691001, at *4 (Feb. 27, 2013). Nonetheless, the court has a "duty to take a 'close look' at whether common questions predominate over individual ones." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (citing Amchem Prods., Inc., 521 U.S. at 615). In order to determine whether common questions predominate, the court must find that the issues subject to generalized proof outweigh those issues that are subject to individualized proof. See In re Nassau County Strip Search

Cases, 461 F.3d 219, 227–28 (2d Cir. 2006) (quoting Heerwagen v. Clear Channel Commc'ns,

435 F.3d 219, 226 (2d Cir. 2006)).  See also UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121,

131 (2d Cir. 2010) ("Class-wide issues predominate if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof.") (citation omitted); Steinberg, 224 F.R.D. at 73 ("[w]hile

the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact

exist among the putative class members," the predominance requirement of Rule 23(b)(3) "is

more stringent and requires that such common questions be the focus of the litigation.").

       In this action, there are legal and factual issues that do not require individualized

determinations, but can be resolved through generalized proof applicable to the class.  Indeed, the

Supreme Court has held that where, as here, the materiality of an alleged misrepresentation is

judged according to an objective standard, materiality "is a question common to all members of

the class."  Amgen Inc., 2013 WL 691001, at *4 (explaining that the "alleged misrepresentations

and omissions, whether material or immaterial, would be so equally for all investors composing

the class").  In the present case, because New York GBL § 349 and California's UCL, FAL, and

CLRA use an objective, reasonable consumer standard for reliance, those claims present liability

questions that are capable of class-wide resolution using class-wide evidence, and will generate

common answers.

       However, this is not true for the New York plaintiffs' false advertising claim

under GBL § 350, which requires a showing of individual reliance.  See Leider, 387 F. Supp. 2d

at 298 (denying class certification for GBL § 350 claim where plaintiffs failed to allege that the

class members relied on allegedly false advertising); Small, 679 N.Y.S.2d at 600; see also

DeAngelis v. Timberpeg East, Inc., 858 N.Y.S.2d 410, 415 (3d Dep't 2008) (noting that

justifiable reliance is a requirement of a claim under GBL § 350); Solomon v. Bell Atl. Corp.,

777 N.Y.S.2d 50, 53 (1st Dep't 2004) (reversing class certification because, inter alia, individual

issues would predominate regarding which, if any, advertisements the class members saw and

whether they were reasonably misled by such advertisements); Carnegie v. H & R Block, Inc.,

703 N.Y.S.2d 27, 29 (1st Dep't 2000) (reversing class certification because, inter alia, individual

issues predominated with respect to which oral communications or advertisements putative class

members relied upon that allegedly induced them to obtain refund anticipation loans from the

defendant); Strauss v. Long Island Sports, Inc., 401 N.Y.S.2d 233, 235 (2d Dep't 1978)

(reversing class certification because, inter alia, individual issues of the plaintiffs' reliance on

advertisements would predominate).

           Moreover, as defendants accurately note, while materiality and reliance under

GBL § 349 are determined based on the objective "reasonable consumer" standard, loss

causation must be addressed individually.  Newman v. RCN Tel. Servs., Inc., 238 F.R.D. 57, 74

(S.D.N.Y. 2006).  See also McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228 (2d Cir. 2008)

("[O]ut-of-pocket losses cannot be shown by common evidence because they constitute an

inherently individual inquiry; individual [purchasers] would have incurred different losses

depending on what they would have opted to do, but for defendants' misrepresentations."),

abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008);

Derbaremdiker v. Applebee's Int'l, Inc., 12 CV 1058, 2012 WL 4482057, at *7 (E.D.N.Y. Sept.

26, 2012) ("Although Section 349 'does not require proof of justifiable reliance, a plaintiff

seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.'") (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995)); In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 310-11 (S.D.N.Y. 2004) ("The causation element is essential: The plaintiff . . . must show that the defendant's material deceptive act caused the injury" and "assessment of specific causation often dissolves into a myriad of individualized causation inquiries.").

