**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats
*mkats@cspinet.org*
1220 L Street, Northwest, Suite 300
Washington, District of Columbia  20005
Telephone: (202) 777-8381
Facsimile: (202) 265-4954

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Deborah Clark-Weintraub
*dweintraub@scott-scott.com*
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York  10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Counsel for Plaintiffs and the Settlement Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLACEAU VITAMINWATER MARKETING AND SALES PRACTICE LITIGATION (NO. II) | Case No. 1:11-md-02215-DLI-RML |
| BATSHEVA ACKERMAN, et al.,<br><br>          Plaintiffs,<br>     v.<br><br>COCA-COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU),<br><br>          Defendants. | Case No. 1:09-cv-00395-DLI-RML<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES TO PLAINTIFFS' COUNSEL AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES** |
| JULIANA FORD,<br>          Plaintiff,<br>     v.<br><br>THE COCA-COLA COMPANY and ENERGY BRANDS INC.,<br>          Defendants. | Case No. 1:11-cv-02355-DLI-RML |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ................................................................................................................ 3

    A. Class Counsel Negotiated Fees with Defendants Only After Agreeing upon the Settlement Terms ............................................................................... 3

    B. The Agreed-Upon Attorneys' Fees and Litigation Expenses Are Reasonable and Warrant Approval ................................................................. 5

        1. The Complexity, Magnitude, and Risks of the Actions and the Contingent Nature of the Fee ............................................................. 6

        2. The Result Achieved and the Quality of Representation ................ 7

        3. The Requested Multiplier of 1.02 Is Reasonable ........................... 8

    C. The Court Should Approve the Reimbursement of Class Counsel's Expenses ...... 8

    D. The Consumer Legal Remedies Act Mandates the $2.73 Million Payments in Fees and Costs ............................................................................. 8

    E. The Court Should Approve the Proposed Service Awards to the Class Representatives ............................................................................................. 9

III. CONCLUSION ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ............................................................................................... 7

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) ....................................................................................... 7

*Blessing v. Sirius XM Radio, Inc.*,
507 F. App'x 1 (2d Cir. 2012) ............................................................................... 2, 3, 4, 5

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996) ................................ 4

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ............................................................................................. 4

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................................ 5

*Graciano v. Robinson Ford Sales, Inc.*,
50 Cal. Rptr. 3d 273 (Cal. Ct. App. 2006) ........................................................................ 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......................................................................................................... 4

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91 (E.D.N.Y. 2015) .................................................................................. 9, 10

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ............................................................................................ 4

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................. 5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ................................................................................... 7

*Kim v. Euromotors W./The Auto Gallery*,
56 Cal. Rptr. 3d 780 (Cal. Ct. App. 2007) .................................................................... 8, 9

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................................. 8

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-CV-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .................................10

*McBean v. City of New York*,
  233 F.R.D. 337 (S.D.N.Y. 2006) ..............................................................................................3

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)........................................................................................5, 8

**STATUTES AND OTHER AUTHORITIES**

Cal. Civ. Code § 1780(e).................................................................................................................8

4 William B. Rubenstein et al., Newberg on Class Actions (4th ed. 2008) .................................10

**FILINGS**

Settlement Agreement & Release ........................................................................................*passim*

Reese Declaration ................................................................................................................*passim*

I.   PRELIMINARY STATEMENT

Plaintiffs[1] Batsheva Ackerman, Ruslan Antonov, James Koh, and Juliana Ford respectfully submit this memorandum of law in support of Plaintiffs' motion for the awarding of attorneys' fees and reimbursement of litigation expenses to Class Counsel and service awards to the Class Representatives.

As discussed in detail in Plaintiffs' Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement (filed concurrently herewith), Class Counsel achieved a favorable settlement on behalf of the Settlement Class after more than seven years of work in hard-fought, vigorously contested litigation.

Importantly, the Settlement Agreement provides for significant injunctive relief for the benefit of the Settlement Class Members. First, Defendants will be required to make a number of affirmative disclosures on the label of it vitaminwater beverage products ("Products") as well as refrain from making certain marketing statements.  This includes, but is not limited to conspicuous placement of the words "with sweeteners" next to the name vitaminwater itself on the Products' labeling.[2]

Finally, Defendants may not use certain specific statements advertising the Product's purported benefits on the Product's labeling or in its marketing, including but not limited to the following claims: "vitamins + water = all you need"; "made for the center for responsible hydration"; "specially formulated to support optimal metabolic function with antioxidants that

---

[1] Capitalized terms shall have the meaning the Settlement Agreement ascribes to them. *See generally* Settlement Agreement & Release, ECF No. 167-2.

