**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLACEAU VITAMINWATER MARKETING AND SALES PRACTICE LITIGATION (NO. II) | Case No. 1:11-md-02215-DLI-RML |
| BATSHEVA ACKERMAN, et al., <br><br>            Plaintiffs, <br><br>     v. <br><br> COCA-COLA COMPANY and ENERGY BRANDS INC. (d/b/a GLACEAU), <br><br>         Defendants. | Case No. 1:09-cv-00395-DLI-RML <br><br> **DECLARATION OF MICHAEL R. REESE IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES TO CLASS COUNSEL AND SERVICE AWARDS TO CLASS REPRESENTATIVES** |
| JULIANA FORD, <br>         Plaintiff, <br>     v. <br><br> THE COCA-COLA COMPANY and ENERGY BRANDS INC., <br>         Defendants. | Case No. 1:11-cv-02355-DLI-RML |

I, Michael R. Reese, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, hereby declare as follows:

1.      I am the founding partner of Reese LLP (formerly known as Reese Richman LLP), a law firm established in 2008 that specializes in class action litigation on behalf of consumers in both federal and state courts throughout the United States.  I am a member in good standing of the state bars of New York and California as well as numerous federal courts, including but not limited to the U.S. District Courts for the Southern and Eastern Districts of New York; the Northern, Central, Eastern and Southern Districts of California; the Southern District of Texas; the Northern District of Illinois; and the District of Colorado.  I am also a member of the federal bars of the U.S. Courts of Appeals for the Second, Seventh and Ninth Circuits, before which I have argued numerous appeals involving class action litigation.  I am a frequent lecturer on class actions and food litigation, and I have spoken recently as a guest speaker at the Food and Drug Law Institute in Chicago, Illinois; the Resnick Food Law and Policy symposium held at the law school of the University of California, Los Angeles; and, the American Bar Association Health Summit in Washington, D.C. I also am an executive committee member of the Plaintiffs' Class Action Forum, where I recently presented at a seminar in Palos Verdes, California on class actions and the concept of ascertainability.  I am currently serving as an adjunct law professor at the Brooklyn School of Law, where I am teaching a class called *The Law of Class Actions and Other Aggregate Litigation*.  I am also on the advisory board for Wellness in the Schools (WITS), a non-profit dedicated to providing nutritional education to students in kindergarten through high school.  Prior to litigating class actions, I was a prosecutor at the Manhattan District Attorney's Office in New York, New York, where I served as trial counsel in prosecuting white-collar and violent felony crimes.

1

**2.** I respectfully submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Entry of Final Judgment and Plaintiffs' Motion for Approval of Attorneys' Fees, Reimbursement of Costs and Incentive Awards for the Class Representatives.  Except as otherwise noted, I have personal knowledge of the facts set forth herein and could testify competently to them if called upon to do so.

## INTRODUCTION

**3.** I am one of the lead attorneys representing plaintiffs in the above-captioned matter. The court has appointed my firm as co-lead counsel to represent the class in this case.

**4.** Reese LLP, along with our co-counsel Scott + Scott, Attorneys At Law, LLP ("Scott") and Center for Science in the Public Interest ("CSPI") (collectively "Class Counsel"), has been responsible for the prosecution of this action from its inception in 2009 and for conducting the motion practice (including, but not limited to a motion to dismiss; two multi-district litigation proceedings; and, a motion for class certification); discovery; numerous mediations and settlement conferences that resulted in the Settlement.  Class Counsel has vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement process.

**5.** As described below, Class Counsel performed extensive work identifying and investigating potential claims, drafting and filing the original complaint and the consolidated class complaint; opposing a motion to dismiss; discovery, including factual and expert discovery; class certification motion practice; numerous settlement conferences; and, and two mediation sessions – one with the assistance of Antonio Piazza in San Francisco, California, and one with the assistance of the Honorable Richard J. Holwell (Ret.) in New York, New York. Class Counsel's hard work, tenacity, reputation, and experience resulted in an excellent Settlement for

the Class that is fair, reasonable, and adequate.

6.     Based on my extensive experience, I believe the Settlement to be an outstanding outcome for consumers, and I believe it is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23.

**THE FILING OF COMPLAINTS, DISCOVERY,
NEGOTIATION, AND MEDIATION**

**A.     Pre-Litigation Investigation and The Filing of the Complaints**

7.     This matter arises out of Defendants' manufacturing, advertising, selling, and distributing of the vitaminwater beverage Products, which are alleged to have misled consumers as to the true ingredients of the Products and their purported health benefits. Plaintiffs allege vitaminwater's labeling misled consumers to believe the Products are healthy and only comprised of vitamins and water.  In reality, the Products contain sugar and other sweeteners.

8.     Based on my experience at the Manhattan District Attorney's Office and my work in its Early Case Assessment Bureau ("ECAB"); before the grand jury; and in the New York County felony trial courts, where I tried more than twenty-five cases before judges and juries, I believe the best way to litigate a matter is to conduct a thorough investigation and gather all the facts before proceeding with any matter either through a civil complaint or an indictment (in the case of my criminal prosecution work at the District Attorneys' Office).  My firm implements that philosophy in the litigation of its cases and did so in this matter.

9.     In accordance with the above, starting in October of 2008, my firm, along with co-counsel, conducted a thorough investigation of the claims and ingredients of the vitaminwater beverage Products, including scientific and factual research.

10. In addition, we thoroughly analyzed the legal landscape to determine if the vitaminwater beverage Products' labeling was false or misleading and, if so, how to approach remedying the deception. In particular, we researched and examined the role of the Food and Drug Administration ("FDA"); primary jurisdiction arguments; preemption arguments; FDA rules and regulations regarding these types of products; the "reasonable consumer" standard, as well as various other intricacies associated with consumer class action litigation. We undertook all of this research to assess the merits of the potential case, to determine the strength of both the claims and defenses in this matter, and to determine the best manner to pursue this case on behalf of consumers.

11. On January 14, 2009, we filed the first action in the nation challenging the deceptive nature of vitaminwater's labeling and advertising on behalf of Plaintiff James Koh in the United States District Court for the Northern District of California. *See Koh v. The Coca-Cola Company*, Case No. 09-182 (N.D. Cal.). In short order, several additional cases were filed, including in the Eastern District of New York (*Ackerman v. The Coca-Cola Company*, Case No. 09-395 (E.D.N.Y), the Central District of California (*Pelkey v. The Coca-Cola Company*, 09-1239 (C.D. Cal.), and California Superior Court (*Antonov v. The Coca-Cola Company*, Case No. 09-487628 (Cal. Supr. Ct.). Mindful that discord among the plaintiffs in these competing cases would be helpful only to Defendants, the undersigned counsel took the lead in obtaining the voluntary agreement of all plaintiffs' counsel to consolidate these cases into a single action in the Eastern District of New York where Defendant, Energy Brands, Inc., which manufactures vitaminwater, is headquartered. After their individual cases were voluntarily dismissed, Plaintiffs in the Koh, Pelkey, and Antonov cases were added to the Ackerman case as plaintiffs and an amended complaint asserting claims under New York and California deceptive trade

4

practices statutes and common law on behalf of separate classes of New York and California consumers was filed.

**B.**     **The First Multi-District Litigation ("MDL") Proceeding**

12.     Defendants petitioned the Judicial Panel on Multi-District Litigation ("JPML") to transfer all the litigation to the Northern District of California, where the first-filed *Koh* action had been pending.  However, through the coordination efforts of Class Counsel, Plaintiffs successfully opposed this motion, and the actions remained in the Eastern District of New York. *In re Glaceau Vitaminwater Marketing and Sales Practices Litig.*, 641 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2009) ("If the plaintiffs have managed to cooperate and have agreed to file in one district, we see no reason to discourage their efforts.").

**C.**     **Motion to Dismiss**

13.     After filing of the amended complaint, Defendants moved to dismiss arguing that Plaintiffs' claims were preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 201, et seq. (the "FDCA") as amended by the Nutrition Labeling and Education Act ("the NLEA") and by implied conflict preemption or, alternatively, should be dismissed in deference to the U.S. Food and Drug Administration's (FDA's) primary jurisdiction.  In addition, Defendants argued that Plaintiffs' had failed to adequately allege how they had been misled to purchase vitaminwater.  Plaintiffs filed a comprehensive response demonstrating that Plaintiffs' claims were not preempted and that their claims of misrepresentation were adequately alleged. Defendants filed a reply brief and the Court held oral argument on the motion on February 5, 2010.  On July 21, 2010, the Court issued a decision sustaining the vast majority of the amended complaint.  See *Ackerman v. The Coca-Cola Company*, No. CV–09–0395 (JG)(RML), 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010).

D.      **The Second MDL**

       14.     Plaintiffs' success in defeating Defendants' motion to dismiss prompted the filing

of a series of copy-cat cases in federal district court in California (*Ford v. The Coca-Cola

Company*, Case No. 5:11-cv-1843 (N.D. Cal.)), Florida (*Cook. v. The Coca–Cola Company*, et

al., Case No. 0:10–61621 (S.D. Fla.)), Illinois (*Khaleel v. The Coca-Cola Company and Energy

Brands Inc.*, Case No. 1:11-cv-00471 (N.D. Ill.)), Ohio (*Volz v. The Coca Cola Company*, et. al.,

Case No. 1:10-cv-00879 (S.D. Ohio)), and the United States Virgin Islands (*St. Juste v. The

Coca–Cola Company*, et al., C.A. No. 3:10–00118)), which gave rise to a second motion to

transfer to the JPML.   In this instance, the Panel granted Defendants' motion, which the

Ackerman Plaintiffs joined, to transfer the newly filed cases to the Eastern District of New York

where the Ackerman case was pending.   *In re Glaceau Vitaminwater Marketing and Sales

Practices Litig.* No. II, 764 F. Supp. 2d 1349 (J.P.M.L. 2011) ("The action in [the Eastern

District of New York] has been pending for two years, and is far more advanced than any other

action in this litigation.   The court has ruled on a motion to dismiss, and discovery is

underway.").   Following the MDL Panel's ruling, Magistrate Judge Levy appointed the

undersigned as Interim Co-Lead Class Counsel with respect to the six coordinated cases that

comprised the MDL.

E.      **First Mediation**

       15.     The Parties engaged in mediation before Antonio Piazza in San Francisco in

October 2011. The mediation proved to be unsuccessful.

F.      **Discovery**

       16.     Following the unsuccessful mediation before Antonio Piazza in San Francisco in

October 2011, the Parties engaged in a period of intense discovery with respect to class

certification issues. Defendants rebuffed efforts by Plaintiffs to take what Defendants characterized as "merits" discovery and insisted to the Court that merits and class certification discovery should be bifurcated. This gave rise to a lengthy series of disputes before the Court concerning whether discovery requested by Plaintiffs concerned "merits" or "class certification" issues. Class Counsel took the lead with respect to drafting legal memoranda and presenting oral argument with respect to each of these disputes.

### G. **Class Certification**

17. In addition, Class Counsel conducted class certification discovery and prepared extensive briefing with respect to class certification issues. Class Counsel defended the depositions of six of the eight proposed class representatives in the six coordinated cases, including the clients of tag-along counsel in the Florida and Illinois cases, deposed the two former Energy Brands employees designated by Defendants in response to Plaintiffs' Rule 30(b) deposition notice, and deposed three of the four experts Defendants proffered in opposition to class certification. Further, in addition to briefing the relevant issues of New York and California law, Class Counsel prepared the master opening and reply memorandum in support of class certification required by the briefing protocol established by the Court. Class Counsel also took the lead in the oral argument before the Court on the class certification motion, in preparing post-hearing briefing, and in drafting notices of new authority on class certification issues and responding to such notices filed by Defendants.

18. On July 18, 2013, Magistrate Judge Levy issued a Report and Recommendation recommending that the New York and California classes be certified as injunctive relief classes under Fed. R. Civ. P. 23(b)(2). Defendants filed objections to the Report and Recommendation which Class Counsel opposed.

H.      **Remand and Resolution of the Tag-along Cases**

19.     On July 10, 2013, prior to the issuance of Magistrate Judge Levy's Report and Recommendation certifying the California and New York classes, Judge Irizarry filed a suggestion of remand recommending that the JPML remand the Florida, Illinois, Ohio and Virgin Islands cases to the transferor courts given the many case specific state law issues raised by the motions for class certification which, in the Court's view, could best be resolved by the courts in the states in which these actions arose.  The cases were remanded on July 22, 2013.

20.     Following remand, the only activity that occurred in the tag-along cases was a round of supplemental briefing on class certification issues in the Illinois and Ohio actions.   The tag-along cases settled shortly thereafter.

H.   **Additional Discovery and Settlement of the Above-Captioned Action**

21.     Although no decision had been issued on Defendants' objections to the Report and Recommendation certifying the California and New York injunctive relief classes, in December 2013, Class Counsel served requests for production in addition to interrogatories on Defendants which Defendants refused to answer on the grounds that they were premature because Judge Irizarry had not ruled on their objections to the Report and Recommendation on class certification.  Plaintiffs filed a motion to compel in June 2014 arguing that merits discovery should at least proceed on Plaintiffs' individual injunctive claims.

22.     At a conference on the motion to compel held on July 28, 2014, it was agreed that the parties would engage in a settlement conference with Magistrate Judge Levy on September 8, 2014.   Thereafter, Judge Levy held an additional series of settlement conferences which culminated in the execution of a Memorandum of Understanding ("MOU") on May 8, 2015 that memorialized the injunctive relief settlement terms detailed above.

23.     Class Counsel only negotiated an amount for fees and costs after execution of the MOU.   Specifically, Class Counsel retained the services of the Honorable Richard J. Holwell (Ret.) to act as a mediator on the issue of fees and costs.   After a full day mediation session held on August 5, 2015, the Parties came to agreement of fees and costs of $2.73 million based upon Judge Holwell's recommendation.

24.     Class Counsel prepared the motion papers for preliminary approval, which were filed on September 30, 2015.   The Court granted preliminary approval of the settlement on October 7, 2015.

## TERMS OF THE SETTLEMENT AGREEMENT AND RECOGNITION OF THE DIFFICULTIES ASSOCIATED WITH LITIGATION

25.     The Settlement is an excellent result, as it provides the comprehensive injunctive relief Plaintiffs sought in their complaints.   Specifically, the agreed upon injunction enjoins the contested health claims at issue in this matter as well as the contested marketing claims, such as "vitamins + water = all you need." Furthermore, the agreed upon injunctive relief also requires Defendants to make affirmative statements on the labels of the Products that conspicuously disclose that the products are not comprised of just vitamins and water, but also contain sweeteners.  This statement will appear immediately next to the name of the product on the label. Finally, the injunctive relief requires the caloric content to be prominently displayed on the principal display panel ("PDP") of the label of the products for no less than 10 years.