        As this court has previously explained, "[i]njury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." Ackerman, 2010 WL 2925955, at *23.  Proof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof.  See Weiner v. Snapple Beverage Corp., 07 CV 8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (denying Rule 23(b)(3) certification "because individualized inquiries as to causation, injury, and damages for each of the millions of putative class members" who purchased defendant's product "would predominate over any issues of law or fact common to the class.").  See also Oscar v. BMW of N. Am., LLC, 09 CV 11, 2012 WL 2359964, at *6 (S.D.N.Y. June 19, 2012) (denying certification under Rule 23(b)(3) and explaining that consumers' "purchase decisions, and, a fortiori, the particular price paid . . .  may be based on a variety of factors."); Leider v. Ralfe, 01 CV 3137, 2003 WL 24571746, at *10 (S.D.N.Y. Mar. 4, 2003) (denying motion for 23(b)(3) certification where proof of plaintiffs' damages would

"require highly individualized determinations of fact as to each class member.").[30]  Nor have

plaintiffs proposed a suitable methodology or formula for establishing causation and injury on a

class-wide basis.  See Comcast Corp., 133 S. Ct. at 1434 (reversing grant of class certification

under Rule 23(b)(3) where plaintiffs in antitrust case failed to propose a methodology for

identifying classwide damages that were "the result of the wrong.").  Indeed, plaintiffs have cited

no case certifying a Rule 23(b)(3) consumer class for claims brought under GBL § 349 based on

allegations of misleading product labeling or marketing, and this court's research uncovered

none.[31]  Thus, while there are common questions concerning the reasonable consumer's response

---

[30]  Jermyn I, 256 F.R.D. 418, is distinguishable.  There, the court certified a (b)(3) class
asserting, inter alia, GBL § 349 claims against electronics retailer Best Buy. The gravamen of
that complaint was that, in conflict with an advertised price-matching program that would have
provided discounts to customers in certain circumstances, Best Buy had an undisclosed internal
policy of denying those price-matching requests.  Id. at 423. There, however, the refusal to
match lower prices plainly caused injury to the members of the class as defined.  The asserted
"purchase price" injury—i.e., the margin between the lowest price found and the price paid to
Best Buy—was necessarily caused by the conduct in question, that is, the undisclosed practice of
refusing to honor a valid price-matching request that otherwise would have saved the class
member that precise sum.

Here, by contrast, vitaminwater has a number of characteristics that customers might
value, and to differing degrees.  There is simply no way—without inquiring on a
customer-by-customer basis—to determine whether the name "vitaminwater" (or one of the other
complained-of statements) affected the purchase price paid by each putative class member.  See
McLaughlin, 522 F.3d at 223 (explaining that "[i]ndividualized proof [was] needed to overcome
the possibility that a member of the purported class purchased Lights [cigarettes] for some reason
other than the belief that Lights were a healthier alternative.")

[31]  For the same reasons, the New York plaintiffs' claim for unjust enrichment is unsuited
to class certification.  See Crab House of Douglaston Inc. v. Newsday, Inc., 04 CV 558, 2013
WL 1338894, at *14 (E.D.N.Y. Mar. 29, 2013) (denying class certification for unjust enrichment
claim because plaintiffs failed to show that they would be able to prove, on a class-wide basis,
that defendant benefitted at each plaintiff's expense and that equity and good conscience required
restitution); Dungan v. Acad. at Ivy Ridge, 249 F.R.D. 413, 427 (N.D.N.Y. 2008) ( "Plaintiffs'
claims of unjust enrichment will require individualized proof as to each plaintiff's situation and

(continued...)

-44-

to vitaminwater's labeling and marketing, I find that individual questions regarding loss

causation would overwhelm them.[32]

       This is true for the California plaintiffs' claims, as well.  See In re Google

---

[31](...continued)
an individualized analysis of 'equity' and 'good conscience.'").

   [32]  It is true that individual damage calculations will not automatically defeat class
certification.  See Blessing v. Sirius XM Radio Inc., No. 09 CV 10035, 2011 WL 1194707, at *8
(S.D.N.Y. Mar. 29, 2011) ("'that damages may have to be ascertained on an individual basis is
not, standing alone, sufficient to defeat class certification.'") (quoting In re Currency Conversion
Fee Antitrust Litig., 264 F.R.D. at 115–16); Jermyn I, 256 F.R.D. at 436 ("The fact that the
mechanical calculation of each member's damages will have individualized aspects does not
preclude class certification.").  Nonetheless, "the fact that damages may have to be ascertained on
an individual basis" is "a factor that we must consider in deciding whether issues susceptible to
generalized proof 'outweigh' individual issues."  McLaughlin, 522 F.3d at 231 (citation omitted).
See also Scaggs v. N.Y. State Dep't of Educ., 06 CV 799, 2009 WL 890587 (E.D.N.Y. Mar. 31,
2009) (explaining that, while differences in the amount of damages suffered by individual class
members may not defeat class certification, "'where demonstrating the fact of damage requires
more individualized proof, courts will decline class certification.'") (quoting Cont'l Orthopedic
Appliances, Inc. v. Health Ins. Plan of Greater N.Y., 198 F.R.D. 41, 45 (E.D.N.Y. 2000));
Fleischman v. Albany Med. Ctr., 06 CV 0765, 2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ("[I]f
the measure of out of pocket damages requires individualized proof, then classwide issues can
not be said to predominate.").