[2] Pursuant to the Settlement Agreement, the Product's "labeling" includes its principal display panel, as defined in 21 C.F.R. § 101.1, and its information display panel, as defined in 21 C.F.R. § 101.2. Settlement Agreement & Release ¶ 21.s.

may reduce the risk of chronic diseases and vitamins necessary for the generation and utilization of energy from food"; "specially formulated with nutrients required for optimal functioning of the immune system, and the generation and utilization of energy from food to support immune and other metabolic activities."[3]

As this Court is aware, these results were only achieved after hard-fought, adversarial litigation that lasted for more than seven years. Defendant the Coca-Cola Co. is a well-funded Fortune 100 company and expended great resources fighting Class Counsel at every turn. Indeed, Defendants hired no less than two prominent, national litigation firms to defend it in this matter. Consequently, Class Counsel in turn had to expend a substantial amount of time and resources in litigating this matter for the past seven years to achieve the resulting settlement which enhances consumer awareness about the ingredients in the Products.

Class Counsel now hereby moves for $2,730,000 as payment of attorneys' fees and reimbursement of litigation expenses. Plaintiffs also hereby request payments of $5,000 each (for a total of $20,000) for their contributions to, and active participation in, the Action.

As the record before this Court demonstrates,[4] the favorable outcome in this case is the result of Class Counsel's hard work and diligent efforts. The amount requested in fees and expenses for Class Counsel fairly and reasonably compensates them for their seven years of hard work and diligent efforts in litigating this matter as well as their unreimbursed expenses. The requested amount is in line with prior decisions of courts in the Second Circuit. *See, e.g.*,

---

[3] A full list of these former labeling claims is in the Agreement. Settlement Agreement & Release ¶ 35.d.

[4] The Declaration of Michael R. Reese ("Reese Decl.") is an integral part of this submission. Plaintiffs respectfully refer the Court to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the work Class Counsel performed, the settlement negotiations, and the numerous risks and uncertainties the litigation presented.

*Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x 1, 2 (2d Cir. 2012) (citing cases and upholding award of $13 million fees for injunctive relief settlement achieved after three years of litigation).

Based on the Class Representatives' contributions to the Actions and service awards in other cases, the service awards for the Class Representatives are also fair and reasonable. For all of the reasons given herein, the Court should grant Plaintiffs' motion for the award of attorneys' fees and ligation expenses to Class Counsel and service awards to the Class Representatives.

## II.    ARGUMENT

Class Counsel has spent more than seven years litigating this matter.  They should now be compensated for their work.  As seen below, the $2.73 million Class Counsel seeks here is well within range of fee awards in similar cases in the Second Circuit.

Accordingly, for the reasons stated below, Class Counsel respectfully request the Court issue an order granting their request for payment of $2.73 million for their efforts.

### A.    Class Counsel Negotiated Fees with Defendants Only After Agreeing upon the Settlement Terms

As an initial matter, it is important to note that Class Counsel did not negotiate attorneys' fees and expenses with Defendants until *after* the Parties reached agreement as to the terms of the Settlement benefiting the Settlement Class.  Specifically, after the parties had reached agreement on the material terms of the injunctive relief, the parties mediated the matter of a fair and reasonable fee with the assistance of the Honorable Richard J. Howell (Ret.), an experienced and highly respected mediator.  After extensive arm's-length negotiations facilitated by Judge Howell, Defendants agreed not to oppose payment of an award of fees and expenses of $2,730,000.  *See McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (involvement of judicial mediator weighs strongly in favor of approval of negotiated fee).

3

The United States Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions are the ideal toward which the parties should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A request for attorney's fees should not result in a second major litigation." *Id.* "Ideally, of course, litigants will settle the amount of a fee." *Id.*; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568–70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).