26.     Plaintiffs and Class Counsel continue to believe in the merits and strength of the case and believe we would prevail if the case continued in litigation and were heard by the trier of fact.  However, there is always the possibility that Plaintiffs would not prevail or that the law (either common or statutory) would change in a way that would adversely impact the litigation. Based on my experience in litigating class actions, I am also cognizant of the expense and length

of continued litigation necessary to see the matter through to trial.  Indeed, I am currently involved in similar cases that have been pending for more than seven (7) years and that have yet to have a trial date set.  I have also been involved in class action litigation that was on the eve of trial, with considerable expenditures made for discovery and experts, only to have the litigation dismissed due to a change in the law.

27.     In accordance with the above, we recognize the expense and length of the continued proceedings necessary to prosecute the claims through trial and appeal.  We have taken into account the uncertain outcome and risk of litigation, as well as the difficulties and delays inherent in litigation.  Litigation to date has been costly, and, certainly, further litigation would be costly, complex, and time-consuming.  Such litigation would include dispositive motions; more discovery, including dozens of depositions, interrogatories, and requests for admission and voluminous document production; costly merits expert reports and discovery; and trial.  Each step towards summary judgment and trial would likely be subject to vigorous opposition and appeal.  Class Counsel believes one of the hotly contested issues in this action would be consumer perception of the name of the product and certain health claims, which impact the materiality and deceptiveness of Defendants' labels.  Such issues would likely be the subject of competing expert testimony subject to *Daubert* motions.  The costs and risks associated with continuing to litigate this action would require extensive resources and Court time.  Class Counsel believes that the Settlement confers substantial benefits upon the Settlement Class Members and have determined the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.

28.     Defendants have denied, and continue to deny, any liability and maintain that the labeling is truthful and not misleading.   Indeed, Defendants have denied, and continue to deny,

any and all fault, wrongdoing, and liability for Plaintiffs' claims.

## CLASS COUNSEL AND THE NAMED PLAINTIFFS
## HAVE INVESTED SIGNIFICANT TIME IN THE PROSECUTION OF THIS ACTION
## AND ARE ADEQUATE REPRESENTATIVES OF THE CLASS

29.     Throughout the course of investigation and litigation, all Plaintiffs met, conferred, and corresponded with Class Counsel as needed for the efficient prosecution of this litigation.

30.     Reese LLP is a nationally recognized law firm headquartered in New York, New York, that litigates class actions throughout the United States.  This vast experience is detailed in the Reese LLP Firm résumé attached hereto as Exhibit A.

31.     Reese LLP is a leader in food litigation and has been appointed by the courts in numerous actions to represent consumers in class action food litigation.  *See, e.g.*, *In re General Mills, Inc. Kix Cereal Litig.*, Case No. 2:12-cv-00249-KM-MCA (D.N.J.) (appointing Reese LLP as co-lead counsel in class action food litigation); *In re Frito-Lay North America, Inc. All Natural Litig.*, Case No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (same).  Reese LLP has been responsible through its litigation efforts for remedying consumer deception with respect to food labeling.  For example, in *Green v. Dr Pepper/Seven Up, Inc.*, Case No. 2:12-cv-9567 FMO (C.D. Cal.) and *Lam v. General Mills, Inc.*, Case No. 11-cv-5056 SC (N.D. Cal.), Reese LLP successfully achieved changes to the labeling and marketing of popular food products that previously had caused consumer confusion.  Additionally, the litigation efforts of Reese LLP have resulted in companies removing from popular food items ingredients that are harmful to consumers' health.  For example, in both *Rosen v. Unilever United States Inc.*, Case No. 09-02563 JW (N.D. Cal.) and *Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal.), Reese LLP achieved success on behalf of consumers by having *trans* fat removed from popular food items.  *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2009)

(stating that Reese LLP "has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

32.     Scott+Scott is a nationally recognized law firm headquartered in Connecticut with offices in California, New York City, Ohio, and London. Scott+Scott represents individuals, businesses, and public and private pension funds who have suffered from corporate fraud and wrongdoing. Scott+Scott is directly responsible for recovering hundreds of millions of dollars and achieving substantial corporate governance reforms on behalf of its clients. Scott+Scott has significant expertise in complex securities, antitrust, consumer, ERISA, and civil rights litigation in both federal and state courts. The firm's resume is attached as Exhibit B.

33.     CSPI is a leading nutrition advocacy non-profit founded in 1971.  Among its many notable activities are its FDA petition to ban trans fats, recently granted; campaign to oust sugar-sweetened beverages from public schools; campaign for nutrition facts panels on food labels; and its 40-year campaign to limit the amount of sodium in the American diet.  CSPI established its litigation department in 2004, to fill a void between government enforcement actions and the need for compliance with laws on food labeling and advertising, in the main. Since then, CSPI has uncovered and pursued hundreds of food labeling violations, and achieved a great number of significant legal victories and resolutions redressing deceptive labeling practices.  In its pursuit of transparent labeling, CSPI has litigated and/or negotiated with several Fortune 500 corporations, including Nestle, Inc., Campbell's, and General Mills.  A brief history of CSPI's litigation department is set forth in Nicole Negowetti, Food Labeling Litigation, BROOKINGS GOVERNANCE STUDIES, June 2014, at 7-8.

## TIME AND EXPENSE INCURRED IN THE PROSECUTION
## OF THE ACTION

34.     Class Counsel collectively have spent 3,727.40 hours litigating this Action and their collective lodestar is $2,663,258.50, based on its current hourly rates, which are usual and customary in an Action of this type.

35.     Further, Class Counsel have collectively incurred $52,540.01 in unreimbursed litigation expenses for filing fees, depositions, transcripts, and mediation, among other costs.

36.     Class Counsel prosecuted the Action on a contingent basis and took great financial risk in advancing costs and expenses associated with the prosecution of the action. There was no guarantee that Class Counsel would recoup any of these costs, let alone be paid for any of their time spent litigating this matter.  Indeed, Class Counsel have lost millions of dollars in expenses in similar actions that did not result in settlement or a plaintiffs' verdict after trial.

37.     The diligent efforts of Plaintiffs and Class Counsel in prosecuting this case, as described herein, demonstrate that Plaintiffs and Class Counsel have more than adequately represented and acted for the benefit of the Settlement Class as a whole.  Additionally, apart from an incentive award (if granted), none of the Plaintiffs will receive any benefits beyond those they would receive as ordinary Class Members.  Each of the named Plaintiffs actively participated in this litigation, including responding to discovery and sitting for their depositions.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of January, 2016, in New York, New York.

By: */s/   Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  212/643-0500
Fax:  212/253-4272
mreese@reesellp.com

***Court Appointed Co-Lead Class Counsel***

14

# **EXHIBIT A**

# **REESE LLP**

Reese LLP represents consumers in a wide array of class action litigation throughout the nation. The attorneys of Reese LLP are skilled litigators with years of experience in federal and state courts. Reese LLP is based in New York, New York.

Recent and current cases litigated by the attorneys of Reese LLP on behalf of consumers include the following:

*Yoo v. Wendy's International, Inc.*, 07-CV-04515 FMC (C.D. Cal.): class action for violation of California's consumer protection laws; *Ackerman v. The Coca-Cola Co.*, 09-CV-0395 (JG) (RML) (E.D.N.Y.): class action for violation of California and New York's consumer protection laws; *Chin v. RCN Corporation*, 08-cv-7349 RJS (S.D.N.Y.): class action for violation of Virginia's consumer protection law; *Bodoin v. Impeccable L.L.C.*, Index. No. 601801/08 (N.Y. Sup. Ct.): individual action for conspiracy and fraud; *Young v. Wells Fargo & Co.*, 08-CV-507 (S.D. Iowa): class action for violation of the RICO Act; *Murphy v. DirecTV, Inc.*, 07-CV-06545 FMC (C.D. Cal.): class action for violation of California's consumer protection laws; *Bain v. Silver Point Capital Partnership LLP*, Index No. 114284/06 (N.Y. Sup. Ct.): individual action for breach of contract and fraud; *Siemers v. Wells Fargo & Co.*, C-05-4518 WHA (N.D. Cal.): class action for violation of § 10(b) of the Securities Exchange Act of 1934; *Kastin v. AMR Corporation*, 06-CV-5726 (S.D.N.Y.): class action for violation of the Sherman Antitrust Act; *In re Korean Air Antitrust Litigation*, 07-CV-01891 SJO (C.D. Cal.): class action for violation of the Sherman Antitrust Act; *Dover Capital Ltd. v. Galvex Estonia OU*, Index No. 113485/06 (N.Y. Sup. Ct.): individual action for breach of contract involving an Eastern European steel company; *All-Star Carts and Vehicles Inc. v. BFI Canada Income Fund*, 08-CV-1816 LDW (E.D.N.Y.): class action for violation of the Sherman Antitrust Act; *Petlack v. S.C. Johnson & Son, Inc.*, 08-CV-00820 CNC (E.D. Wisconsin): class action for violation of Wisconsin consumer protection law; *Hill v. Roll International Corporation*, CGC-09-487547 (San Francisco County Superior Court): class action for violation of California's consumer protection laws; *L'Ottavo Ristorante v. Ingomar Packing Co.*, 09-CV-01427 (E.D. Cal.): class action for violation of the Sherman Antirust Act; and *Wong v. Alacer Corp.*, (San Francisco Superior Court): class action for violation of California's consumer protection laws; and, *Howerton v. Cargill, Inc.* (D. Hawaii); class action for violation of various consumer protection laws.

## The Attorneys of Reese LLP

## Michael R. Reese

Mr. Reese litigates consumer, and antitrust cases as class actions and on behalf of individual clients.  Prior to entering private practice in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crime.

Achievements by Mr. Reese on behalf of consumers span a wide array of actions.  For example, in *Yoo v. Wendy's International Inc.*, Mr. Reese was appointed class counsel by the court and commended on achieving a settlement that eliminated *trans* fat from a popular food source.  *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2007) (stating that counsel "***has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy***").  In *Chin v. RCN Corporation*, Mr. Reese was appointed class counsel and commended by the court for stopping RCN's practice of throttling its Internet customers through adverse network management practices.  *See Chin v. RCN Corp.*, No. 08-CV-7349(RJS)(KNF), 2010 WL 3958794, 2010 U.S. Dist. LEXIS 96302 (S.D.N.Y. Sept. 8, 2010) (stating that "***class counsel  is qualified, experienced, and able to conduct the litigation***").

Mr. Reese and his firm frequently work with non-profit groups to address consumer fraud and deception.  For example, Mr. Reese and his firm are currently working with Public Justice and the Center for Science in the Public Interest on a number of class actions pending in various courts in the United States.

Recent victories by Mr. Reese and his firm include a $6.1 million class action settlement in the District of Hawaii in the matter of *Howerton v. Cargill, Inc.* for consumers of Truvia branded sweetener and a $6.4 million class action settlement in San Francisco Superior Court in the matter of *Wong v. Alacer Corp.*, for consumers of Emergen-C branded dietary supplement.

Mr. Reese and his firm are currently court-appointed class counsel in a number of actions, including, but not limited to; *Ackerman v. The Coca-Cola Co.* pending in the Eastern District of New York and *In re General Mills "Kix" All-Natural Litig*, pending in the District of New Jersey.

Mr. Reese is a frequent lecturer on issues of class action litigation and has recently moderated a panel for the California State Bar that included litigators and members of academia; presented at the Food and Drug Law Institute annual conference held in Chicago, Illinois; presented at the Resnick Litigation Conference at the University of California in Los Angeles, California; and, presented at the Perrin Annual Conference in Washington, D.C.

Mr. Reese is currently an adjunct professor at Brooklyn Law School where he teaches on class actions and other aggregate litigation.

Mr. Reese is a member of the state bars of New York and California as well as numerous federal courts.  Mr. Reese received his juris doctorate from the University of Virginia in 1996 and his bachelor's degree from New College in 1993.

## George V. Granade II

Mr. Granade is a partner at Reese LLP who focuses on consumer class actions.  Recent cases worked on by Mr. Granade include, but are not limited to:

- *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496-JAL (S.D. Fla.) (involving "Snyder's," "Cape Cod," "EatSmart," and "Padrinos" brand food products labeled as "natural" and allegedly containing genetically-modified organisms and other synthetic ingredients);

- *In re Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (involving "SunChips," "Tostitos," and "Bean Dip" products labeled as "natural" and allegedly containing genetically-modified organisms);

- *Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02607-PAB-BNB (D. Colo.) (involving "Goldfish" snack product labeled "natural" and allegedly containing genetically-modified organisms); and

- *Martin v. Cargill, Inc.*, No. 0:13-cv-02563-RHK-JJG (D. Minn.) (involving "Truvia" sweetener product labeled as "natural" and allegedly containing highly processed ingredients).

Mr. Granade received his juris doctorate from New York University School of Law in 2011.  He received a master's degree from the University of Georgia at Athens in 2005 with distinction and a bachelor's degree from the University of Georgia at Athens in 2003, magna cum laude and with High Honors.

Mr. Granade is a member of the state bar of Georgia and the state bar of New York, as well as the bars of the United States District Court for the Eastern District of New York and the United States District Court for the Southern District of New York.

## Sue J. Nam

Ms. Nam is of counsel at Reese LLP where she focuses on consumer class actions.

Prior to joining the firm, Ms. Nam was the General Counsel for NexCen Brands, Inc., a publicly traded company that owned a portfolio of consumer brands in food, fashion and homeware.   Previously, Ms. Nam was Intellectual Property Counsel and Assistant Corporate Secretary at Prudential Financial, Inc., and she was an associate specializing in intellectual property and litigation at the law firm of Brobeck Phleger & Harrison LLP. Ms. Nam clerked for the Second Circuit prior to joining private practice. Ms. Nam received her juris doctorate from Yale Law School in 1994.  She received a bachelor's degree with distinction from Northwestern University in 1991.

**Belinda L. Williams**

Ms. Williams is based in New York, and she focuses her practice on class actions on behalf of defrauded consumers and investors.  Ms. Williams has extensive experience in litigating complex commercial cases.

Ms. Williams is admitted to the bars of several federal courts as well as the state bars of New York and Maryland.  Ms. Williams received her juris doctorate from the University of Virginia School of Law in 1986 and her undergraduate degree from Harvard University in 1982.

**Kate J. Stoia**

Ms. Stoia is based in San Francisco from where she litigates securities and consumer class actions.  Ms. Stoia previously worked at the law firms of Brobeck Phleger & Harrison LLP.  Prior to her work as a civil litigator, Ms. Stoia clerked for the Hon. Charles A. Legge of the Northern District of California.

Ms, Stoia is a member of the state bar of California and several federal courts.  Ms. Stoia received her juris doctorate from Boalt Hall School of Law, University of California at Berkeley and her bachelor's degree from Columbia University.