       Plaintiffs also correctly note that § 349 provides for a minimum amount of
statutory damages. N.Y. GEN. BUS. LAW. § 349(h) ("any person who has been injured by reason
of any violation of this section may bring an action in his own name to enjoin such unlawful act
or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both
such actions.") Thus, if plaintiffs are able to prove injury, but their damages are less than the
statutory minimum, they will still be entitled to the minimum amount of statutory damages.  Kim
v. BMW of Manhattan, Inc., 819 N.Y.S.2d 848 (Table) (N.Y. Sup. Ct. 2005); cf. Mayline
Enters., Inc. v. Milea Truck Sales Corp., 641 F. Supp. 2d 304, 309 (S.D.N.Y. 2009) ("Defendant
claims that the [Federal Odometer Act claim] should be dismissed because plaintiff suffered no
actual damages. But this is a silly argument; one can never have no damages for violation of a
statute that provides for statutory damages.").  This argument misses the point.  In order to
receive the statutory amount, each class member would still have to prove causation, i.e., that he
or she paid a premium for vitaminwater.  This would require a showing of how much each class
member paid and the price of a comparable beverage that the class member would have
purchased absent the alleged misrepresentation.

AdWords Litig., 2012 WL 28068, at *14 (explaining that "the individual nature of the

restitutionary relief sought" was an obstacle to a finding that common issues predominated, as

"class members each paid different sums."); In re Flash Memory Antitrust Litig., 2010 WL

2332081, at *12 (denying certification where proposed damages methodology "would . . . sweep

in an unacceptable number of uninjured plaintiffs").[33]

        In addition to predominance of common questions, Rule 23(b)(3) requires that "a

class action [be] superior to other available methods for fairly and efficiently adjudicating the

controversy."  Rule 23(b)(3) provides four factors pertinent to a finding of superiority:

---

[33] Courts in California are more inclined to find predominance in cases brought under the California consumer protection laws than are courts in New York for cases brought under GBL §§ 349 and 350.  See, e.g., In re POM Wonderful LLC Mktg. & Sales Practices Litig., No. ML 10 02199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying Rule 23(b)(3) class in case alleging violations of the UCL, FAL, and CRLA arising out of marketing regarding the health benefits of Pom Wonderful pomegranate juice); In re Ferrero Litig., 278 F.R.D. 552, 560 (S.D. Cal. 2011) (class members' contention that the defendant made a material misrepresentation regarding the nutritional benefits of Nutella held sufficient to satisfy the predominance requirement); Johnson v. Gen. Mills, Inc., 276 F.R.D. 519, 524 (C.D. Cal. 2011) (certifying Rule 23(b)(3) class of consumers who purchased YoPlus yogurt). This is because federal courts in California are bound by Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975), in which the Ninth Circuit held that "[t]he amount of damages is invariably an individual question and does not defeat class action treatment."  See also Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit . . . damage calculations alone cannot defeat class certification.")

However, the Second Circuit, which binds this court, has held otherwise.  In McLaughlin, 522 F.3d at 227, the plaintiffs could only establish the requisite injury "by showing that plaintiffs paid more for light cigarettes than they would have but for defendants' misrepresentation."  The court held that "because the acceptable measure of injury-out-of-pocket damages would require individualized proof, class-wide issues [could not] be said to predominate."  Id. at 228.  See also Salon Fad v. L'Oreal USA, Inc., 10 CV 5063, 2011 WL 4089902, at *7 (S.D.N.Y. Sept. 14, 2011) (finding no predominance where plaintiffs could not provide class-wide proof of causation and injury).  This court must apply the federal law of the Second Circuit.  See In re Korean Air Lines Disaster, 829 F.2d 1171 (D.C. Cir. 1987) (Ginsburg, J.) ("Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.")

> (A) the interest of members of the class in individually controlling
> the prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability
> or undesirability of concentrating the litigation of the claims in the
> particular forum; and (D) the difficulties likely to be encountered
> in the management of a class action.