Moreover, unlike in a common fund case, the fee amount here will not affect the Settlement benefit. A decision to reduce or even to refuse to award a fee, while beneficial to Defendants, will not affect the Settlement Class. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (approving award of attorneys' fees where "[t]he vast majority of the fee [would] be paid by [the defendant] and [would] not come out of any class recovery"). Nor does a negotiated fee present the potential for adversity between counsel and the class that the traditional common fund fee may present, since the negotiated fee is being paid in addition to the class benefit. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277–78 (S.D. Ohio) (recognizing that divergence of interest can arise in traditional common fund situations), *aff'd*, 102 F.3d 777 (6th Cir. 1996). Courts at all levels of the judicial system have endorsed such negotiated fee and expense awards. *See, e.g.*, *Blessing*, 507 F. App'x at 2 (collecting cases and upholding fee award by District Court that was agreed to by the parties, stating that: "fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received").

4

### B. The Agreed-Upon Attorneys' Fees and Litigation Expenses Are Reasonable and Warrant Approval

The fee request here is reasonable and worthy of the Court's approval.

Courts commonly look at two methodologies to determine the amount to award class counsel for their efforts in achieving relief for settlement class members: the lodestar method and the percentage-of-the-fund method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000). Under the lodestar approach, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* at 47 (citation omitted). Once the court has made the initial computation, it may, in its discretion, increase the lodestar by applying a multiplier. *Id.*; *see, e.g.*, *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197–98 (S.D.N.Y. 1997) (awarding a 5.5 multiplier). Under the percentage-of-the-fund method, the court sets a percentage of the common fund recovery as a fee, *Goldberger*, 209 F.3d at 47, often between 20 and 30 percent of the fund. *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 364–65 (E.D.N.Y. 2010) (granting counsel's requested attorneys' fee amount of 21 percent of the common fund). In cases where the settlement benefit is injunctive relief, as is the case here, courts use the lodestar approach. *See, e.g.*, *Blessing*, 507 F. App'x at 1 (upholding fee award of $13 million for settlement of three-year-old action that resulted in no monetary, but rather injunctive relief).

Under either method, the courts are "guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50 (citation omitted) (the *Goldberger* reasonableness factors).

5

Here, the agreed-upon award of $2,730,000 in attorneys' fees, costs, and expenses is reasonable in light of Class Counsel's lodestar and in light of the *Goldberger* reasonableness factors.

Class Counsel have devoted considerable time and effort to the investigation, prosecution, and settlement of this highly technical, complex action. Over the course of more than 84 months, Class Counsel have spent in excess of 3,700 hours in performance of their services, which has resulted in the Settlement that already has received preliminary approval form the Court. Class Counsel, however, have yet to be paid anything for their labor and efforts over these past seven years.

Class Counsel also have incurred expenses during this seven-year litigation that have yet to be reimbursed, including, but not limited to, costs associated with depositions and other discovery. Class Counsel's lodestar to date is $2,663,258.50 and expenses are $52,540.01.[5] Counsel will also incur additional lodestar in seeking final approval of the settlement and then monitoring the settlement during its ten-year injunctive period.

### 1. The Complexity, Magnitude, and Risks of the Actions and the Contingent Nature of the Fee

The risk of litigation that Class Counsel undertook was significant in light of the considerable time and resources they devoted to this case strictly upon a contingency basis. From the commencement of this litigation, Class Counsel have been paid nothing for their substantial efforts. The significant outlay of cash and personnel resources by Class Counsel has been completely at risk. Payment for their services was wholly dependent on obtaining some benefit for the Settlement Class. As discussed above, there was a significant possibility that

---

[5] Class Counsel's lodestar does not, and will not, include any time incurred in seeking fees (such as the time spent drafting this memorandum).

6

Class Counsel would recover nothing for their substantial efforts. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier . . . .").

Courts have recognized that the risk of non-payment in complex cases, such as the case at bar, is very real and is heightened when plaintiffs' counsel press to achieve the very best result for those they represent. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *E.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class counsel won a substantial jury verdict, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation).

### 2. The Result Achieved and the Quality of Representation

The result achieved and the quality of the services provided are also important factors to consider in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547–48 (S.D. Fla. 1988) ("Perhaps no better indicator of the quality of representation here exists than the result obtained. The quality of work performed in a case that settles before trial is best measured by the benefit obtained." (citation omitted)).

Here, the primary goal of the litigation was to enjoin Defendants from marketing vitaminwater in a manner that Plaintiffs contended was false and misleading. Class Counsel's efforts in the litigation achieved this significant goal. The substantial experience of Class Counsel in prosecuting consumer protection class action cases was a substantial and important factor in achieving this significant goal.[6]

---

[6] Furthermore, Class Counsel have a proven track record in the prosecution of class actions, and have successfully litigated many major class action cases. *See* Reese Decl., ¶¶ 30-33.