**Lance N. Stott**

Mr. Stott is based in Austin, Texas from where he litigates consumer class actions.  Previous and current consumer fraud class actions litigated by Mr. Stott include *Davis v. Toshiba America Consumer Products* for allegedly defective DVD players; *Bennight v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective television sets; *Spencer v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective DVD players; and, *Okland v. Travelocity.com, Inc.*, for deceptive pricing for online hotel reservations.

Mr. Stott is a member of the state bar of Texas.  Mr. Stott received his juris doctorate from the University of Texas in 1996 and his bachelor's degree from New College in 1993.

# **<u>EXHIBIT B</u>**

# SCOTT+SCOTT,
## ATTORNEYS AT LAW, LLP



## MISSION STATEMENT

Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") is a nationally recognized law firm headquartered in Connecticut with offices in California, New York City, and Ohio.  Scott+Scott represents individuals, businesses, public and private pension funds, and others who have suffered from corporate fraud and wrongdoing.  Scott+Scott is directly responsible for recovering hundreds of millions of dollars and achieving substantial corporate governance reforms on behalf of its clients.  Scott+Scott has significant expertise in complex securities, antitrust, consumer, ERISA, and civil rights litigation in both federal and state courts.  Through its efforts, Scott+Scott promotes corporate social responsibility.

## SECURITIES AND CORPORATE GOVERNANCE

Scott+Scott represents individuals and institutional investors that have suffered from stock fraud and corporate malfeasance.  Scott+Scott's philosophy is simple – directors and officers should be truthful in their dealings with the public markets and honor their duties to their shareholders.  Since its inception, Scott+Scott's securities and corporate governance litigation department has developed and maintained a reputation of excellence and integrity recognized by state and federal and state courts across the country.  "It is this Court's position that Scott+Scott did a superlative job in its representation, which substantially benefited Ariel . . . .  For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case . . . .  They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors."  *N.Y. Univ. v. Ariel Fund Ltd.*, No. 603803/08, slip. op. at 9-10 (N.Y. Sup. Ct. Feb. 22, 2010).  "The quality of representation here is demonstrated, in part, by the result achieved for the class.  Further, it has been this court's experience, throughout the ongoing litigation of this matter, that counsel have conducted themselves with the utmost professionalism and respect for the court and the judicial process."  *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-01884, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007).

Scott+Scott has successfully prosecuted numerous class actions under the federal securities laws, resulting in the recovery of hundreds of millions of dollars for shareholders.  Representative cases prosecuted by Scott+Scott under the Securities Exchange Act of 1934 include: *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-01884 (D. Conn. July 19, 2007) ($80 million settlement); *Irvine v. ImClone Sys., Inc.*, No. 02-cv-00109 (S.D.N.Y. July 29, 2005) ($75 million settlement); *Cornwell v. Credit Suisse Group*, No. 08-cv-03758 (S.D.N.Y. July 20, 2011) ($70 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-cv-2133 (D. Conn. June 13, 2008) ($26.5 million settlement); and *St. Lucie County Fire District Firefighter's*

*Pension Trust Fund v. Oilsands Quest Inc.*, No. 11-cv-1288-JSR (S.D.N.Y. Dec. 6, 2013) ($10.23 million settlement) ($7.85 million settlement preliminarily approved). Representative cases prosecuted by Scott+Scott under the Securities Act of 1933 include: *In re Washington Mutual Mortgage-Backed Securities Litigation*, No. 09-cv-0037 (W.D. Wash. Jan. 7, 2014) ($26 million settlement); *In re Pacific Biosciences Securities Litigation,* No.CIV509210 (Cal. Super. Ct., San Mateo County, Oct. 31, 2013) ($7.68 million settlement); *West Palm Beach Police Pension Fund v. CardioNet, Inc*., No. 37-2010-00086836-CU-SL-CTL (Cal. Super. Ct., San Diego County, 2010) ($7.25 million settlement); *Parker v. National City Corp.*, No. CV-08-657360 (Ohio Ct. Com. Pl., Cuyahoga County, June 23, 2010) ($5.25 million settlement); and *Hamel v. GT Solar International, Inc.*, No. 217-2010-CV-05004 (N.H. Super. Ct., Merrimack County, May 10, 2011) ($10.25 million settlement).

Scott+Scott currently serves as court-appointed lead counsel in various federal securities class actions, including *Birmingham Retirement and Relief System, v. S.A.C. Capital Advisors*, No. 1:12-cv-09350 (S.D.N.Y. June 17, 2013); *In re NQ Mobile Securities Litigation*, No. 13-cv-07608 (S.D.N.Y. April 9, 2014); *In re Conn's Inc. Securities Litigation*, No. 14-cv-00548 (S.D. Tex. June 3, 2014) and *Weston v. RCS Capital Corp.,* No. 14-10136 (S.D.N.Y., Dec. 29, 2014).

In addition to prosecuting federal securities class actions, Scott+Scott has a proven track record of handling corporate governance matters through its extensive experience litigating shareholder derivative actions. In addition, Scott+Scott has been singularly successful in its shareholder derivative appellate practice, and as a result, has been instrumental in fashioning the standards in this area of law. In *Westmoreland County Employee Retirement System v. Parkinson*, No. 12-3342 (7th Cir. Aug. 16, 2013), the Seventh Circuit clarified the parameters of demand futility in those instances where a majority of directors of a corporation are alleged to have breached the fiduciary duty of loyalty by consciously disregarding positive law. In *Cottrell v. Duke*, No. 12-3871 (8th Cir. Dec. 28, 2013), the Eighth Circuit, in a case of first impression, clarified that the *Colorado River* stay is virtually never appropriate where there are exclusive federal claims. And in *King v. Verifone Holdings, Inc*., No. 330, 2010 (Del. Jan. 28, 2011), the Supreme Court of Delaware has clarified the availability of the Delaware Corporate Code Section 220 "books and records" demands to a shareholder whose original plenary action was dismissed without prejudice in a federal district court. Representative actions prosecuted by Scott+Scott include: *In re DaVita Healthcare Partners Derivative Litigation*, No. 13-cv-1308 (D. Colo.) (corporate governance reform valued at $100 million); *North Miami Beach General Employees Retirement Fund v. Parkinson*, No. 10C6514 (N.D. Ill.) (corporate governance valued between $50 million and $60 million); *In re Marvell Tech. Group Ltd. Derivative Litigation*, No. C-06-03894-RMW (RS) (N.D. Cal. Aug. 11, 2009) ($54.9 million and corporate governance reforms); *In re Qwest Communications International, Inc.*, No. Civ. 01-RB-1451 (D. Colo. June 15, 2004) ($25 million and corporate governance reform); *Plymouth County Contributory Retirement Fund v. Hassan*, No. 08-cv-1022 (D.N.J.) (settlement of derivative claims against Merck Schering Plough and its officers and directors providing for corporate governance reforms valued between $50 million and $75 million); *Carfagno v. Schnitzer*, No. 08-cv-912-SAS (S.D.N.Y. May 18, 2009) (modification of terms of preferred securities issued to insiders valued at $8 million); and *Garcia v. Carrion*, No. 3:09-cv-01507 (D.P.R. Sept. 12, 2011) (settlement of derivative claims against the company and its officers and directors providing for corporate governance reforms valued between $10.05 million and $15.49 million).

Currently, Scott+Scott is actively prosecuting shareholder derivative actions, including *In re Bio-Rad Laboratories, Inc. Stockholder Litigation*, C.A. No. 11387 (Del. Ch. Aug. 13, 2015); *In re Tile Shop Holdings, Inc. Stockholder Derivative Litigation*, C. A. No. 108884 (Del. Ch. July 31, 2015); *West Palm Beach Fire Pension Fund v. Page*, No. 15-1334 (N.D. Cal. March 23, 2015); *In re Duke Energy Corp. Coal Ash Derivative Litigation*, C.A. No. 9682 (Del. Ch. May 21, 2014); and *In re OSI Systems, Inc. Derivative Litigation*, No. 14-2910 (C. D. Cal. April 15, 2014).

## ANTITRUST

Scott+Scott litigates complex antitrust cases throughout the United States.  Scott+Scott represents investors, business, and consumers in price-fixing, bid-rigging, monopolization, and other restraints of trade cases on both a class-wide and individual basis, helping to ensure that markets remain free, open, and competitive.  With the opening of a London Office, Scott+Scott's commitment to competition now includes pursuing its clients' claims on a global basis.

Scott+Scott's class action antitrust practice includes serving as court-appointed lead counsel with the responsibility for the prosecution of class claims.  Scott+Scott serves as court-appointed lead counsel in high-value antitrust class action cases, including *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.) (challenging bid rigging and market allocation of leveraged buyouts by private equity firms resulting in $590.5 million in settlements)); *In Re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.) (challenging price-fixing of foreign exchange rates (over $2 billion in partial settlements negotiated)); and *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-cv-7126 (S.D.N.Y.) (challenging price-fixing of the ISDAfix benchmark interest rate).  Scott+Scott has served as court-appointed lead counsel in other cases, including *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. CV 07-06542 (C.D. Cal.) (challenging price-fixing/illegal surcharge ($86 million in cash and travel voucher settlements) and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 12-cv-03824 (E.D. Pa.) (challenging monopolization in the sale of name-brand pharmaceutical ($8 million settlement)).

When not serving as lead counsel, Scott+Scott has served on the executive leadership committees in numerous class action cases.  Representative actions include *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-1720 (E.D.N.Y.) (challenging price-fixing in the payment cards industry ($7.25 billion settlement)); *Kleen Products LLC v. Packaging Corporation of America*, No. 1:10-cv-05711 (N.D. Ill.) (challenging price-fixing of containerboard products); and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (DMR) (N.D. Cal.) (challenging price-fixing of lithium-ion batteries).

Scott+Scott's class action antitrust experience includes serving as co-trial counsel in *In re Scrap Metal Antitrust Litigation*, 02-cv-0844-KMO (N.D. Ohio), where it helped obtain a $34.5 million jury verdict, which was subsequently affirmed by the United States Court of Appeals for the Sixth Circuit (*see In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 524 (6th Cir. 2008)), and in the consolidated bench trial in *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.), and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.)

Scott+Scott also represents large clients in opt-out antitrust litigation. Scott+Scott currently represents Eastman Kodak Company, Agfa Corporation, Agfa Graphics, N.V., and Mag Instrument, Inc. in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.). Scott+Scott previously represented publicly traded corporations, such as Parker Hannifin Corporation and PolyOne Corporation, in matters such as *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal.); *In re Polychloroprene Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); and *In re Plastic Additives Antitrust Litigation (No. II)*, MDL No. 1684 (E.D. Pa.).

## CONSUMER RIGHTS

Scott+Scott and its attorneys have a proven track record of obtaining significant recoveries for consumers in class action cases. Scott+Scott is one of the premier advocates in the area of consumer protection law and has been appointed to a number of prominent leadership positions.

Cases where Scott+Scott has played a leading role in the area of consumer protection litigation include:

- *In re Providian Financial Corp. Credit Card Terms Litigation*, MDL No. 1301 (E.D. Pa.) ($105 million settlement was achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards);

- *The Vulcan Society, Inc. v. The City of New York*, No. 07-cv-02067 (E.D.N.Y.) ($100 million settlement and significant injunctive relief was obtained for a class of black and Hispanic applicants who sought to be New York City firefighters but were denied or delayed employment due to racial discrimination);

- *In re Prudential Ins. Co. SGLI/VGLI Contract Litigation*, MDL No. 2208 (D. Mass.) ($40 million settlement was achieved on behalf of a class of military service members and their families who had purchased insurance contracts);

- *Gunther v. Capital One, N.A.*, No. 09-2966 (E.D.N.Y.) (a net settlement resulting in class members receiving 100% of their damages was obtained);

- *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL No. 2086 (W.D. Mo.) ($37 million settlement obtained on behalf of class of propane purchasers who alleged defendants overcharged the class for under-filled propane tanks);

- *Murr v. Capital One Bank (USA), N.A.*, No. 13-cv-1091 (E.D. Va.) ($7.3 million settlement pending on behalf of class of consumers who were misled into accepting purportedly 0% interest offers); and

- *Howerton v. Cargill, Inc.,* No. 13-cv-00336 (D. Haw.) ($6.1 settlement obtained on behalf of a class of consumers who purchased Truvia, purported to be deceptively marketed as "all-natural").

Moreover, Scott+Scott is currently serving in a leadership capacity in a number of class action consumer protection cases, including:

- *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.) (claims involving data breach and the theft of the personal and financial information of 56 million credit and debit card holders);

- *In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.) (claims involving data breach and the theft of the personal and financial information of customers holding approximately 110 million credit and debit cards);

- *In re Herbal Supplements Marketing and Sales Practices Litigation*, MDL No. 2519 (N.D. Ill.) (claims on behalf of a class of consumers alleging major retail-chain defendants misrepresent the ingredients in store-branded herbal supplements); and

- *In re L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation*, MDL No. 2415 (D.N.J.) (claims on behalf of a class of consumers alleging defendants misrepresent the anti-aging benefits of certain of their products).

**EMPLOYEE BENEFITS (ERISA)**

Scott+Scott litigates complex class actions across the United States on behalf of corporate employees alleging violations of the federal Employee Retirement Income Security Act. ERISA was enacted by Congress to prevent employers from exercising improper control over retirement plan assets and requires that pension and 401(k) plan trustees, including employer corporations, owe the highest fiduciary duties to retirement plans and their participants as to their retirement funds. Scott+Scott is committed to continuing its leadership in ERISA and related employee-retirement litigation, as well as to those employees who entrust their employers with hard-earned retirement savings. Representative recoveries by Scott+Scott include: *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 2:04-cv-01398-JWB-SDW (D.N.J. Aug. 30, 2005) ($90 million settlement); *In re General Motors ERISA Litigation*, No. 2:05-cv-71085-NGE-RSW (E.D. Mich. June 5, 2008) ($37.5 million settlement); and *Rantala v. ConAgra Foods*, No. 8:05-cv-00349-LES-TDT (D. Neb.) ($4 million settlement).

**CIVIL RIGHTS LITIGATION**

Scott+Scott has also successfully litigated cases to enforce its clients' civil rights. In *The Vulcan Society, Inc. v. The City of New York*, No. 1:07-cv-02067-NGG-RLM (E.D.N.Y.), Scott+Scott was part of a team of lawyers representing a class of black applicants who were denied or delayed employment as New York City firefighters due to decades of racial discriminatory conduct. The district court certified the class in a post-*Walmart v. Dukes* decision, granted summary judgment against the City on both intentional discrimination and disparate impact claims, and after trial ordered broad injunctive relief, including a new examination, revision of the application procedure, and continued monitoring by a court-appointed monitor for at least 10 years. The back pay and compensatory damage award will be determined in a subsequent ruling. In *Hohider v. United Parcel Services, Inc.*, No. 2:04-cv-00363-JFC (W.D. Penn.), Scott+Scott obtained significant structural changes to UPS's Americans with Disabilities Act compliance

policies and monetary awards for some individual employees in settlement of a ground-breaking case seeking nationwide class certification of UPS employees who were barred from reemployment after suffering injuries on the job.