United States v. City of N.Y., 276 F.R.D. at 29-30 (citing Amchem Prods., Inc., 521 U.S. at

615-16).  "The inquiries surrounding predominance of common facts and superiority of the class

action are intertwined.  The greater the number of individual issues, the less likely that a class

action is the superior method of adjudication."  O'Connor v. Boeing N. Am., Inc., 180 F.R.D.

359, 383 (C.D. Cal. 1997) (citing In re Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 856

(9th Cir. 1982)).

On one hand, this is a consumer case in which each class member has a small

claim.[34]  Where proceeding individually would be prohibitive due to the minimal recovery, "the

class action device is frequently superior to individual actions."  Seijas v. Republic of Argentina,

606 F.3d 53, 58 (2d Cir. 2010).  See also Amchem Prods., Inc., 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

_____

[34]  According to plaintiffs, the retail price of vitaminwater is approximately $1.50 per
bottle.  (Pls.' Master Mem. at 28.)  However, according to the Expert Report of defendant's
expert Keith R. Ugone, retailers do not pay a uniform price for vitaminwater.  Pricing varies
based on whether the beverage is sold in a single pack 32-ounce container or a 4-pack of
12-ounce containers.  (Ugone Report ¶ 76.)  Moreover, the sales at issue span a nine-year period
(id. ¶ 48), during which prices necessarily varied.  Also, consumers bought the product through
different distribution channels at different times and in different locations, all of which bear on
price.  (Id., e.g., ¶¶ 4, 7-9, 42-48.)  The factors that influence the price include: (1) the type of
retailer (grocery stores, convenience stores, and other retailers charge different prices); (2) the
store location; (3) the city or geographic location; (4) the bottle size and type of package
purchased; and (5) coupons and promotional discounts.  (Id. ¶ 6.)

(internal quotations omitted); Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 103

(S.D.N.Y. 1981) ("A Rule 23(b)(3) action clearly is superior where large numbers of persons,

who may be unaware of the existence of a cause of action, are involved and where most of their

claims are too small to warrant individual suits."). Here, the amount of money for which each

class member is suing is so small that is it unlikely that any individual would be able to maintain

a lawsuit to obtain redress.[35]

On the other hand, it would be exceedingly difficult to identify the members of

these two classes and give them appropriate notice and an opportunity to opt out. See Pagan v.

Abbott Labs., Inc., 287 F.R.D. 139, 151 (E.D.N.Y. 2012) (noting that a class of purchasers of

infant formula would be "difficult to notify and verify" where case involved an "over-the-counter

product [that] is frequently paid for in cash."). Indeed, manageability is "critical to the Rule

23(b)(3) analysis," In re Fresh Del Monte Pineapples Antitrust Litig., 04 MD 1628, 2008 WL

---

[35] Defendants also argue that class certification is not appropriate because the "voluntary payment doctrine" would bar recovery for any class member who, after learning the amount of sugar in vitaminwater, continued to purchase it. Defendants contend that individualized assessment of this issue must be made as to each plaintiff. I find this argument unpersuasive. As the Second Circuit has explained, "[a]lthough a court must examine the relevant facts and both the claims and defenses in determining whether a putative class meets the requirements of Rule 23(b)(3), the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 139 (internal quotations omitted); accord Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000). "[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 139; accord Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975) (stating that the existence of a defense "does not compel a finding that individual issues predominate over common ones" when there is a "sufficient nucleus of common questions"). See also Dupler , 249 F.R.D. at 45 ("It is not the law that any time a voluntary payment doctrine issue is raised that certification must be denied.").

-48-

5661873, at *9 (S.D.N.Y. Feb. 20, 2008), and "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen, 417 U.S. at 164.  In this case, plaintiffs have failed to sustain their burden of establishing the manageability of the classes because they have not presented a class-wide damages model that can be used based on common proof, or a reliable method of distributing damages to putative class members.  See In re Fresh Del Monte Pineapples Antitrust Litig., 2008 WL 5661873, at *10 (denying Rule 23(b)(3) certification because "the problems inherent in ascertaining and distributing a damage award to countless consumers will make it impossible to administer the action and thereby negate any advantages gained by allowing the class allegations to stand." ) (citation omitted); City of Philadelphia v. Am. Oil Co., 53 F.R.D. 45, 72 (D.N.J. 1971) ("It is readily apparent that no matter how easy it is to establish damages on a class level, if it is extremely difficult or almost impossible to distribute these sums to their rightful recipients, the class is unmanageable.").  Nor have plaintiffs estimated the cost of notice and claims administration, which might overwhelm the benefit to the classes.  See, e.g., Eisen, 479 F.2d at 1010, 1017-18 ("it is fairly obvious that . . . the expenses of giving the notices . . . and the general costs of administration of the action would exceed the amount due" to members of the class).[36] In short, I find that plaintiffs have not established that a Rule 23(b)(3) class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  I therefore respectfully recommend that the motion for certification under Rule 23(b)(3) be denied.