7

### 3. The Requested Multiplier of 1.02 Is Reasonable

To date, Class Counsel have expended 3,727 hours, for a lodestar of $2,663,258.50 based on market rates. Reese Decl. ¶¶ 34-37 (detailed description of Class Counsel's efforts in case). As of the date of the filing of this brief, the multiplier is 1.02. This multiplier falls well within the acceptable range awarded by courts within the Second Circuit. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 to be "well within the range awarded by courts in this Circuit and throughout the country"); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding multiplier of 5.5 as reasonable).

Here, taking into account the significant complexity of the issues, the risks of this litigation, and the contingent nature of the fee, a multiplier of 1.02 is certainly reasonable.

### C. The Court Should Approve the Reimbursement of Class Counsel's Expenses

Class Counsel have also expended $50,540 in costs for which they should now be reimbursed. These costs were integral to the prosecution of this matter, including costs associated with deposing Defendants' employees and experts (as well as defending the depositions of the named plaintiffs) as part of the discovery process.

### D. The Consumer Legal Remedies Act Mandates the $2.73 Million Payments in Fees and Costs

One of the claims litigated in this action was for alleged violations of the California Consumer Legal Remedies Act ("CLRA"). The CLRA mandates that attorney fees and costs must be paid to plaintiffs' counsel when they prevail in an action. *See* Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."); *Kim v. Euromotors W./The Auto Gallery*, 56 Cal. Rptr. 3d 780, 786 (Cal. Ct. App. 2007) ("Section 1780(d) [of the CLRA] provides: "The court ***shall*** award court

8

costs and attorney's fees . . . . [A] mandatory construction of the word 'shall' . . . is consistent with the legislative purpose underlying the statute." (emphasis in original)).

Although the CLRA does not define "prevailing plaintiff," courts have interpreted the term to mean a plaintiff who has "achieved most or all of what he wanted by filing the action." *Id.* at 788. Moreover, "in deciding prevailing party status under the CLRA, 'the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level." *Id.* at 786. "It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit." *Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 284 (Cal. Ct. App. 2006) (citations and internal quotations omitted; emphasis in original). Here, Plaintiffs achieved the main goal of their suit: injunctive relief requiring Defendants to change the marketing and labeling of its Products. *Euromotors*, 56 Cal. Rptr. 3d at 788; *Graciano*, 50 Cal. Rptr. 3d at 284.

Therefore, since Plaintiffs are the prevailing party, they are entitled to fees under the CLRA. *Euromotors*, 56 Cal. Rptr. 3d at 786.

### E. The Court Should Approve the Proposed Service Awards to the Class Representatives

Plaintiffs have also moved the Court to approve service awards to the Class Representatives. "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (citation omitted) (approving service awards of $2,500 and $7,500 to named plaintiffs as reasonable); *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 (BMC), 2012

9

WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases approving service awards ranging from $5,000 to $30,000); 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008).

Defendants have agreed to pay service awards of $5,000 each to the Class Representatives (for a total of $20,000) as compensation for their time and effort spent in the litigation. Settlement Agreement & Release ¶ 42, ECF No. 167-2.

Each of the Class Representatives has taken numerous actions to protect the Settlement Class's interests, including participating in multiple in-person and/or telephone conferences (including extensive meetings to prepare discovery responses), searching for and producing documents responsive to Defendants' requests for production, and preparing for and sitting for depositions. Reese Decl. ¶ 29; Reese Fee Decl. ¶ 9. The Class Representatives' actions have benefitted the Class to a significant degree (including by culminating in the Settlement). Plaintiffs respectfully request that the Court approve the $5,000 service awards.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Award of Attorneys' Fees and Litigation Expenses to Plaintiffs' Counsel and Service Awards to Class Representatives.

Date: January 8, 2016

Respectfully submitted,

By: */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Maia Kats
*mkats@cspinet.org*
**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
1220 L Street, Northwest, Suite 300
Washington, District of Columbia 20005
Telephone: (202) 777-8381
Facsimile: (202) 265-4954

**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
Deborah Clark-Weintraub
dweintraub@scott-scott.com
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Counsel for Plaintiffs and the Settlement Class*