**ATTORNEY BACKGROUND AND EXPERIENCE**

**MELVIN SCOTT** is a graduate of the University of Connecticut (B.A. 1950) and the University of Kentucky (M.A. 1953; LL.B. 1957).  Mr. Scott founded the firm in 1975.  He formerly practiced in Kentucky and is presently admitted to practice in Connecticut and Pennsylvania.  Mr. Scott was a member of the Kentucky Law Review, where he submitted several articles for publication.  He has served as an Attorney Trial Referee since the inception of the program in the State of Connecticut and is a member of the Fee Dispute Committee for New London County.  Mr. Scott also formerly served as a Special Public Defender in criminal cases and as a member of the New London County Grievance Committee.  Mr. Scott actively represents aggrieved parties in securities, commercial and criminal litigation and served or serves as counsel in *Irvine, et al. v. ImClone Systems, Inc.*; *Schnall v. Annuity and Life Re (Holdings) Ltd.*; *In re 360networks Class Action Securities Litigation*; *In re General Motors ERISA Litigation*, and *Hohider v. UPS*, among others.

**DAVID R. SCOTT** is the managing partner of Scott+Scott.  He represents multinational corporations, hedge funds, and institutional investors in high-stakes complex litigation, including antitrust, commercial, and securities actions.

Mr. Scott's antitrust experience includes matters dealing with unlawful price-fixing cartels, illegal tying, and anticompetitive monopolization. Mr. Scott's antitrust cases have resulted in significant recoveries for victims of price-fixing cartels.  In 2015, *Dahl v. Bain Capital Partners*, an action alleging that the largest private equity firms in the United States colluded to suppress prices that shareholders received in leveraged buyouts, settled for $600 million.  And he was lead counsel in *Red Lion Medical Safety v. Ohmeda*, a lawsuit alleging that Ohmeda, one of the leading manufacturers of medical anesthesia equipment in the United States, excluded independent service organizations from the market for servicing its equipment.  The case was successfully resolved in settlement negotiations before trial.

Mr. Scott's firm is currently lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, a cartel action alleging a longstanding and widespread conspiracy to manipulate the foreign exchange market, in which billions of dollars in settlements have been announced to date.  His firm is also lead counsel in a class action case alleging that the world's largest banks and their broker, ICAP, entered into a conspiracy to manipulate ISDAfix, a financial benchmark that is tied to over $379 trillion of outstanding interest-rate swaps around the world.

Mr. Scott's firm served as co-trial counsel in *In re Scrap Metal Antitrust Litigation* where it obtained a $34.5 million jury verdict.  Scott+Scott also played a substantive role in a lawsuit accusing Visa and MasterCard of engaging in anticompetitive conduct in setting credit card and debit card acceptance fees that recently settled for a record $7.25 billion by leading the discovery and briefing efforts as to MasterCard.

In addition to his competition law experience, Mr. Scott has taken the lead in bringing claims on behalf of institutional investors, such as sovereign wealth funds, corporate pension schemes, and public employee retirement funds, against mortgaged-backed securities ("MBS") trustees for failing to protect investors.  Such cases include *Retirement Board of the Policemen's Annuity*

*and Benefit Fund of the City of Chicago v. The Bank of New York Mellon* (MBS sponsored by Countrywide Financial Corp.); *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America* (MBS sponsored by Washington Mutual Bank); and *Oklahoma Police Pension and Retirement System v. U.S. Bank National Association* (MBS sponsored by Bear Stearns).  He also represented a consortium of regional banks in litigation relating to toxic auction rate securities ("ARS") and obtained a sizable recovery for the banks in a confidential settlement.  This case represents one of the few ARS cases in the country to be successfully resolved in favor of the plaintiffs.

In addition, Mr. Scott has extensive experience litigating shareholder derivative cases, achieving substantial corporate governance reforms on behalf of his clients.  Representative actions include:  *In re Marvell Tech. Group Ltd. Derivative Litigation* (settlement obtaining $54.9 million in financial benefits for the company, including $14.6 million in cash, and corporate governance reforms to improve stock option granting procedures and internal controls, valued at more than $150 million); *In re Qwest Communications International, Inc.* (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence); *Plymouth County Contributory Retirement System v. Hasan* (settlement requiring annual reporting to the company's board where any clinical drug trial is delayed, valued at between $50 million-$75 million).

Mr. Scott has received widespread recognition for his competition law and antitrust work.  He has been elected to *Who's Who Legal*: Competition 2015 and 2016, which lists the world's top competition and antitrust lawyers, who are selected based on comprehensive, independent survey work with both general counsel and lawyers in private practice around the world.  He has also received a highly recommended ranking by *Benchmark Litigation* for each of the years 2013-2015.

Mr. Scott is frequently quoted in the press, including in publications such as *The Financial Times*, *The Guardian*, *The Daily Telegraph*, *The Wall Street Journal*, and *Law360*.  He is regularly invited to speak at conferences around the world and before Boards of Directors and trustees responsible for managing institutional investments.

Mr. Scott is admitted to practice in Connecticut, New York, the United States Tax Court, and numerous United States District Courts.

Mr. Scott is a graduate of St. Lawrence University (B.A., *cum laude*, 1986), Temple University School of Law (J.D., Moot Court Board, 1989), and New York University School of Law (LL.M. in taxation).

**BETH A. KASWAN**, during her tenure as an Assistant U.S. Attorney and subsequent promotions to Chief of the Commercial Litigation Unit and Deputy Chief of the Civil Division of the U.S. Attorney's Office for the Southern District of New York, was appointed by the FDA as lead counsel in litigation to enjoin the manufacture of adulterated generic drugs in the landmark case *United States v. Barr Laboratories, Inc*., 812 F. Supp. 458 (D.N.J. 1993).  Ms. Kaswan, who began her career as an accountant at the offices of Peat, Marwick, Mitchell & Co., and then worked as a civil trial attorney at the U.S. Department of Justice in Washington, D.C., is the

recipient of several awards from the Justice Department and other agencies she represented, including the Justice Department's John Marshall award, Special Commendation from the Attorney General, a Superior Performance award from the Executive Office of U.S. Attorneys and Tax Division Outstanding Achievement awards.

While at Scott+Scott, Ms. Kaswan served as lead counsel in *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates*, No. 09-cv-00037 (W.D. Wa.), the WaMu RMBS Section 11 Securities Act case which settled after plaintiffs succeeded in defeating the defendants' motion for summary judgment, only weeks before it was scheduled to proceed to a jury trial. Ms. Kaswan just completed the nine-week trial in *In the Matter of the Application of The Bank of New York Mellon*, Index No. 651786/2011 (N.Y. Supr. Ct.) in which she and other interveners challenged the proposed settlement between Bank of New York Mellon and Bank of America to resolve repurchase and servicing claims for 530 Countrywide trusts. Ms. Kaswan is currently lead counsel suing Bank of New York Mellon in federal court in *Retirement Board of the Policemen's Annuity and Benefit Fund for the City of Chicago v. The Bank of New York Mellon*, No. 11-cv-5459 (S.D.N.Y.), for its failure to prosecute the Countrywide Trusts' claims under the federal Trust Indenture Act ("TIA"). She is also pursuing TIA claims against the Securitization Trustees for WaMu and Bear Stearns Trusts in *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, N.A.*, No. 12-cv-2865 (S.D.N.Y.) and *Oklahoma Police Pension and Retirement System v. U.S. Bank N.A.*, No. 11-cv-8066 (S.D.N.Y.), respectively. Ms. Kaswan brought a derivative suit on behalf of New York University against Ezra Merkin to freeze funds belonging to a feeder fund to Bernard Madoff. She also served as lead counsel to another shareholder derivative case, *Carfagno v. Schnitzer*, No. 08-CV-912-SAS (S.D.N.Y.), where she successfully negotiated a settlement on behalf of Centerline Holding Company and Centerline shareholders. Ms. Kaswan has served as lead counsel in *Cornwell v. Credit Suisse Group*, No. 08-cv-3758 (S.D.N.Y.) and *In re Tetra Technologies, Inc. Securities Litigation*, No. 08-cv-0965 (S.D. Tex.), among others.

Ms. Kaswan is a member of the New York and Massachusetts bars. While working at the U.S. Department of Justice, Ms. Kaswan frequently appeared in the U.S. District Courts in Kentucky. Ms. Kaswan has been practicing law for over 35 years and is a partner in the firm's New York office.

**CHRISTOPHER M. BURKE** chairs Scott+Scott's competition practice and sets the Firm's litigation standards. Mr. Burke's principal practice is in complex antitrust litigation, particularly in the financial services industry and he has served as lead counsel in some of the world's largest financial services antitrust matters. He currently sits as a partner in the firm's San Diego and New York offices.

Currently, Mr. Burke is lead counsel in *In Re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y.); and *Alaska Electrical Pension Fund v. Bank of America Corporation*, 14-cv-7126 (S.D.N.Y) (interest rate swap and swaption litigation). Mr. Burke serves on the Executive Committee in *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-2420-YGR (DMR) (N.D. Cal.).

9

Mr. Burke served as co-lead counsel in *Dahl v. Bain Capital Partners*, 07-cv-12388 (D. Mass.) ($590.5 million settlement); *In re Currency Conversion Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) ($7.25 billion settlement); *LiPuma v. American Express Co*., Case No. 1:04-cv-20314 (S.D. Fla.) ($90 million settlement); and was one of the trial counsel in *Schwartz v. Visa*, Case No. 822505-4 (Alameda Cty. Super. Ct.) ($800 million plaintiff verdict); and *In re Disposable Contact Lens Antitrust Litigation*, MDL No. 1030 (M.D. Fla.).  Mr. Burke was one of the original lawyers in the *Wholesale Elec. Antitrust* cases in California, which settled for over $1 billion.

Further, Mr. Burke was trial counsel in *Ross v. Bank of America N.A*., No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. American Express Co*., No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.).  He was also co-lead counsel for indirect purchasers in *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891 (C.D. Cal.) ($86 million settlement), and *In re Prudential Ins. Co. of America SGLI/VGLI Contract Litigation*, No. 11-md-2208 (D. Mass.) ($40 million settlement).  Mr. Burke also organized and filed the first of the *In re Credit Default Swap Antitrust Litigation*, 13-md-2476 (S.D.N.Y.), matters.

Mr. Burke frequently lectures at professional conferences and CLEs on competition matters, including litigation surrounding financial benchmarks, class-barring arbitration clauses, the effects of *Twombly* in 12(b)(6) motions, and the increasing use of experts.  In 2014, he was recognized for his exemplary work in the *Dahl v. Bain Capital Partners* matter by the American Antitrust Institute and has regularly been designated as a Super Lawyer by Thomson Reuters.

Mr. Burke is a graduate of The Ohio State University (B.A. 1984), William & Mary (M.A. 1988), and the University of Wisconsin (M.A. 1989; J.D. 1993; Ph.D. 1996).  He has also served as an Assistant Attorney General at the Wisconsin Department of Justice and has lectured on law-related topics, including constitutional law, law and politics, and civil rights at the State University of New York at Buffalo and at the University of Wisconsin.  Mr. Burke's book, *The Appearance of Equality: Racial Gerrymandering, Redistricting, and the Supreme Court* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

Mr. Burke is admitted to practice by the Supreme Courts of the States of California, New York, and Wisconsin, and numerous United States District Courts and Courts of Appeal.

**JOSEPH P. GUGLIELMO** is a partner in the firm's New York office and represents institutional and individual clients in securities, antitrust, and consumer litigation in federal and state courts throughout the United States and has achieved numerous successful outcomes.

Recently, Mr. Guglielmo, along with other attorneys at Scott+Scott, was recognized for his efforts representing New York University in obtaining a monumental temporary restraining order of over $200 million from a Bernard Madoff feeder fund.  Specifically, New York State Supreme Court Justice Richard B. Lowe III stated, "Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case.  The extremely professional and

thorough means by which NYU's counsel has litigated this matter has not been overlooked by this Court."

Mr. Guglielmo serves in a leadership capacity in a number of complex antitrust, securities, and consumer actions, including: *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.), claims involving data breach and the theft of the personal and financial information of 56 million credit and debit card holders, *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.), claims involving data breach and the theft of the personal and financial information of customers holding approximately 110 million credit and debit cards, *In re Herbal Supplements Marketing and Sales Practices Litigation*, MDL No. 2619 (N.D. Ill.), claims on behalf of a class of consumers alleging major retail-chain defendants misrepresented the ingredients in store-branded herbal supplements.

Mr. Guglielmo has achieved significant victories and obtained numerous settlements for his clients.  He was one of the principals involved in the litigation and settlement of *In re Managed Care Litigation,* MDL No. 1334 (S.D. Fla.), which included settlements with Aetna, CIGNA, Prudential, Health Net, Humana, and WellPoint, providing monetary and injunctive benefits exceeding $1 billion.   Additional cases Mr. Guglielmo played a leading role and obtained substantial recoveries for his clients include:   *Love v. Blue Cross and Blue Shield Ass'n, No. 03-cv-21296* (S.D. Fla.), which resulted in settlements of approximately $130 million and injunctive benefits valued in excess of $2 billion; *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1897 (D.N.J.), settlements in excess of $180 million; *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL 2086 (W.D. Mo.), consumer settlements in excess of $40 million; *Bassman v. Union Pacific Corp.*, No. 97-cv-02819 (N.D. Tex.), $35.5 million securities class action settlement; *Garcia v. Carrion*, Case No. CV. 11-1801 (D. P.R.), substantial corporate governance reforms; and *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates, No. 09-cv-00037 (W.D. Wash.), $26 million securities class action settlement, Murr v. Capital One Bank (USA), N.A.*, No. 13-cv-1091 (E.D. Va.) $7.3 million settlement pending on behalf of class of consumers who were misled into accepting purportedly 0% interest offers, and *Howerton v. Cargill, Inc.,* No. 13-cv-00336 (D. Haw.) $6.1 settlement obtained on behalf of class of consumers who purchased Truvia, purported to be deceptively marketed as "all-natural."

Mr. Guglielmo was the principle litigator and obtained a significant opinion from the Hawaii Supreme Court in *Hawaii Medical Association v. Hawaii Medical Service Association*, 113 Hawaii 77 (Haw. 2006), reversing the trial court's dismissal and clarifying rights for consumers under the state's unfair competition law.