---

[36]  Nor have plaintiffs offered an appropriate basis or rationale for the court to distribute damages *cy pres* to charitable organizations.  See Jones v. National Distillers, 56 F. Supp. 2d 355, 357 (S.D.N.Y. 1999) ("Distributing class funds outside the class is permissible where the funds 'primarily' benefit class members, especially where the non-class distribution is not an initial purpose of the fund, but only an eventual way to dispose of the unclaimed portion . . . .").

D.  Class Counsel

The law firms of Scott+Scott LLP and Reese Richman LLP, together with the

Center for Science in the Public Interest, seek appointment as class counsel in this case.   Fed. R.

Civ. P. 23(g) states, in relevant part:

> (C) In appointing class counsel, the court
> (i) must consider: the work counsel has done in identifying or
> investigating potential claims in the action, counsel's experience in
> handling class actions, other complex litigation, and claims of the
> type asserted in the action, counsel's knowledge of the applicable
> law, and the resources counsel will commit to representing the
> class;
> (ii) may consider any other matter pertinent to counsel's ability to
> fairly and adequately represent the interests of the class;
> (iii) may direct potential class counsel to provide information on
> any subject pertinent to the appointment and to propose terms for
> attorney fees and nontaxable costs.

FED. R. CIV. P. 23(g).  Rule 23(g) replaces the adequacy test as originally developed under Rule

23(a)(4), but largely incorporates the adequacy standards developed thereunder.  Jones v. Ford

Motor Credit Co., No. 00 CV 8330, 2005 WL 743213, at *26 (S.D.N.Y. Mar. 31, 2005).

No one has objected to counsel's motion, and I find the attorneys for the New

York and California plaintiffs qualified to act as class counsel.  I therefore recommend that the

motion be granted.

E.  Expert Reports

Plaintiffs move to exclude the expert reports and testimony of (1) Stephen

Swisdak, an historian whom defendants asked "to conduct research into knowledge widely

available to the public in certain media areas concerning the sugar content, calorie content, and

recommended serving size of vitaminwater," (2) Carol A. Scott, Ph.D., an expert on consumer

surveys whom defendants hired to conduct research into commercial information about vitaminwater and consumers' reasons for purchasing and consuming it, and (3) Elizabeth Applegate, Ph.D., an expert on Sports Nutrition.  Through these experts, defendants seek to demonstrate that consumers have, inter alia, many opportunities to be exposed to information about the sugar and calorie content of vitaminwater, many different reasons for buying vitaminwater, wide variations in awareness of vitaminwater's sugar and calorie content, and varying notions of what is "healthy."

On a class certification motion, the court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." IPO, 471 F.3d at 41.  In making that determination, the court must "resolve[] factual disputes relevant to each Rule 23 requirement and find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  Id.  Thus, the expert reports are only relevant here to the extent that they bear on one or more of the Rule 23 elements.  Indeed, the Second Circuit has cautioned district courts to ensure that "a class certification motion does not become a pretext for a partial trial of the merits."  Id.

Having reviewed the expert reports, I find that they contain little if any information that bears on class certification.  To the extent these expert reports are relevant, it is to the question of whether a reasonable consumer would find vitaminwater's labeling or marketing misleading or deceptive, which is a merits-based inquiry.  I therefore find it unnecessary to consider these expert reports in connection with the present motion.[37]

---

[37]  Plaintiffs have objected to the admissibility of these expert reports under Daubert. Those issues can be addressed at a later stage.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the New York and California classes be certified as injunctive classes under FED. R. CIV. P. 23(b)(2), to litigate all aspects of plaintiffs' claims for declaratory and injunctive relief, and that plaintiffs' motions for class certification be denied in all other respects.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> 28 U.S.C. § 636(b)(1) (2011); FED. R. CIV. P. 72, 6(a), (e).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       July 17, 2013

-52-