Mr. Guglielmo lectures on electronic discovery and is a member of the Steering Committee of the Sedona Conference®, an organization devoted to providing guidance and information concerning issues such as discovery and production issues, as well as areas focusing on antitrust law, complex litigation, and intellectual property.  Recently, Mr. Guglielmo was selected as a speaker for electronic discovery issues at the Sedona Conference as well as the Advanced eDiscovery Institute at Georgetown University Law Center.  Mr. Guglielmo was also recognized

for his achievements in litigation by his selection to *The National Law Journal*'s "Plaintiffs' Hot List."

Mr. Guglielmo graduated from the Catholic University of America (B.A., *cum laude*, 1992; J.D., 1995) and also received a Certificate of Public Policy.

Mr. Guglielmo is admitted to practice before numerous federal and state courts:  the United States Supreme Court, the United States Court of Appeals for the First Circuit, Second Circuit, Third Circuit and Ninth Circuit, the United States District Courts for the Southern and Eastern Districts of New York, the District of Massachusetts, the District of Connecticut, District of Colorado, Eastern District of Wisconsin, New York State, the District of Columbia, and the Commonwealth of Massachusetts.  He is also a member of the following associations:  District of Columbia Bar Association, New York State Bar Association, American Bar Association, and The Sedona Conference®.

**GEOFFREY M. JOHNSON** is a partner in the firm's Ohio office.  Mr. Johnson's practice focuses on commercial and class action trial work and appeals.  His areas of concentration include complex securities litigation, ERISA class actions, and commercial and class action antitrust litigation.

Notably, Mr. Johnson serves as lead counsel in *Pfeil v. State Street Bank and Trust Company*, 2:09-cv-12229 (E.D. Mich.), a case of national significance in the area of employee retirement plans.  In the case, Mr. Johnson represents a class of over 200,000 current and former General Motors employees who owned General Motors stock in GM's two main retirement plans. Mr. Johnson successfully argued the case to the United States Court of Appeals for the Sixth Circuit, which issued an opinion that is now looked to nationally as one of the seminal cases in the area of ERISA fiduciary duties and employee rights.  *See Pfeil v. State Street Bank and Trust Company*, 671 F.3d 585 (6th Cir. 2012).

Mr. Johnson has also served as lead or co-lead counsel in other major securities and ERISA cases, including: *In re Royal Dutch/Shell ERISA Litigation*, No. 04-1398 (D.N.J.), which settled for $90 million and is one of the three largest recoveries ever obtained in an ERISA class action case; *In re Priceline Securities Litigation*, 00-cv-1884 (D. Conn.), which settled for $80 million and is the largest class action securities settlement ever obtain in the State of Connecticut; and *In re General Motors ERISA Litigation*, 05-cv-71085 (E.D. Mich.), a case that settled for $37.5 million and ranks among the largest ERISA class settlements ever obtained.

Mr. Johnson has been active in the firm's mortgage-backed securities litigation practice, serving as lead or co-lead counsel in mortgage-backed securities class action cases involving Washington Mutual (*In re* Washington *Mutual Mortgage Backed Securities Litigation*, 2:09-cv-00037 (W. D. Wash.)) and Countrywide Financial (*Putnam Bank v. Countrywide Financial, Inc.*, No. 10-cv-302 (C.D. Cal.)).  Mr. Johnson also helped develop the theories that the firm's pension fund clients have used to pursue class action cases against mortgage-backed security trustees.  *See Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon* (Case No. 11-cv-05459 (S.D.N.Y.)); *Oklahoma Police Pension & Retirement System v. U.S. Bank NA* (Case No. 11-cv-8066 (S.D.N.Y.)).

In addition, Mr. Johnson is active in the firm's appellate practice group, where he has handled numerous class action appeals, including appeals in the United States Court of Appeals for the Second Circuit, Third Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, and Eleventh Circuit.

Mr. Johnson is a graduate of Grinnell College (B.A., Political Science with Honors, 1996) and the University of Chicago Law School (J.D., with Honors, 1999), where he served on the law review.  Prior to joining Scott+Scott, Mr. Johnson clerked for the Honorable Karen Nelson Moore, United States Court of Appeals for the Sixth Circuit.

**JUDY SCOLNICK** is a partner in the firm's New York office.  Ms. Scolnick is a graduate of New York University (B.A., *cum laude* 1972), Brandeis University (M.A. Political Science Theory, 1973), and Boston College Law School (J.D., 1976), where she served on the Boston College Industrial and Commercial Law Review.  She has extensive experience in the fields of shareholder derivative law, particularly in the pharmaceutical industry, employment law and employment class actions, and securities class actions.  She has contributed substantially to recent jurisprudence expanding shareholders' rights to examine books and records of the corporations in which they hold stock.  In *Cain v. Merck & Co., Inc.*, 415 N.J. Super. 319 (N.J. Super. A.D. 2010), the New Jersey Appellate Division agreed with Ms. Scolnick and held in a precedential decision that the New Jersey Business Corporation Act allows shareholders to inspect the minutes of board of directors and executive committee meetings upon a showing of proper purpose.  In *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140 (Del. Supr. 2011), the Delaware Supreme Court ruled in a ground-breaking decision that plaintiffs may, in certain circumstances, inspect a corporation's books and records to bolster a shareholder derivative complaint even after they have filed a lawsuit.

She has served as lead counsel in many shareholder derivative actions and is currently lead counsel in *North Miami General Employees Retirement Fund v. Parkinson*, No. 10-cv-6514 (N.D. Ill.), a shareholder derivative case on behalf of pharmaceutical company, Baxter International, arising from the Board's failure to comply with FDA orders to remediate a medical device known as the Colleague Pump.  She is also lead counsel in *Cottrell v. Duke*, No. 12-4041 (W.D. Ark.), a shareholder derivative action brought on behalf of Wal-Mart arising from a widespread bribery and cover-up conspiracy conducted by Wal-Mart executives and Board members.

Ms. Scolnick has experience litigating shareholder derivative actions at both the trial and appellate level.  She successfully argued the Baxter appeal where the Court of Appeals for the Seventh Circuit, reversing a trial court's dismissal, held that a pension fund's complaint on behalf of all shareholders passed the pre-suit demand futility threshold test under Delaware substantive law.  *Westmoreland County Employees' Retirement System v. Parkinson*, 727 F.3d 719 (7th Cir. 2013).  Also in 2013, Ms. Scolnick obtained a landmark ruling in the Wal-Mart shareholder derivative litigation from the Court of Appeals for the Eighth Circuit.  The Eighth Circuit reversed the district court's stay of the federal action in favor of a related proceeding in Delaware Chancery Court, and held that a *Colorado River* stay is never appropriate where the federal complaint alleges valid, exclusive federal claims.  *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013).

Ms. Scolnick has also litigated a number of important employment discrimination class actions. These include *U.S. v. City of New York*, No. 07-cv-2067, 2011 WL 4639832 (E.D.N.Y. Oct. 5, 2011) (successfully representing a class of black applicants for entry-level firefighter jobs who were discriminated against by the City of New York), *Hohider v. UPS*, 243 F.R.D. 147 (W.D. Pa. 2007), *reversed and remanded*, 574 F.3d 169 (3d Cir. 2009), where although the Third Circuit reversed certification of a nationwide class of Americans with Disabilities Act protected UPS employees, Ms. Scolnick was able to negotiate with UPS changes to its return to work policy with regard to injured workers.

Ms. Scolnick began her career by serving as a law clerk to the late Honorable Anthony Julian of the United States District Court in Massachusetts. Thereafter, she served as a trial attorney in the Civil Division of the United States Department of Justice, where she was lead counsel in several high-profile employment discrimination lawsuits against various U.S. agencies around the country.

Ms. Scolnick has been selected for the past two years in Thompson Reuter's "New York Super Lawyers."

Ms. Scolnick is admitted to practice in New York, New Jersey, and Massachusetts.

**WALTER W. NOSS** serves as the managing partner for Scott+Scott's San Diego office. He practices complex federal litigation with an emphasis on prosecuting antitrust actions on both a class-wide and individual, opt-out basis.

Currently, Mr. Noss represents class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), an action challenging collusion regarding foreign exchange rates, and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.), an action challenging collusion regarding the setting of the ISDAfix benchmark interest rate.

Mr. Noss represented class plaintiffs in *Dahl v. Bain Capital Partners LLC*, No. 1:07-cv-12388 (D. Mass.), a case challenging collusion among private equity firms. In *Dahl*, Mr. Noss served as one of the primary litigation counsel prosecuting the case, including deposing key managing directors, drafting dispositive motions, and arguing in court in opposition to defendants' summary judgment motions. The defendants in *Dahl* settled for $590.5 million.

Mr. Noss represented the indirect purchaser class plaintiffs in *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 2:12-cv-03824 (E.D. Pa.), a case challenging monopolistic conduct known as "product hopping" by the defendants. In *Mylan*, he was appointed sole lead counsel for the indirect class, and directed their prosecution and eventual settlement of the case for $8 million.

Mr. Noss also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.), a case challenging collusion regarding the spot metal price of physically-delivered aluminum. He has previously represented out-out clients in *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal.); *In re Polychloroprene*

14

*Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); and *In re Plastics Additives (No. II) Antitrust Litigation*, MDL No. 1684 (E.D. Pa.), which were cases involving price-fixing by horizontal competitors in the synthetic rubber industry.

Mr. Noss has experience successfully litigating in federal civil jury trials.  In April 2011, Mr. Noss served as lead trial counsel in *Novak v. Gray*, No. 8:09-cv-00880 (M.D. Fla.), winning a $4.1 million jury verdict for breach of oral contract and fraudulent inducement.  In December 2009, Mr. Noss served as plaintiffs' local counsel at trial in *Lederman v. Popovich*, No. 1:07-cv-00845 (N.D. Ohio), resulting in a $1.8 million jury verdict for plaintiffs on claims of breach of fiduciary duties, conversion, and unjust enrichment.  In January and February 2006, Mr. Noss assisted the trial team for *In re Scrap Metal Antitrust Litigation*, No. 1:02-cv-0844 (N.D. Ohio 2006), resulting in a $34.5 million class action plaintiffs' verdict.

Mr. Noss graduated *magna cum laude* from the University of Toledo with a Bachelor of Arts in Economics in 1997 and *with honors* from The Ohio State University College of Law in 2000. He is a member of the California, New York, and Ohio Bars.  Mr. Noss is also a member of the bars of the United States District Courts for the Northern, Central, and Southern Districts of California, the Southern District of New York, and the Northern and Southern Districts of Ohio, as well as the United States Court of Appeals for the Sixth, Ninth, and Eleventh Circuits.  Prior to joining Scott+Scott in April 2004, he was an associate in the Cleveland, Ohio office of Jones Day.

**DONALD A. BROGGI** is a partner in the firm's New York office.  Mr. Broggi is a graduate of the University of Pittsburgh (B.A., 1990) and Duquesne University School of Law (J.D., 2000). He is engaged in the firm's complex securities, antitrust, and consumer litigation, including:  *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.), *In re: Priceline.com Inc. Securities Litigation*, No. 00-cv-1884 (D. Conn.), *Irvine v. ImClone Systems, Inc.*, No. 02-cv-0109 (S.D.N.Y.), *In re: Rubber Chemicals Antitrust Litigation*, No. C04-01648 (N.D. Cal.), *In re: Plastics Additives Antitrust Litigation*, No. 03-cv-2038 (E.D. Pa.), and *In re Washington Mutual Mortgage-Backed Securities Litigation*, No. 09-cv-0037 (W.D. Wash.), among others.

Mr. Broggi also works with the firm's institutional investor clients, including numerous public pension systems and Taft-Hartley funds throughout the United States to ensure their funds have proper safeguards in place to ensure against corporate malfeasance.  Similarly, Mr. Broggi consults with institutional investors in the United States and Europe on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation.  Mr. Broggi has lectured at institutional investor conferences throughout the United States on the value of shareholder activism as a necessary component of preventing corporate fraud abuses, including the Texas Association of Public Employee Retirement Systems, Georgia Association of Public Pension Trustees, Michigan Association of Public Retirement Systems, Illinois Public Pension Fund Association, and the Pennsylvania Association of County Controllers, among others.

Mr. Broggi is admitted to practice in New York and Pennsylvania.

**DEBORAH CLARK-WEINTRAUB** is a partner in the firm's New York office. Ms. Weintraub graduated from St. John's University, Queens, New York (B.A., *summa cum laude*, 1981; President's Award in recognition of achieving highest GPA among graduates of St. John's College of Liberal Arts and Science) and Hofstra Law School in Hempstead, New York (J.D., with distinction, 1986). While in law school, Ms. Weintraub was a member and research editor of the Hofstra Law Review. Following her graduation from Hofstra Law School, Ms. Weintraub served as a law clerk to the Honorable Jacob Mishler, United States District Judge for the Eastern District of New York (1986-1987). Ms. Weintraub is a member of the New York bar.

Ms. Weintraub has extensive experience in all types of class action litigation. She is currently representing investors in mortgage-backed securities (MBS) in litigation against trustees of MBS trusts sponsored by Countrywide, WaMu, and Bear Stearns asserting claims for violations of the Trust Indenture Act of 1939 and breach of contract in connection with the trustees' failures to discharge their statutory and contractual duties under the trusts' governing agreements to enforce the trusts' rights to require repurchase of mortgage loans in the trusts that breached representations and warranties.

Ms. Weintraub also currently represents a certified class of participants and beneficiaries in two 401(k) Plans of General Motors Corporation in an action against State Street Bank and Trust Company, the independent fiduciary and investment manager for the General Motors Corporation $1 2/3 Par Value Common Stock Fund held in the Plans, for violating its fiduciary duty to Plan participants under ERISA in failing to divest the Plans' holdings of GM stock in the GM Common Stock Fund when it had become an imprudent investment to hold in the Plans.

Ms. Weintraub is also currently representing certified classes in two significant consumer cases. In *Huyer v. Wells Fargo & Co.*, No. 4:08–CV–00507 (S.D. Iowa), Ms. Weintraub represents multiple, certified classes of borrowers in an action against Wells Fargo & Co. and Wells Fargo Bank, NA, in an action asserting claims for violation of the Racketeer Influenced & Corrupt Organizations Act and California's Unfair Competition Law in connection with Wells Fargo's assessment of charges for repeated property inspection fees to delinquent borrowers. Ms. Weintraub is also co-lead counsel for the certified class of consumers in *In re Glaceau Vitaminwater Marketing and Sales Practice Litig.*, No. 11–md–2215 (S.D.N.Y.), seeking injunctive relief for violations of California and New York deceptive trade practice statutes in connection with the marketing of Vitaminwater.

Ms. Weintraub has extensive securities class action experience and has acted as plaintiffs' co-lead counsel in numerous cases that have obtained substantial recoveries for defrauded investors. Ms. Weintraub was one of the lead counsel in *In re Oxford Health Plans, Inc. Securities Litigation*, MDL No. 1222 (S.D.N.Y.), in which a cash settlement of $300 million was obtained on the eve of trial after more than five years of litigation. At the time, the $300 million cash recovery was one of the largest ever achieved in a securities class action. The Honorable Charles L. Brieant, Jr., who presided over this case described it as "perhaps the most heavily defended, ardently pursued defense of a similar case that I can recall." Ms. Weintraub also served plaintiffs' co-lead counsel in *In re CVS Corporation Securities Litigation*, No. 01-11464 (D. Mass.), in which a cash settlement of $110 million was obtained for investors.

16

Following the settlement in March 2006, CVS disclosed that the SEC had opened an inquiry into the manner in which CVS had accounted for a barter transaction, a subject of the class action suit, and that independent counsel to the firm's audit committee had concluded in December 2005 that various aspects of the company's accounting for the transaction were incorrect, leading to the resignations of the company's controller and treasurer.

Ms. Weintraub is the co-author of "Gender Bias and the Treatment of Women as Advocates," Women in Law (1998), and the "Dissenting Introduction" defending the merits of securities class action litigation contained in the 1994 monograph "Securities Class Actions: Abuses and Remedies," published by the National Legal Center for the Public Interest.  She is a member of the Association of the Bar of the City of New York.

**WILLIAM C. FREDERICKS** is a partner in the firm's New York office.  Mr. Fredericks holds a B.A. (with high honors) from Swarthmore College, an M. Litt. in International Relations from Oxford University (England), and a J.D. from Columbia University Law School.  At Columbia, Mr. Fredericks was a three-time Harlan Fiske Stone Scholar, a Columbia University International Fellow, and the winner of the law school's Beck Prize (property law), Toppan Prize (advanced constitutional law), Greenbaum Prize (written advocacy), and Dewey Prize (oral advocacy).

After clerking for the Hon. Robert S. Gawthrop III (E.D. Pa.), Mr. Fredericks spent seven years practicing securities and complex commercial litigation at Simpson Thacher & Bartlett LLP and Willkie Farr & Gallagher LLP in New York before moving to the plaintiffs' side of the bar in 1996.   Since then, he has represented investors as a lead or co-lead plaintiff in dozens of securities class actions, including *In re Wachovia Preferred Securities and Bond/Notes Litig*., No. 09-cv-6351 (S.D.N.Y.) (total settlements of $627 million, reflecting the largest recovery ever in a pure Securities Act case not involving any parallel government fraud claims); *In re Rite Aid Securities Litig*., 99-cv-1349 (E.D. Pa.) (total settlements of $323 million, including the then-second largest securities fraud settlement ever against a Big Four accounting firm); *In re Sears Roebuck & Co. Sec. Litig*., No. 02-cv-07527 (N.D. Ill.) ($215 million settlement, representing the largest §10(b) class action recovery ever not involving either a financial restatement or parallel government fraud claims); *In re State Street ERISA Litig*., No. 07-cv-8488 (S.D.N.Y.) (one of the largest ERISA class settlements to date) and *Irvine v. Imclone Systems, Inc*., No. 02-cv-0109 (S.D.N.Y.) ($75 million settlement).  Mr. Fredericks also played a lead role on the team that obtained a rare 9-0 decision for securities fraud plaintiffs in the U.S. Supreme Court in *Merck & Co., Inc. v. Reynolds*, No. 08-905, and has coauthored several amicus briefs in other Supreme Court cases involving securities issues (including the recent *Halliburton* and *Amgen* cases).  More recently, Mr. Fredericks has also played a major role in litigating claims relating to mortgage-backed securities ("MBS") arising out of the financial crisis.

Mr. Fredericks is recognized in the 2014-15 edition of "America's Best Lawyers" in the field of commercial litigation, and in the 2014-15 edition of New York's "Super Lawyers."  He is a frequent panelist on securities litigation programs sponsored by various organizations, including the Practising Law Institute (PLI) and the American Law Institute/American Bar Association (ALI/ABA).  He is a member of the New York City Bar Association (former chair, Committee on Military Affairs and Justice), the Federal Bar Council and the American Bar Association.  His

17

recent publications include "Bringing a Claim for Securities Fraud: Pre-Filing Investigation to Complaint" (PLI 2012) and "'Bet-the-Company' Litigation: Settlement" (PLI 2011).

**DARYL F. SCOTT** graduated in 1981 from Vanderbilt University with a Bachelor of Arts in Economics.  He received his Juris Doctorate from Creighton University School of Law in 1984, and a Masters of Taxation from Georgetown University Law Center in 1986.  Mr. Scott is a partner involved in complex securities litigation at Scott+Scott.  In addition to his work with the firm, Mr. Scott has specialized in private foundation and ERISA law.  He was also formerly an executive officer of a private equity firm that held a majority interest in a number of significant corporations.  Mr. Scott is admitted to the Supreme Court of Virginia and a member of the Virginia Bar Association and the Connecticut Bar Association.

**DEIRDRE DEVANEY** is a graduate of New York University (B.A., *cum laude*, 1990) and the University of Connecticut School of Law (J.D., with honors, 1998) where she was the managing editor of the Connecticut Journal of International Law.  Ms. Devaney's experience includes commercial and probate litigation, as well as trusts and estates.  Currently, Ms. Devaney's practice areas include commercial and securities litigation, including: *In re Priceline.com, Inc. Securities Litigation*, among others.  Ms. Devaney is admitted to practice in Connecticut, New York, and the United States District Court for the District of Connecticut.

**SYLVIA M. SOKOL** is a New York- and London-based partner in the firm's Antitrust and Competition Law Practice.  She focuses on representing national and international clients in litigation involving domestic and international cartels.  Ms. Sokol has substantial experience in all aspects of complex litigation, including the day-to-day management of cases.  She also has substantial experience in counseling corporate clients, evaluating potential claims, and developing strategies to recoup losses stemming from anticompetitive conduct.

Ms. Sokol currently represents a nationwide class in price-fixing litigation regarding the $5.3 trillion-a-day foreign exchange market.  She also represents a proposed nationwide class in an action involving ISDAfix, a financial benchmark that is tied to over $379 trillion of interest-rate swaps around the world.  In addition, Ms. Sokol represents several large multinational corporations alleging that Goldman Sachs, JPMorgan, Glencore, and their warehouse affiliates conspired to restrict the supply of aluminum in London Metal Exchange-approved warehouses.  And she represents several government entities in a national lawsuit alleging bid-rigging in the municipal derivatives market.

In addition, Ms. Sokol's civil litigation experience has involved defending corporate clients charged with unlawful business practices and monopolizations.  She has also represented clients in criminal and extradition matters.

Ms. Sokol was selected for the International Who's Who of Competition Lawyers & Economists 2016, and for Competition - U.S. in 2016.  Honorees are selected based on comprehensive and independent survey responses received from general counsel and private practitioners around the world.  In 2015, she was selected to become a Fellow in the Litigation Counsel of America.  She was also named a "Super Lawyer" in 2011, 2012, and 2014, Super Lawyers Northern California Edition, and was named a "Super Lawyer" in 2015, Super Lawyers New York Metro Edition.

She is a 1998 graduate of the New York University School of Law (*cum laude*), and completed her undergraduate studies at the University of British Columbia.  After law school, Ms. Sokol was awarded the Soros Justice Fellowship to serve a year in the Capital Habeas Unit of the Federal Public Defender's Office, where she represented clients condemned to death and developed training materials for members of the capital defense bar.  She then served as a judicial law clerk to the Honorable Warren J. Ferguson, United States Court of Appeals for the Ninth Circuit, before spending several years working at Morrison & Foerster LLP.

Ms. Sokol is a member of the American Bar Association and is admitted to practice in New York, California, and the District of Columbia.  She is also admitted to the Southern District of New York, the Northern, Southern, and Eastern Districts of California, as well as the United States Supreme Court.

She is bilingual in English and French, and holds French and United States citizenships.

**BELINDA HOLLWAY** is the head of Scott+Scott's office in London.  She has over a decade of competition law experience, and specialises in competition damages litigation before the English High Court, Competition Appeal Tribunal and the Court of Appeal, particularly on behalf of multinational corporations in follow-on damages claims.  She has extensive expertise in developing and coordinating multijurisdictional litigation strategies, both within Europe and beyond.  She also represents investors in shareholder litigation.

Prior to joining Scott+Scott, Ms. Hollway spent nine years in the London office of Freshfields Bruckhaus Deringer LLP.  She represented clients across a wide range of industries, acting in many of the leading English competition damages cases, such as *Cooper Tire*, relating to the synthetic rubber cartel, and *National Grid v. ABB*, relating to the cartel in gas insulated switchgear.  She was the lead associate on the defence team in *Enron v. EWS*, which was the first follow-on damages claim ever to reach trial in the Competition Appeal Tribunal.  Her wide experience on the defence side gives her a special insight into the issues that claimants must address and overcome in order to recoup losses stemming from breaches of competition law in Europe.

Ms. Hollway has also acted for numerous clients in competition law investigations, both internal investigations and those brought by the UK Office of Fair Trading (now the Competition and Markets Authority) and the European Commission.  She has been involved in immunity applications, Commission cartel settlements, and contested cases.  From this work, she has an in-depth understanding of the interaction between private and public enforcement in Europe and the ramifications that public enforcement has for the strategy and progression of damages claims.

Ms. Hollway attended the Australian National University and graduated in 2001 with a First Class Honours degree in History and a First Class Honours Degree and University Medal in Law.  She then spent a year as an Associate to Her Honour Justice Catherine Branson at the Federal Court of Australia and then worked for the competition and litigation teams of Allens Arthur Robinson in Sydney, prior to moving to the United Kingdom in 2006.  She has a Master's Degree in Competition Law from King's College London.

She has published on competition law issues, including in relation to the EU Damages Directive and has been quoted in the press on competition law in Europe.

Ms. Hollway is admitted to practice in England and Wales and in New South Wales, Australia.

**AMANDA F. LAWRENCE** is a partner in the firm's Connecticut office.  Ms. Lawrence is a graduate of Dartmouth College (B.A., *cum laude*, 1998) and Yale Law School (J.D., 2002). During law school, Ms. Lawrence worked for large firms in Washington, D.C., New York, and Cleveland.  After graduating from Yale, she worked in-house at a tax lien securitization company and for several years at a large Hartford-based law firm.

At Scott+Scott, Ms. Lawrence is actively is engaged in the firm's complex securities, corporate governance, consumer, and antitrust litigation.  She has worked on several cases that have resulted in substantial settlements including: *In re Aetna UCR Rates Litigation*, MDL No. 2020 (D.N.J.) ($120 million settlement pending); *Rubenstein v. Oilsands Quest Inc.*, No. 11-1288 (S.D.N.Y.) (securities settlement of $10.235 million); *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates*, No. 09-cv-00037 (W.D. Wash.) ($26 million securities class action settlement); and *In re TETRA Technologies, Inc. Securities Litig.*, No. 4:07-cv-00965 (S.D. Tex.) ($8.25 million securities class action settlement).

Ms. Lawrence has taught Trial Practice at the University of Connecticut School of Law and is very actively involved in her community, particularly in recreational organizations and events. A five-time NCAA National Champion cyclist who raced throughout the United States, Europe, Bermuda, and Pakistan, Ms. Lawrence is now an avid endurance athlete.  She has competed in dozens of marathons, including the New York Marathon and the Boston Marathon, and in 11 full-distance ironman competitions – three of which were at the Ironman World Championships in Kona, Hawaii.  She is licensed to practice in Connecticut and the Southern District of New York.

**ERIN GREEN COMITE** is a partner in the firm's Connecticut office.  Ms. Comite is a graduate of Dartmouth College (B.A., *magna cum laude*, 1994) and the University of Washington School of Law (J.D., 2002).  Ms. Comite litigates complex class actions throughout the United States, representing the rights of shareholders, employees, consumers, and other individuals harmed by corporate misrepresentation and malfeasance.  Since joining Scott+Scott in 2002, she has litigated such cases as *In re Priceline.com Securities Litigation* ($80 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.* ($27 million settlement); and *In re Qwest Communications International, Inc.* (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence).  Currently, she is one of the court-appointed lead counsel in *In re Monsanto Company Genetically-Engineered Wheat Litigation*, MDL No. 2473 (D. Kan.), and is prosecuting or has recently prosecuted actions against defendants such as Banco Popular, N.A.; Cargill, Inc.; The Estée Lauder Companies, Inc.; Ferrero USA, Inc.; L'Oreal USA, Inc.; Merisant Company; Merrill, Lynch, Pierce, Fenner & Smith, Inc.; NCO Financial Systems, Inc.; and Nestlé USA, Inc.

While Ms. Comite is experienced in all aspects of complex pre-trial litigation, she is particularly accomplished in achieving favorable results in discovery disputes.  In *Hohider v. United Parcel Service, Inc.*, Ms. Comite spearheaded a nearly year-long investigation into every facet of UPS's

preservation methods, requiring intensive, full-time efforts by a team of attorneys and paralegals well beyond that required in the normal course of pre-trial litigation. Ms. Comite assisted in devising the plan of investigation in weekly conference calls with the Special Master, coordinated the review of over 30,000 documents that uncovered a blatant trail of deception and prepared dozens of briefs to describe the spoliation and its ramifications on the case to the Special Master. In reaction to UPS's flagrant discovery abuses brought to light through the investigation, the Court conditioned the parties' settlement of the three individual ADA case on UPS adopting and implementing preservation practices that passed the approval of the Special Master.

Ms. Comite also is active in the firm's appellate practice. Recent successes include achieving a Ninth Circuit reversal of a district court's dismissal of consumers' claims concerning Nestlé's Juicy Juice Brain Development Beverage, which the plaintiffs alleged was deceptively marketed as having the ability to improve young children's cognitive development with minute quantities of the Omega-3 fatty acid, DHA. *Chavez v. Nestle USA, Inc*., 511 F. App'x 606 (9th Cir. 2013).

Prior to entering law school, Ms. Comite served in the White House as Assistant to the Special Counsel to President Clinton. In that capacity, she handled matters related to the White House's response to investigations, including four independent counsel investigations, a Justice Department task force investigation, two major oversight investigations by the House of Representatives and the Senate, and several other congressional oversight investigations.

Ms. Comite's volunteer activities have included assisting immigrant women, as survivors of domestic violence, with temporary residency applications as well as counseling sexual assault survivors. Currently, Ms. Comite supports Connecticut Children's Medical Center and March of Dimes/March for Babies.

Ms. Comite is licensed to practice in the State of Connecticut and is admitted to practice in the U.S. District Court for the District of Connecticut and the Southern District of New York and the U.S. Court of Appeals for the Second, Third, Ninth and Eleventh Circuits.

**KRISTEN M. ANDERSON** is a partner in the firm's San Diego office. Ms. Anderson's practice focuses on complex and class action litigation with an emphasis on antitrust matters, including the following representative cases: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y) ($7.25 billion recovery) and *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million recovery). Ms. Anderson is recognized as a Rising Star in the 2014-15 and 2015-16 editions of Super Lawyers.

A substantial portion of Ms. Anderson's practice is devoted to antitrust cases within the financial services industry. Ms. Anderson represented pension funds and individual investors in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.), an antitrust action alleging collusion in the buyouts of large publicly traded companies by private equity firms. Ms. Anderson also represents plaintiff-investors in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.), challenging foreign-exchange market manipulation by many global financial institutions. Ms. Anderson served on the trial team representing certified classes of

21

cardholders in antitrust cases challenging class action-banning arbitration clauses in credit card agreements as restraints of trade in *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y).

Ms. Anderson is an active member of the American Bar Association's Antitrust Section. She currently serves as Vice Chair of the Antitrust Section's Books & Treatises Committee. She was also a contributing author to the Antitrust Section's *Antitrust Discovery Handbook* (2d ed.), *Joint Venture Handbook* (2d ed.), and the *2010 Annual Review of Antitrust Law Developments*. In addition, Ms. Anderson served as an editor for *The Woman Advocate* (2d ed.), published by the American Bar Association's Woman Advocate Committee.

Ms. Anderson is also an active member of the State Bar of California's Antitrust and Unfair Competition Law Section, authoring case updates for the Antitrust E-Brief and serving as an articles editor for *Competition: Journal of the Antitrust and Unfair Competition Section of the State Bar of California*. Ms. Anderson was a co-author of an article appearing in the Fall 2014 edition of the Journal, entitled *The Misapplication of Associated General Contractors to Cartwright Act Claims*, 23 Competition: J. Anti. & Unfair Comp. L. Sec. St. B. Cal. 120 (2014).

Ms. Anderson is the Editor-in-Chief of MARKET+LITIGATION, Scott+Scott's monthly newsletter. She is also active in the firm's continuing legal education programs, speaking on e-discovery, evidence, and antitrust issues.

Ms. Anderson is a graduate of St. Louis University (B.A. Philosophy, *summa cum laude*, 2003) and the University of California, Hastings College of the Law (J.D. 2006). During law school, Ms. Anderson served as an extern at the U.S. Department of Justice, Antitrust Division, in San Francisco. While at Hastings, Ms. Anderson also served as an extern to Justice Kathryn Mickle Werdegar of the Supreme Court of California and was the research assistant to Professor James R. McCall in the areas of antitrust and comparative antitrust law.

Ms. Anderson is admitted to practice by the Supreme Court of California and all California United States District Courts.

**THOMAS LAUGHLIN** is a partner in the firm's New York office. Mr. Laughlin is a graduate of Yale University (B.A. History, *cum laude*, 2001) and New York University School of Law (J.D., *cum laude*, 2005). After graduating from law school, Mr. Laughlin clerked for the Honorable Irma E. Gonzalez, United States District Court Judge for the Southern District of California.

Mr. Laughlin's practice focuses on securities class action, shareholder derivative, ERISA and other complex commercial litigation. While at Scott+Scott, Mr. Laughlin has worked on several cases that have achieved notable victories, including *Cornwell v. Credit Suisse,* No. 08-3758 (S.D.N.Y.) (securities settlement of $70 million), *Rubenstein v. Oilsands Quest Inc.*, No. 11-1288 (S.D.N.Y.) (securities settlement of $10.235 million) *Plymouth County Contributory Ret. Sys. v. Hassan,* No. 08-1022 (D.N.J.) (corporate governance reform); and *Garcia v. Carrion,* No. 09-1507 (D.P.R.) (corporate governance reform). Mr. Laughlin is a member of the New York

bar and is admitted to practice in the Southern District of New York and the Eastern District of
New York.

Mr. Laughlin also has significant appellate experience, having represented clients in connection
with several appellate victories, including *Cottrell v. Duke,* 737 F.3d 1238 (8th Cir. 2013);
*Westmoreland County Employee Retir. Sys. v. Parkinson,* 727 F.3d 719 (7th Cir. 2013); *Pfeil v.
State Street Bank and Trust Co.,* 671 F.3d 585 (6th Cir. 2012); and *King v. VeriFone Holdings,
Inc.,* 12 A.3d 1140 (Del. Supr. 2011).

In 2014, Mr. Laughlin was co-chair of a 13-day bench trial in *Bankers' Bank Northeast v. Berry,
Dunn, McNeil & Parker, LLC*, No. 12-cv-00127 (D. Me.).   Mr. Laughlin represented a
consortium of 10 community banks asserting negligence and professional malpractice claims
against the former officers and directors of a bank and its auditor in connection with an
$18 million loan made to that bank in September 2008.   Among other things, Mr. Laughlin
conducted the cross-examination of all three witnesses from the defendant's auditing firm and
the direct examination of plaintiff's auditing expert.   The parties to the action succeeded in
resolving the action after trial.

**MAX SCHWARTZ** is a partner based in New York.  His main practice area is complex civil
litigation, with an emphasis on financial products and services.  He also counsels investment
firms and institutional investors on strategies to enhance returns, or recoup losses, through a
variety of legal actions.

Following the financial crisis, Mr. Schwartz served as lead counsel in several cases that set
important precedents regarding mortgage-backed securities.  He argued the first cases to find that
securitization trustees must seek to have defective mortgages repurchased from MBS trusts.
These efforts recently led to the recovery of $69 million for investors in Washington Mutual
MBS and $6 million for investors in Bear Stearns MBS.  *Policemen's Annuity and Benefit Fund
of the City of Chicago v. Bank of America, NA*, 1:12-cv-2865 (S.D.N.Y.); *Oklahoma Police
Pension and Retirement System v. U.S. Bank National Association*, 1:11-cv-8066 (S.D.N.Y.).

Currently, Mr. Schwartz represents investment firms pursuing claims against MBS servicers.  He
also represents plaintiffs in a securities action against Nicholas Schorsch and RCS Capital Corp.,
among others.  *Weston v. RCS Capital Corp.*, 1:14-cv-10136 (S.D.N.Y.).

Mr. Schwartz has substantial experience in competition and antitrust matters as well.  He was
part of the team that secured a $590 million settlement stemming from allegations that several of
the largest leveraged buyouts were subject to collusion.  *Dahl v. Bain Capital Partners, LLC*,
1:07-cv-12388 (D. Mass.).  In addition, Mr. Schwartz has advised clients in antitrust matters
ranging from pharmaceuticals to precious metals and has advised companies seeking merger
review before a number of regulatory agencies.

*Super Lawyers* named Mr. Schwartz a Rising Star.  The Legal Aid Society also recognized him
with a Pro Bono Service Award for work before the New York Court of Appeals.

Mr. Schwartz holds a B.A. from Columbia University (*cum laude*), and a J.D. from New York University School of Law.

**DAVID H. GOLDBERGER** is an associate in Scott+Scott's San Diego office. Currently, Mr. Goldberger's practice is focused on antitrust litigation, initial case investigations, and other special projects.

Representative actions include *Kleen Products LLC v. Packaging Corporation of America*, No. 10-cv-5711 (N.D. Ill.), an action challenging price-fixing in the containerboard industry, and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 (N.D. Cal.), an action challenging price-fixing of Li-Ion batteries. Mr. Goldberger has also worked on antitrust cases involving delayed generic drug entry, such as *Mylan Pharmaceuticals Inc. v. Warner Chilcott Public Ltd. Co.*, No. 12-cv-3824 (E.D. Pa.) ($8 million settlement) and *In re Prograf Antitrust Litig.*, No. 1:11-md-02242 (D. Mass.).

Previously, Mr. Goldberger was active in Scott+Scott's securities fraud and ERISA practice, including *In re: Priceline.com Securities Litigation*, 03-cv-1884 (D. Conn.) ($80 million settlement), *Alaska Electrical Pension Fund v. Pharmacia Corporation*, No. 03-1519 (D.N.J.) ($164 million settlement), and *In re: General Motors ERISA Litigation*, No. 05-71085 (E.D. Mich.) (resulting in significant enhancements to retirement plan administration in addition to $37.5 million settlement for plan participants).

Mr. Goldberger was also a member of Scott+Scott's institutional investor relations staff, providing the Firm's many institutional clients with assistance in various matters pertaining to their involvement in complex civil litigations.

Mr. Goldberger is also a frequent contributing author to Market+Litigation, Scott+Scott's monthly client newsletter.

Mr. Goldberger graduated from the University of Colorado (B.A., 1999) and California Western School of Law (J.D., 2002). Mr. Goldberger is admitted to practice by the Supreme Court of the State of California and in all California United States District Courts.

A San Diego native, Mr. Goldberger was a founding member of the Torrey Pines High School "Friends of the Library" and coaches youth sports in his spare time.

**THOMAS K. BOARDMAN** is an associate in the Scott+Scott's New York office, focusing on antitrust litigation. At his prior firm, Mr. Boardman was a member of the trial team in *In re TFT-LCD (Flat Panel) Antitrust Litigation*. For his work on that case, Mr. Boardman was nominated by Consumer Attorneys of California as a finalist for Consumer Attorney of the Year. Mr. Boardman was also an instrumental part of the lead counsel team in *In re Potash Antitrust Litigation (II)*, a case that featured a unanimous victory before an *en banc* panel of the Seventh Circuit, resulting in one of the most influential antitrust appellate opinions in recent memory. The case ended in $90 million in settlements.

At Scott+Scott, Mr. Boardman represents plaintiff-investors in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* and represents opt-out plaintiffs in *Mag Instrument Inc v.*

*The Goldman Sachs Group Inc.*  Mr. Boardman also represents indirect purchaser plaintiffs in *In re Lithium Ion Batteries Antitrust Litigation*.

Mr. Boardman received his Bachelor of Arts degree from Vassar College in 2004, majoring in Political Science and Film Studies.  He received his Juris Doctorate from the University of California, Hastings College of the Law in 2009.  While at Hastings, Mr. Boardman was a member of the Hastings Science and Technology Law Journal and worked as a research assistant to professors Geoffrey C. Hazard, Jr. and Rory K. Little.  Mr. Boardman is a member of the following Bars: California, New York, Ninth Circuit Court of Appeals, Central District of California, Northern District of California, and Southern District of California.  He is also a member of the following professional associations:  ABA Antitrust Section – Model Jury Instruction Revision Task Force, ABA Antitrust Section – Young Lawyers Division – Litigation Committee, ABA Antitrust Section – Young Lawyers Division – Civil Practice and Procedure Committee, New York State Bar Association – Antitrust Section, Bar Association of San Francisco, and Public Justice Foundation.

Mr. Boardman has co-authored the following articles: "Reverse Engineering Your Antitrust Case: Plan for Trial Even Before You File Your Case," *Antitrust Magazine*, Spring 2014, Vol. 28, No. 2, with Bruce L. Simon; and "Class Action for Health Professionals," chapter from *Advocacy Strategies for Health and Mental Health Professionals*, Springer Publishing Co., 2011, with Bruce L. Simon, Stuart L. Lustig, Editor.

Prior to joining Scott+Scott, Mr. Boardman worked at Pearson, Simon & Warshaw, LLP in San Francisco and served as a judicial law clerk to the Hon. Christina Reiss in United States District Court, District of Vermont.

Mr. Boardman enjoys running and regularly does so for charity.  He has run several races to fundraise for various causes, including the New York City Marathon (National Multiple Sclerosis Foundation) and the Boston Marathon (Cystic Fibrosis Foundation).

**PATRICK McGAHAN** is an associate in Scott+Scott's London office.  He specialises in competition damages litigation before the English High Court, Competition Appeal Tribunal and the Court of Appeal.  He has also acted for clients in a variety of arbitrations (both investment treaty and commercial) and pieces of general commercial litigation.  Mr. McGahan is presently representing numerous clients who may have European claims arising from the manipulation of the foreign exchange market.

Prior to joining Scott+Scott, Mr. McGahan spent four years in the London office of Freshfields Bruckhaus Deringer LLP.  During this time he acted in many of the leading English competition damages cases, including *National Grid Electricity Transmission Plc v ABB Ltd*.  He also acted for numerous clients in competition law investigations, both internal investigations and those brought by the Competition and Markets Authority, the European Commission, and other regulators, including the multi-jurisdictional 'LIBOR' investigations.

Mr. McGahan attended the University of Queensland and graduated in 2010 with a Bachelor of Laws (First Class Honours) and a Bachelor of Arts (Economics/Political Science).  He then spent

a year as the Associate to His Honour Justice Andrew Greenwood at the Federal Court of Australia.  Mr. McGahan has a Postgraduate Diploma in Competition Law from King's College London.

Mr. McGahan is admitted to practice in England and Wales and in Queensland, Australia.

**STEPHEN TETI**'s practice focuses on securities class action litigation, shareholder derivative lawsuits and corporate governance, consumer, and ERISA litigation.   While at Scott+Scott, Mr. Teti has worked on several cases that have achieved notable results, including *Rubenstein v. Oilsands Quest Inc.*, No. 11-cv-288 (S.D.N.Y.) (securities settlement of $10.235 million) and *Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-cv-1022 (D.N.J.) (corporate governance reform).  Mr. Teti also practices in Scott+Scott's appellate group, achieving victories in *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013), *Westmoreland County Employee Retirement System v. Parkinson*, 737 F.3d 719 (7th Cir. 2013), and *Chavez v. Nestlé USA, Inc.*, 511 Fed. Appx. 606 (9th Cir. 2013).

Mr. Teti obtained a significant decision for consumers in *Friedman v. Maspeth Fed. Loan & Savings Ass'n*, __ F. Supp. 2d __, 2014 WL 3473407 (E.D.N.Y. July 14, 2014).  In a case before the Honorable Jack B. Weinstein raising "issues of first impression on the reach of the Real Estate Settlement Procedures Act," Mr. Teti defeated the motion to dismiss in the case which involved wrongful imposition of late charges on timely received mortgage payments.  Mr. Teti has also achieved several favorable decisions regarding the improper removal of class actions under the Securities Act of 1933, including *Niitsoo v. Alpha Natural Resources, Inc.*, 902 F. Supp. 2d 797 (S.D. W. Va. 2012), and *Rajasekaran v. CytRx Corp.*, 2014 WL 4330787 (C.D. Cal. Aug. 21, 2014).

Mr. Teti graduated from Fairfield University (B.A., *cum laude*, 2007) and the Quinnipiac University School of Law (J.D., *magna cum laude*, 2010).  He is a member of the Connecticut Bar.  During law school, Mr. Teti served as Publications Editor on the *Quinnipiac Law Review*. Further, he worked as an intern in the State of Connecticut Office of the Attorney General, a judicial extern to the Honorable Stefan R. Underhill in the United States District Court for the District of Connecticut, and a legislative extern to the Judiciary Committee of the Connecticut General Assembly.  Prior to joining Scott+Scott, Mr. Teti clerked for the judges of the Connecticut Superior Court.

Mr. Teti is a regular contributor to and editor of Scott+Scott's monthly newsletter, MARKET+LITIGATION, and he volunteers on his local Youth Services Advisory Board.

**JOHN JASNOCH**'s practice areas include securities and antitrust class actions, shareholder derivative actions, and other complex litigation.  Mr. Jasnoch represented plaintiffs in *In re Washington Mutual Mortgage-Backed Securities Litigation*, Case No. 2:09-cv-00037 (W.D. Washington), a case that was litigated through summary judgment and settled on the eve of trial for $26 million.  Mr. Jasnoch was also one of the lead attorneys that secured a $7.68 million settlement in *In re Pacific Biosciences Securities Litigation*, Case No. CIV509210 (San Mateo County, California).  Other cases Mr. Jasnoch has worked on that have achieved notable results include:   *West Palm Beach Police Pension Fund v. Cardionet, Inc.*, Case No. 37-2010-

00086836-CU-SL-CTL (San Diego County, California) ($7.25 million settlement), *Hodges v. Akeena Solar*, 09-cv-2147 (N.D. Cal.) ($4.77 million settlement), *Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-1022 (D.N.J.) (corporate governance reform), and *In re HQ Sustainable Maritime Industries, Inc., Derivative Litigation*, Case No. 11-2-16742-9 (King County, Washington) ($2.75 million settlement).

Mr. Jasnoch is also involved in the firm's healthcare practice group, currently representing institutional investors in *In re DaVita Healthcare Partners, Inc. Derivative Litigation*, Case No. 12-cv-2074 (D. Co.) and *City of Omaha Police and Fire Pension Fund v. LHC Group*, Case No. 12-cv-1609 (W.D. La.).

As an active member of the Consumer Attorneys of California, Mr. Jasnoch has prepared and submitted successful *amicus curie* briefs to the Ninth Circuit Court of Appeals, including on California's Anti-SLAPP law and consumer protection issues.

Mr. Jasnoch graduated *cum laude* from Creighton University with a Bachelor of Arts in Political Science in 2007. He received his Juris Doctorate from The University of Nebraska College of Law in 2011 and is a member of the California Bar.

**MICHAEL G. BURNETT** is a graduate of Creighton University (B.A., 1981) and Creighton University School of Law (J.D., 1984). Mr. Burnett practices complex securities litigation at the firm where he consults with the firm's institutional clients on corporate fraud in the securities markets as well as corporate governance issues. In addition to his work with the firm, Mr. Burnett has specialized in intellectual property and related law. Mr. Burnett is admitted to the Nebraska Supreme Court and United States District Court, District of Nebraska. He is a member of the Nebraska Bar Association.

**ANDREA FARAH**'s practice focuses on securities, shareholder derivative actions, consumer rights, and other complex litigation. Ms. Farah graduated *summa cum laude* from the University of North Florida with a Bachelor of Arts in Psychology in 2009. She received her Juris Doctorate, *cum laude*, in 2013 and a Master in Business Administration in 2013 from Quinnipiac University School of Law. During law school, Ms. Farah worked as an intern in the Connecticut State's Attorneys Office for the Judicial District of New Haven, Connecticut. Ms. Farah is admitted to practice in New York.

**STEPHANIE HACKETT** is an associate in Scott+Scott's San Diego office. She primarily practices in the area of antitrust litigation on behalf of classes and individual plaintiffs.

Ms. Hackett has represented class plaintiffs in *Dahl v. Bain Capital Partners, LLC, No. 1:07-cv-12388 (D. Mass.)* ($590.5 million settlement) and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.*, No. 12-3824 (E.D. Pa.) ($8 million settlement). She represented corporate opt-out clients in *In re Polychloroprene Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); and *In re Plastics Additives (No. II) Antitrust Litigation*, MDL No. 1684 (E.D. Pa.).

Ms. Hackett's current cases include representing class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), an action challenging

27

collusion regarding foreign exchange rates, and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.), an action challenging collusion regarding the setting of the ISDAfix benchmark interest rate. Ms. Hackett also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.), a case challenging collusion regarding the spot metal price of physically-delivered aluminum.

As a part of her *pro bono* work, Ms. Hackett has worked with the San Diego Volunteer Lawyer Program, providing assistance to immigrant victims of domestic violence, and the ABA Immigration Justice Project, where she obtained a grant of asylum on behalf of her client.

Ms. Hackett is an active member of the American Bar Association's Antitrust Section and the San Diego La Raza Lawyers Association. She is also a contributing author to Market+Litigation, Scott+Scott's monthly newsletter.

Ms. Hackett is a graduate of the University of Iowa (B.S. Political Science, International Business Certificate, 2001) and of the University of Iowa College of Law (J.D., with distinction, 2005), where she was a recipient of the Willard L. Boyd Public Service Distinction award. While obtaining her law degree, Ms. Hackett worked as a judicial extern for the Honorable Celeste F. Bremer, United States District Court for the Southern District of Iowa. Ms. Hackett is admitted to practice in California.

In addition to her legal education, Ms. Hackett has engaged in accounting study and passed all four parts of the CPA exam. This background has proved particularly useful in cases involving the financial services industry.

**JENNIFER J. SCOTT** is an associate in Scott+Scott's San Diego office. Her practice focuses on prosecuting antitrust actions.

Ms. Scott represents pension funds and individual investors in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass), an antitrust action alleging collusion in the buyouts of large publicly traded companies by private equity firms. The defendants in *Dahl* settled for $590.5 million, pending final approval. Ms. Scott also represents class plaintiffs in *Kleen Products LLC v. International Paper*, No. 1:10-cv-5711 (N.D. Ill.), an action challenging price fixing in the containerboard products industry.

Currently, Ms. Scott represents plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y), challenging foreign-exchange market manipulation by many global financial institutions. Ms. Scott also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y), a case challenging collusion regarding the spot metal price of physical-delivered aluminum.

She represented the indirect purchaser class in *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 2:12-cv-03824 (E.D. Pa.), a case challenging monopolistic conduct known as "product hopping" by the defendants. In *Mylan*, Ms. Scott drafted dispositive motions, prepared lead counsel to depose experts and key managing directors, and prepared for trial. The case settled for $8 million.

Ms. Scott is an active member of the American Bar Association's Antitrust Section.  She is also a frequent contributing author to Market+Litigation, Scott+Scott's monthly newsletter.

Ms. Scott graduated *cum laude* from San Diego State University with a Bachelor of Arts in Psychology in 2007 and from the University of San Diego School of Law in 2011.  At USD School of Law, she was a contributing writer to the *California Regulatory Law Reporter*, a judicial intern at the Equal Employment Opportunity Commission, and in-house intern at the Department of the Navy, Office of General Counsel.  Ms. Scott is a member of the California Bar and admitted to practice in all state and federal courts in California.

Ms. Scott serves on the board of a San Diego nonprofit literacy organization focusing on early juvenile intervention and rehabilitation.

**JOSEPH V. HALLORAN** is an associate in Scott+Scott's New York office.  Mr. Halloran practices in the areas of securities class action litigation, shareholder derivative actions, antitrust, and other complex litigation.

While at Scott+Scott, Mr. Halloran has primarily focused on securities and derivative cases, including *In Re FireEye, Inc. Securities Litigation*, No. 1-14-CV-266866 (Cal. Super. Ct., Santa Clara County); *Thomas Welch v. Pacific Coast Oil Trust*, No. BC550418 (Cal. Super. Ct., Los Angeles County); *IBEW Local No. 58 Annuity Fund v. Everyware Global, Inc.*, 14-cv-01838 (S.D. Ohio); *City of Irving Supplemental Benefit Plan v. Chopra*, 14-cv-09869 (C.D. Cal.); *In re IPC The Hospitalist Company, Inc. Consolidated Derivative Litigation*, C.A. No. 10258-CB (Del. Ch.); and *In re Duke Energy Corporation Coal Ash Derivative Litigation*, C.A. No. 9682-VCN (Del. Ch.).

Mr. Halloran has also been active in the firm's antitrust practice including *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.) and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.).

Mr. Halloran graduated from Boston University (B.B.A., *magna cum laude*, 2008) and the University of San Diego School of Law (J.D., 2012).  During law school, Mr. Halloran worked at the California Department of Corporations and was a senior associate for USD's Climate & Energy Law Journal.

Mr. Halloran is a member of the following professional associations: ABA Antitrust Section, ABA Young Lawyers Division, and the State Bar of California's Antitrust and Unfair Competition Law Section.  Mr. Halloran is also a regular contributor to Scott+Scott's monthly newsletter.  He is admitted to practice in California.

**YIFAN ("KATE") LV** is an associate in Scott+Scott's San Diego office.  Her practice focuses on prosecuting antitrust actions with an emphasis on intercultural cartels.

Ms. Lv represents plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y), challenging foreign-exchange market manipulation by many global financial institutions.  Ms. Lv also represents and advises the Firm's Asian clients.

Ms. Lv graduated from Tianjin University of Commerce, Tianjin, China, with a Dual Bachelors in Law and Economics in 2008, from Peoples University of China, Beijing, China with a Master in Law in June 2010, and from William & Mary School of Law in 2014.

Ms. Lv is bilingual, speaking fluent Chinese and English.

Ms. Lv is a member of the California, New York, and China Bars.

**MATTEO LEGGETT** is an associate in the Connecticut office.  He is a graduate of Whitman College and the University of Connecticut School of Law.

Before joining the firm, Matteo began his career as a law clerk to the Honorable Alexandra D. DiPentima of the Connecticut Appellate Court.  While in law school, he helped represent a refugee in the school's Asylum and Human Rights Clinic and worked as an intern at the Hartford Immigration Court.

Matteo speaks Spanish and Italian and is licensed to practice in Connecticut.

**HAL CUNNINGHAM** is a graduate of Murray State (B.S. Biological Chemistry) and the University of San Diego School of Law.  Prior to joining Scott+Scott, Mr. Cunningham was engaged in research and development in the chemical and pharmaceutical industries.

Mr. Cunningham's practice focuses on securities class action, shareholder derivative, and consumer litigation.  While at Scott+Scott, Mr. Cunningham has worked on several cases that have achieved notable results, including *In re Washington Mutual Mortgage Backed Securities Litigation*, No. C09-0037 (W.D. Wash.) (securities settlement of $26 million).  Mr. Cunningham is also involved in the Firm's securities lead plaintiff motion practice, having briefed several successful lead plaintiff applications for the firm's institutional and individual clients.

Mr. Cunningham is a regular contributor to and editor of Scott+Scott's monthly newsletter, MARKET+LITIGATION.

Mr. Cunningham is admitted to practice in California.

**GARY D. FOSTER**'s main practice areas include antitrust, securities, and complex litigation, which includes such cases as *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388 (D. Mass.) and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.*, No. 2:12-cv-03824 (E.D. Pa.).  Mr. Foster is a member of the West Virginia State Bar.

Mr. Foster is a graduate of West Virginia Wesleyan College (B.S., Biology, *cum laude*, 1999) and of the West Virginia University College of Law (J.D., 2002), where he earned a position on the Moot Court Board and Lugar Trial Association.  During law school, Mr. Foster served as a law clerk for the West Virginia Supreme Court of Appeals, after which he assumed a full-time term position as a law clerk for the Hon. Thomas C. Evans, III, of the Fifth Circuit Court of West Virginia.

**JOSEPH A. PETTIGREW**'s practice areas include securities, antitrust, shareholder derivative litigation, and other complex litigation, including work on the following cases:  *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y); and *Marvin H. Maurras Revocable Trust v. Bronfman*, 12-cv-3395 (N.D. Ill.).

Mr. Pettigrew graduated from Carleton College (B.A., Art History, *cum laude*, 1998) and from the University of San Diego School of Law (J.D., 2004).  Mr. Pettigrew has served on the board and as legal counsel to several nonprofit arts organizations.

Mr. Pettigrew is admitted to practice in California.

**TROY TERPENING**'s practice centers on securities class action litigation, shareholder derivative lawsuits, corporate governance, and consumer litigation.  In addition, Mr. Terpening is actively engaged in a number of healthcare cases, including *In re Aetna UCR Rates Litigation*, MDL No. 2020 (D.N.J.) ($120 million settlement pending) and *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, MDL No. 2074 (C.D. Cal.).  Prior to joining Scott+Scott, Mr. Terpening worked in-house for both venture capital and large financial institutions.  He is a member of the California Bar.

Mr. Terpening is a graduate of San Diego State University (B.A., 1998) and California Western School of Law (J.D., 2001).  While in law school, Mr. Terpening served as President of the Association of Trial Lawyers of America (ATLA) Student Chapter and was selected for two consecutive years to represent his school on the Advocacy Honor's Board negotiation team in American Bar Association national negotiation competitions.

Mr. Terpening has taught Legal Research and Writing at the University of San Diego and Business Law at San Diego Mesa College.  He frequently speaks at seminars throughout California, Washington, and Nevada concerning real estate transactions, finance, and taxation.

Mr. Terpening is actively involved in his community and currently serves on the Board of the Clairemont Town Council.  He also regularly volunteers with the Legal Aid Society where he trains students in mediation techniques so they can help resolve disputes within their respective schools.

**EDWARD SIGNAIGO**'s main areas of practice are antitrust, consumer, and securities litigation.  Representative matters include *Kleen Products LLC v. Packaging Corp. of America*, Civil Action No. 1:10-cv-5711 (N.D. Ill.), *In re Domestic Drywall Antitrust Litigation*, No. 13-MDL-2437 (E.D. Pa.), *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Co.*, Civil Action No. 12-3824 (E.D. Pa.), *In re WellPoint UCR Out-of-Network "UCR" Rates Litigation*, MDL No. 2074 (C.D. Cal.), and *City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 12-cv-1203 (S.D.N.Y.).  Prior to joining Scott+Scott, Mr. Signaigo practiced at one of San Diego's premier personal injury firms.

31

Mr. Signaigo graduated from the University of San Diego (B.A., *magna cum laude*, 2006) and Santa Clara University School of Law (J.D., 2009).  During law school, Mr. Signaigo was an editor on the Santa Clara University School of Law Computer & High Tech Law Journal and studied abroad at the University of Oxford and the International Crime Tribunal for the Former Yugoslavia.  He is a member of the California Bar.